```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                            15 Cr. 867 (RMB)

REZA ZARRAB, MEHMET HAKAN
ATILLA,

                 Defendants.

------------------------------x
                                          New York, N.Y.
                                          April 24, 2017
                                          10:41 a.m.

Before:

                 HON. RICHARD M. BERMAN,

                                          District Judge

                        APPEARANCES

JOON H. KIM,
     Acting United States Attorney for the
     Southern District of New York
BY:  SIDHARDHA KAMARAJU , ESQ.
     DAVID W. DENTON, JR., ESQ.
     MICHAEL D. LOCKARD, ESQ.
     DEAN CONSTANTINE SOVOLOS, ESQ.
     Assistant United States Attorneys

BRAFMAN & ASSOCIATES, PC
     Attorneys for Defendant Zarrab
BY:  BENJAMIN BRAFMAN, ESQ.
     MARC AGNIFILO, ESQ.
     JOSHUA KIRSHNER, ESQ.

FERRARI & ASSOCIATES, PC
     Attorneys for Defendant Zarrab
BY:  ERICH CHRISTOPHER FERRARI, ESQ.

HERRICK, FEINSTEIN, LLP
     Attorneys for Defendant Atilla
BY:  VICTOR J. ROCCO, ESQ.
     THOMAS ELLIOTT THORNHILL, ESQ.
```

                          APPEARANCES
                          (Continued)

ALSO PRESENT:   JENNIFER McREYNOLDS, FBI Agent
                ASIYE KAY, Turkish Interpreter
                GEORGE ESAYAN, Turkish Interpreter

1       (In open court)

2       (Case called)

3       THE COURT:  How are you.  Please be seated.

4       So good morning, everybody.  What I'd like to do this morning is to lay out the schedule for the balance of May, anyway, and perhaps beyond as well.  I'll note for the record that we have a Turkish language interpreter and the interpreters' office advised me that they prefer to use headsets; so that is what we are doing today.

10      So let me ask Mr. Atilla and Mr. Zarrab if they are able to understand these proceedings with the use of the headsets and the Turkish interpreter.

13      THE DEFENDANT:  Yes, sir.

14      THE DEFENDANT:  Yes.

15      THE COURT:  Yes.  Okay?

16      So as I indicated in the agenda order on Friday, I'm going to need some additional information with respect to, let's start first with, the Giuliani/Mukasey Curcio hearing, and those materials are as follows:

20      First, any more recent or updated foreign agent filings by any of Dickstein, Shapiro or Gephardt through Government Affairs or Greenberg Traurig.  And those are the filings subsequent to the ones that we've already seen on the docket pertaining to the representation of Turkey.  My understanding is that those filings occur twice yearly; so

1  there may very well be some additional ones.

2  　　　　　MR. BRAFMAN:  We're having some issue with ....

3  　　　　　THE INTERPRETER:  Your Honor, I have to increase my
4  voice volume; is that okay?

5  　　　　　THE COURT:  Sure.

6  　　　　　THE INTERPRETER:  Thank you.

7  　　　　　THE COURT:  So the second thing I would like to have,
8  at least from the defense side, is a listing of all persons or
9  affiliates that the  Greenberg Traurig firm regards as a
10 potentially conflicted client for purposes of the Zarrab,
11 Giuliani/Mukasey Curcio conflicts hearing.

12 　　　　　The next is an issue that I touched on at our last
13 conference, but I'm not quite sure that it was resolved,
14 notwithstanding defense counsel's letter of Friday, and it is
15 this, and we can discuss it, but I'd like to know whether the
16 Giuliani/Mukasey efforts on Mr. Zarrab's behalf are also on
17 behalf of Mr. Atilla.

18 　　　　　I think there was some indication from counsel that
19 the answer was no, but let's say, hypothetically, if the answer
20 was yes, does that mean that Mr. Atilla has retained either of
21 those individuals?  And if the answer is no, then the question
22 I have is, where does that leave Mr. Atilla in this Iran
23 sanctions case going forward?  These issues are all in relation
24 to what I'm going to ask as joint Curcio questions to be
25 submitted by the defense and the government.

