H523ZARC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                  v.                        15 CR 867 (RMB)

5    REZA ZARRAB and MEHMET HAKAN
     ATILLA,
6
                   Defendants.
7    ------------------------------x

8                                           New York, N.Y.
                                            May 2, 2017
9                                           2:00 p.m.

10   Before:

11                    HON. RICHARD M. BERMAN,

12                                          District Judge

13
                           APPEARANCES
14
     JOON H. KIM
15        Acting United States Attorney for the
          Southern District of New York
16   MICHAEL LOCKARD
     SIDHARDHA KAMARAJU
17        Assistant United States Attorneys

18   BRAFMAN & ASSOCIATES P.C.
          Attorneys for Defendant Zarrab
19   BENJAMIN BRAFMAN
     MARC AGNIFILO
20        -and-
     DOAR RIECK DeVITA KALEY & MACK
21        Attorneys for Defendant Zarrab
     JAMES R. DeVITA
22        -and-
     FERRARI & ASSOCIATES, P.C.
23        Attorneys for Defendant Zarrab
     ERICH C. FERRARI

24

25

H523ZARC

1    Appearances (Continued)

2    HERRICK, FEINSTEIN, LLP
         Attorneys for Defendant Atilla
3    VICTOR J. ROCCO
     THOMAS E. THORNHILL
4

5    ALSO PRESENT:  A.J. Elterman and Asiye Kay, Turkish language
     interpreters
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

H523ZARC

1

2          THE COURT:  So, let me start as I usually do in these

3    proceedings by mentioning the -- did you want to say something?

4          MR. BRAFMAN:  I wanted to add something for the record

5    that I don't think your Honor has.  I received information

6    either late last night or very early this morning that in

7    addition to the materials Mr. Mukasey previously provided that

8    are under seal, we wanted the Court to know that he may be

9    doing some work for one of banks in question, although up until

10   this point he has not, and it would have nothing to do with

11   this case and something to do with a civil piece of litigation.

12         THE COURT:  Okay.  Thanks.  That will come up again,

13   so you will remind me when it does.

14         MR. BRAFMAN:  Okay.

15         THE COURT:  I wanted to make mention of the

16   presumption of innocence as I usually do, and that is to point

17   out that under our system, the guilt or innocence -- first I

18   should start by asking Mr. Zarrab and Mr. Atilla if they're

19   able to understand these proceedings with the help of the

20   interpreter.

21         DEFENDANT ATILLA:  Yes.

22         THE COURT:  Mr. Zarrab, yes?

23         DEFENDANT ZARRAB:  Yes, your Honor.

24         THE COURT:  Then returning to the presumption of

25   innocence.  I want to point out that the guilt or innocence of

H523ZARC

1   Mr. Zarrab and Mr. Atilla is not the subject of today's

2   proceeding.  Under our system, both defendants, all defendants

3   are presumed to be innocent, unless and until they are proven

4   guilty by a jury or an appropriate admission.

5        So today's hearing is the second Curcio proceeding or

6   Curcio hearing to be held in this case.  The first such hearing

7   involved the representation of defendant Zarrab by the law firm

8   of Kirkland & Ellis, and particularly attorneys Paul Clement

9   and Viet Dinh, and perhaps one or two other individuals from

10  Kirkland & Ellis.

11       In general terms, the first Curcio hearing was

12  principally occasioned by Kirkland & Ellis's representation of

13  eight banks which are also referred to as victim banks in this

14  criminal case.

15       The background and the parameters of this second

16  Curcio hearing are set forth in the Court's decision and order

17  dated April 5, 2017.  And in preparation for today's hearing, I

18  have reviewed submissions from the defense dated March 27,

19  2017, dated March 30, 2017, dated March 31, 2017, also

20  April 19, 2017.  The April 19 submission included affidavits

21  from Messrs. Benjamin Brafman, Rudolph Giuliani, Laurence Levy,

22  Robert Mangas, and Michael Mukasey.

23       MR. BRAFMAN:  Excuse me, your Honor.  Just for the

24  record, I think it was dated April 14.

25       THE COURT:  Okay.  I'll stand corrected.

H523ZARC

| | |
|---|---|
| 1 | MR. BRAFMAN:  I don't want the record to be looking |
| 2 | for a April 19 submission. |
| 3 | THE COURT:  I appreciate that.  Thank you. |
| 4 | There are also attachments to that submission, such as |
| 5 | registration statements filed pursuant to the Foreign Agents |
| 6 | Registration Act.  Then there was a further submission from the |
| 7 | defense dated April 27, 2017, which included updated |
| 8 | registration statements. |
| 9 | I take it there's no additional registration statement |
| 10 | filed yet.  There would be one due probably April 29, 2017, |
| 11 | retroactive six months, but I don't think it's been filed yet. |
| 12 | MR. BRAFMAN:  I have not received any. |
| 13 | THE COURT:  Okay.  There are also submissions from the |
| 14 | government dated March 27, 2017, March 31, 2017, and April 18, |
| 15 | 2017. |
| 16 | And in addition, I've reviewed the joint Curcio |
| 17 | questions prepared by and submitted by the government and the |
| 18 | defense under cover of the letter dated April 28, 2017. |
| 19 | Additionally, the Court has appointed as CJA counsel |
| 20 | James DeVita as an independent Curcio counsel for Mr. Zarrab |
| 21 | with regard to what the Court has sometimes referred to as the |
| 22 | Giuliani/Mukasey alleged conflict issues. |
| 23 | Mr. DeVita advised the Court that he previously worked |
| 24 | under Mr. Giuliani over 20 years ago when Mr. Giuliani was the |
| 25 | United States attorney for the Southern District of New York. |

H523ZARC

1   Mr. DeVita also advised that that prior relationship would not

2   impact his ability to be fair and independent in this matter.

3   Fair to Mr. Zarrab.

4           I don't believe, Mr. DeVita, that you have made any

5   written submissions; is that correct?

6           MR. DeVITA:  No, I have not, your Honor.  I've

7   conferred with Mr. Zarrab on two occasions and spent a

8   significant amount of time with him with a Turkish interpreter,

9   in order to familiarize myself with him and to familiarize him

10  and make sure he's comfortable with understanding the issues

11  before your Honor.

12          THE COURT:  Great.  I'm going to call upon you again

13  later on in these proceedings in that regard.

14          MR. DeVITA:  Yes, your Honor.

15          THE COURT:  Also, yesterday, May 1, I issued an order

16  indicating some additional topics that I wanted to address.

17  Well, it's up to you all whether you want to make a subsequent

18  written submission in response to those questions or if you

19  want to do them orally today.  Any preference?

20          MR. BRAFMAN:  My preference would be to do it orally

21  today if we can.

22          MR. KAMARAJU:  That's fine for the government.

23          THE COURT:  Let's start with those questions.  The

24  first of which asks whether Messrs. Giuliani and Mukasey and/or

25  their firms or any other defense counsel in this case have also

H523ZARC

1    been retained by Iran, Halk Bank, Turkey, apart from what has

2    already been submitted in this case, or the United States.

3            So let's do one at a time.  Mr. Brafman, if yes,

4    explain.

5            MR. BRAFMAN:  I'm advised by Messrs. Mukasey and

6    Giuliani that they do not and have not ever been retained by

7    Iran, and do not represent Iran.

8            THE COURT:  Same is true for Halk Bank?

9            MR. BRAFMAN:  That's correct.

10           THE COURT:  And their firms as well?

11           MR. BRAFMAN:  That's correct, your Honor.

12           THE COURT:  And what about the United States?

13           MR. BRAFMAN:  I think they have pending matters with

14   the United States because they do a great deal of pro bono work

15   and some CJA work.  But nothing at all related to this case,

16   They have assured me of that.

17           THE COURT:  In those matters, though, do they work for

18   the government or on the other side?

