1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                        15 CR 867 (RMB)

5  MEHMET HAKAN ATILLA,

6              Defendant.

7  ------------------------------x

8                                    New York, N.Y.
                                     June 12, 2017
9                                    11:40 a.m.

10 Before:

11             HON. RICHARD M. BERMAN,

12                                    District Judge

13                     APPEARANCES

14 JOON H. KIM,
        Acting United States Attorney for the
15      Southern District of New York
   SIDHARDHA KAMARAJU
16 DAVID DENTON
   DEAN CONSTANTINE SOVOLOS
17      Assistant United States Attorneys

18 HERRICK FEINSTEIN LLP
        Attorneys for Defendant
19 VICTOR J. ROCCO
   THOMAS ELLIOTT THORNHILL
20
   JOSHUA LEWIS DRATEL
21      CJA Counsel for Defendant

22 FLEMING RUVOLDT PLLC
        Attorneys for Defendant
23 CATHY FLEMING

24
   ALSO PRESENT:
25
   ASIYE KAY, Turkish Interpreter

H6CKATIH

1           (Case called)

2           THE COURT:  Let's start, as we generally do, by

3      observing that we have a Turkish-language interpreter here and

4      ask Mr. Atilla if he is able to understand these proceedings

5      with the help of the interpreter?

6           THE DEFENDANT:  Yes, your Honor, I understand.

7           THE COURT:  You will recall that at our last session,

8      we were going through the various Curcio topics and questioning

9      you.  We had made substantial progress and anticipated, and do

10     anticipate, finishing up the questioning today.

11          So, I think I'm going to ask Mr. Atilla to please

12     stand just for a moment, and we'll have Ms. Murray swear him

13     in.

14          MR. ROCCO:  Your Honor, he will affirm.

15          THE COURT:  Or affirm.

16          (Defendant affirmed)

17          THE COURT:  Thank you, sir.  You may be seated.

18          One helpful development since the last time we were

19     together -- we did discuss it -- and that development is that

20     Mr. Atilla has retained an additional law firm, and, in

21     particular, Ms. Cathy Fleming of the law firm Fleming Ruvoldt,

22     R-u-v-o-l-d-t, which is here in New York, at 1700 Broadway.

23          Mr. Atilla, that's your undertaking, to retain

24     Ms. Ruvoldt to assist as counsel who would not have any

25     conflicts in this case; is that correct?

1    THE DEFENDANT:  Yes, your Honor.  I understood

2 everything, but when we went through the Curcio hearings and

3 with this process, I decided to add this firm to my team.

4    THE COURT:  And, Ms. Fleming, have you filed a notice

5 of appearance, and you are in this case as co-counsel?

6    MS. FLEMING:  I am, your Honor.  I filed a notice of

7 appearance on Friday.

8    THE COURT:  Okay.  And we're happy to have you here.

9    I have also received and reviewed retainer agreements

10 sent by Mr. Rocco, and, also, I have the retainer agreement

11 with your firm and the retainer agreement with the Herrick

12 firm, and the reason we wanted to review that, which I've done,

13 is because the payor under those agreements is the Halkbank,

14 not Mr. Atilla.  That's a circumstance that occurs from time to

15 time, it's not entirely unusual, but it does give rise to

16 additional questions which we will ask.

17    If it's okay with you, Ms. Fleming, I will start with

18 your retainer agreement.  I know there was submitted, as there

19 usually are, ex parte in confidence, but there is a section

20 which I would like to read -- I don't think you'll find this

21 objectionable -- it's a section which just generally says what

22 your role is going to be in this case, and I think it would be

23 useful to put that on the record.

24    MS. FLEMING:  We have no objection, your Honor.

25    THE COURT:  So, you say that this firm, meaning yours,

will represent you, meaning Mr. Atilla, in connection with the

case, meaning this one, together with Herrick Feinstein.  You

go on to say that since the Herrick firm represents certain

banks, bank clients, and the Republic of Turkey, there could be

a conflict of interest with regard to Herrick's advice as it

pertains to those banks and/or to the Republic of Turkey, and

it is the role of the firm, meaning Ms. Fleming's firm, to

advise Mr. Atilla as to all potential defenses and/or

strategies which may implicate, involve, or be adverse to the

bank clients or the Republic of Turkey.

         And you will all recall that the questions that have

been posed in the Curcio proceeding up until now did identify a

series of potential conflicts of interest as a result of the

fact that the Herrick firm represents both Turkey and these

banks in particular, and that we felt -- I did, and I think

everybody else did as well -- that it would be important to

have conflict-free counsel to advise in those situations and

actually to run the defense, as it were, in those situations.

