```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                         15 Cr. 867 (RMB)

MEHMET HAKAN ATILLA,

                Defendant.

------------------------------x
                                        September 7, 2017
                                        11:15 a.m.

Before:

                    HON. RICHARD M. BERMAN

                                         District Judge

                            APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
BY:  SIDHARDHA KAMARAJU
     DAVID W. DENTON
     MICHAEL D. LOCKARD
     DEAN C. SOVOLOS
     Assistant United States Attorneys

FLEMING RUVOLDT PLLC
     Attorneys for Defendant
BY:  CATHY A. FLEMING
         -and-
HERRICK, FEINSTEIN LLP
BY:  THOMAS E.THORNHILL
     DAVID M. ROSENFIELD


Also present:   JENNIFER McREYNOLDS, FBI
                MICHAEL CHANG-FRIEDEN, Paralegal
                ASIYE KAY, Turkish Language Interpreter
                SEYHAN SIRTALAN, Turkish Language Interpreter
```

1          (Case called)

2          THE COURT:  So let's note for the record that we have

3 a Turkish language interpreter and ask Mr. Atilla if he is able

4 to understand these proceedings with the help of the

5 interpreter.

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Just by way of background, the purpose of

8 today's conference was, up until a very short time ago, for the

9 Court to, as you were aware, issue a ruling on the defense

10 motion to dismiss the indictment.  In connection with that, I

11 got a request from defense counsel for Mr. Zarrab that he be

12 excused from that proceeding, which I granted, no need for him

13 to be at that proceeding.  As you know, yesterday evening a

14 superseding indictment was filed by the government, and which

15 seems to me obviates the need for a ruling on the defense

16 motion.  It renders that, I think, at least moot for the

17 moment, and we have to go in a new direction.

18          So we need, first of all, to have an arraignment with

19 respect to the superseding indictment.

20          As I read it and have read it, the plot, as it were,

21 alleged by the government has thickened if measured by these

22 metrics.  For one, there are added defendants.  For two, there

23 are added Counts Five and Six, Five being a money laundering

24 count, and Six being an attempted money laundering count --

25 conspiracy to commit money laundering, that's Six, and Five is

1    money laundering itself.

2    There also appear to be some stronger rhetorical
3    allegations, including those on page 2, among others, where in
4    paragraph 2 there is an allegation that high-ranking government
5    officials in Iran and Turkey participated in and protected this
6    scheme. Some officials -- I am reading from the superseding
7    indictment -- some officials received bribes worth tens of
8    millions of dollars paid from the proceeds of the scheme so
9    that they would promote the scheme, protect the participants,
10   and help to shield the scheme from the scrutiny of US
11   regulators. I don't think that was in the old indictment which
12   is superseded.

13   It also is relevant here, and I don't mean to be
14   exhaustive, but these stood out to me: The alleged role of
15   Halkbank, which is a majority state-owned bank in Turkey, seems
16   to have become considerably more prominent, at least in terms
17   of the allegations included in this superseding indictment.

18   So I am going to ask the government to explain what is
19   going on here in the superseding indictment in a moment, but we
20   do need to have an arraignment of Mr. Atilla with respect to
21   the superseding indictment, and with your help, I would ask at
22   this time if he is ready to be arraigned with respect to the
23   superseding indictment.

24   MS. FLEMING: He is, your Honor. I am Cathy Fleming.
25   We have received a copy of the superseding indictment. We

acknowledge it, we waive a reading of it in open court, and we ask that a plea of not guilty be entered on all of the counts.

Your Honor, I would just note Mr. Atilla was only named in two of the counts of the original indictment. He has been added to the additional counts in this one as well.

THE COURT: So he is now charged in four counts.

MS. FLEMING: I think he is now charged in six counts, and he is pleading not guilty to all of those counts.

THE COURT: Got it.

I am sure you do agree with me that the old motion to dismiss is rendered moot by this new superseding indictment.

MS. FLEMING: I believe with that question, yes, your Honor. I do think we have some thoughts with regard to the timing of the superseding indictment and the consequences that flow from it, but I will wait until your Honor wants to hear it.

THE COURT: So let me hear from the government first and talk about what is going on here, and then I am happy to hear from the defense as well.

MR. DENTON: Your Honor, there are two principal changes in the superseding indictment. The first is that the indictment describes in much greater detail the overarching -- to use your Honor's word -- plot to provide financial services --

THE COURT: I said alleged plot.

