

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

October 26, 2017

**SUBMITTED BY ECF**

The Honorable Richard M. Berman
United States District Court Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States* v. *Mehmet Hakan Atilla,*
            No. S4 15 Cr. 867 (RMB)

Dear Judge Berman:

      The Government writes in response to (i) the defendant's letter, dated October 20, 2017 (the "October 20 Letter"), seeking to vacate or modify the stipulated Protective Order entered by the Court on June 19, 2017 (the "Protective Order") and (ii) the Court's Order, dated October 21, 2017, directing that the parties meet and confer about the defendant's motion and that the Government provide the Court with an update as to whether the parties had resolved the issues. The parties have conferred about the defendant's motion but have not been able to reach an agreement. As described in more detail below, the Government believes that the Protective Order agreed to by the parties properly balances the defendant's need to prepare for trial with the national security interests at play. Nevertheless, to seek to address the concerns articulated in the October 20 Letter, the Government proposed modifying the Protective Order to allow the defense to show certain communications contained in the discovery to participants in the communications without permission from the Court. The defense, however, has argued that it needs to be able to show these communications to even non-participants without the Court's permission (which appears to be the same argument advanced in the October 20 Letter). Because the Government believes that the defense's proposal allows for essentially unfettered distribution of discovery materials collected as part of a national security investigation and produced as part of a national security prosecution, the Government opposes the modifications proposed by the defendant.

      *First*, the Protective Order, like the stipulated protective order agreed to by the Government and Atilla's co-defendant, Reza Zarrab, "was developed – and agreed to – by experienced and sophisticated counsel for the defense." Memo Endorsement, Dkt. 124 (Nov. 15, 2016). By the terms of the Protective Order, the agreement was not simply to have the Court enter the Order, but moreover, was to the fact that the discovery to be provided by the Government contained material that "if disseminated to third parties, could, among other things,

implicate the safety of others and impede ongoing investigations." (*See* Protective Order p. 1). Thus, the defendant has already agreed to the factual basis for a finding of good cause for entry of the Protective Order. *See, e.g., United States* v. *Yousef,* 327 F.3d 56, 168 (2d Cir. 2003) (approving of protective order concerning confidential informant's statements because, among other things, disclosure would reveal how the Government responded to terrorist threats); *United States* v. *Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) (noting that courts have granted "protective orders regarding unclassified, but sensitive material vital to national security") (internal quotation and citation omitted); *United States* v. *Ford*, No. 14 Cr. 694 (TPG) (S.D.N.Y.) (granting protective order to defer discovery of state wiretap materials for 90 days to protect ongoing state investigation); *United States* v. *Rodriguez-Perez*, No. 10 Cr. 905 (LTS) (granting protective order to delay discovery relating to a federal wiretap of the defendant's cellphone to protect an ongoing investigation); *United States* v. *Medina, et al.*, No. 03 Cr. 268 (DC) (granting protective order); *United States* v. *Castellanos, et al.*, No. 02 Cr. 1508 (AGS) (same); *United States* v. *Ibarra, et al.*, No. 02 Cr. 1301 (GEL) (same). Having agreed already to the terms of the Protective Order, the defendant is not allowed now to simply disavow his prior stipulation. *See generally PPX Enters., Inc.* v. *Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984) ("Under federal law, stipulations . . . are generally binding on the parties and the Court. Having agreed on a set of facts, the parties (who adopted the stipulation), and this Court, must be bound by them; we are not free to pick and choose at will." (internal citations omitted)); *United States ex rel. Reilly* v. *New England Teamsters and Trucking Industry Pension Fund*, 737 F.2d 1274, 1278 (2d Cir. 1984) ("A party to a stipulation is not entitled to withdraw from the agreement unilaterally."); *United States* v. *Eisen*, No. CR-90-00018, 1991 WL 180400, at *8 (E.D.N.Y. Sept. 3, 1991) (citing the Second Circuit's ruling in *PPX* to bind defendant to fact stipulation into which he entered during criminal trial); *cf. United States* v. *McKeon*, 738 F.2d 26, 28 (2d Cir. 1984).

The defendant's attempt to claw back his acknowledgement of the legitimate national security and investigatory concerns that justify the Protective Order is without merit. The defendant claims that the Government's investigation is over, apparently because the Government filed a superseding indictment (the "Superseding Indictment") that detailed its current allegations and engendered media attention. The defendant is flatly wrong. The fact that the Superseding Indictment contains additional detail about the criminal conduct does not mean that every aspect of the Government's investigation has been laid bare. Indeed, the Superseding Indictment makes clear that the alleged scheme involved individuals beyond those whom the Government has publicly charged. And the fact that this case has received attention from the press similarly has no bearing on the ongoing nature of the Government's investigation. As the Court is well aware, the public interest in this case did not begin with the Superseding Indictment – it began when Zarrab was arrested in March 2016. And, despite that attention, the Government's investigation has continued, and the Government has charged additional defendants, including Atilla in multiple superseding indictments. Put bluntly, Atilla's bald declaration that the Government's investigation has come to an end is nothing but incorrect speculation.

