**The Law Firm**

**Fleming . Ruvoldt** PLLC

1700 Broadway, 28th floor
New York, NY 10019
(212) 706-1850

250 Moonachie Road, Suite 501
Moonachie, NJ 07074
(201) 518-7878
Fax (201) 518-7879

**Cathy A. Fleming**
**Direct Dial: 201-518-7907**
**cfleming@flemingruvoldt.com**

December 6, 2017

**VIA ECF**

Honorable Richard M. Berman, U.S.D.J.
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Courtroom 17B
New York, New York 10007

> Re:  U.S.A. v. Reza Zarrab, et al.
> U.S. District Court for the Southern District of New York
> S4 15-cr-00867 (RMB)

Dear Judge Berman:

In its December 6, 2017 letter to the Court regarding the testimony of witnesses from the Office Of Foreign Assets Control ("OFAC"), the Government has effectively conceded that it has never before attempted to extend the prosecutorial arm of the International Emergency Economic Powers Act "IEEPA") as far as it is attempting to do in this case. Yet, says the Government, the defendant should not be able to elicit testimony from OFAC witnesses that this prosecution is uniquely far-reaching unless the Turkish defendant, prior to the commencement of any defense case, can show that he in some way relied upon the prior history of non-prosecution.

This is wrong on a number of scores. And it is telling that the government is working so hard to keep out testimony from OFAC witnesses about the reach of the sanctions *that OFAC, not the Department of Justice, directly helped create and is solely responsible for administering.* The government surely realizes that these OFAC witnesses will hew to their prior public statements and enforcement practices: that the Iranian sanctions at issue in this case were never meant to be a basis for criminal prosecution of conduct by a foreign banker acting abroad – including any alleged evasive activity.

As the Undersecretary of Treasury, David Cohen, was fond of repeatedly saying, the U.S. Department of the Treasury did not "regulate" foreign banks and the sanctions did not apply extraterritorially. As head of OFAC, Adam Szubin made similar public statements. Foreign banks and bankers were faced with a simple choice: comply with the sanctions or lose the opportunity to access the US financial system. Never once did OFAC say that foreigners acting

outside the U.S. risked prosecution for non-compliance.

      1.      The Government's Proposal Would Result in an Unconstitutional Shifting of the Burden of Proof.

The Government's proposed limitation stands the defendant's presumption of innocence on its head. In an IEEPA prosecution, the Government must prove that the defendant "acted with knowledge that his conduct was unlawful." *United States v. Homa International Trading Corp.*, 387 F3d 144, 147 (2d Cir. 2004), (*quoting, Bryan v. United States,* 524 U.S. 184, 192 (1998). The Government, which has the burden of proof regarding this heightened standard for scienter, suggests instead that it should be relieved of that burden on the key issue of willfulness – that the defendant must testify if he wants to elicit testimony on cross-examination of OFAC witnesses about the way OFAC portrayed the reach of its authority and the consequences of non-compliance abroad.

The fact that this clearly goes to good faith does not change the Government's burden. As Sand Siffert's instruction plainly states: "[t]he burden of establishing lack of good faith and the burden of proving criminal intent rests upon the prosecution, and that burden must be satisfied beyond a reasonable doubt. . . . [A] defendant is never under any burden to prove good faith of the honesty of his intentions and actions." *See, also,* 1-8 Modern Federal Jury Instructions-Criminal ¶ 8.01. *See, e.g., United States v. Litvak,* 808 F.3d

Evidence of what those responsible for conveying the parameters of acceptable conduct have said goes directly to the defendant's intent *even when the defendant has not offered proof that he heard or saw.* A perfect example is the Circuit's discussion in *United States v. Litvak,* 808 F.3d 160 (2d Cir. 2015). There, Litvak wanted to elicit testimony about how supervisors had dealt with the conduct of other employees, not Litvak. Litvak sought this testimony to bolster his argument that he lacked the requisite intent because he operated in good faith. The Circuit held that the trial court's exclusion of this evidence "exceeded its allowable discretion." As the Circuit observed, "'since good faith may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh' its relevance." *Citing United States v. Brandt,* 196 F,.3d 653, 657 (2d Cir. 1952). In addition, the testimony in question is being elicited not for its truth but for the fact that it was stated, in public, for entities and people abroad to hear and see. It was a critical element of how they came to think about the sanctions.

Finally, and in any event, OFAC communications to Halkbank (and to the defendant through Halkbank employees receiving these communications) often occurred via telephone or email *directly with Halkbank.*

The *sole* citation offered by the Government -- *United States v. Banki*, No. S1 10 Cr. 08 (JFK), 2010 WL 1875690 (S.D.N.Y. May 10, 2010) – does nothing to change this result. The *Banki* case involved a defendant seeking testimony about the fact that practices like his were common and that there was no record of real enforcement to stop them: that "due to OFAC's under-enforcement of the ITR and the customary nature of family transfers to and from Iran, a member of the Iranian-American community … 'could reasonably have concluded that there was nothing unlawful…'" That is totally inapt: we are not arguing inferentially that OFAC's failure to act sent a message. We are arguing that OFAC consistently and repeatedly stated, affirmatively and aloud, that its sanctions were not designed to regulate or bind foreigners, including foreign banks. Indeed, OFAC was from the start (again, backed by its public statements) conscious that it not overstep abroad because it needed to ensure that its fragile coalition against Iran would stand. So, not surprisingly, every time OFAC spoke of how its sanctions were being applied abroad, it spoke of seeking cooperation and, as a last resort, designating a foreigner for sanctions – listing it as a sanctioned entity. Even then, OFAC knew it could not stop the foreigner's conduct. It could only regulate and restrict what that foreigner then did with the US financial system.

