

**Victor J. Rocco**
**Partner**
Phone: 212.592.1422
Fax: 212.545.2333
vrocco@herrick.com

December 15, 2017

<u>**BY EMAIL AND BY ECF**</u>

Honorable Richard M. Berman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 17B
New York, NY 10007-1312

**Re:    United States v. Mehmet Hakan Atilla, S4 15 Cr. 867 (RMB)**

Dear Judge Berman:

For the reasons stated below, Defendant Mehmet Hakan Atilla, by and through his undersigned counsel, respectfully moves this Court for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) on all six counts of the Superseding Indictment S4, dated September 6, 2017 (the "Indictment").

> 1. *All of the charges must be dismissed because the government has failed to prove that Mr. Atilla knew of any U.S. connection to Zarrab's scheme.*

From the start of this case – throughout pretrial motion practice to the present – it has been a linchpin of the government's case that Hakan Atilla knowingly and intentionally participated in a scheme to evade the sanctions *where the scheme was designed, with his knowledge, to push proceeds from sanctionable Iranian transactions through the U.S. financial system.* Mr. Atilla's knowledge of a connection to the U.S. financial system has been essential, as this Court's ruling on our motion to dismiss made clear.

Notably absent from the incredible amount of testimony and exhibits offered by the government in this case is any evidence that Mr. Atilla participated in Zarrab's scheme *knowing* of the U.S. connection. Zarrab never said he told Mr. Atilla of that connection and no document in this case reflects notice to Mr. Atilla of such a connection. The closest Zarrab came was his statement that he alerted his confederates to the need for international money transfers, but this falls far short of proof that Mr. Atilla was apprised of a U.S. connection. International money transfers are not synonymous with U.S. money transfers – one can make great use of the international monetary system (most notably with Euros) without ever touching the U.S.

The government cannot overcome this by seeking a conscious avoidance charge because (as we explained in our opposition to such a charge), there must be some evidence from which a



jury could conclude that Mr. Atilla deliberately acted to avoid knowing what he otherwise would have known.

In this regard, it is not self-evident that Zarrab or Iran would have found it necessary or even logical to turn the proceeds of their transactions into dollars.  The trial established the fact (and the court can take judicial notice if the trial had not) that the Euro currency is quite powerful and indeed, rivals the American dollar in the past several years for its purchasing power and nearly universal acceptance.

Because the government has not proven beyond a reasonable doubt that Mr. Atilla participated in Zarrab's scheme knowing (or consciously avoiding) this crucial fact, the most that the government has proven is that Mr. Atilla engaged in conduct that could have earned him and/or his bank a designation that would have sanctioned it, making it illegal for *U.S. services, entities and individuals to interact with him or his bank.*   But as the Court is keenly aware, engaging in purely sanctionable conduct is not a crime – it may deprive the actor of access to the U.S. financial system, but it does not serve as a basis for prosecution under any statute, rule, order or regulation.

Moreover, without the proven knowledge of a U.S. connection, Mr. Atilla cannot be found guilty of defrauding any FDIC-insured bank or of laundering money through the U.S. to promote any of the listed crimes.  (Evasion under 18 U.S.C. 371 has not and could not be charged as a specified unlawful activity.)

This means that there are only two possible charges on which the government could seek to proceed, both of which relate to actions to evade the imposition of sanctions against Halkbank: charges under the *Klein* doctrine or charges under the evasion provisions of the secondary sanctions executive orders and regulations.  That alleged evasion, as a matter of proof, has been adequately established by the government to survive a legal challenge under 18 U.S.C. 371 (although we believe, as a factual matter, it is unprovable and the Court can decide that question now, as we will discuss in a moment).  But the government cannot proceed to the jury on an evasion theory under the secondary sanctions.  In discussing both of the government's evasion theories, we will assume that the government has offered sufficient proof to survive a Rule 29 motion that Mr. Atilla caused inaccurate information to be sent to OFAC.  We vigorously contest the adequacy of that proof, but assume its truth for the following discussion of the law – a discussion that demonstrates that that proof does not make out a chargeable violation of law.

