# McDermott Will & Emery

Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London
Milan  Munich  New York  Orange County  Paris  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/20/17

MEMO ENDORSED

[Attorney at Law]
tdharrison@mwe.com
+1 212 547 5727

December 20, 2017

**VIA ECF**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1650
New York, New York 10007

Re:   **United States v. Mehmet Hakan Atilla, S4 15 Cr. 867 (RMB)**

[Handwritten endorsement: Gout to respond in writing by 5 P.M. today
SO ORDERED:
Date: 12/20/17
Richard M. Berman, U.S.D.J.]

Dear Judge Berman:

We represent defendant Mehmet Hakan Atilla ("Atilla") and hereby submit this letter brief in support of our motion for a mistrial made during the cross examination of Mr. Atilla on December 19, 2017 based upon the government's introduction of (i) a hearsay statement for the truth of the matter asserted (that was itself based upon multiple levels of hearsay); (ii) made by an "expert" not called to testify in a report not admitted in evidence; and (iii) which opined as to the ultimate issue of the Defendant's mental state that constitutes an element of the crimes charged. The government asked a question in front of the jury indicating that a foreign investigator's report had determined the ultimate issue in this case – whether Atilla violated sanctions. The question misrepresented the nature of this "conclusion" of this "expert" in a highly prejudicial way. For the reasons that follow, the Court should order a mistrial.

During the cross examination of Atilla, the government asked Atilla the following questions:

> Q.   So you don't recall seeing a report from a BDDK expert appointed as part of the December 17th investigation; is that your testimony?
>
> A.   That has nothing to do with what I said. That's not what I'm saying. What I'm saying here is that BDDK, as an entity -- the review that BDDK did as an entity, I have no idea what may have come of that because they had auditors that work at the bank. What you're saying is the expert that had been appointed by the prosecutor and had worked with the prosecutor, that's different.
>
> Q.   And the expert comes from BDDK, right?

Honorable Richard M. Berman
December 20, 2017
Page 2

> A. Yes, that would be one that would be appointed from the BDDK, correct.
>
> Q. And that's your bank regulator, right?
>
> A. That is correct.
>
> Q. And you saw the expert report, right?
>
> A. Yes, I saw it.
>
> ***Q. So you remember that the report concluded that you violated the resolutions imposing sanctions on Iran, right?***

(Tr. 2208:3-21 (emphasis added).)

In the final question before defense counsel objected and requested an immediate sidebar, the government introduced an out-of-court statement asserted for the truth of the matter asserted, i.e., that a report commissioned by the BDDK (and the report was commissioned by the Prosecutors and NOT the BDDK) concluded that Atilla "violated the resolutions imposing sanctions on Iran." (*Id.*)

The government's questions are purportedly based upon a January 28, 2014 Turkish investigative report entitled "To The Republic Of Turkey Istanbul Office Of The Chief Public Prosecutor" (the "Turkish Report"). The Turkish Report was purportedly drafted by Osman Zeki Canitez – an alleged "Certified Bank Auditor" – for Turkish prosecutors. It was based on recordings and materials from the Turkish investigation. In the conclusions section of the Turkish Report, Canitez asserts a number of *conditional* opinions. Notably, his opinions turn on whether certain of documents from Royal and Volgam were forged:

> "[b]ecause determination of whether or not the invoices submitted to Halk Bank by Royal and Volgam and the documents that bear the seal and signature of the Dubai Customs Administration are genuine lies outside of my area of expertise, no additional determination was made regarding this issue," "if it is determined that this document is forged," "assuming that the documents . . . were fictitious, the following conclusions can be made."

(Turkish Report, at 55.)

The subsequent opinions are all conditional and have no probative value – asking the question without the conditions only serves to prejudice Atilla unfairly.

In addition, the section of the Turkish Report that was referred to in the government's question incorporates "the sanctions resolutions passed by the United Nations, the European

Honorable Richard M. Berman
December 20, 2017
Page 3

Union and especially the United States of America (USA) against Iran." (Turkish Report, at 51). The "review at Halk Bank was also limited to the transactions of the suspects included in the investigation and no assessment was made of the general practices of Halk Bank." (Turkish Report, at 3). This further complicates the issue because apparently the Turkish Report is also analyzing sanction regimes other than the United States sanctions and the analysis is incomplete and limited in scope, which is much different from what the jury heard when the government asked if the "expert report" had "concluded that you violated the resolutions imposing sanctions on Iran, right?" (Tr. 2208).

The government knew that this line of questioning would be met with objections from the defense because on December 14, 2017, defense counsel previously submitted a mistrial motion to the Court predicated upon the admission of evidence elicited from Huseyin Korkmaz related to a stolen investigative report. (ECF No. 377).

