```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,              :
                                       :         15 Cr. 867 (RMB)
                  Government,          :
                                       :         **DECISION & ORDER**
         -against-                     :
                                       :
MEHMET HAKAN ATILLA,                   :
                                       :
                  Defendant.           :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/21/17

Having reviewed the record herein, including, without limitation: **(1)** the defense letter, dated December 18, 2017 ("Defense Letter"), seeking to admit principally for impeachment purposes the audio recording and the (translated) transcript of a September 15, 2016 "jail house" telephone conversation purportedly between Reza Zarrab and his uncle. See Defense Letter at 2-3 ("A witness's prior statement may be offered to impeach that witness's credibility . . . ." (internal quotation marks omitted)); Tr. of Proceedings, dated Dec. 7, 2017 ("12/7/17 Tr."), at 1010 ("Your Honor, I'd like to play a record that's in [the] Azeri [language] for impeachment purposes."); and **(2)** the Government letter, dated December 18, 2017 ("Government Letter"), opposing the admission of the audio recording and translated transcript on various grounds; and having reviewed the relevant legal authorities, the Court respectfully denies the defense application, as follows:

1- The admission into the record of the phone call from the Metropolitan Correctional Center ("MCC") (and the translated transcript) to impeach Mr. Atilla would violate Federal Rule of Evidence 608(b). Fed. R. Evid. 608(b). Rule 608(b) clearly states: "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Id.; Government Letter at 2; see also United States v.

1

Shoreline Motors, 413 F. App'x 322, 329 (2d Cir. 2011) (where a cooperating witness "had asked people in the [car] dealership [where he worked] whether someone could arrange for [his] leased Lexus to be stolen and taken to a chop shop in the Bronx," and the district court denied the defense application to admit these statements, the United States Court of Appeals for the Second Circuit in affirming the district court stated that Rule 608(b) "prohibits the use of extrinsic evidence of specific instances to attack a witness' character for truthfulness").

2- The defense in the Atilla case had the opportunity at trial to cross-examine Mr. Zarrab about the September 15, 2016 telephone conversation. During the cross-examination of Mr. Zarrab by defense counsel Cathy Fleming on December 7, 2017, the defense adduced these questions and answers which is part of the public record of the case.

> Q. "You made a call on September 15th, 2016, to your Uncle [], correct, from the jail?"
> A. "I don't recall the dates, but it is true that I had made many phone calls to my uncle from the jail; that is correct, ma'am."
> Q. "You told your uncle that, in this country, you have to admit to something you haven't done in order to become free; once you admit your guilt, you become free; isn't that correct?"
> A. "That is absolutely **not** correct, ma'am."
> . . .
> Q. "You spoke with your uncle about how you get out of jail in the United States, correct?"
> A. "That is not correct, ma'am."

12/7/17 Tr. at 1009-10, 1013 (emphasis added).

This cross-examination appears to have been of little or no probative value to the defense. Mr. Zarrab repeatedly denied that his statements to his uncle had the meaning that defense counsel sought to attribute to them. See id.; United States v. Cilins, 2014 WL 173414, at *3 (S.D.N.Y. Jan. 15, 2014) (where a defendant suggested he would use evidence that certain "contracts [we]re forged to impeach [a cooperating witness] at trial," the court stated that the defendant "may cross-examine [the cooperating witness] on her statements, but he is bound by

2

whatever answers she gives. Rule 608(b) prohibits the introduction of extrinsic evidence, such as forensic test results, to attack a witness's character for truthfulness.").

3- With respect to the defense contention that the audio recording and the translated transcript may be admitted as "a prior inconsistent statement," and that Mr. Zarrab's statements during the telephone conversation "relate[] directly to Zarrab's state of mind regarding the need -- or absence of need -- for veracity in what turned out to be his upcoming proffer sessions with the Government," Defense Letter at 2-3 (internal quotation marks omitted), the Court notes that the United States Court of Appeals for the Second Circuit has cautioned that "[a] witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven." United States v. Rivera, 273 F. App'x 55, 58 (2d Cir. 2008). The Zarrab phone call in question is clearly collateral to the violation of U.S. sanctions against Iran issue presented here. See United States v. Coven, 662 F.2d 162, 171 (2d Cir. 1981) (where "[a cooperating witness] agreed to plead guilty to one count of mail fraud and to various violations of state law, and to cooperate with the government in its investigation of Euro-Swiss," the court held that "[the cooperating witness]'s state of mind when signing the cooperation agreement was a collateral matter going only to [his] general credibility.").

The Court agrees with the Government that "Zarrab's alleged statements to his relative have nothing to do with whether there was a wide-scale plot to launder Iranian oil proceeds through Halk Bank or whether Atilla joined that plot." Government Letter at 2.

4- During summations on December 19, 2017, defense counsel Victor Rocco made no reference at all to Mr. Zarrab's MCC conversation with his uncle. See Tr. of Proceedings, dated Dec. 19, 2017, at 2284-2319. Defense counsel focused instead upon the "corrupt relationship"

3

between Mr. Zarrab and Suleyman Aslan, the former General Manager of Halkbank who allegedly was bribed by Mr. Zarrab to facilitate the violations of sanctions against Iran scheme via Halkbank. Id. at 2296; see also id. at 2288 (where defense counsel stated: "The evidence showed that Iran needed a banker, and that banker was Suleyman Aslan. That banker was the man who Reza Zarrab bought, and bought for millions and millions and millions of dollars in bribes."); id. 2293 (where defense counsel stated: "[W]ho did Reza Zarrab go to? Who did he go to constantly? Who did he go to endlessly? Who did he go to without reprieve? Suleyman Aslan. . . . [Mr. Zarrab] went directly to the man. He went directly to the guy he bought. He went directly to the person he owned. And he did it shamelessly, and he did it continuously.").[1]

**Conclusion & Order**

For the reasons stated above, the defense application to admit the audio recording and the translated transcript of Mr. Zarrab's September 15, 2016 call from the Metropolitan Correctional Center is denied.

Dated: December 21, 2017
New York, New York

*RMB*

RICHARD M. BERMAN
U.S.D.J

---

[1] Any other arguments raised by the parties but not specifically addressed herein have been considered by the Court on the merits and rejected.

4