```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/2/18
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,
                            Government,                15 CR. 867 (RMB)

        -against-                            **DECISION AND ORDER**

MEHMET HAKAN ATILLA,
               Defendant.
------------------------------------------------------------X

      Having reviewed the record herein, including, without limitation: **(1)** the defense letter, dated December 20, 2017 ("Defense Letter"), seeking a mistrial based upon an unanswered question asked of the Defendant, Mehmet Hakan Atilla, by an Assistant United States Attorney during cross-examination, Defense Letter at 1; and **(2)** the government letter, dated December 20, 2017 ("Government Letter"), opposing the motion, Government Letter at 1; and having reviewed the relevant legal authorities, the Court respectfully denies the defense application.[1]

      The question posed by this motion is whether a single unanswered question on cross-examination which was itself stricken from the record by the Court after the Court directed the witness not to answer results in a mistrial. See 12/19/17 Tr. at 2208:20-21, 2223:8-11. While that may be an appropriate outcome in some cases, under the circumstances presented here a mistrial is manifestly inappropriate and unnecessary, as follows:

1- "[A] trial court should avoid granting a mistrial whenever possible, unless there is a clear manifest necessity." Rink v. United States, 388 A.2d 52, 58 n.9. (D.C. 1978); see also 23A C.J.S. Criminal Procedure and Rights of Accused § 1932 ("A mistrial is a severe, dramatic, extreme, and drastic remedy to be employed only in limited, extreme, and rare circumstances. A mistrial is not favored and is required only when there is a manifest necessity for a mistrial, or manifest

---

[1] The Court reached the same conclusion with respect to Defendant's earlier (December 13, 2017) motion for a mistrial. See 12/15/17 Tr. at 1957:4-1971:4.

injustice." (footnotes omitted)); Stinson v. United States, 2014 WL 6930974, at *3 (D. Conn. Dec. 8, 2014) ("The standard is high, and courts will only order a mistrial if it is necessary to ensure the defendant a fair trial.").

2- There is no necessity for a mistrial in this case because Mehmet Hakan Atilla has received a thoroughly fair and transparent trial. He has a very professional defense team of 8 plus attorneys who are obviously conversant with the record and the law and are alert and aggressive on behalf of their client.

And, with regard to this matter, the defense team quickly objected to the question; a sidebar was held; the witness did not answer; and the question was stricken. See 12/19/17 Tr. at 2208:20-2223:11. While defense counsel did not request a curative instruction, see id. at 2210:1-2222:21, appropriate instructions were given to the jury. See 12/20/17 Tr. at 2361:21-24, 2364:25-2365:4.

3- The challenged question posed by government counsel to the Defendant, Mr. Atilla – who had elected to testify – was: "So you remember that the report concluded that you violated the resolutions imposing sanctions on Iran, right?" 12/19/17 Tr. at 2208:20-21. As noted, the question was never answered by Mr. Atilla. See id. at 2223:8-11. It was quickly objected to by defense counsel, and swiftly followed by a sidebar at which each side was heard. See id. at 2208:24-2223:2. Defense counsel Cathy Fleming said, among other things: "First of all, it's way beyond the scope of what I did on direct. Second, I believe this is a report by somebody who's a fugitive [from Turkey], . . . it's part and parcel with this Turkish report. [Third,] [i]t's filled with hearsay. It quotes from the Turkish report." Id. at 2210:2-7. Ms. Fleming continued: "[T]he question is suggesting that that was the finding, which is just misleading and dishonest. . . . I'm going to move to strike it." Id. at 2210:22-2211:1. Government counsel David Denton responded

at the sidebar, among other things: "[N]o hearsay is being introduced. There's no document that's being introduced. There's no witness who's being asked questions that are hearsay. I'm asking him whether he remembers this, which goes directly to the culpability of his state of mind in dealing with [co-defendant] Reza Zarrab from 2014 onwards." Id. at 2216:6-12.

The Court found that the question referenced hearsay, i.e. the purported expert report, and that it was prejudicial, particularly if it were to be answered. The Court directed that the question not be answered and, in fact, directed that the question be stricken from the record. Specifically, the Court stated to the jury: **"So with respect to the last question, I'm directing Mr. Atilla not to answer it, and I'm going to order the question stricken from the record. And let's move on to the next question."** Id. at 2223:8-11 (emphasis added). That sanction was sufficient. See, e.g., Rink, 388 A.2d at 58 n.9; United States v. Ramirez, 426 F.3d 1344, 1350, 1353 (11th Cir. 2005) (where the government asked a question that disclosed to the jury that codefendant Riascos had entered a guilty plea, the district court sustained the defense's objection to the question, the defendant did not answer the question, and at the close of the evidence, the district judge instructed the jury that anything the lawyers say is not evidence in the case).

4- The Court's jury instructions (given before trial and after the question was posed during final instructions) advised the jurors that (i) "what is not evidence are the questions and the objections of the attorneys," 11/28/17 Tr. at 18:13-14; (ii) "[a]t times during the trial I may sustain objections to questions that are asked. And when that happens, I will not permit the witness to answer," id. at 17:3-5; and (iii) "[i]n reaching your decision, you may not draw any inference from an unanswered question where an objection has been sustained." Id. at 17:9-11.

And immediately following the close of all of the evidence, i.e. one day after the question at issue was asked, the jurors were instructed as follows: (i) "[w]hat the lawyers have said in

-3-

their opening statements, in their closing arguments, in their objections, or in their questions is not evidence," 12/20/17 Tr. at 2361:21-24; and (ii) "[y]ou should draw no inference or conclusion, for or against, any party by reason of lawyers making objections or my rulings on such objections. Counsel have not only the right but the duty to make legal objections when they think that such objections are appropriate." Id. at 2364:25-2365:4.