1    So now that we have those affidavits, the problem
2 identified by Mr. Lockard, or whoever raised that issue, should
3 no longer be a barrier to developing these series of questions.
4    And then related to this question I just asked, and
5 maybe it's the same question, but I'd like you to turn your
6 attention to it.  What impact, if any, on Mr. Atilla will
7 Messrs. Giuliani and Mukasey's efforts on behalf of Mr. Zarrab
8 have?
9    So here, and as in the question No. 3, I'm really
10 inquiring as to whether or not at the forthcoming Curcio
11 hearing, whether, in fact, any questions have to be posed of
12 Mr. Atilla, well, either at that hearing or his subsequent
13 Curcio hearing.  So that's something that you need to think
14 about and include in questions that you'd like me to pose at
15 the hearing.
16    So these topics and these submissions of defense
17 counsel should respond to these questions that I've just
18 raised, and also discuss any conflicts, waivers or information
19 walls, et cetera, as have been discussed in connection with the
20 original Kirkland and Ellis Curcio hearing.
21    Also, as I say, the joint questions proposed, to the
22 extent that they are co-terminus and if there's any difference,
23 you can have a separate submission.  So I'll need these
24 questions answered and the proposed questions by Thursday of
25 this week, at noon.  I think that should be ample time.

 1    My intention is to conduct the hearing and pose the
 2    questions on May 2nd at 2:00 p.m. and I think that Mr. Atilla
 3    should probably attend, depending on how you come out with
 4    respect to the various questions that I'm asking.  So with that
 5    information, I would be able to probably conclude the Curcio
 6    hearing involving Giuliani and Mukasey on May 2 at 2:00 p.m.
 7    Next is the Curcio proceeding for Mr. Atilla that we
 8    discussed last time, and we also tentatively set, and now I
 9    will confirm, the date of that hearing as May 18 at 10:00 a.m.
10    In connection with that Curcio hearing, I'm going to
11    need from Mr. Atilla's counsel a description and listing of
12    conflicts or potential conflicts and waivers, information
13    walls, et cetera, regarding work that's been done for banks and
14    also work that is done on behalf of or for Turkey.
15    There, too, I would like a joint submission by the
16    defense and the government.  First, let's do it in this order.
17    By April 27 at noon we'll need the defense submission before we
18    can get to the joint questions, and by May 1st, if I could have
19    the joint questions to be posed at the Curcio hearing.
20    In connection with each of those hearings, I'm
21    appointing from the CJA panel Mr. James DeVita to represent
22    Mr. Zarrab and Mr. William Harrington to represent Mr. Atilla
23    for their respective Curcio hearings.  I did not see either of
24    them in the audience before.  Is either Mr. DeVita or
25    Mr. Harrington here?  We've been in touch with their offices,

1   and we'll catch them up and refer them to counsel when we hear
2   from them.
3           MR. BRAFMAN:  Excuse me, your Honor?
4           THE COURT:  Yes.
5           MR. BRAFMAN:  Is it possible, and I don't know if he's
6   available, I'd like to use the same independent counsel for
7   Mr. Zarrab that we used before, Mr. Rimm.  He's familiar with
8   Mr. Zarrab.  Rather than me having to introduce him to a whole
9   new attorney and the attorney to the client.  Mr. Rimm would
10  expedite that.
11          THE COURT:  What I did is just went off the CJA
12  whenever I did an order or whatever.  Let me look into that.
13          MR. BRAFMAN:  Okay.  Thank you.
14          THE COURT:  So a piece of housekeeping.  I'm putting
15  on the docket and publishing on the docket a copy of the e-mail
16  that I asked my court deputy to send to Mr. Kirshner in advance
17  of the publication by defense counsel of the various affidavits
18  of Messrs. Mukasey, Giuliani, Brafman, Larry Levy and Mr.
19  Mangas, as well; just so the record is clear.
20          Now, turning to the suppression hearing that is on for
21  May 9 at 9:30 a.m., there will be no need for a Franks hearing
22  on that date, as I intimated at our last conference.  Following
23  that hearing, for which we already have some written
24  submissions of direct testimony, et cetera, I will ask counsel
25  for proposed findings of fact and conclusions of law.