19           MR. BRAFMAN:  Sometimes for the government, your

20   Honor.  As I am advised by Mr. Mukasey, they don't have any

21   present or current litigations or past litigations that would

22   in any way impact this case in any manner.  They have at times

23   represented agencies of the federal government, but none that

24   would even remotely relate to this case.

25           THE COURT:  Okay.  Do you want to be heard?

H523ZARC

1          MR. KAMARAJU:  We would defer to Mr. Zarrab on that.

2          THE COURT:  Okay.  Second question is with respect to

3   one of the Curcio questions and it's -- they all are, but it is

4   an important question, so, I wasn't sure if there was a typo

5   there.  I didn't understand.  The question reads I believe "Do

6   you understand that your attorneys from Greenberg Traurig and

7   Debevoise & Plimpton may be limited in making arguments to" and

8   then the "to" is what I didn't understand to whom "about your

9   level of involvement in the offense," which would be the crimes

10  in this case, "role in the offense," or offenses, the crimes in

11  this case, "and culpability."

12          Did I misread that?

13          MR. BRAFMAN:  Can I ask what question your Honor is

14  specifically --

15          THE COURT:  It's 16E, it's on page three of the joint

16  submission.  I think there must have been something missing in

17  there, but maybe I misread it.

18          MR. BRAFMAN:  May I confer with the government for a

19  moment?

20          THE COURT:  Yes.

21          (Pause)

22          MR. BRAFMAN:  I understand, your Honor, I don't think

23  that in any way impacts on these proceedings.  I think the

24  government and I both understand that to the extent that they

25  were to be involved in the plea negotiations, it might impact

H523ZARC

1    on what they may or may not do, but they are not involved in

2    plea negotiations.  If they were, I would tell you.

3          THE COURT:  But is the question read correctly?  Am I

4    just misreading it.  It says making argument to whom?

5          MR. KAMARAJU:  Yes, your Honor.  I think what we had

6    intended with that question is that Mr. Giuliani and

7    Mr. Mukasey would be limited in making arguments, for example,

8    to the government with respect to plea negotiations as to

9    Mr. Zarrab's level of involvement, role in the offense, and

10   culpability.

11         THE COURT:  So, if we replaced "whom" with

12   "government," would that --

13         MR. BRAFMAN:  I think it would be better for this case

14   if you replaced it with the United States Attorney for the

15   Southern District of New York.

16         THE COURT:  Oh.  Okay.  Is that okay with you?

17         MR. KAMARAJU:  Well, given the posture, to the extent

18   there are discussions with anybody other than the Southern

19   District of New York, we think they would be limited in those

20   conversations similarly.

21         MR. BRAFMAN:  I don't have a problem with that, Judge.

22         THE COURT:  Okay.  So, the third question asks whether

23   Greenberg Traurig's representation of both Mr. Zarrab and the

24   Republic of Turkey is an actual conflict, contrasted with a

25   potential conflict.  If so, whether it's actual or potential,

H523ZARC

1    is it waivable.

2            Here, I would like some authorities and rules in

3    particular that you are relying on, Mr. Brafman.  Are you

4    prepared to address --

5            MR. BRAFMAN:  Your Honor, I'm prepared to address it

6    orally.  I believe it's a potential conflict at best, and

7    Mr. Zarrab has had that explained to him by myself, by

8    Mr. Agnifilo, by Mr. Ferrari who is present as well, and also I

9    believe by independent counsel, and he is prepared to waive any

10   actual or potential conflict.

11           MR. KAMARAJU:  Yes, your Honor.  From the government's

12   perspective, we simply don't have enough information at this

13   point to determine whether it would be an actual conflict.  It

14   the may crystalize at some point that the representation or the

15   interests of the Republic of Turkey diverge so significantly

16   from Mr. Zarrab's.

17           MR. BRAFMAN:  Can I have a suggestion on that, sir?

18           THE COURT:  Sure.

19           MR. BRAFMAN:  Since we've briefed this issue very

20   thoroughly in the prior Curcio hearing, and I represent to you

21   that now there is no actual potential conflict, and that if

22   there ever was, Mr. Zarrab would waive it, we would then notify

23   the government if we ever got to that position, we could then

24   revisit the issue if necessary.

25           But for the purposes of today's proceeding, I

H523ZARC

1    represent to you that I do not see a potential or an actual

2    conflict, and that Mr. Zarrab is prepared to waive it under any

3    circumstances.

4            THE COURT:  Okay.  That's satisfactory to me.

5            The next question is who is Greenberg Traurig's client

6    when Mr. Giuliani meets with Turkish and/or United States

7    officials to discuss Mr. Zarrab's case?  Is it Turkey or is it

8    Mr. Zarrab?

9            MR. BRAFMAN:  I think to the extent that some of these

10   matters are addressed under seal, I can represent to you in

11   open court that it is Mr. Zarrab who is their client at those

12   times.

13           THE COURT:  Are those discussions privileged or can

14   they ever be or is the privilege waived in those circumstances?

15           MR. BRAFMAN:  I think --

16           THE COURT:  The reason I ask that is because there

17   would be Turkey as a third party, so to speak, and Mr. Zarrab's

18   counsel, and what I'm thinking about are prior conversations

19   between Mr. Zarrab, obviously, and Mr. Giuliani.

20           MR. BRAFMAN:  I think any conversations between

21   Mr. Zarrab and either Mr. Mukasey or Giuliani or to

22   Mr. Giuliani's partner, Mr. Levy, would of course be

23   privileged.

24           To the extent that in their conversations with third

25   parties they raise something of a privileged nature, I'm not

H523ZARC

1    present at those conversations.  And obviously, if those people

2    are not their clients, it would be hard to argue that they are

3    privileged.  But the conversations between Mr. Zarrab and

4    Mr. Mukasey and Mr. Giuliani's partners are in fact privileged.

5          THE COURT:  Okay.

6          MR. KAMARAJU:  Yes, your Honor, we think you're

7    exactly right.  To the extent there are conversations with

8    Turkish officials or U.S. government officials, those cannot be

9    privileged under any view of the law, because they are with

10   parties outside the privileged relationship.

11         THE COURT:  So, we don't have to deal with it now, but

12   going back to the question number three, that is one of the

13   things that I was wondering as to whether this would be an

14   actual conflict or a potential conflict.  It would strike me an

15   argument could be made that waiver of attorney-client privilege

16   might present a serious problem.  But, you can just think about

17   that and get back to me.

18         The next question is may Messrs. Giuliani or Mukasey

19   participate or take positions adverse to Mr. Zarrab in

20   negotiations between the United States and Turkey?

21         MR. KAMARAJU:  Certainly the government believes that

22   they cannot do that.  They have ethical obligations that would

23   preclude them from negotiating to Mr. Zarrab's detriment,

24   whether with the United States or with Turkey.

25         THE COURT:  Mr. Brafman, do you agree with that?

H523ZARC

1             MR. BRAFMAN:  Your Honor, far be it for me to teach

2       either former Chief Judge Mukasey or former United States

3       Attorney Rudy Giuliani what their ethical obligations are.

4             THE COURT:  I have an answer that starts that way

5       also.

6             MR. BRAFMAN:  Your answer might be more important than

7       my answer.

8             But, Judge, I don't think there would be any point to

9       this undertaking if their discussions were not, hopefully, in

10      my view, to try and benefit Mr. Zarrab.