         In particular, you go on to say in your retainer

agreement, "In the event that the government decides to" -- the

government meaning the United States Government -- "decides to

call witnesses at trial who are employed by any of the bank

clients or the Republic of Turkey, the firm" -- meaning

Ms. Fleming's firm -- "would decide whether and how to

cross-examine such witnesses or otherwise defend against any

1  adverse testimony by such witnesses."  And the firm, again,

2  Ms. Fleming's firm, will also decide whether to call any

3  employee of the bank clients or of the Republic of Turkey as a

4  witness to testify on Mr. Atilla's behalf or to subpoena

5  documents in support of Mr. Atilla's defense.

6          Is that a fair statement of the role you intend to

7  play?

8          MS. FLEMING:  That's correct, your Honor.

9          THE COURT:  Mr. Atilla, you understand that that is

10 the role that Ms. Fleming is retained by you to play in this

11 case?

12         THE DEFENDANT:  Yes, I understand, your Honor.  And

13 this was actually my request.

14         THE COURT:  Great.

15         What I might do -- and I do agree with Mr. Rocco's

16 letter about the open issues remaining in the Curcio

17 proceeding, but I thought I would at this time ask a series of

18 questions which arise from the fact that Halkbank, not

19 Mr. Atilla, will be paying the legal fees and expenses both of

20 Mr. Rocco's firm and Ms. Fleming's firm.  So, bear with me.

21 And these questions, incidentally, were submitted by Mr. Rocco

22 along with his letter dated June 8, 2017.

23         The first question on the list is to Mr. Atilla:  You

24 are aware that your employer, Turkey Halk Bankasi, otherwise

25 known as Halkbank, is paying for your legal fees and expenses

1   in this matter?  Do you understand that?

2               THE DEFENDANT:  Yes, I know that.

3               THE COURT:  That would be both of Mr. Rocco's firm and

4   Ms. Fleming's firm?

5               THE DEFENDANT:  Yes, your Honor.

6               THE COURT:  Parenthetically, Mr. Dratel, I take it

7   you've gone over this aspect of the proceedings with Mr. Atilla

8   before today as well?

9               MR. DRATEL:  Yes, I have, your Honor.

10              THE COURT:  The next question is:  You are aware that

11  Halkbank is paying your legal fees and expenses for your

12  attorneys at Herrick Feinstein and your attorney, Catherine

13  Fleming, of Fleming Ruvoldt PLLC; is that right?

14              THE DEFENDANT:  Yes, I know, your Honor.

15              THE COURT:  The next question is:  The fact that

16  Halkbank is paying your Herrick legal fees and expenses was set

17  forth in your March 28, 2017 retainer agreement with Herrick;

18  is that right?

19              THE DEFENDANT:  Yes, your Honor, that's correct.

20              THE COURT:  And both Mr. Atilla and Halkbank signed

21  the retainer agreement, in fact.  Is that your understanding?

22              THE DEFENDANT:  Yes, we signed.

23              THE COURT:  And you are further aware that Halkbank is

24  majority-owned by the Republic of Turkey, and that Turkey is a

25  client of Mr. Rocco's firm?

1          THE DEFENDANT:  Yes, I'm aware of that, your Honor.

2          THE COURT:  The next question is:  Do you understand

3   that because of this fee arrangement, as well as the Republic

4   of Turkey's majority ownership of Halkbank, your Herrick,

5   Mr. Rocco's firm, attorneys may not wish to take positions in

6   this case before trial, during trial, at sentencing, or if it

7   were to come about on appeal, that are critical of Halkbank,

8   even if criticizing the bank might help in your defense?

9          Do you realize that?

10          THE DEFENDANT:  I signed a contract with my attorneys

11   and their firms about their obligations to me fully.  Yes,

12   Halkbank is paying their fees, but their obligations are fully

13   towards me.

14          THE COURT:  The obligations of the attorneys?

15          THE INTERPRETER:  Yes.

16          THE COURT:  Okay.  Thank you.

17          Then do you understand -- this is very similar to what

18   you just said -- your retainer agreement with the Herrick firm

19   also provides that you, Mr. Atilla, are Herrick's only client

20   in this matter, and that, therefore, they, your attorneys from

21   Herrick, are not representing either Halkbank or the Republic

22   of Turkey in this matter, meaning this case?