1              MR. DENTON:  Alleged plot.

2              THE COURT:  And it's alleged by you.

3              MR. DENTON:  And by the grand jury.

4              THE COURT:  And by the grand jury.

5              MR. DENTON:  To provide the government of Iran access

6     to the proceeds of Iranian oil and gas sales held at banks

7     around the world, but particularly at Turkish Bank 1.  The

8     indictment describes the way in which that was done, the role

9     that various individuals played in it, and places that alleged

10    plot in the context of the U.S. regulations applicable to

11    financial transactions with Iran and Iranian entities during

12    the time period.  Those changes are particularly relevant

13    because part of the scheme, as alleged in the indictment, was

14    to avoid changing regulations by changing the deceptive methods

15    used by the members of the conspiracies.

16             In the context of providing that added detail, it

17    identifies a number of other co-conspirators.  Several

18    individuals who were previously identified only as unindicted

19    co-conspirators are now charged in the indictment, along with

20    one other individual who was not previously named.  So there is

21    added clarity on who those --

22             THE COURT:  That person, is that Mehmet Zafer

23    Caglayan?

24             MR. DENTON:  Yes, your Honor.

25             THE COURT:  The former economic minister of Turkey?

                MR. DENTON:  That's correct, your Honor.

                So the indictment identifies with specificity who those individuals were.

                I should note that the description of the overarching alleged scheme here is not a new scheme.  This is the same operative set of conduct that has been alleged since the very beginning in this case.  The government is simply providing a more fulsome description of it and of its participants.

                THE COURT:  So you said there were two principal changes.  Are those the two?

                MR. DENTON:  That deals with the additional factual information alleged in the indictment.

                The second change deals with the charges in this case.  All of the defendants are now charged in all six counts of the indictment.

                The first count, which was included in the previous superseding indictments, alleges a scheme to defraud the United States by obstructing the functions of the U.S. Treasury Department in administering the regulations on transactions with Iran.  The defendant here, Mr. Atilla, had not previously been charged in that count.  He now, like all of the other defendants, is.

                The second count, IEEPA, is the same statutory violation.

                Count Three, which was previously a conspiracy to

1     commit bank fraud count, is now a substantive bank fraud count.
2             Count Four is the conspiracy to commit bank fraud.
3             Similarly, what had previously been Count Four, which
4     was a conspiracy to commit money laundering, is now Count Six,
5     and Count Five is a substantive money laundering count.
6             As I am sure your Honor is aware, those are sort of
7     the additions that we typically make prior to trial in
8     anticipation of various defense theories.
9             So those are the two principal areas of changes in the
10    superseding indictment.
11            THE COURT:  Am I correct, I just read it fairly
12    recently and somewhat superficially, but I did notice in this
13    indictment, which I thought was differently detailed as I had
14    seen before, that you now allege a series of meetings between
15    U.S. Treasury officials and Turkish banking authorities that
16    were or were not -- I think they were not alleged in the prior
17    indictment.
18            MR. DENTON:  That's correct, your Honor.  The new
19    indictment does allege that senior Iranian government officials
20    met with senior Turkish, both government and bank officials,
21    including this defendant, in furtherance of the scheme.
22            THE COURT:  And met with U.S. officials.
23            MR. DENTON:  Yes, your Honor.
24            I should be clear, the allegation is that Turkish
25    officials met with U.S. officials, not that Iranian ones did.

1          THE COURT:  OK.

2          I am happy to hear from the defense.

3          MS. FLEMING:  Your Honor, it's a little disheartening

4  at this stage of the proceedings to get a superseding

5  indictment that the government says merely fleshing out what

6  their earlier charges are.  We have spent a lot of time trying

7  to figure out an earlier indictment.  We made a bail

8  application two weeks ago, and the government was silent on the

9  fact that there was going to be a superseding indictment.  I

10 think the government knows that we were over in Turkey.  This

11 is not a case that is easily defended the way some are in the

12 United States, where you're able to have access to witnesses

13 and facts in the United States.  These events took place in

14 Turkey, and we go to Turkey in order to speak with witnesses

15 and obtain facts and flesh things out in order to prepare for a

16 defense.  And we have also had the challenges that we have

17 probably ad nauseam hit the Court with, in terms of trying to

18 prepare this case, because Mr. Atilla has been extremely

19 anxious to get to trial and clear his name.

20         So it is incredibly disheartening to get this seven

21 weeks before the firm trial date, particularly when your Honor

22 was ruling on bail with that in mind and now having the speedy

23 trial clock start again today.  There are new defendants added.

24 I don't think the United States truly believes they are going

25 to be able to get any of these additional defendants here in

the United States. They have been added for color or effect, I guess, in the indictment naming Mr. Atilla.