The same is true of Atilla's assertion that witness safety considerations are not relevant. As the Court is well aware, the Government's pre-trial discovery rarely identifies an individual as a confidential source or witness. Nevertheless, protective orders restricting dissemination of discovery material are often entered to protect the safety of the Government's potential witnesses. Such measures make sense. Even though the discovery itself may not identify an individual as a potential Government witness or source, elements of the discovery itself, such as which records are subpoenaed or collected by the Government or which records are in the Government's possession, can tip off a knowing reviewer to the fact that the individual has provided information to the Government, which could lead to threats or intimidation against that potential witness. Thus, Atilla is simply incorrect when he claims that just because the discovery does not specifically disclose which individuals have provided information to the Government, there is no threat to witness safety.

*Second*, the Protective Order and the modifications proposed by the Government protect these significant national security and witness safety concerns while also giving the defendant the flexibility required to prepare his defense. The Protective Order, as currently entered, restricts dissemination of discovery to individuals involved in preparing the defense, and precludes disclosure of discovery information to foreign persons or transport of discovery outside of the United States. (*See* Protective Order at 2). Under the current terms of the Protective Order, these restrictions do not apply, however, to (a) any written or oral statements of the defendant; (b) emails between any co-conspirator and any email account of Turkiye Halk Bankasi S.A. ("Halkbank"); and (c) any financial records describing a transaction involving Halkbank. (*See id*. at 2). Moreover, the Protective Order allowed the defendant to seek, on an *ex parte* basis, permission from the Court to disclose the discovery to anyone the defense deemed necessary, regardless of the Protective Order's other restrictions. (*See id*. at 3). Thus, the Protective Order already allows the defendant complete freedom to share his own statements, emails involving Halkbank email addresses, or financial records involving Halkbank in connection with preparing his defense, and provides him a mechanism to show any part of the discovery with anyone with the Court's permission.

These provisions are certainly flexible enough to allow the defendant to prepare his defense. Nonetheless, after the defendant filed the October 20 Letter, the Government proposed additional modifications to the Protective Order to address the defendant's concerns. In particular, the Government suggested three modifications that would exempt the following materials from the restrictions contained in the Protective Order: (a) intercepted telephone conversations could be played for (but not left with) participants to the call; (b) electronic communications to which a Halkbank employee was a party could be shown to (but not left with) any Halkbank employee; and (c) all of the financial data in the discovery could be shown to (but not left with) Halkbank employees. Thus, under the Government's proposal, the defendant would be able to share a recording with the actual participants to the call without having to get Court approval. And similarly, the defendant would have been free to show any electronic message, including emails or emails sent using smartphone messaging applications, like WhatsApp Messenger, involving any one Halkbank employee to all Halkbank employees.

Despite the breadth of the Government's proposed modifications, the defendant has insisted on what was essentially in his proposal to the Court initially – that, with respect to any communication, he be able to show it to or play it for anyone, even if that person was not a party to the communication. The defendant's proposal is untenable because it essentially creates the possibility for unfettered dissemination of material collected as part of a national security investigation in countries (*e.g.*, Iran, Turkey, and Dubai), that are at the heart of the allegations in the Indictment. And, with respect to the defendant's repeated invocation of the fact that his attorneys are officers or the Court or have previously been prosecutors, the Protective Order's protections are not necessary because the Government and the Court should be concerned about defense counsel's violating the Protective Order. Rather, at issue are the individuals to whom defense counsel disclose the information, because the Court simply has no way of gauging their reliability. These concerns are underscored by the fact that some of the individuals are withholding information required by the Protective Order and necessary to determine their whereabouts, because they are unwilling to provide "personal information to a United States court." (*See* Oct. 20 Ltr. p. 2). This reluctance is hardly reassuring, yet defense counsel suggests it should be a basis for unrestricted disclosure, when in truth it exacerbates the potential harm posed by unchecked disclosure and underscores the importance of the Court receiving sufficient information about those individuals who are to receive discovery material.

Finally, it is difficult to envision what information the defendant cannot obtain due to the Protective Order, when modified as proposed by the Government. He can, for example, disclose voice communications to anyone who participated in the communication and thus could explain who else was on the call and what was discussed. Moreover, to the extent the defendant feels that a non-participant could aid his defense after listening to the call, the defendant need only explain his rationale to the Court, which can authorize the defendant to disclose the communication to the specified individual. Furthermore, with respect to electronic communications, the defendant would already be able to show any of those communications involving a Halkbank employee to anyone at Halkbank. If, however, the defendant felt that he also needed to share the communication with a non-party, all he has to do is explain why to the Court. That is hardly burdensome, given that the defendant can identify which non-parties he wants to share the information with and why prior to any trip abroad. And of course, as the Government has noted for defense counsel, the Protective Order does not apply to information available to the defendant from sources other than the discovery, such as publicly available recordings. This means that defense counsel can use materials from outside of the discovery however they wish to prepare for trial.

In sum, the Government does not believe that there is a reason to modify the Protective Order, and certainly not beyond the modifications that the Government has already suggested. Thus, the Government submits, the defendant's motion to modify the Protective Order should be denied.

>Respectfully submitted,
>
>JOON H. KIM
>Acting United States Attorney
>
>By: \_\_\_\_/s/_____
>Michael D. Lockard
>Sidhardha Kamaraju
>David W. Denton, Jr.
>  Assistant United States Attorneys
>Dean C. Sovolos
>  Special Assistant United States Attorney
>(212) 637-2193 /6523/2744/2213