     2.      The Government's Argument Rests On Its Unconstitutional Belief That DOJ Defines What The Sanctions Punishes, Not OFAC.

The second problem with the Government's argument is that it rests on the mistaken and unconstitutional notion that the DOJ, not OFAC, defines what is criminal under the sanctions. DOJ cannot be right because, if it were, then the sanctions would constitute an unconstitutional delegation of authority.

The power to create criminal law under the sanctions was delegated by Congress to the President and by the President to Treasury and by Treasury to OFAC. *See* IEEPA §203, 50 U.S.C. §1702 (granting "Authorities" to "the President"); NDAA § 1245(d), 22 U.S.C. § 8513a(d) (requiring "the President" to impose certain sanctions); NDAA § 1245(g), 22 U.S.C. § 8513a(g) (authorizing "[t]he President" to use IEEPA § 203 "authorities" to implement certain sanctions); Executive Order 13622 (authorizing Treasury Secretary to implement certain sanctions and promulgate regulations); IFSR § 802, 31 CFR § 561.802 (delegating Treasury Secretary's Iran secondary sanctions authority to OFAC Director). *See also* S4 Indictment at ¶ 90 (alleging violations of IEEPA, NDAA, IFCA, EO 13622, EO 13645, 31 CFR §§ 203-205). , *At no point was the authority delegated to DOJ.* Thus, regardless of whether the delegation by Congress was constitutional, it only could be constitutional if it expressly designated the agency that was to create the rules defining the crime and designated a mechanism by which Congress could act if it felt the agency overstepped the bounds of the delegation. *See United States v. Akova*, 2016 U.S. Dist. LEXIS 169136 *7. As the Akova Court observed:

> To determine the constitutionality of Congress's delegation of
> authority to another branch of government, a court must consider

>whether "Congress has provided an 'intelligible principle' for the recipient of the delegated authority to conform to, the legislative action will not amount to a forbidden delegation of legislative power." *Ambert*, 561 F.3d at 1213 (citing *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 48 S. Ct. 348, 72 L. Ed. 624, Treas. Dec. 42706 (1928)). Relevant factors under this test include whether Congress delineated the general policy to be served, identified the public agency which is to apply it, and set boundaries of the delegated authority. *Id.* (citing *Am. Power & Light Co. v. Sec. & Exch. Comm'n*, 329 U.S. 90, 105, 67 S. Ct. 133, 91 L. Ed. 103 (1946)). Non-delegation challenges are rarely successful. "Indeed, since 1935, the Supreme Court has not struck down a single statute as an impermissible delegation of legislative power." *Id.*

Here, the only agency delegated was OFAC, not DOJ. As a result, it is only OFAC's view of the law – and which crimes that law created – that has any place in this case.

Without a proper delegation of authority, the entire sanctions set-up would be unlawful. It is the fact that Congress delegated its authority carefully, within circumscribed and verifiable limits that saves the delegation that pervades the sanctions. As a result, that delegation must be scrupulously honored or else the very basis for upholding the sanctions would be ignored.

While DOJ always has the discretion whether to charge under that law, the law itself is the province of the agency that was delegated, here OFAC.

3.      The most basic notion of fairness and the right of confrontation, guaranteed by the Sixth Amendment, requires that the views of the OFAC witnesses not be arbitrarily circumscribed, leaving a false impression.

It would be improper to restrict the defense from eliciting the testimony in question even if the OFAC witnesses had not testified to the warnings they gave. But with plans to elicit that testimony, it would leave the jury with a completely inaccurate picture of what OFAC signaled to banks like Halkbank.

The Government apparently intends to introduce testimony from the OFAC witnesses that they warned the defendant about the dangers of dealing with Iran. If it is going to rely, however, upon the notion that it provided generalized warnings to the defendant, then it would be constitutionally unfair to not permit the defense to elicit what OFAC said to the defendants about the consequences of dealing with Iran. To restrict the defense from eliciting this testimony would violate the Confrontation Clause of the Sixth Amendment. That right "is essentially a

'functional' right designed to promote reliability in the truth-finding functions of a criminal trial." *Kentucky v. Stincer,* 482 U.S. 730, 737 (1987).


                                    Respectfully submitted,


HERRICK, FEINSTEIN LLP                 FLEMING RUVOLDT PLLC


By:___/s/Victor J. Rocco_____     By:___/s/Cathy Fleming_____
      Victor J. Rocco                        Cathy Fleming
      Two Park Avenue                        1700 Broadway, 28th Floor
      New York, New York  10016              New York, New York  10019
      (212) 592-1400                         (212) 706-1850


McDERMOTT WILL & EMERY LLP              LAW OFFICES OF JOSHUA L. DRATEL


By:___/s/ Todd Harrison_____      By:___/s/ Joshua L. Dratel_____
      Todd Harrison                          Joshua Dratel
      340 Madison Avenue                     29 Broadway, Suite 1412
      New York, New York  10173             New York, New York  10006
      (212) 547-5727                         (212) 571-3792

                  *Attorneys for Defendant Mehmet Hakan Atilla*


cc:  All Counsel


74213844v.3