*First,* IEEPA and other sanctions statutes (NDAA for FY12, TRA, IFCA) do not expressly allow for any prosecution of evasion or avoidance.  The evasion provisions are contained in the IFSR and Executive Orders 13622 and 13645 and they expressly allow for the



prosecution of evasion or avoidance of *only prohibitions.* To engage in conduct outside the United States that could merit sanctions is just that: sanctionable conduct, not a prohibition. Indeed, sanctionable conduct cannot be prohibited in any way: a foreign bank can continue to engage in that conduct with impunity. So the government's theory – that Mr. Atilla engaged in conduct to avoid the imposition of *sanctions* against the bank and himself – does not state a case for evasion of a prohibition.

The government has long recognized this fatal weakness and claimed, in unprecedented fashion, untethered to any language in any rule or statute (much less case law or legislative history), that where the detection of sanctionable conduct is evaded, the actor has precluded the possibility that a prohibition will kick in. It is true that once a foreign bank is sanctioned, the bank's dealings with the U.S. will be subject to prohibitions. But to say that evading the imposition of a sanction is tantamount to evading that potential but unstated prohibition is to collapse sanctions into prohibitions, eliminating the careful dichotomy created by law. That dichotomy was not accidental: Treasury understood the difficulty of enlisting foreign banks in its sanctions efforts and to threaten prosecution for purely foreign conduct was anathema to that goal. In addition, to prosecute evasion of prohibitions that have not been applied is to impermissibly bypass the pre-penalty/pre-prosecution steps mandated by the statutes, executive orders and regulations named in the Indictment, *i.e.,* investigation and administrative determination by the Department of Treasury, pursuant to narrowly delegated authority, that a foreign bank's oil- or gold-related transactions were conducted "knowingly" and that the transaction volumes were "significant" or "material."

*Second,* with respect to the application of 18 U.S.C. § 371 (the *Klein* doctrine) to conduct taken to evade the imposition of sanctions, we acknowledge that the government has a better argument. Although we continue to believe that the application of *Klein* to a foreigner is legally unjustifiable and unprecedented, if the Court disagrees, then, as a matter of law, *Klein* could theoretically apply to what Mr. Atilla has been accused of doing.

However, we urge the Court to consider dismissing this charge as well because it is clear that no rational jury could conclude that Mr. Atilla's conduct "impeded" Treasury's functions, as it must under the law. At most, the government has proven that Mr. Atilla sought to deceive Treasury by telling them what Halkbank was doing to ensure compliance with the sanctions. It is, however, undisputed that Mr. Atilla told Treasury just the opposite: that Halkbank was having great difficulty determining whether gold transactions (for example) complied with the sanctions. *See* GX 7020, 4/12/2013 Cable re A. Szubin Meeting with Halk Bank, at 3 ("Halk explained it had had great difficulty in trying to determine the origin of these trades, and the ultimate destination.")



As important, even if this were a matter to be decided by the jury, the government forfeited the right to proceed on this when it became clear that Treasury did not sanction Reza Zarrab despite knowing that: (i) his exchange house had violated the sanctions – a finding made by Treasury in 2014 after a multi-year investigation; (ii) his exchange house had failed to pay the penalty Treasury imposed; (iii) Zarrab had been arrested for bribery and conduct in Turkey that the U.S. would have sanctioned; and (iv) Mr. Atilla expressly invited Treasury to sanction Zarrab in 2014 so Halkbank would have a basis for not dealing with him. Knowing all of this, Treasury did not sanction Zarrab and has not done so even through today, making it inconceivable that anything Mr. Atilla said about the bank's compliance efforts concerning Zarrab's transactions could have impeded Treasury's function to investigate potentially sanctionable conduct. If the point of Treasury's investigation is to sanction where appropriate and Treasury had not acted based on the above four, indisputable facts, it cannot be rational to conclude that Treasury would be impeded by anything Mr. Atilla said on the subject.