Rather than actually follow the rules of evidence before embarking on this line of questioning by making the purported expert witness available, the government introduced a (badly mischaracterized) "expert" opinion from the Turkish investigation. Asking this question in open Court had the effect of introducing otherwise inadmissible hearsay and an expert opinion on the ultimate issue for the jury. Had the government actually sought to admit the Turkish Report in evidence, it would have been barred by the Confrontation Clause of the United States Constitution and *Crawford v. Washington*, 541 U.S. 36 (2004)) as well as Federal Rules of Evidence 403, 702, 704(b) and 803(8). We address each of these issues below.

First, the Turkish Report is inadmissible hearsay. During his cross-examination, the government stated that "the report concluded that you [*i.e.*, Atilla] violated the resolutions imposing sanctions on Iran." On its face, this is an out-of-court statement introduced by the prosecutor for the truth of the matter asserted. Cross-examination questions may not include hearsay statements within them as this is an improper attempt to put inadmissible evidence before the jury. *See United States v. Beeks*, 224 F.3d 741 (8th Cir. 2000)(overturning conviction because of cross-examination question posed to the defendant regarding a criminal history application); *see also Cosselman v. Donfee*, 172 N.Y. 507 (1902) (ordering a mistrial because of an inappropriate cross-examination question even though it was not answered because "the propounding of the question was calculated to convey an improper impression to the jury" and "the practice of asking a question that counsel must be assumed to know cannot be answered is highly reprehensible"). Moreover, the Turkish Report itself is replete with reference to and reliance upon hearsay, including recorded conversations, interviews, and documents. This is inadmissible hearsay within hearsay. *See, e.g., United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006) ("The police report contained double hearsay, the report itself, and what the citizen told police. Therefore, the report is inadmissible unless each level of hearsay falls within an exception to the hearsay rule."); *United States v. Ulbricht*, 858 F.3d 71, at 121 n. 59 (2d Cir. 2017) ("We note that the Jones statement is double hearsay, in that the defense sought to admit the government's subsequent characterization of Jones's interview, and both the government's letter and Jones's statement to the agents were out of court statements offered for their truth.

When confronted with 'hearsay within hearsay, or double hearsay,' courts must determine that 'each part of the combined statement[]" is independently admissible.")(internal citations omitted). Indeed, the Turkish Report includes an entire section entitled "Legal Assessment" in which the drafter first invades the province of the Court in determining the law and then invades the province of the jury by applying the "facts" to the "law" and reaching a (conditional) conclusion. The Turkish Report simply has no place in an American courtroom.

Second, the government's cross-examination question contains a testimonial statement – i.e., the purported conclusion in the Turkish Report – that is barred by the confrontation clause. Here, the statement introduced by the prosecutor was not his own, but rather, that of Mr. Canitez a purported "expert" witness who was not called to testify, thereby depriving Atilla of his Sixth Amendment right to confront and cross-examine witnesses. *See United States v. Oates*, 560 F.2d 45 (2d Cir. 1977) ("the rule with respect to evaluative reports under FRE 803(8)(C) is very specific: they are admissible only in civil cases and against the government in criminal cases in view of the *almost certain collision with confrontation rights which would result from their use against an accused in a criminal case*.)(citing Advisory Committee's Notes, Note to Paragraph (8) or Rule 803); *United States v. Pinto-Mejia*, 720 F.2d 248, 258 (2d Cir. 1983)("the reason for Rule 803(8)'s nonauthorization of the use of investigative findings against defendants in criminal cases is to avoid abridgement of a defendant's Sixth Amendment right to confrontation"). Moreover, the statement is clearly an expert opinion and no witness was brought to court and qualified as an expert witness to make it. Atilla's counsel was deprived of the ability to test the basic tenets of Federal Rule of Evidence 702 not permitted to review and cross-examine (i) the purported expert's "specialized knowledge, skill, experience, training or education"; (ii) whether the opinion was "based on sufficient facts or data"; (iii) whether "the testimony is the product of reliable principles and methods"; and (iv) whether the "expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Third, the statement referenced by the government is an improper opinion on the ultimate issue pursuant to Federal Rule of Evidence 704(b). Pursuant to FRE 704(b), "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state . . . that constitutes an element of the crime charged . . . ." Here, the statement offered by the Government does exactly that. Here, the government's question states that "the report concluded that you violated the resolutions imposing sanctions on Iran." Implicit in this statement is that Atilla violated U.S. sanctions against Iran which, as the Court knows, requires a showing that the violation was done with a "willful" mental state. Here, the government is openly asking the jury to conflate the (mischaracterized) conclusions of the Turkish Report with a finding of guilt in this trial. This violates FRE 704(b) as an improper expert opinion on the ultimate issue. *See Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. Feb. 5, 2001)(rejecting expert witness noting that "expert evidence should not be permitted to 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it" and finding that the expert report was "permeated with inadmissible legal opinions and conclusions directed at telling the jury what result to reach.")(internal citations omitted); *see also United States v. Murgio*, No. 15-cr-769, 2017 U.S.