5- The context in which the question was posed to Mr. Atilla is also germane to the Court's denial of a mistrial. See United States v. Westbrook, 896 F.2d 330, 335 (8th Cir. 1990) ("this court must consider the context in which the question was asked"). Mr. Atilla was being asked (and was answering) a line of questions about several investigations, audits, and/or reviews of the conduct and performance of his employer, Halkbank, and of Halkbank employees, among others. The investigations, audits, and/or reviews were conducted in the aftermath of a series of December 17, 2013 arrests by Istanbul police of Suleyman Aslan, who was then the General Manager of Halkbank, and Reza Zarrab, a prominent if controversial Turkish-Iranian businessman who has been a co-defendant of Mr. Atilla and also a government cooperator in this case. Mr. Zarrab admitted to conducting sanctioned activity via Halkbank and with Halkbank employees.[2] See 12/19/17 Tr. at 2205:1-2208:17.

The line of questioning of Mr. Atilla appears to have considered four separate investigations, audits, or reviews of Halkbank, including (1) an internal "review that was conducted by the bank's auditors[ and] inspectors," id. at 2205:12-13; (2) a bank"review" by an

---

[2] The arrests – which also included Turkish government officials – arose out of a year long investigation focusing on five crimes: "gold smuggling, laundering of criminal proceeds, [] committing these crimes as an organization," "bribery[,] and document forgery." 12/12/17 Tr. at 1590:3-22. All of the individuals who were arrested were subsequently released and the charges against them were dropped. See 12/5/17 Tr. at 941:4-22.

-4-

"independent auditor," id. at 2205:12-14; (3) a "review that [bank regulator] BDDK [Bankacilik Düzenleme ve Denetleme Kurumu] did as an entity," id. at 2208:8; and (4) a "report" purportedly prepared by an "expert [who] c[a]me[] from BDDK" and who "had been appointed by the prosecutor [in the criminal investigation in Istanbul] and had worked with the prosecutor." Id. at 2208:6-19.[3]

The trial transcript confirms that Mr. Atilla was questioned by the Government – without objection by his defense counsel – about these audits or reviews. Mr. Atilla, according to the transcript, appeared to be aware of or familiar with them. Q (AUSA): "What did the internal [Halkbank] investigation find?" A (Defendant): "They checked the procedures. In other words, let me put it this way, there were two different topics; one was the review that was conducted by the bank's auditors, inspectors, and the other one was an independent auditor for the bank. And neither of these individuals found or said anything about the matter at hand after their review." Id. at 2205:10-16. Q (Court): "What was the matter at hand?" A (Atilla): "There were two matters. One was improper granting of [a] loan, and the other one was the procedure that was followed in foreign trade, providing privilege to Reza Zarrab on behalf of somebody else, or in other words, providing Reza Zarrab with a privilege by blocking others from trade because they believed that [Halkbank General Manager] Suleyman Aslan [was] alleged to have received as bribes related to that topic." Id. at 2205:22-2206:4.[4] Mr. Atilla was asked by the government

---

[3] It is somewhat unclear from the testimony how many investigations, audits, or reviews there were in total.

[4] Atilla testified that:

They [i.e. Halkbank's auditors and inspectors] reviewed and said that the loan had not been provided improperly. And they reviewed companies that did foreign trade with Iran, and they said that both, in food and gold trade, even though their volumes

counsel if Atilla had seen a "report" by an "expert [who] c[a]me[] from BDDK" who "had been appointed by the prosecutor and had worked with the prosecutor." Id. at 2208:3-18. He responded: "Yes, I saw it." Id. at 2208:19. Then, government counsel asked the objected to question: "So you remember that the report concluded that you violated the resolutions imposing sanctions on Iran, right?" Id. at 2208:20-21. As noted, defense counsel quickly objected to that question; a sidebar was held; the witness did not answer; and the question was stricken from the record. See id. at 2208:20-2223:11.

And, as noted, defense counsel did not lodge a single objection to the line of questioning about investigations found at the transcript from page 2205 line 7 to page 2208 line 19, i.e. prior to the objected to question. The objected to question came at the end of that line of questions regarding investigations, audits, and reviews.[5]

6- A mistrial, as noted, is an extreme (and unnecessary) result in most circumstances. It is certainly to be avoided where alternative remedies suffice. See Rink, 388 A.2d at 58 n.9; 23A C.J.S. Criminal Procedure and Rights of Accused § 1932; Stinson, 2014 WL 6930974, at *3. On the facts and circumstances presented here, a mistrial is not warranted. See, e.g., Rink, 388 A.2d

---

> were not as high as Reza Zarrab's, that they were also able to conduct trade in those sectors. And if I recall correctly, they even said that the foreign companies were able to do more of the volume. And last, they said with regards to other companies being blocked and Zarrab being given a privilege, there was no basis that would constitute such a thing being happening. And the independent auditor works this way. They do not produce a report that explains how things are done this way or that way. They only write it up if they find something that's negative.

Id. at 2206:15-2207:3.

[5] The broader context in which the question was asked included a very hard fought case with strong (and strong-willed) counsel on both sides.

at 57-58 & nn.8-10; Ramirez, 426 F.3d at 1350, 1353; Westbrook, 896 F.2d at 335; United States v. Eubanks, 876 F.2d 1514, 1516-17 (11th Cir. 1989); United States v. Nance, 1995 WL 541695, at *2-*3 (4th Cir. Sept. 13, 1995).

### Conclusion & Order

For the reasons stated above, the mistrial motion [#389] is denied.

Dated: New York, New York
January 2, 2018

*Richard M. Berman*
Hon. Richard M. Berman, U.S.D.J.