Case 1:15-cr-00867-RMB   Document 240   Filed 05/12/17   Page 8 of 18       8
H4OPZARC

1              Then, before I turn to counsel, there are other items,
2     status items that I'm interested in as far as, first, there was
3     some discussion of a protective order regarding discovery to
4     Mr. Atilla; so I'll want to hear where that stands.
5              I'm going to hear further from defense counsel for
6     Mr. Atilla whether you do think that there are going to be any
7     questions for or on behalf of Mr. Atilla at the
8     Giuliani/Mukasey Curcio, I mentioned that a minute or so ago,
9     at that proceeding.
10             And then I'll want to know if you've given any further
11    thought yet to motions, including the suppression hearing.  I
12    think your correspondence indicated that you were not raising
13    issues with respect to the forthcoming suppression hearing, but
14    let's hear that for the record.
15             Then we can turn our attention to the August 21 trial
16    date.  I've seen in defense counsel's submission, it covers the
17    issue that Mr. Atilla is agreeable to extending the time.  I
18    don't know yet if all of you have had a chance to speak among
19    yourselves, that is the defense and the government.
20             I'll also want to hear from the government as to what
21    efforts you have been able to make to speed up the defense
22    review of the discovery, and I think that's it.
23             So I'm happy to hear from defense counsel for
24    Mr. Atilla, if you wish to be heard on any of these items, or
25    any other items today, then Mr. Brafman and then the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   government.

2           MR. ROCCO:  Just a moment.

3           THE COURT:  Sure.

4           MR. ROCCO:  Good morning, your Honor.

5           THE COURT:  Good morning, counsel.

6           MR. ROCCO:  Victor Rocco, counsel for Mr. Atilla.

7           Judge, how do you want to -- what order do you want me

8   to do address these issues?

9           THE COURT:  However you like.

10          Mr. Harrington has just arrived.

11          Okay.  Go ahead, counsel.

12          MR. ROCCO:  Well, on the protective order, Judge --

13  and I'm going to skip around.  On the protective order, I sent

14  to the government over the weekend a proposal.  The government

15  had sent to me roughly a week ago their version of a protective

16  order.  I had some problems with it.  I communicated last night

17  with Mr. Lockard about it.  I'm sure that we will have more

18  discussions about it, and if there's a problem, Judge, we'll

19  come back to the Court on it.  Hopefully, we'll be able to

20  resolve it.

21          THE COURT:  Okay.

22          MR. ROCCO:  On the suppression issues, Judge, you are

23  correct.  We've indicated that we will not make any submissions

24  in connection with the suppression hearing that is now pending

25  for Mr. Atilla -- I'm sorry, Mr. Zarrab.  Thank you,

1  Mr. Brafman.  Mr. Zarrab.
2             On the trial date, Judge, I have spoken to Mr. Atilla.
3  We have spoken at length about the trial date.  I described to
4  the Court the conundrum that my client is in.  The fact is that
5  there has been no bail application.  We hope to make a bail
6  application, but as I indicated to the Court before, we want it
7  to be a credible application, and not impose on the Court or on
8  the government for that matter.
9             So with that understanding, and having a series of
10 conversations with Mr. Atilla and discussed with him the issues
11 that are posed by an August 21st trial date, and given the
12 amount of materials and the way that we think that discovery
13 will unfold here, Judge -- and it will include going abroad,
14 talking to witnesses abroad and have perhaps foreign
15 depositions -- I believe that the August 21st trial date is
16 impractical.
17            I actually said to Mr. Atilla that it would be
18 difficult for us to coordinate all of the work that we need to
19 do to be prepared for trial, and to hasten into a trial in
20 circumstances where the defense is not fully prepared would be
21 a mistake.
22            THE COURT:  Okay.  As to the date that I mentioned,
23 you'll make those written submissions?
24            MR. ROCCO:  Yes, Judge.  On the submission on the
25 27th, Judge, I'm a bit unclear about what your Honor expects us

1   to do.  We have started to contact the banks that we represent.
2   Our representation of these banks is limited to transactional
3   matters.  The banks, as your Honor knows, do not have guns to
4   their heads.  We're trying our best to get waivers, but I think
5   it's impractical to do that by the 27th.  We will contact them,
6   make them aware of the fact that there is a potential conflict
7   or the nature of this case.  Some of the banks, your Honor --
8             THE COURT:  I think, by the way, if there were
9   waivers, they would be needed by the 18th.
10            MR. ROCCO:  Yes, I understand that.
11            THE COURT:  But you should know what is going on in
12  that regard.
13            MR. ROCCO:  In fact, your Honor, I think it might be a
14  little bit easier by the fact that I think there are some of
15  these banks that have already waived with respect to
16  Mr. Atilla.
17            THE COURT:  With respect to Mr. Zarrab?
18            MR. ROCCO:  With Mr. Zarrab.  I can't speak for the
19  bank, but I suspect there will not be any problem getting a
20  waiver from them.
21            THE COURT:  So what I'm really interested in, right,
22  who among your clients are potential conflicts.
23            MR. BRAFMAN:  That's fine.
24            THE COURT:  And you have to deal with the Turkey
25  representation.