11            I don't believe that Mr. Mukasey has any issue

12      whatsoever, because neither he nor his firm are an agent of

13      Turkey nor do they represent Turkey.  And I believe that

14      Mr. Giuliani is not himself a person who has ever represented

15      Turkey.  And to my knowledge, he's the one who is conducting

16      whatever negotiations have taken place.  So I don't see the

17      conflict arising.

18            THE COURT:  Then the last question from yesterday's

19      order, do office holders and/or members or affiliates of the

20      governments of the United States or Turkey do business with

21      Mr. Zarrab and/or any of Mr. Zarrab's affiliates?  If the

22      answer is yes, could you explain.

23            MR. BRAFMAN:  I think the answer might be yes and yet

24      might be privileged, given the dynamics of this case in its

25      present posture and some of the charges.

H523ZARC

1          THE COURT:  I see.

2          MR. BRAFMAN:  But they certainly do not impact on what

3     Mr. Giuliani's firm does or does not do on behalf of Turkey.

4          THE COURT:  Okay.  So let me take those answers under

5     advisement and proceed with the Curcio proceeding in this way.

6          The conflicts that the government has urged the Court

7     to explore in this Curcio proceeding relate to the work of

8     counsel, of Messrs. Giuliani and Mukasey and their law firms,

9     namely Greenberg Traurig in the case of Mr. Giuliani and

10    Debevoise & Plimpton in the case of Mr. Mukasey.  Work they've

11    done for certain banks that we've become familiar with in this

12    case which include Deutsche Bank, Bank of America, JPMorgan

13    Chase, Citibank, HSBC, Standard Chartered, UBS, and Wells

14    Fargo, whose interests are or may be adverse to the interests

15    of Mr. Zarrab.

16         Mr. Giuliani submitted an affidavit dated April 14,

17    2017, in which he states, among other things, "that of the

18    eight banks, I have not performed work for any of them in

19    2017."  Mr. Mukasey submitted an affidavit dated April 13,

20    2017, which said, among other things, "of the eight bank, I

21    have performed work for only one, JPMorgan Chase, and that work

22    ceased more than two years ago."

23         The government also requests the Court to explore at

24    this Curcio hearing Greenberg Traurig's status of agent of the

25    Republic of Turkey.  In his March 30, 2017 letter, Mr. Brafman

H523ZARC

advised the Court that Messrs. Giuliani and Mukasey have been

retained by Mr. Zarrab as his counsel, and that the engagement

of Messrs. Giuliani and Mukasey relates to this prosecution.

The work they are doing for Mr. Zarrab, Mr. Brafman advised, is

ancillary to the pretrial and future trial proceedings

occurring in this court.  And, according to defense counsel,

they have no role in appearing in this court, or otherwise

participating in the trial.

          Mr. Brafman also advised the Court in his March 30,

2017 submission, that the work being undertaken by Messrs.

Giuliani and Mukasey for Mr. Zarrab "may impact the

prosecution."  He also added that Messrs. Giuliani and

Mukasey's representation as of that date, which is March 30,

2017, has not impacted the prosecution -- not at that time

impacted the prosecution, and whether it will is a matter of

speculation.

          Is there any update in that regard, Mr. Brafman?

          MR. BRAFMAN:  No, sir.

          THE COURT:  In its March 27, 2017 letter, the

government wrote that "preparation for trial and participation

at trial are not the only stages of representation that

implicate the defendant's right to conflict-free counsel.  In

this case," this is the government, "the government has been

expressly advised that Mr. Giuliani and Mr. Mukasey have been

retained by the defendant, Mr. Zarrab, and are involved in, and

H523ZARC

will continue to be involved in, efforts to explore a potential

disposition of the criminal charges in this matter.  To the

extent" -- this is still the government's commenting -- "to the

extent that the defendant relies on advice and efforts of these

attorneys, and to the extent that there exist potential

conflicts of interest that could impair defendant Zarrab's

right to conflict-free representation, Curcio proceedings are

appropriate."

        I agree with that conclusion that they are

appropriate, and that's what brings us in part here today.  I

refer again to the April 5, 2017 decision and order on that

subject.

        The defense letter response to that was that -- this

is a quote from Mr. Brafman -- "Unlike the attorneys associated

with Kirkland & Ellis, no lawyers from Greenberg Traurig or

Debevoise & Plimpton will have any involvement in the trial

preparation or trial in this case, and neither Mr. Giuliani nor

Mr. Mukasey intends to file a notice of appearance.  Their

roles will not require any appearance in court."

        As I mentioned in the order, as I stated in the order

dated April 5, 2017, I believe that the Court has an important

role in these Curcio proceedings.  Its responsibilities are to

ensure that Mr. Zarrab is treated fairly, that he has

conflict-free counsel, and that he receives a fair trial on the

merits of the case.  The trial court's primary obligation is to

H523ZARC

1    ensure that the defendant receives a fair trial.

2            The Court also takes into consideration the importance

3    of maintaining the integrity of these proceedings as the case

4    progresses toward trial, in view of, among other things, the

5    conflicts allegedly posed by Messrs. Giuliani and Mukasey and

6    their respective firms representing Mr. Zarrab and victim

7    banks, as well as in the case of Greenberg Traurig,

8    Mr. Giuliani's firm's role as agent for the Republic of Turkey.

9            The Supreme Court has held that federal courts have an

10   independent interest in ensuring that criminal trials are

11   conducted within the ethical standards of the profession and

12   that legal proceedings appear fair to all who observe them.

13   And the Second Circuit has held that in determining whether the

14   right of the accused to counsel of his choosing should be

15   honored in a particular case, we must balance the defendant's

16   Constitutional right against the need to preserve the highest

17   ethical standards of professional responsibility.

18           I would, before I turn to the question-and-answer

19   period of Curcio proceedings, which is the heart of the

20   proceeding, and first I will likely turn to Mr. DeVita, I would

21   like to make this mention of the affidavits submitted by

22   Mr. Giuliani and Mr. Mukasey.

23           And the rationale behind my comments are, first, that

24   I tried to be thorough throughout this case, particularly in

25   collecting and developing the background material necessary to

H523ZARC

1    assess the conflicts issues, which as I noted were first raised

2    by the government, and which absolutely are required to be

3    resolved.

4         Second is this point:  This stems from the fact that

5    the affidavits submitted by Messrs. Giuliani and Mukasey make

6    no mention of Iran in their efforts and their work.  And I do

7    wish to point out, I think it's important, that the record is

8    crystal clear that Iran, and particularly the defendant's

9    efforts, allegedly, unlawfully to benefit Iran, are the focus

10   of the indictment in this case.

11        The indictment contains serious allegations of (1) a

12   conspiracy to defraud the United States; (2) conspiracy to

13   violate the International Emergency Powers Act, and

14   particularly economic sanctions against Iran; (3) a conspiracy

15   to commit bank fraud; and (4) conspiracy to commit money

16   laundering.

17        All of these conspiracies were, according to the

18   indictment, carried out over a four-to-five-year period.

19   Mr. Atilla is alleged to have participated in two of those

20   conspiracies, and Mr. Zarrab is alleged to have participated in

21   four of them.

22        These four conspiracies were, according to the

23   indictment, all entered into and carried out, as I mentioned,

24   with the unlawful purpose of benefiting Iran.  And most

25   respectfully, the Giuliani and Mukasey affidavits appear

1    surprisingly disingenuous in failing to mention the central

2    role of Iran in the indictment, and indeed, failing to mention

3    Iran at all in their affidavits.  And also in characterizing,

4    presumably attempting to be dismissive of, the transactions set

5    forth in the indictment as involving "consumer goods."  The

6    affiants know very well that if the allegations in the

7    indictment are found or established by a jury, the defendants

8    will be shown to have committed serious felonies.