23          THE DEFENDANT:  As far as I know, your Honor, they

24   don't represent anyone else.

25          THE COURT:  By the way, I should have asked at the

1  beginning:  The government has reviewed these questions as

2  well, and do you join in my questioning of Mr. Atilla?

3          MR. KAMARAJU:  We have reviewed the questions, your

4  Honor.  We don't have any objection to them.  We haven't

5  reviewed the ex parte submissions, obviously, but based on what

6  we've seen, we have no objections.

7          THE COURT:  Okay.

8          The next question is:  Mr. Atilla, do you understand

9  that since you are Herrick's only client in this case, in this

10  matter, Herrick owes you a duty of undivided loyalty in this

11  proceeding?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Mr. Rocco, that, of course, I imagine, is

14  the position of your firm as well?

15          MR. ROCCO:  Of course, your Honor.

16          THE COURT:  Okay.

17          The next question is:  The fact that Halkbank is

18  paying your Fleming Ruvoldt legal fees and expenses as set

19  forth in your May 24 retainer agreement with Fleming Ruvoldt,

20  and both you, Mr. Atilla, and Halkbank also signed this

21  retainer agreement; that is to say, the one with Ms. Fleming's

22  firm, you realize that?

23          THE DEFENDANT:  Your Honor, I first signed with

24  Ms. Fleming, and then after I decided to work with her, we

25  signed the agreement, and after that, it was sent to Halkbank,

H6CKATIH

1    and Halkbank signed it.

2             THE COURT:  Okay.

3             Do you understand, Mr. Atilla, that because of this

4    fee arrangement, Ms. Fleming may not wish to take positions in

5    this case before trial, during trial, at sentencing, if that

6    were to come about, or on appeal, that are critical of

7    Halkbank, even if criticizing the bank might help in your

8    defense?

9             Do you realize that?

10            THE DEFENDANT:  Your Honor, could you please explain

11   that?

12            THE COURT:  The question is question number 9,

13   presented by Mr. Rocco, and it reads:  Do you understand that

14   because of this fee arrangement -- that is to say, Halkbank

15   paying the fees of Ms. Fleming -- Ms. Fleming may not wish to

16   take positions in this case before trial, during trial, at

17   sentencing, or on appeal that are critical of Halkbank, even if

18   criticizing the bank might help your defense?

19            MR. DRATEL:  Just a moment, your Honor.

20            MR. ROCCO:  Excuse me, your Honor?

21            THE DEFENDANT:  Yes, your Honor, I understand.

22            THE COURT:  Mr. Dratel, did you want to add anything?

23            MR. DRATEL:  No, your Honor.  We're good.

24            THE COURT:  Okay.

25            The next question is:  Do you recognize, Mr. Atilla,

1    that your interests in having a public trial of the charges in

2    this case may be different from the interests of Halkbank?

3              THE DEFENDANT:  Yes, I'm aware of that, your Honor.

4              THE COURT:  Mr. Atilla, have you consulted with your

5    independent counsel -- I think I know the answer -- Mr. Dratel,

6    concerning the issue of Halkbank's payment of your Herrick and

7    Fleming Ruvoldt legal fees and expenses?

8              THE DEFENDANT:  Yes, I spoke to him about the subject,

9    and we exchanged information.

10             THE COURT:  Also, you spoke to him, did you, about

11   Herrick's client's, the Republic of Turkey, majority ownership

12   of Halkbank?

13             THE DEFENDANT:  Yes, we spoke about it, your Honor.

14             THE COURT:  The next question I'll ask is, and it's

15   posed on the list of questions presented by Mr. Rocco:  Do you

16   understand, Mr. Atilla, that if -- and then I'll want to make a

17   comment about this question, too -- if Halkbank ceases, or

18   stops, paying your legal fees and expenses, and you are unable

19   to pay such fees and expenses on your own, Herrick and Fleming

20   Ruvoldt may seek to withdraw as your attorneys in this case?

21             Do you realize that?

22             THE DEFENDANT:  Yes, I'm aware of that, your Honor.

23             THE COURT:  I just want to add a thought here.  I hope

24   it's extremely unlikely that this scenario I just presented

25   ever would happen, but you can be sure that I will make sure

1    that Mr. Atilla has a first-rate legal defense under any

2    circumstance in this proceeding.