I know that the Court is going to set a new schedule. We are going to have motions addressed to this indictment, I would assume. We only got it last night. We did get a heads-up from the government the day before that it was coming. I would suggest that it would probably benefit all of us if we could have a conference with the Court on some of the unique issues that we are facing. For example, one that really jumps out at me is that this is a case that so richly cries for us to get early *Jencks*, because we are not going to be in a position when we get it in the normal course to run to Turkey to try to track down the ability to counter whatever we see in *Jencks* materials. And we can do it with a protective order or whatever we need to do. But there are just extremely unusual evidentiary hurdles that we are facing, and we do represent a gentleman who maintains vigorously his innocence and looks forward to proving it. So that is one issue.

We have alluded in the past to the problems of the fact that this arises from an investigation in Turkey, including wiretapping that has been discredited or found to be illegal in Turkey from 2013, and indeed, the --

THE COURT: I don't mean to interrupt. Just for a point of clarification. I was going to ask the government too. My observation from a quick read of the new indictment was that

there is a bit of an expansion in the time period from the old indictment to this one, or am I misreading it? The more activities in the superseding indictment up to and including 2015, were they the same as were in the old indictment?

MR. DENTON: Your Honor, I believe those were the same that were in the previous indictment.

THE COURT: OK. Sorry.

MS. FLEMING: In any event, I think that -- I'm sorry, Judge, I think I have just lost my train of thought.

THE COURT: I apologize.

MS. FLEMING: I am on the wrong side of 60, Judge. It happens more and more, when it happens.

THE COURT: Which is the right side?

MS. FLEMING: I guess that's true.

I think in addition to early *Jencks* material, I think that an early witness list is important. We are going to have issues that are going to be fairly unique, your Honor, in a criminal case.

So, for example, there are going to be issues relating to the authentication and the admissibility of recordings of foreign evidence, I am confident. We are going to have issues of foreign witnesses. This isn't a case where a Rule 15 deposition really works, because we don't know what the evidence is going to be as the government adduces it unless we have the early *Jencks*, etc., and we know what their case is.

11
H978ATIC

So we probably are going to be suggesting to the Court a procedure where at the end of the case, unless it's Rule 29, hope springs eternal, that if we do have to go forward on a defense case, that we break for a day and do some kind of live feed from Turkey to have witnesses that come in from Turkey.

So there are going to be unique and difficult evidentiary issues. The first thing that struck us last night, as we looked at this, is that we now need to go back to Turkey almost immediately and follow-up and do some more factual investigation now that more has been fleshed out.

So what I am saying, Judge, we have been working unbelievably hard to move forward.

THE COURT: I am sure.

MS. FLEMING: I really don't want to be standing up here again in a couple of months saying the same thing. I really think that this is a case that calls for unusual measures of getting the evidence early. Subject to a protective order is fine. We have been living with a protective order in the case. We have been observing it and been complying with it. But it really is a case that we just can't run to Turkey every time we find out a new fact. It really has to be done in a logical and appropriate course. And I do think that's fair.

THE COURT: So let me make a suggestion to you.

By the way, I meant to say before, when I excused

1  Mr. Zarrab, he will now have to come back and be arraigned as
2  well, and that has been scheduled for Monday, September 11,
3  this Monday at noon.
4  　　　　I am going to suggest this, counsel. I think, and
5  maybe you already have, you should absorb, of course, the
6  implications of the superseding indictment with your colleagues
7  and with Mr. Atilla. You should meet and confer with the
8  government and see if you can make a proposal -- are there
9  going to be more motions, is there going to be a new motion to
10 dismiss -- on what kind of feasible time frame.
11 　　　　I also suggest that you meet and confer with
12 Mr. Brafman, who coincidentally was just here on another case,
13 and I seem to recall saying to him, Well, I will see you soon,
14 and his answer was, Well, I will be writing you a letter about
15 that. So I don't know if the implication was that he is going
16 to seek to change the trial date. I don't know if you want to
17 do that also. But there is a question of whether it's
18 feasible, in light of the new indictment, to have the trial on
19 the schedule that we currently are on. So I think you should
20 all meet and confer and figure that out, and then we should get
21 together again, or you can write me a letter to see where
22 things stand.
23 　　　　MS. FLEMING: We will do that, your Honor. We
24 currently have a schedule of jury instructions due on September
25 15th and a schedule of motions in limine. I actually think it