> 2. *The conspiracy charges in Counts 1, 2, 4 and 6 must be dismissed on an alternate ground: because the government has charged multiple conspiracies only one of which Mr. Atilla, at best, has been shown to be a participant*

It is now apparent after the thousands of pages of exhibits introduced by the government and the testimony of Zarrab that the government has offered proof of a number of conspiracies that are unlinked to Mr. Atilla. They include:

- Zarrab's apparent conspiracy to trade with Russia in a manner that risked sanctions;

- Zarrab's apparent conspiracy to trade with China in a manner that risked sanctions; and

- Zarrab's apparent conspiracy to convert the proceeds of sanctionable trade with Iran (either with Iran, China or Russia) into dollars; and

On this record, despite charging all of the above conduct in a single conspiracy count (Count 1), the government has proven multiple conspiracies, all but one of which do *not* involve Mr. Atilla. In these circumstances, the Court must dismiss the conspiracy charge because it has been used by the government to introduce all sorts of criminal conduct against Mr. Atilla in which he had utterly no involvement on this record. In effect, Mr. Atilla has suffered the kind of prejudice that caused this court to dismiss a defendant under Rule 8(b)'s misjoinder prescription. *See, e.g., United States v. Lech*, 161 F.R.D. 255, 257 (S.D.N.Y. 1995) (joinder of three separate yet similar conspiracy charges was improper, notwithstanding one common participant and



similar objects, because there was no suggestion that the moving defendant had any "involvement in the other schemes charged, and at most he had cursory knowledge of the other criminal activities").

In other words, the government has offered proof of separate conspiracies that varied in participants and objectives – and for all but one of which there was no proof whatsoever that Mr. Atilla joined (and even that proof was woefully short of the requisite standard). Thus, the proof of these separate conspiracies was at variance with the single conspiracy charged in the Indictment in four counts, and no rational juror could conclude that that single conspiracy was proven.

The multiple conspiracy analysis also affects the admissibility of the considerable volume of evidence admitted subject to connection pursuant to Rule 801(d)(2)(E), Fed.R.Evid. If any or all of that evidence was not properly admitted because it related to other, uncharged conspiracies, or no conspiracy at all, or did not satisfy Rule 801(d)(2)(E) for any reason, it must be eliminated from the Court's analysis of the sufficiency of the government's evidence as to any and all counts.

In situations where proof of multiple conspiracies is offered on a single, unitary conspiracy charge, the normal response is to instruct the jury that they must acquit "if you find that the conspiracy charged in the indictment did not exist, you cannot find any defendant guilty of the single conspiracy charged in the indictment. This is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership." But that will be inadequate here. The problems here cannot be solved by instruction. The government has created a fatal variance from the charge authorized by the grand jury that has injected overwhelming prejudice into this case.

Irremediable prejudice has flowed from the introduction against Mr. Atilla of the sordid and extensive criminal conduct attributable to Zarrab, but not to Mr. Atilla. The overflow from those other conspiracies dwarfs whatever evidence there is of Mr. Atilla's connection to the one conspiracy with Zarrab that could be prosecuted here.

Here, volumes of highly prejudicial evidence came in under the guise of a single, overarching conspiracy that allegedly tied Halkbank's *non-dollar denominated t*ransactions with Zarrab to Zarrab's separate scheme to convert Turkish lira or euros into dollars. That may have been Zarrab's intent, but there is no evidence at all that Atilla knew of Zarrab's ultimate goal and shared it. The closest the government comes is Zarrab's vague testimony on direct and cross that the money was intended to be used to finance *international money transfers* on Iran's behalf.

 HERRICK

Whatever that term means, it is not the semantic equivalent of a dollarized transaction nor does it provide sufficient proof on which a jury could conclude that the proceeds of these transactions were going to be converted to dollars or that the U.S. financial system would be implicated in whatever Mr. Atilla was doing with Zarrab. The idea that Atilla knew or had reason to know that Zarrab's ultimate goal and the object of the conspiracy was to involve US financial facilities is nothing more than speculation.

That prejudice is the very thing that has inspired numerous courts in this Circuit to sever because, as the Supreme Court held in *Kotteakos v. United States*, 328 U.S. 750, 775 (1946), it is a "substantial right" of each defendant "not to be tried en masse for the conglomeration of distinct and separate offenses committed by others." *See also United States v. Bertolotti,* 529 F.2d, 149, 154 (2d Cir. 1975). The risk of prejudice is so great that the mere existence of misjoinder itself demands severance, with no further showing of harm required. *See United States v. Gamaldi*, 384 F. Supp. 529, 530 (S.D.N.Y. 1974). Just as in *United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996), where the court noted that there was "no colorable argument … that both conspiracies alleged here were part of a single overarching scheme" because "there was no evidence that the defendants joined in the indictment were aware of or joined in all of the schemes alleged," Mr. Atilla has been "burdened with the risks inherent in joinder of those alleged conspiracies simply because he had the misfortune of being charged with another defendant who was subject also to other accusations." The words of the immortal Judge Friendly cannot be ignored: "[t]he dangers of transference of guilt from one to another across the line separating conspiracies, subconscious or otherwise, are so great that no one can say prejudice to substantive right has not taken place." *United States v. Miley,* 513 F.2d 1191, 1209 (2d Cir. 1975), *quoting Kotteakos.*