Dist. LEXIS 10359, at *50 (S.D.N.Y. Jan. 12, 2017) ("Finally, given the importance of the [third-party investigative body]'s factual findings to ultimate issues at trial, 'admission of the report would [be] likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation.")(internal citations omitted).

Fourth, the Government is essentially attempting to introduce a statement from foreign law-enforcement personnel in violation of FRE 803(8)(a)(ii).  For a document to be admitted as a public record pursuant to FRE 803(8), it is explicitly required that the public record "set out . . . a matter observed while under a legal duty to report, *but not including, in a criminal case, a matter observed by law-enforcement personnel . . . .*" Fed. R. Evid. 803(8)(A)(ii) (emphasis added).  Here, the Turkish Report cannot be admitted because, as a report apparently commissioned by Turkish prosecutors, it is squarely "a matter observed by law-enforcement personnel" being offered by the Government "in a criminal case." *Id.; see also United States v. Oates,* 560 F.2d 45, 77 (2d Cir. 1977) (discussing legislative history of Federal Rules of Evidence reflecting intent "to render law enforcement reports and evaluative reports inadmissible against defendants in criminal cases"); *Murgio*, 2017 U.S. Dist. LEXIS 10359, at *16-17 (disallowing the government from admitting into evidence an examination from the National Credit Union Association ("NCUA") holding that "[b]ecause each of the proffered NCUA records contains 'factual findings from a legally authorized investigation,' the records are not admissible under Rule 803(8)(A)(ii) against [defendant]."). All the circumstances surrounding the Turkish Report constitute "circumstances indicat[ing] a lack of trustworthiness." *See* Fed. R. Evid. 803(8)(b).

Finally, the questioning constitutes prejudice worthy of a mistrial. *See United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985).  Instead of attempting to offer the patently inadmissible Turkish Report into evidence, the government simply asked a question which mischaracterized what "the report concluded," that Atilla "violated the resolutions imposing sanctions on Iran."  Whether the defendant "violated the resolutions imposing sanctions on Iran" is, of course, an ultimate question in this pending federal prosecution.  The Government here advised the jury by its question that an "expert" had already concluded that he did.

The question grossly mischaracterized the Turkish Report's conclusion, thereby adding further to the prejudice.  The Turkish Report prefaces its conclusions with the condition "assuming that the documents . . . were fictitious, the following conclusions can be made." (Turkish Report, at 55).  But the Turkish Report never resolved the above-cited underlying assumption.  In the absence of such a resolution, any "conclusion" it drew about Hakan Atilla was, in fact, no conclusion at all -- nothing more than a working hypothesis. The Report relied entirely on the materials provided by the prosecutors in the Turkish report, and not the evidence at this trial.  Thus, for the government to have informed the jury through his questioning about any "conclusion" in the Turkish Report that Atilla had "violated the resolutions opposing sanctions on Iran" was highly misleading and prejudicial. *See United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985) (reversing conviction when a prosecutor used an inappropriate cross-examination question to "waft an unwarranted innuendo in to the jury box").

There is ample precedent for declaring a mistrial in such circumstances. *See, e.g.*, *United States v. Reyes*, 577 F.3d 1069, 1078 (9th Cir. 2009) (granting new trial to Defendant in light of prejudicial statements by prosecutor). *See also United States v. Ayala-Garcia*, 574 F.3d 5, 17 (1st Cir. 2009) (reversing conviction based on prosecutor's "statements that were either inaccurate, highly inflammatory, or both."). In this case a mistrial must be declared and double jeopardy should attach. *See also Oregon v. Kennedy*, 456 U.S. 667, 679 (1982) ("a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.").

For the above stated reasons, we respectfully request that the Court declare a mistrial in this action.

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By:  /s/Victor J. Rocco
   Victor J. Rocco
   Two Park Avenue
   New York, New York  10016
   (212) 592-1400

FLEMING RUVOLDT PLLC

By:  /s/Cathy Fleming
   Cathy Fleming
   1700 Broadway, 28th Floor
   New York, New York  10019
   (212) 706-1850

McDERMOTT WILL & EMERY LLP

By:  /s/ Todd Harrison
   Todd Harrison
   340 Madison Avenue
   New York, New York  10173
   (212) 547-5727

LAW OFFICES OF JOSHUA L. DRATEL

By:  /s/ Joshua L. Dratel
   Joshua Dratel
   29 Broadway, Suite 1412
   New York, New York  10006
   (212) 571-3792

*Attorneys for Defendant Mehmet Hakan Atilla*

cc:   All Counsel (via ECF)