1    MR. ROCCO:  Yes, your Honor.
2    THE COURT:  Okay.  Then you'll get together with the
3  government and develop joint questions.
4    MR. ROCCO:  Yes.
5    THE COURT:  Based on your submission, your submission
6  will be a roadmap as to what needs to be delved into.
7    MR. ROCCO:  Thank you.
8    THE COURT:  Okay.  Mr. Brafman?
9    MR. BRAFMAN:  Yes, your Honor.
10   THE COURT:  So by the way, I think your question at
11 the last conference about August 21 has been answered.  We
12 don't need to set another date, but it seems unlikely.  You
13 feel that you need more time and he agrees, meaning Mr. Rocco
14 feels he needs more time.
15   MR. BRAFMAN:  Yes, we received an e-mail just this
16 morning telling us that there's additional discovery that the
17 government is providing to us forthwith.  So the answer is I
18 don't think either of us are prepared to indicate what the new
19 trial would be, but I would like there to be an understanding
20 that the August 21st trial date is no longer a trial date.
21   THE COURT:  That's a fair understanding as of now.
22 Right.
23   MR. BRAFMAN:  Thank you.
24   THE COURT:  Anything else from the government?
25   MR. LOCKARD:  Just a couple of things, your Honor.

1          THE COURT:  All right.
2          MR. LOCKARD:  With respect to the calendar of
3  deadlines with respect to the Curcio filings, in particular the
4  Thursday noon filing for joint proposed Curcio questions --
5          THE COURT:  For which?
6          MR. LOCKARD:  With respect to Mr. Zarrab.  So we think
7  it might be advisable to have a little bit of a stagger between
8  when Mr. Brafman and his colleagues provide the additional
9  information in response to the Court's questions this morning,
10 and the submission of the joint Curcio questions, to the extent
11 that any of that additional information would impact those
12 questions in some way.
13         THE COURT:  Okay.  I think you can work that out with
14 Mr. Brafman probably.
15         MR. LOCKARD:  I think a day or so.
16         THE COURT:  He's saying he needs a day or so after you
17 make your submissions.
18         MR. BRAFMAN:  I don't have a problem with that, your
19 Honor, and I would think that, absent something extraordinary,
20 that the Court would follow pretty much the questions that were
21 used in the prior Curcio hearing because I think they sort of,
22 for the most part, have the same effect.
23         THE COURT:  I think that's probably right.  That also
24 should help Mr. Rocco.
25         MR. LOCKARD:  With respect to the protective order

1  governing the production of discovery to Mr. Atilla's counsel,
2  that is something that we are working to try and resolve as
3  quickly as possible so that discovery can be produced, and I
4  think it is our hope, as well as defense counsel's hope, to
5  have that resolved in the near future.  If it turns out that it
6  can't be resolved, then as Mr. Rocco said, we'll bring it to
7  the Court for resolution so that we can get discovery out to
8  Mr. Atilla's counsel.
9          So as far as the trial date, I think the government,
10 at this point, understands that the 21st is more of a control
11 date than a trial date, and we will be prepared to go to trial
12 on August 21st, or such other date as the Court may set, and
13 we'll just be prepared to address scheduling issues as soon as
14 defense counsel is prepared.
15         With respect to the government's efforts to speed up
16 the defense review of the discovery, we have had, as the Court
17 knows from prior conferences, intermittent discussions with
18 defense counsel about that issue.  I think more recently we
19 have been in the posture of waiting for the defense to alert us
20 that they're ready to reengage in that process, but we do
21 remain ready to engage in that process at any time.
22         One other scheduling matter.  On the suppression
23 hearing, we had spoken a little bit with Mr. Brafman about the
24 possibility of requesting a different date from May 9th.  I
25 think the date that seemed to work best for Mr. Brafman and for