9            So at this point, I think I'll turn to Mr. DeVita

10   before I swear in Mr. Zarrab and ask if you could just advise

11   us of what has transpired, what your efforts have entailed.

12           MR. DeVITA:  Yes, your Honor.  I met twice with

13   Mr. Zarrab at the Metropolitan Correctional Center and for

14   several -- a couple hours each occasion with the assistance of

15   a court-certified Turkish translator.  Mr. Zarrab speaks

16   English, but his English is not perfect, and therefore the

17   assistance of the interpreter was very important to make sure

18   that he understood my questions.  And on the second occasion I

19   had the questions that were agreed upon by the defense counsel

20   and by the government to go over with Mr. Zarrab.  We went over

21   those, and I have, he worked on -- there are two questions that

22   your Honor intends to ask for him to explain in his own

23   words --

24           THE COURT:  Narrative.

25           MR. DeVITA:  Yes, and I've helped him compose

H523ZARC

1   something to say with the assistance of the interpreter to be

2   sure that he has I think addressed what your Honor is going to

3   be asking.  So he may be reading that, but it's in his words

4   that I put onto paper for him to present to your Honor and to

5   read.  And he will have the assistance of the interpreter to

6   read what I have written to make sure it captures what we

7   discussed.

8               THE COURT:  Sure.

9               MR. DeVITA:  If that's all right with your Honor.

10              THE COURT:  You may have said this and perhaps I

11   missed it.  Did you go over the joint Curcio questions

12   developed by the government and Mr. Brafman?

13              MR. DeVITA:  Yes, I did, your Honor.  There are two

14   questions where your Honor asks or will ask Mr. Zarrab to state

15   in his own words what he understands the conflict to be, and

16   that's what I was referring to as having put on paper with

17   working with him and the interpreter and what I believe is an

18   appropriate response and what he believes is an appropriate

19   response to those specific questions.

20              But we spent a good deal of time talking about the

21   nature of the case, the nature of the potential conflicts that

22   your Honor has identified, and discussed those at some length.

23              THE COURT:  Okay.  Then, we're ready to swear in

24   Mr. Zarrab, if I could ask you to please stand.

25              MR. BRAFMAN:  Your Honor, would the interpreter who

H523ZARC

```
1    worked with Mr. DeVita be permitted to sit here?  Because she
2    has notes from that meeting.
3              MR. DeVITA:  Ms. Kay was the interpreter who went with
4    me to MCC both occasions.
5              THE COURT:  That's different than the interpreter who
6    is interpreting?
7              INTERPRETER ELTERMAN:  Yes, your Honor.  I was not in
8    the MCC.
9              THE COURT:  I don't know if we can do that because --
10             MR. BRAFMAN:  I can step out and she can sit in my
11   seat.
12             THE COURT:  It's not that there is no room.  It is we
13   have one interpreter for both defendants.  And I don't know how
14   we can have one for one defendant and another --
15             MR. BRAFMAN:  Ms. Kay's only participation will be
16   when your Honor is asking Mr. Zarrab to give narrative that
17   Mr. DeVita helped Mr. Zarrab with the assistance of Ms. Kay.
18   During the rest of the colloquy, the interpreter can continue
19   to interpret.
20             MR. DeVITA:  If I can just explain, when your Honor
21   assigned me, I spoke to the court reporters, the courthouse --
22   I'm sorry, interpreters office to get the name of a Turkish
23   interpreter.  It so happened that Mr. Rimm, who was the
24   assigned counsel in the prior occasion had also used Ms. Kay
25   and highly recommended her as did the --
```

1          THE COURT:  No, I understand that.  The interpreter

2    department has a way of doing these things.  This is the way

3    that they've asked us to do it.  Is it the narrative statement

4    part that's key?

5          MR. DeVITA:  Yes, your Honor.  He wants to be

6    comfortable.  I've written it in English.  The interpreter can

7    make sure that he's -- and I did it on the basis of what we

8    discussed last night.  And also the interpreter has notes of

9    what we said last night, and I think she can assist him and the

10   other interpreter can -- he can answer in Turkish, and the

11   other interpreter can interpret.  He's there just --

12         MR. BRAFMAN:  It is only the narrative, Judge.

13         THE COURT:  It is the narrative.  And does he want to

14   say the narrative in Turkish?  He's welcome to do that, in

15   which case --

16         MR. BRAFMAN:  That would be his preference.

17         THE COURT:  Is he able to from whatever notes he has?

18         MR. BRAFMAN:  She has the notes in Turkish.

19   Mr. DeVita's notes are in English.  He speaks -- we've been

20   through this -- he speaks English to some degree, but this has

21   important language in it.

22         THE COURT:  So would he be comfortable reading from

23   her notes?  Are those his comments?

24         MR. DeVITA:  I'm not sure her notes are in Turkish.

25         THE COURT:  Why don't we go off the record and see

H523ZARC

1     what the situation is.

2              (Discussion off the record)

3              MR. BRAFMAN:  Her handwriting is much clearer than

4     Mr. DeVita's I would note, and he can do that.

5              THE COURT:  He would speak Turkish and then the

6     interpreter would in the normal course interpret.  Is that all

7     right?

8              MR. BRAFMAN:  He tells me he can read her notes and he

9     says he can read her notes in English.

10             THE COURT:  And those notes are his thoughts and

11    his --

12             MR. BRAFMAN:  Those notes are his notes dictated to

13    her.

14             MR. DeVITA:  When we arrived today Ms. Kay was not

15    here, so I tried to reproduce what we went over last night.

16    And in my poor effort, it's a little less legible than

17    Ms. Kay's handwriting.

18             THE COURT:  If it's okay with you, we'll just proceed.

19    If there is some hesitation in the narrative responses, we'll

20    ask the interpreter to help clarify.

21             MR. BRAFMAN:  Yes, your Honor.

22             THE COURT:  We can ask Mr. Zarrab to please stand and

23    I will swear him in.

24             (Defendant Zarrab sworn)

25             THE DEPUTY CLERK:  Thank you, sir.  You may be seated.

H523ZARC

1          THE COURT:  Do you understand, Mr. Zarrab, as in the

2    past, that now that you're sworn and under oath, your answers

3    to my questions must be truthful and could subject you to the

4    criminal penalties of perjury if you answer untruthfully?  You

5    realize that?

6          DEFENDANT ZARRAB:  Yes, your Honor.

7          THE COURT:  Okay.  So could you tell us for the record

8    how old you are.

9          DEFENDANT ZARRAB:  33 years old.

10         THE COURT:  And your education?

11         DEFENDANT ZARRAB:  I'm high school graduate.

12         THE COURT:  Your current physical health, how is your

13   physical health?

14         DEFENDANT ZARRAB:  There's no problem right now.

15         THE COURT:  And your mental health?

16         DEFENDANT ZARRAB:  There is no problem.

17         THE COURT:  So nothing that would stand in the way of

18   your understanding of today's proceedings?

19         DEFENDANT ZARRAB:  I won't.

20         THE COURT:  Okay.  Have you taken any alcohol, drugs,

21   or medications within the past 24 hours?