3              And, second --

4              THE DEFENDANT:  Thank you, your Honor.

5              THE COURT:  -- not to be unpleasant, but if this were

6    to come about, and I sincerely hope that it would never come

7    about, it is not at all clear that I would grant Herrick and

8    Fleming Ruvoldt's application to withdraw as attorneys.  That's

9    more a question for Ms. Fleming and Mr. Rocco.

10              Do you understand that?

11              MR. ROCCO:  Judge, we've been doing this for a long

12    time.  I think it would be improbable, but we're trying to

13    protect our respective firms, and, at this point, we have no

14    intention of moving to withdraw or in any way prejudice

15    Mr. Atilla's defense.

16              THE COURT:  No, I understand that.

17              MS. FLEMING:  Judge, I concur in that, and I

18    understand my loyalties are solely to the client.

19              THE COURT:  Okay.

20              And then the last question in this area is, over all

21    questions, so to speak:  After considering what I have been

22    saying today about the way in which Halkbank's payment of your

23    Herrick and Fleming Ruvoldt legal fees and expenses, including

24    Halkbank's majority ownership by the Herrick firm client, the

25    Republic of Turkey, understanding how this relationship of

1    payment could adversely affect your defense, do you,

2    nevertheless, believe that it's in your best interests to

3    continue with both Herrick and Fleming Ruvoldt as two of the

4    law firms representing you in this case?

5              THE DEFENDANT:  I only will answer this because this

6    could be a just potential conflict of interest.  In that case,

7    I will continue to go forward with both of the firms.

8              THE COURT:  Okay.  Thank you.  I appreciate that.

9              One of the questions we didn't ask the last time,

10   which we said we would come back to -- and I will come back to

11   it right now -- relates to the fact that Ms. Fleming has joined

12   these proceedings.  And I will ask you if you, Mr. Atilla, are

13   comfortable that, we'll call it, Ms. Fleming's firm standby

14   counsel is representing you and not your Herrick attorneys, if

15   necessary, to decide whether or not to engage in the following

16   activities on your behalf and will actually engage in those

17   activities if any of these potential conflicts were of such a

18   nature that it became necessary to have Ms. Fleming step in?

19             I'm going to broaden these questions.  I'm now back on

20   page 3 of the series of questions submitted by the government

21   and joined in by the defense, and I am going to broaden this

22   question on page 3, which is question 10.9, to include both the

23   banks and the Republic of Turkey.

24             So, the question is, stated again, Mr. Atilla:  Are

25   you comfortable that standby counsel representing you,

1  Ms. Fleming's firm, and not your Herrick attorneys, if that

2  were to become necessary, will decide whether or not to engage

3  in the following activity on your behalf, and that she and her

4  firm will actually engage in the activities, if appropriate?

5  Three categories:  One, use or advise on the use of court

6  process to compel the production of documents from the bank

7  clients -- and I think we can extend that also to the Republic

8  of Turkey -- or to compel the attendance of witnesses who are

9  employees or agents of the bank clients or the Republic of

10 Turkey.

11      Now, the latter case create some issues which I don't

12 know that we need to go into now.  The bank clients, for the

13 most part, are here in the United States.  The Republic of

14 Turkey, of course, is not, but I think it's fair to broaden the

15 question in that respect.

16      THE INTERPRETER:  Your Honor, I'm sorry, interpreter

17 missed the point in the last two sentences.

18      THE COURT:  I don't know what you missed, so it's hard

19 to -- let me try and ask the question again.

20      I'm about to ask in three categories related to a

21 potential trial.  These three are situations where I've said

22 that it may be necessary for standby counsel, Ms. Fleming, to

23 take over representation of you, Mr. Atilla, in three

24 categories of cases, and they relate to both the banks and the

25 Republic of Turkey.

1          The first of those three categories is as follows:

2     The use or advice on the use of court process to compel the

3     production of documents from the bank clients or the Republic

4     of Turkey or to compel the attendance of witnesses who are

5     employees or agents of the bank clients or the Republic of

6     Turkey?

7          THE DEFENDANT:  Yes, your Honor, I understand that.

8     And I also asked my counsel not to be just standby counsel, and

9     look at the case, and follow the case, and give overview beyond

10     only these three categories.

11          THE COURT:  It's a very good point.  I think we

12     touched upon that last time, but it's an excellent point that

13     Mr. Atilla is making.

14          That would be my understanding, also, Ms. Fleming,

15     that you would be co-counsel, so that in the event a situation

16     arose, you would be right there, and you wouldn't have to be

17     called in, and you would also be able to advise Mr. Atilla on

18     the case generally going forward as co-counsel.