 1   might be a bit premature, given the additional charges, to be
 2   doing that.  We were hoping to work with the government.
 3             THE COURT:  I think you're right.  The first question
 4   I am going to ask, and you don't have to answer it now, is what
 5   about the motion to dismiss?  Do you have a plan?  And you may
 6   not have one yet.  The one that's before me, probably some of
 7   it could be salvaged, but it would have to be tailored, I
 8   imagine, considerably.
 9             MS. FLEMING:  That's correct.  I suspect the portion
10   where we argue that he is not named enough in overt counts and
11   his name is not mentioned is probably moot at this point.  But
12   I believe that our arguments with regard to perhaps
13   extraterritorial jurisdiction, events in Turkey, whether there
14   were dollar transactions and the like, I suspect those are
15   still indeed correct, but we have to look at it, your Honor.
16   We really haven't had time to digest it and talk about it.
17             THE COURT:  So you tell me, what would be a realistic
18   date, either for a court date or an update, where you would
19   have a new plan or approach?
20             MS. FLEMING:  Your Honor, would two weeks work for the
21   Court?
22             THE COURT:  Yes.
23             MS. FLEMING:  I am actually out of town until
24   September 20th.  So could we do perhaps the 21st?
25             THE COURT:  Let me take a look.

14
H978ATIC

    1    MS. FLEMING: That's Rosh Hashanah. I'm sorry.

    2    THE COURT: How about Monday the 25th?

    3    MS. FLEMING: That would be acceptable. Of course,
your Honor.

    5    THE COURT: At noon?

    6    MS. FLEMING: That works.

    7    THE COURT: Does that work for the government as well?

    8    MR. DENTON: Your Honor, that's fine with the government.

    10    THE COURT: If you have something in writing before, I am not requiring it, but if you all get together and come up with a new arrangement, it would be helpful to get that before September 25.

    14    I think I had made the comment or the observation -- this is for the government -- do I understand the superseding indictment in fact to allege a more prominent role for Halkbank, or some of the Halkbank officials, than the old indictment?

    19    MR. DENTON: There are a number of other officials of Turkish Bank 1 who were not previously identified, but who were identified as unindicted co-conspirators. So to the extent that those individuals are now charged, I guess you can characterize it as a more substantial role.

    24    THE COURT: What about the allegations as to the bank's alleged participation, is that the same? It seemed to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  me that there were some changes there as well.

2   MR. DENTON:  There is certainly a larger volume of
3  description of the role played by Turkish Bank 1 and its
4  various officials in the scheme in the new indictment.  That's
5  correct, your Honor.

6   THE COURT:  I think that's it, unless anybody has
7  anything they want to add.

8   MR. DENTON:  If I may just clarify, your Honor.  We
9  were talking a moment ago about the September 15 deadline for
10 motions in limine and requests to charge.  I assume, in light
11 of the Court's proposal that we come back, that we include a
12 new schedule for all of those things in the proposal as well?

13  THE COURT:  Yes.  And you should also all include
14 Mr. Brafman in the conversation as well so we don't get it in
15 bits and pieces.

16  MR. DENTON:  Of course, your Honor.

17  THE COURT:  Those dates are clearly not realistic at
18 this stage, and we will have to come up with a new arrangement.

19  We have excluded time, have we not, probably until the
20 trial date?

21  MR. DENTON:  That's correct, your Honor.

22  THE COURT:  So we don't have be concerned about the
23 speedy trial clock at this time?

24  MR. DENTON:  Your Honor, I think, because it's a new
25 indictment, we may need to exclude time again.  It may make

1     sense just to do it until what is currently the trial date of
2     October 30th.
3             Is that all right with you?  You don't have to agree.
4             MS. FLEMING:  I cannot consent to that, your Honor.  I
5     do not consent.
6             THE COURT:  Fair enough.  I am going to find, however,
7     that under 18, United States Code, Section 3161, the request
8     for adjournment -- both sides have sought some adjournment, not
9     necessarily of the trial date, both the government and the
10    defense -- is appropriate and warrants exclusion of the
11    adjourned time from speedy trial calculations.  I think we
12    should exclude to the next court date for this purpose and take
13    it up again on September 25, 2017.  And I find that the
14    exclusion is designed to prevent any possible miscarriage of
15    justice, to facilitate these proceedings, and to guarantee
16    effective representation of and preparation by counsel for all
17    the parties, and thus, the need for exclusion and the ends of
18    justice outweigh the interest of the public and the defendants
19    in a speedy trial, pursuant to 18 U.S.C., Section 3161(h)(7)(A)
20    and (B).
21            So that takes us to September 25.  I will see you all
22    then.  Thanks very much.
23            MS. FLEMING:  Thank you, your Honor.
24            MR. DENTON:  Thank you, your Honor.
25            (Adjourned)