In situations far less stark than ours, the Circuit has vacated convictions for precisely this evil. *See*, *e.g*., *United States v. Shellef*, 507 F.3d 82, 103 (2d Cir. 2007) (vacating convictions due to prejudicial misjoinder where, despite common participation of both defendants in some of the alleged offenses, "the connection between [the counts charged] is too tenuous to justify joinder under Rule 8"). A perfect example is *United States v. Figueroa*, 2010 WL 11463852 (E.D.N.Y. 2010). *Figueroa* presented the trial court, post-trial, with a record in which the government had proven several smaller conspiracies to distribute drugs with the defendant at the hub of each, *but no proof of an overall conspiracy to distribute drugs,* one count out of 19 in the case. Despite having given a multiple conspiracy charge, the Court reversed the conviction on the overall conspiracy count, holding that there was substantial prejudice from the jury aggregating evidence from the individual series of conspiracies to convict on the overall conspiracy. *Id. at *18-19. The variance from the Indictment required reversal.


That same danger exists here. There is a grave and unacceptable danger that the government's proof of Mr. Atilla's alleged involvement in Zarrab's gold and food conspiracies will be imported by the jury into the U.S. nexus conspiracies charged in this case – conspiracies where there is insufficient proof of any connection to Mr. Atilla. Just as in *Figueroa,* the defendant had been charged in an overall conspiracy that the government clearly has not proven he committed and the conspiracies (although uncharged) for which the government has offered proof (*i.e.,* food and gold conspiracies that could have merited sanctions) provide the improper basis for the jury to imply guilt.

In fact, this is the very danger we flagged for the Court pretrial in our motion to sever misjoined defendants under Rule 8(b). It was apparent from the Indictment that the government had no way to connect Mr. Atilla to the core conspiracy charged in the conspiracy counts in this case: potentially sanctionable transactions with Iran that Zarrab turned into U.S dollars. The trial has not improved the situation for the government; instead, it has only underscored the absence of evidence of the requisite connection of Mr. Atilla to Zarrab's U.S. connected scheme, and added to the record before this jury a series of other Zarrab non-U.S. connected schemes, almost all of which had no connection to Mr. Atilla. These are precisely the dangers that Rule 8(b) was designed to prevent and those dangers have all come to fruition. *See United States v, Giraldo*, 859 F. Supp. 52, 54 (E.D.N.Y. 1994) (joinder of conspiracy charges improper because there was "no suggestion that [the defendants] knew of or were involved in any overall scheme" and no substantial identity of participants).

In short, because of the way the government proceeded – claiming that it would prove Mr. Atilla's connection to these other conspiracies and failing to do so – the harm has been done. No jury charge can un-ring the bell that has been baselessly tolled so loudly and repeatedly against Mr. Atilla. Counts 1, 2, 4 and 6 must be dismissed on this alternate basis as well.

Respectfully submitted,

HERRICK, FEINSTEIN LLP                    FLEMING RUVOLDT PLLC

By:___/s/Victor J. Rocco_____      By:___/s/Cathy Fleming_____

    Victor J. Rocco                         Cathy Fleming
    Two Park Avenue                         1700 Broadway, 28th Floor
    New York, New York 10016                New York, New York 10019
    (212) 592-1400                          (212) 706-1850



McDERMOTT WILL & EMERY LLP          LAW OFFICES OF JOSHUA L. DRATEL

By:___/s/ Todd Harrison_____          By:___/s/ Joshua L. Dratel_____

    Todd Harrison                                    Joshua Dratel
    340 Madison Avenue                       29 Broadway, Suite 1412
    New York, New York  10173          New York, New York  10006
    (212) 547-5727                                  (212) 571-3792
                    *Attorneys for Defendant Mehmet Hakan Atilla*