1  the government and its witnesses may be May the 18th.  We're
2  not making that request at this time, but since we're talking
3  about scheduling, we wanted to raise it.
4          THE COURT:  That's the date that we scheduled the
5  Curcio hearing for Mr. Atilla.
6          MR. LOCKARD:  That's correct, your Honor.
7          THE COURT:  So what are you saying about that?
8          MR. LOCKARD:  We do think that both could be
9  accomplished in a single day, especially if the suppression
10 hearing is limited to the motion to suppress the search of
11 Mr. Zarrab's phone and his post-arrest statements; and in
12 particular, in light of the manner in which the Court conducts
13 suppression hearings, which is to have direct examinations by
14 affidavit.
15         MR. BRAFMAN:  Your Honor, I have no problem with the
16 18th; so if we could start a little bit later that morning.  I
17 have a plea scheduled in another courtroom for the morning of
18 the 18th, which should be over by 11:00.  If you start with the
19 Curcio hearing, which we are excused from, I could be here I
20 think by 11:00, if we're going to proceed with the suppression
21 hearing on the 18th.
22         THE COURT:  That's okay with me.
23         MR. BRAFMAN:  Okay.
24         MR. LOCKARD:  Then the last thing, your Honor, there
25 are just a couple of issues that we wanted to address in the

1    affidavits that had been submitted from Mr. Giuliani and
2    Mr. Mukasey, which we think muddy the waters a little bit, and
3    we wanted to clarify the record, to the extent that they are
4    issues that are relevant to the Court's consideration of the
5    potential conflicts of interest.
6            THE COURT:  I thought they were designed to clear
7    things up, as opposed to muddy the water.
8            MR. LOCKARD:  Yes, your Honor, but there are a couple
9    of muddy points that we want to help clarify.
10           The first is that the affidavits each contain the
11   suggestion that there has been a leak of information, or
12   misinformation, related to Mr. Giuliani's and Mr. Mukasey's
13   retention by the defendant.  I just wanted to clarify that all
14   that has happened here is the government, as it is required to
15   do, brought information to the Court's attention so that it
16   could perform its legal obligations under Curcio and its
17   progeny, to ensure that the defendant's constitutional rights
18   to conflict-free counsel are protected.
19           Although the U.S. Attorney's Office was alerted by
20   Mr. Giuliani of his retention, that was not a confidential
21   conversation.  Confidentiality was not requested or promised,
22   nor could it have been, in light of the issues that are raised
23   by the potential conflict-of-interest issue.
24           There is also, in the affidavits, a suggestion that
25   the offense conduct in this case was not serious or harmful to

the United States because it was limited to consumer goods and that weapons or nuclear technology or other contraband were not involved. I think the Court is well aware of the allegations in this case in the indictments, and that characterization is not an accurate one.

It's an issue that's been fully aired during the bail argument and in the motions to dismiss. What is charged in this case is a serious national security offense. It's alleged that the defendant led a multi-year conspiracy to allow the government of Iran and Iranian entities access to the U.S. financial system. The entities that benefited from this alleged scheme include the Islamic Revolutionary Guard Corps and agents or affiliates of that entity, Iranian banks that have been sanctioned for their role in providing financing for Iran's nuclear programs, and Iranian commercial airlines sanctioned because of the assistance that it provided to the IRGC and the Quds Force for their external operations in Iraq and Syria and support for hezbollah.

The allegations, and we expect the proof at trial, would prove that Mr. Zarrab and his coconspirators worked with high-level government and banking officials in both Iran and Turkey. We expect the evidence will show that Mr. Zarrab offered these services to Iran in a letter personally addressed to then Iranian President Mahmoud Ahmadinejad, and that Mr. Zarrab funneled tens of millions of dollars to high-level

1   government and bank officials to facilitate and protect this
2   scheme.
3            So the suggestion that his role is limited or that the
4   offense was minor, we think misconstrues this case and also
5   potentially misconstrues issues relevant to the Court's Curcio
6   considerations.
7            THE COURT:  Thank you.  Anything else?
8            MR. BRAFMAN:  I just don't want my silence to suggest
9   that I agree with what Mr. Lockard just said.  I just did not
10  think today was when we were actually going to try issues of
11  fact relating to the allegations of this case.  Thank you.
12           THE COURT:  All right.  Then I think that's it for
13  today.  We have the roadmap, with the one change, that the
14  suppression hearing is on the 18th at 11:00 instead of on
15  May 9.  Great to see you all.  Thanks a lot.
16           (Adjourned)