22         DEFENDANT ZARRAB:  I'm using a medication.

23         THE COURT:  Is that medication prescribed by a doctor?

24         DEFENDANT ZARRAB:  Yes, the doctor from the MCC.

25         THE COURT:  Doctor?

H523ZARC

| | |
|---|---|
| 1 | DEFENDANT ZARRAB:  From MCC. |
| 2 | THE COURT:  Okay.  And does that interfere with your |
| 3 | ability to understand and participate in today's proceeding? |
| 4 | DEFENDANT ZARRAB:  No, your Honor. |
| 5 | THE COURT:  So, is anything interfering with your |
| 6 | ability to understand what's happening here today? |
| 7 | DEFENDANT ZARRAB:  No. |
| 8 | THE COURT:  Do you understand what the purpose is of |
| 9 | today's what we call Curcio proceedings? |
| 10 | DEFENDANT ZARRAB:  Yes. |
| 11 | THE COURT:  Here are questions for the defense, would |
| 12 | be both Mr. DeVita and Mr. Brafman.  Does either of you have |
| 13 | any doubts or concerns as to Mr. Zarrab's competence to |
| 14 | participate in this Curcio proceeding? |
| 15 | MR. BRAFMAN:  No, sir. |
| 16 | MR. DeVITA:  No, your Honor. |
| 17 | THE COURT:  How about the government? |
| 18 | MR. KAMARAJU:  No, your Honor. |
| 19 | THE COURT:  Neither do I.  Based on the record today, |
| 20 | including Mr. Zarrab's testimony, I find that he is competent |
| 21 | to proceed with the Curcio hearing. |
| 22 | Here is a question for Mr. Brafman, it's going to come |
| 23 | up again later on.  Mr. Brafman, I take it or have you |
| 24 | discussed all aspects of the case with Mr. Zarrab? |
| 25 | MR. BRAFMAN:  Yes, sir. |

1          THE COURT:  Including the various ways in which this

2    criminal prosecution might be resolved?

3          MR. BRAFMAN:  Yes, sir, at great length.

4          THE COURT:  So that could include a plea.  As to pleas

5    it could be to what we call a Pimentel letter, to a plea

6    agreement, or to a cooperation agreement.  You discussed those

7    possibilities?

8          MR. BRAFMAN:  We've discussed all manners in which

9    this case could be resolved, including trial.

10         THE COURT:  Trial is my next question.  And other

11   possibilities as well, such as what Mr. Giuliani and

12   Mr. Mukasey, the path they're on.

13         MR. BRAFMAN:  Yes, your Honor.

14         THE COURT:  Mr. Zarrab, are you comfortable that you

15   have discussed all aspects of the case such as I've just

16   described with counsel?

17         DEFENDANT ZARRAB:  Yes.

18         THE COURT:  Are you aware that your interests may be

19   said to be adverse to the interests of co-defendants, victim

20   banks, the Republic of Turkey; you've gone over all of that

21   with Mr. Brafman, have you?

22         DEFENDANT ZARRAB:  Yes.

23         THE COURT:  So, let's talk, these are the questions

24   that are developed jointly by the defense and the government.

25   The first heading is called potential conflict of interest

H523ZARC

1    posed by Greenberg Traurig and Debevoise & Plimpton's

2    representation of banks.

3           And the first question there, Mr. Zarrab, for you is

4    are you satisfied with the services of your attorneys, thus far

5    in this case and -- yes?  Did you say "yes"?

6           DEFENDANT ZARRAB:  I am satisfied.

7           THE COURT:  And particularly Greenberg Traurig and

8    Debevoise & Plimpton?

9           And also Mr. Brafman?  And also Mr. DeVita and other

10   firms that we have --

11          THE COURT:  Did you interpret his last answer?

12          INTERPRETER KAY:  He was saying in Turkish as I was

13   interpreting your communication, your Honor.  I didn't

14   interpret his communication.  But he said "Yes, I'm satisfied

15   with all of them."

16          THE COURT:  Okay.  And do you understand, Mr. Zarrab,

17   that your lawyers are employed, and now I'm particularly

18   talking about Mr. Giuliani and Mr. Mukasey, by different law

19   firms, including Debevoise and Greenberg Traurig, and that they

20   have different obligations to the other clients of those law

21   firms?  Do you realize that?

22          DEFENDANT ZARRAB:  Yes, your Honor.

23          THE COURT:  Have any of your attorneys from the law

24   firm of Greenberg Traurig, including Mr. Giuliani, informed you

25   that their law firm currently represents several banks that the

H523ZARC

1      government alleges are victims of the various conspiracies

2      charged in the indictment against you?

3               MR. BRAFMAN:  Your Honor, may I just clarify something

4      so that it doesn't come up in every question?

5               THE COURT:  Okay.

6               MR. BRAFMAN:  Mr. Zarrab's verbal communications with

7      Mr. Giuliani have been either through me or through

8      Mr. Mukasey, or through Mr. Giuliani's partner, Mr. Levy, whose

9      affidavit is attached.

10              THE COURT:  Okay.  So, you're saying no direct

11     conversations between Mr. Zarrab and Mr. Giuliani?

12              MR. BRAFMAN:  I do not believe there were any direct

13     conversations.

14              THE COURT:  Okay.  Is that correct, Mr. Zarrab?

15              DEFENDANT ZARRAB:  Yes, your Honor, it's true.

16              THE COURT:  So, next question is have any of your

17     attorneys from the law firm of Greenberg Traurig informed you

18     that even though they personally may not participate in

19     representation of those banks, that they nevertheless have

20     ethical obligations to those banks, because those banks are

21     clients of the law firm that your attorneys work for?

22              DEFENDANT ZARRAB:  They did inform me, your Honor.

23              THE COURT:  And how long have you been aware of this

24     issue?

25              DEFENDANT ZARRAB:  From the first day we start working

H523ZARC

1    together.

2             THE COURT:  Do you feel that you've had sufficient

3    discussion of this issue with those attorneys?

4             DEFENDANT ZARRAB:  Yes, your Honor.

5             THE COURT:  Do you understand that the fact that your

6    attorneys from Greenberg Traurig represent you and

7    simultaneously represent banks alleged to be victims in this

8    case may lead them to have loyalties divided between yourself

9    and those banks?

10            DEFENDANT ZARRAB:  Yes, your Honor, I understand.

11            THE COURT:  Do you understand that in some cases, in

12   some instances, your attorneys from Greenberg Traurig might

13   have an incentive to put the interests of those banks ahead of

14   yours?  Do you realize that?

15            DEFENDANT ZARRAB:  I understand, your Honor.

16            THE COURT:  Do you understand that none of the bank

17   clients of Greenberg Traurig that the government alleges are

18   victims of the crimes charged in the indictment against you

19   have been waived, none of those banks have waived the conflict

20   of interest presented by Greenberg Traurig's representation of

21   you and them simultaneously?

22            DEFENDANT ZARRAB:  Yes, your Honor, I'm aware of it.

23            THE COURT:  Turning to the Debevoise & Plimpton firm,

24   have any of your attorneys from the law firm of Debevoise &

25   Plimpton, including Mr. Mukasey -- and I take it, Mr. Brafman,

1    that you said Mr. Mukasey has directly counseled Mr. Zarrab?

2              MR. BRAFMAN:  Yes, on several occasions.

3              THE COURT:  Okay.  So including Mr. Mukasey, informed

4    you that their law firm also currently represents several banks

5    that the government alleges are victims of the conspiracies

6    charged in the indictment against you in this case?  You

7    realize that?

8              DEFENDANT ZARRAB:  They did advise me, your Honor.

9              THE COURT:  Have any of your attorneys from the law

10   firm of Debevoise & Plimpton, including Mr. Mukasey, informed

11   you that even though they personally may not participate in the

12   representation of those banks, that they nevertheless have

13   ethical obligations to those banks because they are clients of

14   the law firm that your lawyers also worked for?