19          MS. FLEMING:  It is my understanding as well, your

20     Honor.  Frankly, to advise him on the standby counsel, I need

21     to understand the case.

22          THE COURT:  Exactly.  Okay.

23          So, the answer, Mr. Atilla, is yes to the question you

24     posed.

25          The second category is this:  Ms. Fleming and her firm

1 would cross-examine witnesses who are employees of the bank,

2 clients, or of the Republic of Turkey, should they testify at

3 your trial.  Do you understand that?

4          THE DEFENDANT:  Yes, your Honor, I understand.

5          THE COURT:  The third category where Ms. Fleming's

6 role might become more prominent could be to accuse the bank

7 clients of knowing about, being complicit in, or otherwise not

8 being a victim of the allegedly illegal transactions.  And

9 before --

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  Do you understand that?  Okay.

12          So, this, I'll just say for clarification, is

13 something that we've said in the earlier portions of the Curcio

14 hearing, that the Herrick firm might be reluctant to do because

15 the bank clients are also clients of the Herrick firm.  So, you

16 answered yes to that, and I will just broaden the question and

17 ask you whether you feel the same way if we were talking about

18 the Republic of Turkey and not the bank clients?

19          THE DEFENDANT:  Your Honor, we only wish so.  Of

20 course, I would like them to do what they can do best for my

21 case.

22          THE COURT:  All right.  Thank you.

23          That leaves one more series of questions, and then, of

24 course, I'll ask all of the attorneys present whether there is

25 anything else they wish to have me go over with Mr. Atilla.

1           So, turning to page 6 of the letter from the

2    government dated May 1, 2017 -- that is to say page 6 of the

3    questions submitted with that letter -- under the category

4    called "The Right To Conflict-Free Representation," what I did

5    not ask before, and what I will ask now, Mr. Atilla, is:  After

6    considering all that I have discussed with you, not only today,

7    but in the prior court appearances where we were discussing

8    these Curcio issues, after considering all the ways in which

9    the Herrick firm's representation of the Republic of Turkey may

10   potentially adversely affect your defense, do you believe that

11   it is in your best interests to continue with the Herrick firm

12   as one of the law firms representing you in this case?

13           THE DEFENDANT:  Yes, your Honor, I understand the

14   potential -- the conflict of interest, and I would like to

15   continue with their services.

16           THE COURT:  And that is your wish?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  The next question:  Do you understand -- I

19   may have asked this before, but I'm going to ask it again.  Do

20   you understand -- if I did.  Do you understand that by choosing

21   to continue with the Herrick law firm representing you, you are

22   waiving your right to be represented solely by attorneys who

23   have no potential conflict of interest?

24           THE DEFENDANT:  I am aware of that.

25           If you don't mind, your Honor, could I ask you one

H6CKATIH

1      question, very different question, without taking too much of

2      your time?

3                THE COURT:  Sure.  No, no.

4                THE DEFENDANT:  I spoke with many firms while I was

5      discussing this issue with the Herrick firm.  They weren't

6      imposed to me by Turkish Republic or Halkbank.  They were among

7      the attorney firms.  It was suggested to me because I didn't

8      know many other firms here, and they were one of the ones that

9      were suggested, and after all the Curcio hearings and the

10     meetings that I had with the firm, I decided to continue with

11     the firm.

12               THE COURT:  Thank you.  That is very helpful.

13               This is related to that same question:  Are you

14     knowingly and voluntarily waiving your right to conflict-free

15     representation?

16               THE DEFENDANT:  Yes, your Honor.

17               THE COURT:  That's perhaps the -- well, they're all

18     important questions, but that is certainly one of the most

19     important in this proceeding.

20               I don't recall if I asked you this question before,

21     but I will ask it again if I didn't, and in any event, I will

22     ask it now:  If you were to be found guilty in this case -- and

23     that's a hypothetical because we don't know that outcome at

24     this time -- do you waive any postconviction argument, on

25     appeal or in any other context, that by virtue of Herrick's

1    representation of the bank clients and/or the Republic of

2    Turkey, you were denied effective assistance of counsel?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  I think there are just one or two more

5    questions.  We're almost concluded.

6           Do you, Mr. Atilla, waive any postconviction -- again,

7    this is a hypothetical because we don't know what the outcome

8    of the case will be.  Do you waive any postconviction argument,

9    on appeal or in any other context, that by virtue of Herrick's

10   representation of the Republic of Turkey -- very similar to the

11   question I've asked just immediately before -- that you were

12   denied effective assistance of counsel?