15             DEFENDANT ZARRAB:  Yes, your Honor, they did inform me

16   about it.

17             THE COURT:  How long have you been aware of this issue

18   with respect to Debevoise & Plimpton?

19             DEFENDANT ZARRAB:  From the first day on.

20             THE COURT:  And do you feel you've spent adequate time

21   discussing those issues with your attorneys?

22             DEFENDANT ZARRAB:  Yes, your Honor.  I think I was

23   informed by my own attorneys and by Mr. DeVita from CJA office

24   and all the other lawyers that they're representing me.  We

25   discussed this issue in very big perspective, and I'm informed

1    about all of it.

2            THE COURT:  Do you understand, Mr. Zarrab, that the

3    fact that your lawyers from Debevoise & Plimpton represent you

4    and simultaneously represent banks alleged to be victims in

5    this case, may lead them, the lawyers that is, to have

6    loyalties divided between yourself and those banks?

7            DEFENDANT ZARRAB:  Yes, I understand.

8            THE COURT:  Do you understand that in some instances,

9    your attorneys from Debevoise & Plimpton might have an

10   incentive to put the interests of those banks before your own?

11           DEFENDANT ZARRAB:  Yes, I understand, your Honor.

12           THE COURT:  Do you also understand that none of the

13   bank clients of Debevoise & Plimpton that the government

14   alleges are victims of the crimes charged in the indictment

15   against you have waived the conflict of interests presented by

16   Debevoise & Plimpton's representation of you and them

17   simultaneously?  You realize there have been no waivers by

18   those banks?

19           DEFENDANT ZARRAB:  Yes, I understand.

20           THE COURT:  So, now let me give you some examples of

21   those issues and ask you about them.  These are examples of the

22   ways in which the allegiance or the loyalty of your lawyers

23   from Greenberg Traurig and Debevoise & Plimpton could adversely

24   affect their representation of you in this case.  This

25   representation could affect the way your lawyers consider and

H523ZARC

1  advise you in the following areas.  One is whether and when you

2  should plead guilty; another -- do you understand that?

3         DEFENDANT ZARRAB:  Yes.

4         THE COURT:  Another is whether you should seek to

5  cooperate with the U.S. government.  Another area is what

6  defenses you should raise in court on your behalf to respond to

7  the indictment.  Another is whether you should testify yourself

8  at trial, at any trial in this case.  Another area is which

9  witnesses at trial should be cross-examined and what questions

10  they should be asked.  Another area is which witnesses should

11  be called at trial and what other evidence to offer on your

12  behalf.  Another is what arguments should be made on your

13  behalf to the jury.  And another, yet another is what arguments

14  should be made to the Court, and what facts should be brought

15  to the Court's attention before trial, during trial, or, in the

16  event that you were convicted following a trial, at your

17  sentencing.

18         Do you understand each of those categories, and in

19  response to the question that I posed whether you understand

20  the nature of these conflicts and how they could impact you in

21  this case?

22         DEFENDANT ZARRAB:  I understand all of them, your

23  Honor.

24         THE COURT:  Okay.  So now, I'm going to go into even

25  more detail about some of those examples.  This is important in

H523ZARC

1    a Curcio proceeding such as this one.

2              So, the first question is do you understand that your

3    attorneys from Greenberg Traurig and Debevoise & Plimpton may

4    advise you not to take positions in this case either before

5    trial, during trial, or at sentencing, that are critical of the

6    banks that are clients of their law firms, even if criticizing

7    them might be helpful to your defense?

8              Do you realize that?  Do you understand that?

9              DEFENDANT ZARRAB:  Yes, I understand.

10             THE COURT:  Second, in this area, do you understand

11   that your attorneys from Greenberg Traurig and Debevoise &

12   Plimpton may advise you and your other lawyers not to

13   vigorously cross-examine witnesses who are employees of those

14   banks, should they testify at your trial, if your lawyers from

15   Greenberg Traurig and Debevoise & Plimpton believe that such

16   cross-examination may be harmful to their client banks'

17   interests?

18             DEFENDANT ZARRAB:  Yes, I understand.

19             THE COURT:  Next question is are you aware that your

20   attorneys from Greenberg Traurig and Debevoise & Plimpton may

21   have access to, or may have learned information from, the banks

22   they represent that may be helpful in defending you, but that

23   they are, those attorneys are, absolutely prohibited from using

24   that information to defend you, because of the attorney-client

25   privilege that applies to the communication between your

H523ZARC

1     attorneys from Greenberg Traurig and Debevoise & Plimpton, and

2     their bank clients?

3            Do you realize that?

4            DEFENDANT ZARRAB:  Yes, I'm aware of it.

5            THE COURT:  Next, do you understand that your

6     attorneys from Greenberg Traurig and Debevoise & Plimpton

7     cannot negotiate on your behalf in a manner that would be

8     adverse to the interests of their bank firm clients, including

9     by using any confidential information they may have learned

10    from those banks?

11           DEFENDANT ZARRAB:  Yes, I understand.

12           THE COURT:  And do you understand -- this is the

13    question we talked briefly about before -- do you understand

14    that your attorneys from Greenberg Traurig and Debevoise &

15    Plimpton may be limited in making arguments to the government

16    about your level of involvement in the offense or crimes

17    charged in the indictment or about your role in those offenses

18    or crimes, and about your culpability?

19           Do you understand that?

20           DEFENDANT ZARRAB:  Yes, I understand.

21           THE COURT:  Next, do you understand that your

22    attorneys from Greenberg Traurig and Debevoise & Plimpton

23    cannot counsel or advise you to accept a disposition of the

24    case that harms or is adverse to the interests of their firms'

25    bank clients?  Do you realize that?

H523ZARC

1          DEFENDANT ZARRAB:  Yes, I understand that.

2          THE COURT:  Do you then understand each of these

3    examples that I have just presented to you?

4          DEFENDANT ZARRAB:  Yes, I understand all of them.

5          THE COURT:  Okay.  I'm going to take a five-minute

6    break.  Five-minute recess and we'll pick up in five minutes.

7    Thank you.

8          (Recess)

9          THE COURT:  Just as a heads up, it's likely we won't

10   finish everything today.  So I'm going to leave one section for

11   the next time, which is the section that starts on page six of

12   this joint submission the right to conflict-free

13   representation.  You all will make whatever additional

14   submissions in writing, and I just want to be thorough, and

15   then it shouldn't take us very long after that, but I don't

16   want to do finalize things today.

17          We're still waiting for the interpreter.

18          (Pause)

19          THE COURT:  Are you all ready?

20          THE INTERPRETER:  Yes.

21          THE COURT:  So my next question to Mr. Zarrab is,

22   Mr. Zarrab, do you understand that Mr. Giuliani and Mr. Mukasey

23   intend to limit their representation of you and do not intend

24   to appear before this court as part of these proceedings?  Do

25   you realize that?

1          DEFENDANT ZARRAB:  Yes.

2          THE COURT:  This is one of those questions that

3    Mr. Zarrab is going to respond in narrative form.  He will, as

4    I understand it, speak in Turkish, and you will interpret in

5    English?

6          INTERPRETER ELTERMAN:  Into English, your Honor.

7          (Defendant conferring with his counsel)

8          MR. BRAFMAN:  Can he read it in Turkish and you'll

9    explain it in English?

10          THE COURT:  That's what we were planning to do.  So

11    here's the question for you first.  The question is or the

12    request is that you tell me in your own words what your

13    understanding is of the potential conflicts of interest arising

14    in this case as a result of Greenberg Traurig and Debevoise &

15    Plimpton representing you in this case.

16          MR. BRAFMAN:  Can we have two minutes just to review

17    his notes, your Honor?