13          THE DEFENDANT:  Your Honor, I don't assume that I will

14   have any problem in this subject even if I appeal later on.

15   This will not be one of the subjects that I would appeal.

16          THE COURT:  Do I take it the answer is, yes, you

17   waive?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Now, we've covered a lot of territory.  Is

20   there anything that I have said that you need further

21   explanation of, either by me or by Mr. Dratel?

22          THE DEFENDANT:  No, your Honor.  Thank you very much.

23          MR. KAMARAJU:  My apologies, your Honor.  It just

24   occurred to us that questions 11 and 12 that you just asked

25   about the waiver, it probably makes sense to ask that same

1   question with respect to Halkbank, given that we allocuted the

2   defendant on the potential conflict of interest with Halkbank's

3   paying of legal fees.  I think it's the same question, capstone

4   question.

5           THE COURT:  That's a fair point.

6           Okay.  So, then, that would be the final question.

7   The question is, Mr. Atilla:  Do you waive any postconviction

8   argument, on appeal or in any other context, that by virtue of

9   Halkbank's payment of your legal fees, the fees of both Herrick

10  and Ms. Fleming's firm, that you were denied effective

11  assistance of counsel?

12          THE DEFENDANT:  Your Honor, actually, I do waive all

13  these rights, but I also would have more issue, and I would

14  bring this to the Court's attention, if they didn't want to pay

15  my legal fees or expenses.

16          THE COURT:  And I would be very interested in hearing

17  from you at that point in time.

18          And, Mr. Dratel, you would also be available to assist

19  if that issue arose?

20          MR. DRATEL:  Yes, your Honor.

21          THE COURT:  All right.

22          Anything further from the government?

23          MR. KAMARAJU:  Nothing further from the government,

24  your Honor.

25          THE COURT:  How about from Mr. Rocco?

H6CKATIH

1          MR. ROCCO:  No, your Honor.  Thank you.

2          THE COURT:  Mr. Dratel?

3          MR. DRATEL:  No, your Honor.

4          THE COURT:  Ms. Fleming?

5          MS. FLEMING:  No, your Honor.  Thank you.

6          THE COURT:  Okay.

7          I think that concludes our Curcio proceeding.  Hold on

8     for one second.

9          (Pause)

10         THE COURT:  So, I think we've had a comprehensive

11    proceeding, Curcio hearing, an extended Curcio hearing.  My

12    conclusion is that Mr. Atilla has, in fact, knowingly and

13    voluntarily waived any potential conflicts that we have been

14    able to anticipate might arise in this case.  And for that

15    reason, it's appropriate for him to continue with the Herrick

16    firm as his counsel of choice, assisted by Ms. Fleming and her

17    firm as co-counsel of choice.

18         So, that's it on my agenda for today.

19         MR. KAMARAJU:  Your Honor, I think we had discussed

20    the possibility, also, of a motion schedule.  I know your Honor

21    addressed the trial date earlier today in an order, but --

22         THE COURT:  I know you mentioned that, I think, in

23    your written submission, but I was hopeful that you and

24    Mr. Rocco would get together, unless you know now, and make a

25    proposal with a jointly agreed to schedule.

1            MR. KAMARAJU:  We can certainly do that, your Honor.

2     We can consult with Mr. Rocco.

3            MR. ROCCO:  Your Honor, we can do that.  I do have an

4     issue that I'd like to at least alert the Court to.

5            THE COURT:  Okay.

6            MR. ROCCO:  It essentially goes to effective

7     assistance of counsel.

8            On my behalf, certainly, I haven't seen a judge do as

9     thorough a job in a Curcio proceeding in all the years I'm

10    practicing law, and, quite frankly, I was chief of the criminal

11    division when Curcio was decided in the Eastern District.

12           The Court has shown great concern and solicitude, but

13    I have a problem, and Ms. Fleming is going to have a problem.

14    We can't see him.  There's a segregation order in place.  In

15    the Bureau of Prisons, Mr. Atilla and Mr. Zarrab cannot see or

16    mix with each other.  It was a problem initially.

17           THE COURT:  This is a BOP determination?

18           MR. ROCCO:  It's a BOP issue, Judge, but --

19           THE COURT:  Because they made that determination?

20           MR. ROCCO:  They made the determination -- I believe

21    they did.  I don't know if they did it on the government's

22    recommendation or not.  Quite frankly, I'm indifferent to that.