18          THE COURT:  Sure.

19          (Pause)

20          MR. BRAFMAN:  He's ready to proceed, your Honor.

21          THE COURT:  You can have as much time as you need.

22    You're ready?  Okay.

23          The question is for you to tell me in your own words

24    what your understanding is of the potential conflicts of

25    interest arising in this case as a result of Greenberg Traurig

H523ZARC

1    and Debevoise & Plimpton's representing you in this case.

2            INTERPRETER ELTERMAN:  That was a partial sentence,

3    your Honor.  It is only a partial sentence, your Honor, and we

4    have to know the verb.  What is it?  It's just a phrase.  A

5    phrase by itself.

6            DEFENDANT ZARRAB:  I understood that based on --

7            THE COURT:  Hold on one second.  I'm going to go off

8    the record for a minute.

9            (Discussion off the record)

10           INTERPRETER ELTERMAN:  The interpreter will relay the

11   sum and substance.

12           THE COURT:  I was asking if the other interpreter

13   would be more comfortable with this part of the proceeding.

14   But I think --

15           MR. BRAFMAN:  I think the answer is yes, because she

16   took painstaking notes during her meeting with Mr. DeVita of

17   what the defendant was telling her in Turkish.  And he's now

18   paraphrasing it for the benefit of time, whereas I think she

19   could read it from her own notes and could confirm it very

20   clearly.

21           THE COURT:  It may be that her notes are in English

22   and not in Turkish.

23           MR. BRAFMAN:  They are in English but she --

24           INTERPRETER KAY:  They're not my notes, attorney

25   Brafman.  Your Honor, they are actually attorney DeVita's notes

H523ZARC

1    that he discussed with Mr. Zarrab.  And my job was to interpret

2    for Mr. DeVita.  So I'm off the subject, but I would not

3    interpret anything that Mr. Zarrab did not say nor Mr. DeVita

4    say.  So he's holding my notes, but there are no Turkish

5    writings in my notes.  They are only the notes of Mr. DeVita,

6    just to clarify.

7              THE COURT:  What I think is the upshot is we should

8    take whatever time it requires but continue as we have been, if

9    that's okay with you.

10             MR. BRAFMAN:  Judge, whatever way makes sense, I just

11   don't know.

12             THE COURT:  I think that would be the best.  So, did

13   you get his response?

14             INTERPRETER ELTERMAN:  Yes.  This interpreter has

15   listened very carefully and it is not going to be a word by

16   word.  But a meaning, the gist, and the substance, in sum and

17   substance.

18             THE COURT:  If it doesn't sound correct, Mr. DeVita --

19             MR. DeVITA:  Can we have a microphone for the

20   interpreter because it is a little hard over here to hear her.

21             INTERPRETER ELTERMAN:  Okay.  Do you want the

22   interpreter to project it without the microphone?

23             THE COURT:  No, I think we need to use the microphone.

24             MR. DeVITA:  It may help the court reporter also, your

25   Honor.

H523ZARC

1          INTERPRETER ELTERMAN:  "Theoretically, as stated by

2     the government, by the state," which means, it means the

3     prosecution, anyway, "it is my understanding that when there is

4     a potential conflict of interest, when the same law firm

5     represents the banks, who may have been harmed or injured by

6     alleged, you know, accused activities of the defendant, it is

7     not advisable, according to the state, theoretically, because

8     of the potential of conflict of interest.  But, based on the

9     lengthy and, you know, deep experience of the law firms that

10    are representing me in this case, I have faith that they will

11    overcome this, and I have faith that, you know, that I don't

12    think there will be the conflict of interest issue."

13          THE COURT:  He was particularly referring to the law

14    firms of Greenberg Traurig and Debevoise & Plimpton in giving

15    his response?

16          DEFENDANT ZARRAB:  Yes.

17          THE COURT:  Mr. DeVita, is that --

18          MR. DeVITA:  Yes, your Honor, and I think he also

19    acknowledged that he understands if there were a conflict,

20    actions taken in court might help him, could potentially hurt

21    the banks, and vice versa.  He understands that point.

22          THE COURT:  You need to interpret that both ways.

23          DEFENDANT ZARRAB:  Yes, yes, I did.

24          THE COURT:  And since we are going to have an adjourn

25    date, if you feel that there is something that needs to be

H523ZARC

1    amplified, Mr. DeVita, we would be happy to hear that.

2              The next question, Mr. Zarrab, is do you understand

3    that the greatest danger to you may be the inability to foresee

4    all possible conflicts that may arise because of Greenberg

5    Traurig and Debevoise & Plimpton's simultaneous representation

6    of some of the banks?

7              DEFENDANT ZARRAB:  Yes, I understand.

8              THE COURT:  Okay.  Then so let's move to the topic

9    described in the joint submission of questions called potential

10   conflict of interest posed by Greenberg Traurig's

11   representation of the Republic of Turkey.

12             First question, Mr. Zarrab, is have any of your

13   attorneys from the law firm of Greenberg Traurig informed you

14   that their law firm has registered with the United States

15   government as an agent of the government of the Republic of

16   Turkey?

17             DEFENDANT ZARRAB:  Yes.

18             THE COURT:  Have any of your attorneys from the law

19   firm of Greenberg Traurig informed you that even though they

20   personally may not participate in the representations of the

21   government of the Republic of Turkey, that they nevertheless

22   have ethical obligations to the government of the Republic of

23   Turkey, because it is a client of the law firm that your

24   lawyers also worked for?

25             DEFENDANT ZARRAB:  Yes.

H523ZARC

1          THE COURT:  How long have you been aware of this

2     issue?

3          DEFENDANT ZARRAB:  From the very first day.

4          THE COURT:  Are you comfortable that you've discussed

5     it fully with lawyers from Greenberg Traurig and your other

6     counsel so that you understand the implications of this

7     relationship?

8          DEFENDANT ZARRAB:  Yes, I have.

9          THE COURT:  Do you understand that the fact that your

10    lawyers from Greenberg Traurig represent you and simultaneously

11    represent the government of the Republic of Turkey may lead

12    them to have loyalties divided between yourself and the

13    government of the Republic of Turkey?

14         DEFENDANT ZARRAB:  Yes.

15         THE COURT:  Do you understand that in some cases, your

16    lawyers from Greenberg Traurig might have an incentive to put

17    the interests of the government of the Republic of Turkey

18    before yours?

19         DEFENDANT ZARRAB:  Yes.

20         THE COURT:  So let me give you some examples of this

21    situation I've been describing in which the allegiance to the

22    government of the Republic of Turkey of your lawyers from

23    Greenberg Traurig could adversely affect their representation

24    of you in this case.  This representation could affect the way

25    that your lawyers consider and advise you of the following:

H523ZARC

1    One is whether and when you should plead guilty.

2              Do you understand that?

3              DEFENDANT ZARRAB:  Yes.

4              THE COURT:  Another is whether you should seek to

5    cooperate with the government.

6              DEFENDANT ZARRAB:  Yes.

7              THE COURT:  Was there a "yes" to the first answer?

8              DEFENDANT ZARRAB:  Yes, your Honor.

9              THE COURT:  And the third is it could affect the

10   advice they give to you as to what defenses you should raise in

11   this case.

12             DEFENDANT ZARRAB:  Yes.

13             THE COURT:  It could also affect whether you should

14   testify at trial.

15             DEFENDANT ZARRAB:  Yes.

16             THE COURT:  It also could affect which witnesses

17   should be cross-examined and what questions they should be

18   asked.