23    The situation is what I'm troubled about, and it's causing us

24    trouble, and I think your Honor has observed that Mr. Atilla is

25    not a potted plant.  He wants to have a very active role in his

1  defense, and, quite frankly, I will say that he is an

2  invaluable part of framing his defense.  This is not a drug

3  case.  Mr. Atilla knows his business, knows his banks.  I'm not

4  particularly an expert in Turkish banking laws or Turkish

5  banking procedures.  So, having access to him on a continuous

6  basis is essential.

7  　　　　　THE COURT:  As a practical matter, what do you mean by

8  not having?

9  　　　　　MR. ROCCO:  Well, let me explain it to you, your

10  Honor.  This problem developed when both Mr. Zarrab and

11  Mr. Atilla were housed at MCC.  To my great chagrin --

12  apparently, it was resolved by -- and I don't know if it was

13  resolved as a result of -- Mr. Atilla, to my great chagrin,

14  being moved to MDC.  So now spending every hour with Mr. Atilla

15  cost us three hours to get there and talk to him and back.

16  It's very cumbersome and very difficult, but that was fine for

17  roughly six weeks, and then, all of a sudden, apparently,

18  Mr. Zarrab, last week, was transferred to MDC.  The segregation

19  order is in place so that, as I understand it --

20  　　　　　THE COURT:  So they're both at MDC?

21  　　　　　MR. ROCCO:  They're both at MDC.

22  　　　　　Mr. Zarrab and Mr. Atilla can't be out of their cells

23  at the same time, so that if I'm visiting Mr. Zarrab -- if I'm

24  visiting Mr. Atilla, Mr. Brafman cannot visit Mr. Zarrab.  The

25  way it was resolved initially was that I backed off and gave

1  Mr. Brafman, who had -- at the MCC had this procedure in place

2  where he was seeing his client virtually all day.  I can't

3  afford that, Judge.  Ms. Fleming cannot afford that at this

4  point.  We can't be so kind.  We don't want to be engaged in a

5  race to the jail to see our client every day, and we do have to

6  see him regularly and can't have it interrupted by some

7  segregation order.

8          So, your Honor, we're going --

9          THE COURT:  Do you have an understanding of why they

10 moved Mr. Zarrab?  It seems contradictory.

11         MR. ROCCO:  It does, and it's mind-boggling to me.

12 And, your Honor, I hopefully will be able to work this out with

13 the government, but if we can't, Judge, we're coming back to

14 you.

15         THE COURT:  Sure.

16         MR. ROCCO:  I just want to alert the Court to that.

17         And, your Honor, I gave my version of a protective

18 order to the government on April 22nd.  I've been accused of a

19 lot of things practicing law, but never tarrying.  I do not

20 tarry.  Hopefully, we will be able to work that out with the

21 government in the next day or so.

22         THE COURT:  I would certainly hope that.

23         MR. ROCCO:  If not, Judge, we'll be back to you.

24         THE COURT:  Yes.

25         MR. ROCCO:  Maybe the government could enlighten us.

1  THE COURT:  I would ask them in a minute, but can

2  anybody discuss the possibility of Mr. Atilla coming back to

3  MCC?

4  MR. ROCCO:  I'd be happy to have him back at MCC.

5  Actually, Judge, I'd like to make a bail application.  I don't

6  say that jokingly.  This is really the kind of case where the

7  client is essential to a preparation of his defense.

8  THE COURT:  There's no doubt.

9  MR. ROCCO:  And I would be at a loss, and certainly

10  Ms. Fleming would be at a loss, if we don't have access to him,

11  Judge.

12  THE COURT:  I couldn't agree more.  I couldn't agree

13  more.

14  So, does the government have any knowledge of this?

15  The next thing is I'm going to ask you to help resolve this

16  problem.

17  MR. KAMARAJU:  Yes, your Honor.  And with respect to

18  the initial solution where Mr. Atilla was moved from the MCC to

19  the MDC, we consulted with BOP as to how to resolve this issue

20  because it is -- part of it is generated by the fact that

21  Mr. Zarrab, as the Court is aware, has several attorneys who

22  have visited him, and during that time period, they were

23  preventing Mr. Rocco from also visiting.  So, the BOP, in

24  essence, moved them.

25  We will be in contact -- this happened recently.  We

1    were not sort of advised that it was going to happen in

2    advance, but we will be in contact with the same BOP contacts

3    that we've had to see, for example, if the solution about

4    moving Mr. Atilla back to the MCC may work.