19             DEFENDANT ZARRAB:  Yes.

20             THE COURT:  It might affect which witnesses should be

21   called and what other evidence to offer on your behalf.

22             DEFENDANT ZARRAB:  Yes.

23             THE COURT:  It also might affect what arguments to

24   make on your behalf to the jury.

25             DEFENDANT ZARRAB:  Yes.

H523ZARC

1          THE COURT:  And it also might affect what arguments to

2     make to the Court, and what facts to bring to the Court's

3     attention before trial, during trial, and if you were to be

4     convicted, at your sentencing.

5          DEFENDANT ZARRAB:  Yes.

6          THE COURT:  So, now I'm going to expand on these

7     examples, and when I finish this section, we're going to take a

8     recess until a date that's convenient to all of you.

9          Let me expand on these examples.  First, one example,

10    do you understand that your interests in a public trial of the

11    charges in this case may be different from the interests of the

12    government of Turkey?

13         DEFENDANT ZARRAB:  Yes.

14         THE COURT:  And you also understand that your

15    attorneys from Greenberg Traurig cannot advise you to proceed

16    to trial in a manner that would be adverse to the interests of

17    the government of Turkey?  Do you realize that?

18         DEFENDANT ZARRAB:  Yes.

19         THE COURT:  And do you understand that as part of its

20    work as an agent of the government of Turkey, the law firm

21    Greenberg Traurig is obligated to propose and pursue passage of

22    legislation and other U.S. government action that promotes

23    Turkey's interests and provides a positive image of the Turks,

24    of Turkey, and of the United States—Turkey relationship?

25         DEFENDANT ZARRAB:  Yes.

H523ZARC

```
1           THE COURT:  Do you understand that to the extent your
2   right to a public trial conflicts with Greenberg Traurig's
3   duties to promote a positive image of the Republic of Turkey --
4           DEFENDANT ZARRAB:  Yes.
5           THE COURT:  -- your attorneys from Greenberg Traurig
6   cannot advise you to proceed to a public trial?  Do you realize
7   that?
8           DEFENDANT ZARRAB:  Yes.
9           THE COURT:  Do you understand that your attorneys from
10  Greenberg Traurig may advise you not to take positions in this
11  case before trial, during trial, or at sentencing that are
12  critical of the government of Turkey, even if criticizing it
13  might help your defense?
14          Do you realize that?
15          DEFENDANT ZARRAB:  Yes, I understand.
16          THE COURT:  Do you understand that your attorneys from
17  Greenberg Traurig may advise you not to seek to admit evidence
18  that they view as adverse to the interests of the government of
19  Turkey, even if admitting that evidence might help your
20  defense?
21          DEFENDANT ZARRAB:  Yes.
22          THE COURT:  Do you understand that your attorneys from
23  Greenberg Traurig, including Mr. Giuliani, cannot negotiate on
24  your behalf in a manner that would be adverse to the interests
25  of the government of Turkey?
```

H523ZARC

1          DEFENDANT ZARRAB:  Yes.

2          THE COURT:  Including by using any confidential

3    information that they may have learned pursuant to their agency

4    relationship with the government of Turkey?

5          DEFENDANT ZARRAB:  Yes.

6          THE COURT:  Do you understand that your attorneys from

7    Greenberg Traurig cannot counsel or advise you to accept a

8    disposition of this case that harms or is adverse to the

9    interests of the government of Turkey?

10          DEFENDANT ZARRAB:  Yes.

11          THE COURT:  Do you understand each of those examples

12    that I've just given you, five or six, whatever they were?

13          DEFENDANT ZARRAB:  Yes, I do.

14          THE COURT:  So we're at the point now where I'm going

15    to ask you to tell me in your own words again what your

16    understanding is of the potential conflicts of interest arising

17    in this situation.

18          MR. BRAFMAN:  Your Honor, if I may, since we are not

19    going to complete the Curcio hearing today, would you accept my

20    suggestion respectfully that this would be a good place to stop

21    so that we can work through the next question.  These are very

22    complicated examples that the Court has given him.

23          THE COURT:  I have no problem with that.  We're about

24    to stop anyway.

25          MR. BRAFMAN:  I prefer to stop before the next

H523ZARC

1    narrative.

2            MR. DeVITA:  I think, your Honor, it will help us

3    combat the language problems we've been having.

4            THE COURT:  No problem.  So on your letter submission

5    we have not asked eight and nine in this section, and we'll

6    pick up with that.

7            So now the next question is, when you are available.

8    I'm going to suggest a date and a time if it's possible.

9            MR. BRAFMAN:  Your Honor, can I make a suggestion,

10   sir?

11           THE COURT:  You can.

12           MR. BRAFMAN:  Okay.  We have tentatively scheduled a

13   suppression hearing for May 18 at 11 a.m., following the Atilla

14   Curcio hearing.  I am discussing with my client whether or not

15   we should proceed with the hearing, and will know fairly soon

16   because there are some issues concerning what evidence we would

17   ultimately even be able to suppress, even if we were to sustain

18   our burden.

19           I will notify the government and the Court, of course,

20   within a couple of days if we withdraw our request for a

21   hearing.  And I obviously want to confer with my client about

22   making a decision like that.

23           If we were to withdraw the hearing, I've set aside the

24   18th, and we could do it on the same day as Mr. Atilla's

25   hearing.

H523ZARC

1              MR. DeVITA:  I'm out of town that week, your Honor.

2              MR. BRAFMAN:  Withdrawn.

3              MR. DeVITA:  Any time the following week is fine with

4      me, your Honor.

5              THE COURT:  How about even sooner is not good?  I was

6      going to suggest May 8 at 2 p.m.  Is that a possibility?

7              MR. BRAFMAN:  I can do that, Judge.

8              MR. DeVITA:  I have to be in judicial training in the

9      Judicial Institute in White Plains, your Honor.

10             THE COURT:  What could you possibly --

11             MR. DeVITA:  I am a part-time magistrate in the New

12     York State system, and it is mandatory training twice a year.

13     So the 10th or the 11th would be fine, your Honor.

14             THE COURT:  So are you saying that May 11 at 2, are

15     you all available?

16             MR. DeVITA:  That's fine, your Honor.

17             MR. BRAFMAN:  I can do that, your Honor.

18             MR. KAMARAJU:  That's fine for the government.

19             THE COURT:  Okay.

20             MR. ROCCO:  Your Honor, on Mr. Atilla's behalf, may I

21     ask he be excused at that hearing?  He was brought over here

22     today at 6 a.m.  It is a very, very long day, he's at Brooklyn,

23     he's at MDC.  It is a very long, tiring day and I don't think

24     he has any place in these proceedings.  Our Curcio hearing is

25     on the 18th.

H523ZARC

```
1              THE COURT:  Sure.

2              MR. ROCCO:  Thank you.

3              THE COURT:  Thanks.

4              MR. ROCCO:  One further thing.  You appointed William

5   Harrington Curcio counsel for Mr. Atilla, and I understand

6   there may have been a problem.  Has --

7              THE COURT:  Yes.  Mr. Harrington would need to have

8   his own Curcio hearing --

9              MR. ROCCO:  We discussed that, Judge.

10             THE COURT:  -- in order to be independent counsel, so

11  we thought we would skip.  We'll follow up with in just a

12  minute.  We were pursuing whoever the next CJA person was, but

13  I don't know that we've got a confirmation back yet.

14             MR. ROCCO:  Thank you, Judge.

15             THE COURT:  We're on the case.  Yes.  Good to see you

16  all.

17                              o0o

18

19

20

21

22

23

24

25
```