5         With respect to discovery and the protective order,

6    there have been some significant stumbling blocks in terms of

7    the negotiations, there are some obstacles, but we're working

8    actively towards -- and we have produced the discovery both to

9    defense counsel, and even in the absence of the protective

10   order, given them some relief from the ability to discuss it at

11   least with counsel.  I understand they would want to go a step

12   further and be able to leave some of it with him, but we are

13   working actively on that issue.

14        With respect to the BOP issues, we can give the Court

15   some more clarity on that in a submission from the BOP

16   ex parte, but I believe that some of those relate to security

17   issues that shouldn't be aired openly.

18        THE COURT:  I am not pointing -- maybe it came across

19   that way.  I'm not pointing fingers at Mr. Rocco.  It applies

20   equally to the government.  The protective order, which I've

21   been hearing about now for weeks, or maybe since the first

22   court appearance, get it resolved.

23        MR. KAMARAJU:  Absolutely, your Honor.  And if we

24   cannot get it resolved, we will come back to the Court quickly.

25        THE COURT:  Very good.

H6CKATIH

1          MR. ROCCO:  Judge, on the MCC move, this is

2    mind-boggling --

3          THE COURT:  Which move?

4          MR. ROCCO:  Well, actually, the move back, if he were

5    to be moved back.  If I may just make this observation for the

6    Court:  I think Mr. Atilla has been at MDC for the past five or

7    six weeks.  His personal effects, which were at MCC, never

8    followed him to MDC.  I don't get it, but --

9          THE COURT:  Have you talked to Adam Johnson?  Do you

10   know him?

11         MR. ROCCO:  Yes.

12         MR. THORNHILL:  We've submitted a property claim, your

13   Honor.

14         THE COURT:  Mr. Dratel, maybe you could --

15         MR. DRATEL:  Yes.  Your Honor, if you want to deputize

16   me to do that, we will to it because --

17         THE COURT:  Yes.  You should be on this aspect of

18   the --

19         MR. DRATEL:  Okay.

20         MR. ROCCO:  It is disorienting, in addition to the

21   fact that the materials --

22         THE COURT:  I agree.

23         MR. ROCCO:  -- the materials that were left behind at

24   MDC were defense materials, and our conversations with the

25   Bureau of Prisons just leave to -- we just run into one wall

1    after another.  And, your Honor, rather than whining to you or

2    complaining to the government, we have soldiered,

3    unsuccessfully, to get this resolved, and I have no alternative

4    but to ask the Court's help and the government's help on this

5    because we're not getting it from the MDC.  I apologize.

6         THE COURT:  No problem.  You're absolutely entitled.

7    There may be some explanation of these moves, especially the

8    last move that you're telling me about, of Mr. Zarrab being

9    moved to MDC.  It seems it makes no -- well, I shouldn't say it

10   makes no sense because there may be some rationale, but,

11   practically speaking, it doesn't sound helpful.

12        MR. ROCCO:  I would much prefer Mr. Atilla moving back

13   to MCC, for my personal convenience.  For his convenience, I'm

14   happy to continue to go see him at MDC.  I do not want him to

15   lose -- this is difficult.  It's very difficult.

16        THE COURT:  No, I get it.  I get it.

17        MR. ROCCO:  Thank you, your Honor.

18        THE COURT:  So, I think that might be a doable

19   proposition that makes more sense, is to have Mr. Atilla come

20   back and also to be reconnected with his possessions.

21        MR. KAMARAJU:  We had not heard of the personal

22   possessions, but we'll be in contact with Mr. Johnson to see

23   what we can do.

24        THE COURT:  I won't, unless I hear from you, because I

25   think Mr. Dratel, and you, and defense counsel can solve this

H6CKATIH

1    problem.

2            MR. KAMARAJU:  Absolutely, your Honor.  And if there's

3    some need for it, we'll come back, but I think we'll speak to

4    Mr. Johnson.

5            THE COURT:  Okay.

6            MR. ROCCO:  Thank you, your Honor.

7            THE COURT:  Yes.

8            And you will get together in the next day or so,

9    hopefully to resolve the protective order and to propose to me

10   a scenario or set of events, motions, et cetera?

11           MR. KAMARAJU:  Yes, your Honor.

12           THE COURT:  Okay.  Good to see you all.  Thank you.

13           COUNSEL:  Thank you, your Honor.

14                              *  *  *

15

16

17

18

19

20

21

22

23

24

25