HCKPATI1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

v.                                    S4 15 Cr. 867 RMB

MEHMET HAKAN ATILLA,

                Defendant.

------------------------------x

                                      December 20, 2017
                                      8:20 a.m.


Before:

                    HON. RICHARD M. BERMAN,

                                      District Judge
                                       and a jury


                         APPEARANCES

JOON H. KIM,
        United States Attorney for the
        Southern District of New York
MICHAEL DENNIS LOCKARD,
SIDHARDHA KAMARAJU,
DAVID WILLIAM DENTON, JR.,
DEAN CONSTANTINE SOVOLOS,
        Assistant United States Attorneys


                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

HCKPATI1

                    (APPEARANCES Continued)



HERRICK, FEINSTEIN LLP (NYC)
        Attorneys for defendant Atilla
BY:   VICTOR J. ROCCO, Esq.
        THOMAS ELLIOTT THORNHILL, Esq.
        – and –
FLEMING RUVOLDT, PLLC
BY:   CATHY ANN FLEMING, Esq.
        ROBERT J. FETTWEIS, Esq.
        – and –
McDERMOTT, WILL & EMERY
BY:   TODD HARRISON, Esq.
        – and –
LAW OFFICES OF JOSHUA L. DRATEL, P.C.
BY:   JOSHUA LEWIS DRATEL, Esq.
                    Of counsel


Also Present:
        JENNIFER McREYNOLDS, Special Agent FBI
        MICHAEL CHANG-FRIEDEN, Paralegal Specialist USAO
        MS. ASIYE KAY, Turkish Interpreter
        MS. SEYHAN SIRTALAN, Turkish Interpreter

1              (Trial resumed)

2              (In open court; jury not present)

3              MS. FLEMING:  Judge we've also reached an agreement on

4    how to do the indictment thing if it's okay with you, how to

5    send the indictment back, just send the charging party

6    indictment back instead of the whole front part.

7              THE COURT:  Good.

8              MR. DENTON:  So we're working on a redacted indictment

9    that's just the charging language.

10             THE COURT:  Okay.

11             MR. DENTON:  And then we'll bring that up.

12             MS. FLEMING:  We gave Christine just the bribery.

13             THE COURT:  All right.  I'm going to go back down,

14   then, because you obviously have to read this.  This draft

15   incorporates what we talked about yesterday.  It does entail

16   the bribery and all that stuff, and you may as well just call

17   it a redacted -- not redacted, but a copy of the indictment.

18   If it's still a copy of the indictment, just leave the

19   language.

20             MR. DENTON:  I think you can just refer to a copy of

21   the legal charges in the indictment.

22             THE COURT:  Fine, something like that.  I have some

23   edits, taking some underlining out.  That's an editorial for me

24   to read but not for them.

25             MS. FLEMING:  Okay.

HCKPATI1                    Trial

 1              THE COURT:  Yes and some other thing.  Let's put some

 2      things on the record, then.

 3              MS. FLEMING:  Sure, whatever you'd like.

 4              THE COURT:  So we'll get that out of the way.

 5              MS. FLEMING:  We will waive Mr. Atilla's presence on

 6      the record.

 7              THE COURT:  Okay.  So I guess it's my inadvertence.  I

 8      didn't send you a copy of the updated charges reflecting what

 9      we discussed yesterday, but we are preparing copies now, and

10      you can take a look at that.  We'll push back the conference

11      until you're able to do that.

12              There is a motion for a mistrial in writing from the

13      defense based on one of the questions that Mr. Denton asked

14      yesterday of Mr. Atilla.  That was, I believe, the subject of

15      an interim ruling at sidebar.  I'm not sure, but in any event,

16      what we really do need is to have the government respond in

17      writing, since it's an application for a mistrial.  So I did

18      endorse the defense letter asking the government to respond by

19      5:00 p.m. today.

20              MR. DENTON:  We'll do that, your Honor.  We'll see if

21      we can do it even a little sooner.

22              MS. FLEMING:  Judge, can I tell you why?  Because in

23      the absence of a mistrial, we really think that at least the

24      Court needs to give a curative instruction on what happened

25      with that question.

1          THE COURT:  Well, I'll entertain a proposal --

2          MS. FLEMING:  Okay.

3          THE COURT:  -- as to what I would say.  Okay.  And

4   you'll see if the government agrees with that.

5          I think I ruled on the record with respect to the

6   so-called jailhouse tapes yesterday.

7          MS. FLEMING:  I don't think so.

8          THE COURT:  Did I not?

9          MS. FLEMING:  No, you did it in the back.

10         THE COURT:  So anyway, I was going to say it probably

11  is appropriate for me to do a written ruling, and I'm in the

12  process of having one of the clerks draft something.  So that's

13  two.

14         I did speak to juror No. 10 yesterday, as we

15  discussed, and I excused him.  And that's the juror, you'll

16  recall, that during voir dire said he had a trip coming in

17  January and I guess I -- I think we discussed it.  I can't

18  remember if we did, but....

19         MR. ROCCO:  We did.

20         THE COURT:  Assured him, so to speak, that his trip

21  would not be interrupted.  Since it's already Wednesday, nobody

22  knows how long deliberations would go, if they began and didn't

23  get it completed by Friday, his trip would be in jeopardy, and

24  it would be a big mess; so we excused him.

25         Then, a couple of hours later, I got a call from a

1   another juror, who is sick.  So I got a voicemail actually

2   about 8:00 or 9:00 last night from that juror, and we didn't

3   get back to him.  This morning he called chambers, and I took

4   the call.  I was there at the time, around 7:00, and he said

5   it's that juror.  He hadn't heard back, and my intention was

6   somebody would call him and say he would have to have a

7   doctor's note or have to be sick, et cetera, et cetera.

8         He said he had 103 fever and the flu and a doctor's

9   note.  He said he had a very good experience here, and I'm not

10  joking, he sincerely said that it was a wonderful experience,

11  and he really regretted that he couldn't come.  And I said,

12  well, don't come, obviously, if you're sick.  So we're down

13  another juror.  I think we have one or two to spare, maybe one.

14  So anyway, that's where things stand.  I hope you will confirm

15  I did the right thing with the sick juror.

16              MS. FLEMING:  Absolutely.

17              MR. DENTON:  Yes, your Honor.

18              MR. HARRISON:  Judge, which juror was it, do you know?

19              THE COURT:  I think it was juror No. 11, in the 11th

20  seat.  He called himself juror No. 13, but I think those

21  numbers have changed, and I think he's the fellow who was

22  sitting next to the juror that is going on the trip.  I'm

23  tempted to say something funny, but I usually --

24              MR. ROCCO:  Regret it?

25              THE COURT:  I usually regret it; so I won't, and it

1    may not even be funny.  So, okay.

2              So you tell me when you'd be ready.  Look through the

3    charges.

4              There is one other thing, which I don't know if it's

5    going to be possible to happen, but very early yesterday

6    morning, it turns out, before trial, a very dear friend of mine

7    passed away.  So there is a memorial service today at 1:00,

8    which I'm toying with whether I could go or not and then come

9    back.

10             So I think, realistically, I'd be out of the office

11   from 11:30 to, the latest I think would be 3:30.  So, first, I

12   want to see if it would be okay with you.  What we would do in

13   the interim is, I would, first of all, tell the jury I'll be

14   out, and they should go about their deliberation business, but

15   that I personally wouldn't be here for that period of time.

16   They should do what they would normally do, and if we get any

17   notes, Christine would text them to me or e-mail them to me.

18   And in the worst case, we wouldn't be able to act on the notes

19   unless we could figure out a way that -- you know, who knows

20   what the note might say.

21             Then, as a backup, I thought I would ask if one of --

22   I don't think it would be necessary -- one of my colleagues to,

23   you know, if there was some sort of emergency that required a

24   judge, to be here or something as a result of one of the notes

25   or whatever, if that's okay with you.

1          So there's a couple of pieces to that, seeking your

2     okay.  I'm not sure I'm going to do it.  The way I would do it

3     is I would get a car, an Uber, or something like that, and have

4     them wait for me at the funeral home.

5          MR. ROCCO:  Can we take a moment to talk about that,

6     your Honor?

7          THE COURT:  Sure.

8          (Pause)

9          Incidentally, I should add one more thing.  Don't feel

10    obliged to say yes.  No, no, just because you think I'm asking.

11    If you think in any way it could disadvantage Mr. Atilla, then

12    I wouldn't do it.  So only if you're comfortable, from his

13    point of view, would that be okay.

14          MS. FLEMING:  Judge, we all think you should go.  What

15    we're debating is we don't think you ought to tell the jury

16    you're not going to be here.  In the event there is no note, no

17    harm, no foul.  If there is a note, we can just deal with it,

18    and if we have to delay something until you get back, we delay

19    it.

20          MR. ROCCO:  If there's an emergency, I have no problem

21    having a colleague cover it.

22          THE COURT:  Okay.  Sometimes they send nervous if they

23    send a note and then they send another note and say, where's

24    the answer to our note.

25          MR. DENTON:  I think for that reason it's probaly

HCKPATI1                      Trial

1   better, actually, to tell them that the Court will not be

2   available to respond to notes for that time period.

3            THE COURT:  No?

4            MS. FLEMING:  I don't think they should know you're

5   not going to be here.  If there's a note, we'll deal with it or

6   you'll deal with it with them.  You're still going to be

7   dealing with the note.  I don't want them to feel the pressure

8   of they shouldn't be sending anything out for three or four

9   hours.

10           THE COURT:  Okay.  I understand that.

11           MR. DENTON:  I'll just say, I think the more common

12  situation that this arises is with judges who observe lunch

13  breaks scrupulously, and tell the jury that, you know, from

14  1:00 to 2:00 you should feel free to give any notes you have to

15  the marshal, but you should be aware but the parties will not

16  be available and the Court will not be available to respond to

17  them until 2:00.

18           This is just a slightly longer version of that, and so

19  I don't think there's any reason to tell them don't send out

20  notes, but I think informing them that the Court and the

21  parties will not be able to address them seems reasonable so

22  that they're not wondering what is going on.

23           THE COURT:  Okay.  Well, I'll think about it.

24           MS. FLEMING:  The reason I just don't like that,

25  Judge, is I don't want to discourage them from sending a note.

2350

1          THE COURT:  I see your point.

2          MR. HARRISON:  Just the other thing, Judge, is they

3    could conceivably, during that time, send out a note that we

4    could deal, with even though your Honor is not physically here.

5    If they say we would like to see exhibit whatever, we could get

6    on the phone with you, if necessary, and agree that we can send

7    the exhibit in or whatever so things could still get done.  And

8    that's a common type of note to get during the early hours.

9          THE COURT:  Okay.  So you probably should run that by

10   Mr. Atilla, too.

11         MS. FLEMING:  Yes, we will.

12         THE COURT:  Okay.  So, yes, that's it.  You'll let me

13   know when you're ready to talk about the charges.

14         (Pause)

15         THE COURT:  Did you get copies yet?

16         MS. FLEMING:  We have one set, Judge.

17         MR. ROCCO:  One.

18         THE COURT:  I'll give you each two.

19         MR. ROCCO:  Thank you, Judge.

20         MR. DENTON:  Thank you, Judge.

21         (Pause)

22         THE COURT:  Do you mind going into the robing room

23   because there's press and audience outside.

24         MR. ROCCO:  Sure.

25         MS. FLEMING:  Do you want us to review it first and

HCKPATI1                    Trial

1    then go in?

2              THE COURT:  I'm going to go downstairs; so you can be

3    there.  Actually, I suppose you could stay here.  We'll just

4    keep them out.

5              MS. FLEMING:  Okay.

6              THE COURT:  You should know that these are live.  I

7    didn't realize.

8              MS. FLEMING:  So I can't yell at Mr. Rocco?

9              (Pause)

10             THE COURT:  Are you guys all set?

11             MR. ROCCO:  Just a little bit, your Honor.

12             THE COURT:  Okay.  I think the only changes in there

13   are the ones we agreed to yesterday.

14             (Pause)

15             (In open court; jury not present)

16             THE COURT:  Please be seated.  So as is my practice,

17   we had the balance of the jury charge conference in the robing

18   room without a stenographer, and it is also my practice to

19   allow the parties to indicate for the record, with the

20   stenographer, any objections that they have remaining to the

21   jury instructions that I'm about to read to the jury.  So we'll

22   start with the defense, and you may state any objections that

23   you have.

24             Before you do, Mr. Rocco, I indicated to the parties

25   off the record and now on the record, I don't know if it was on

1    the record before, that there has been an application for a

2    mistrial, and I endorsed the defense application today and

3    asked for a government written response by 5:00 p.m. today.

4              No. 2, I told the parties that there would be a

5    written decision today or tomorrow, certainly whenever there's

6    time, no later than tomorrow, with respect to the jailhouse

7    conversations of Mr. Zarrab.

8              And with that, Mr. Rocco, if there are no objections,

9    that means that the parties agreed with the instructions, with

10   the exception of those that they may have objections to.

11             MR. ROCCO:  Thank you, your Honor.  So on page 46 --

12   these are lengthy; so I will read them slowly -- at the bottom

13   of the page --

14             THE COURT:  You have to speak into the microphone, I

15   think.

16             MR. ROCCO:  At the bottom of the page, on page 46, we

17   object to the language at the end of the first full paragraph

18   on the page and ask that the last sentence of that paragraph,

19   starting "In addition" -- the sentence starting "In addition"

20   should be stricken, and the sentence that should be stricken

21   reads:  "In addition, during the relevant time period, the

22   sanctions allowed penalties against foreign financial

23   institutions with bank accounts in the United States if those

24   foreign financial institutions violated certain rules on

25   assisting transactions with or for the benefit of Iran."

1              On --

2              THE COURT:  May I make this suggestion?  Without

3     waiving any rights, would you be comfortable just reading the

4     language that you think should be in, instead of saying "on

5     page" or do you want to do it page by page?

6              MR. ROCCO:  It's easier for me to do it that way.

7              THE COURT:  Okay.

8              MR. ROCCO:  Because that's how I noted it.

9              THE COURT:  Okay.  No problem.

10             MR. ROCCO:  I'll do it as quickly as I can.

11             THE COURT:  No problem.

12             MR. ROCCO:  On the next page, page 47, after the

13    enumerated -- the paragraph starting "Third," we would like to

14    add a paragraph denominated "fourth," saying:  "Fourth, that

15    the activity for which the defendant is charged had some

16    connection to the United States either by involving a United

17    States person in the conduct or by causing goods, services or

18    technology to be exported or re-exported from the United States

19    as part of the defendant's scheme.  In other words, the

20    violative conduct has to go through the United States.  A

21    United States correspondent account not connected to the

22    conduct at issue is not enough."

23             And at the end of the next paragraph, starting, "as I

24    have mentioned," adding a full sentence saying:  "Conspiring to

25    do activity that is merely sanctionable is not a crime."

1            On page 48, at the end of the first full paragraph,

2    add this sentence:  "If you find Mr. Atilla did not know the

3    transactions were sent through the U.S., then you must acquit

4    him on the charge of conspiring to export U.S. services to Iran

5    or to the government of Iran."

6            On page 49, at the end of the first full paragraph,

7    starting "Second," add the sentence:  "Mere statements that

8    fail to disclose sanctionable activity are not sufficient to

9    convict because they are not transactions within the meaning of

10   the evasion avoidance regulation."

11           And the sentence starting the third paragraph on the

12   page:  "Beginning on July 31, 2012," the word "required" should

13   be changed to "permitted."

14           On the following page, at the end of the paragraph --

15   I'm sorry, at the end of the runover paragraph, following the

16   words "the government of Iran," adding the sentence:  "Two

17   things to keep in mind:  First, the activity I just described

18   could only get a person sanctioned, not convicted of a crime;

19   and second, if the purchaser or acquirer was a private Iranian

20   individual or company, it would not be sanctionable."

21           At the end of the next paragraph, add the following

22   sentence:  "The conduct I have just described would have, at

23   most, led to the financial institution being sanctioned, not

24   convicted of a crime, and if the conduct was conducted with the

25   proceeds of sales of natural gas by Iran, it would not have

1      been sanctionable."

2            At the end of the next paragraph, which starts

3      "beginning on July 1st, 2013," at the end of that paragraph add

4      the language:  "In this period, if the foreign financial

5      institution facilitated the payment for the sale of gold before

6      July 31st, 2013, it would not have been sanctionable or

7      prosecutable, even if the shipment of gold occurred after

8      July 1, 2013."

9            And following that, striking the language starting

10     with "Fourth" through the first runover paragraph onto page 51,

11     and that's it, your Honor.  Thank you for your patience.

12            THE COURT:  Very well.  Anybody else from the defense?

13            MR. HARRISON:  Just one second, please, your Honor.

14            (Pause)

15            Judge, just for the record, it's already in the

16     record, but we do object to the conscious avoidance charge.

17            THE COURT:  Yes.  How about the government?

18            MR. DENTON:  The government requests that the Court

19     retain the so-called Pinkerton instruction originally included

20     in the instructions at pages 29 to 31 distributed this morning.

21     Obviously, the Court's instruction is a correct statement of

22     the applicable law.  We think it's particularly appropriate in

23     this case, where it is an entirely appropriate conclusion for

24     the jury to reach that bank fraud and money laundering, as

25     substantive offenses, were the reasonably foreseeable acts in

1    co-conspirators in furtherance of the charged conspiracies,

2    both to obstruct the enforcement of the sanctions laws and to

3    violate the IEEPA.

4          THE COURT:  So in the conference that we had, I agreed

5    with the defense to delete that instruction.  Among other

6    reasons, I thought it was very complicated for jurors or any of

7    us to grasp, and I just thought it would cause more confusion

8    than not.

9          I take it the government is opposed to the changes

10   suggested by Mr. Harrison and Mr. Rocco?

11         MR. DENTON:  Yes, your Honor.  We believe the

12   conscious avoidance instruction is appropriate, and that the

13   Court's instructions on IEEPA is an accurate statement of the

14   law.

15         THE COURT:  Is the defense in disagreement with the

16   removal of the so-called Pinkerton charge?

17         MR. ROCCO:  We agree with the removal of the Pinkerton

18   charge.

19         THE COURT:  You agree with the removal.

20         MR. ROCCO:  Yes.

21         THE COURT:  So I think that's it.  We worked fast, but

22   not that fast.  So we're retyping the corrections to the

23   instructions, and when that's ready, we'll call in the jury.

24         MS. FLEMING:  There were still just two issues that we

25   had to discuss, one was the one we discussed before that you

HCKPATI1                    Trial

1    asked us to discuss with the client.  He's fine with it.  He

2    has no issues.

3                THE COURT:  Okay.  Great.

4                MS. FLEMING:  And the second was that we had requested

5    a curative instruction.  We don't think it cures the issue that

6    was before the jury, and we would move for a mistrial.  We

7    can't agree on the language.

8                THE COURT:  Was that in your motion?

9                MS. FLEMING:  No.  We don't think it cures it, but if

10   the Court is considering doing a curative instruction, it's the

11   last clear chance.

12               THE COURT:  Did you discuss that with the government?

13               MS. FLEMING:  We showed what we would propose as

14   language.

15               THE COURT:  Hold on one second.  So did you agree

16   with --

17               MR. DENTON:  Your Honor, there's one sentence in the

18   proposed instruction that we disagree with.

19                   I'll also note that, I think, that given that early in

20   the Court's charge you instruct them that questions are not

21   evidence and that, in particular, any question that was

22   objected to or stricken should not be considered, that a

23   separate instruction is not necessary.

24               THE COURT:  Right.  So, why don't you take a look at

25   her language and see if there is consensus.  I think that it's

1   hard to say without seeing the written opposition to the

2   motion.  As a gut reaction, gut-level reaction, one question

3   asked and not answered and objected to and the objection

4   granted and directed the question be stricken from the record,

5   in my experience, certainly is adequate, along with what I say

6   in these instructions generally.  But if you both can agree on

7   something, we have a couple of minutes.  Since we don't have

8   the instructions done yet, I'd be happy to consider it.

9           MR. HARRISON:  Judge, I just had a couple more

10  quick --

11          THE COURT:  One second.

12          (Pause)

13          MR. ROCCO:  Your Honor, so we spent a minute talking

14  about the proposed curative instruction.  We discussed it

15  before we had our conference on the charge.  We cannot agree.

16  I can give you what our proposed language is.

17          THE COURT:  I'll take a look, but I think I'm going to

18  rely on -- well, first, I'm going to see the opposition, but as

19  I said before, one question that hasn't been answered and that

20  was directed be stricken from the record, I can't imagine --

21  there may be some question that could give rise to a mistrial

22  but certainly not that one, in my opinion.

23          MR. ROCCO:  Well, that's the issue we addressed in the

24  letter, and we understand that, your Honor.

25          THE COURT:  Right.

1              MR. ROCCO:  But we think the question was a peculiar

2        question, and that's why we raised it to the Court.

3              THE COURT:  Okay.  I'll hear you.  I'll take what you

4        have.

5              MR. ROCCO:  We didn't write it out for your Honor, or

6        I can give you by hand.  You're a wise man, Judge.  We'll write

7        it out.  Thank you.

8              THE COURT:  That's it.  Store is closed.

9              MR. HARRISON:  Judge?

10             THE COURT:  Store is closed, Mr. Harrison.

11             MR. HARRISON:  I just wanted to put on the record a

12       couple of objections that we discussed, just quick ones that we

13       discussed, for the record.

14             THE COURT:  Okay.

15             MR. HARRISON:  On page 16 of the current draft, we had

16       requested that the second sentence on the "Foreign Evidence

17       Admitted" section be struck.

18             On page 42, defense had requested that in the run-on

19       sentence at the top of page 42, that either the words

20       "improper" or "unlawful" be inserted before "purpose."

21             And then on page 52, we had asked that the first full

22       sentence be stricken, the sentence that starts "The defendant

23       does not have to know" because it's our understanding that,

24       under IEEPA, the defendant does have to know that it's

25       unlawful.

1           THE COURT:  Okay.  Thanks a lot.  So give me a couple

2     of minutes, and we'll see what we can do.

3           (Recess)

4           THE COURT:  We're going to call in the jury now.

5           (Jury present)

6           THE COURT:  Great.  Please be seated, everybody.  As I

7     mentioned to you yesterday, and as I'm about to give the jury

8     instructions, I am going to give a complete set to each of you

9     to take into the jury room at the conclusion of this portion of

10    the trial.

11          So, ladies and gentlemen of the jury, you've now heard

12    all of the evidence in the case, as well as the final arguments

13    of the lawyers for the parties.

14          My duty at this point is to instruct you as to the

15    law.  It is your duty to accept these instructions of law and

16    apply them to the facts as you determine them, just as it has

17    been my duty to preside over the trial and decide what

18    testimony and what evidence is relevant under the law for your

19    consideration.

20          On these legal matters, you must take the law as I

21    give it to you.  If any attorney has stated a legal principle

22    different from any that I state in my instructions, it is my

23    instructions that you must follow.

24          You should not single out any instruction as alone

25    stating the law, but you should consider my instructions as a

1    whole when you retire to deliberate in the jury room.  As I

2    mentioned, you will receive a copy of these instructions

3    verbatim, along with a verdict sheet to be filled out by the

4    jury to take with you into the jury room.  Your decision, or

5    your verdict, must be unanimous.

6         You should not, any of you, be concerned about the

7    wisdom of any rule that I state, regardless of any opinion that

8    you may have as to what the law may be or ought to be.  It

9    would violate your sworn duty to base a verdict upon any other

10   view of the law than the one I give you.

11        Your role, as I've said before, is to consider and

12   decide the fact issues in this case.  You, the members of the

13   jury, are the sole and exclusive determiners of the facts.  You

14   pass upon the evidence.  You determine the credibility or

15   believability of the witnesses.  You resolve whatever conflicts

16   may exist in the testimony.  You draw whatever reasonable

17   inferences and conclusions you decide to draw from the facts as

18   you have determined them, and you determine the weight of the

19   evidence.

20        In determining the facts, you must rely upon your own

21   independent recollection of the evidence.  What the lawyers

22   have said in their opening statements, in their closing

23   arguments, in their objections, or in their questions is not

24   evidence.  Nor is anything I may have said during the trial or

25   may say during these instructions about a fact issue, to be

1    taken instead of your own independent recollection.

2            What I say is not evidence.  In this connection,

3    remember that a question put to a witness is never evidence.

4    Only the answer is evidence.  But you may not consider any

5    answer as to which I sustained an objection or that I directed

6    you to disregard or that I directed be struck from the record.

7            If there is any difference or contradiction between

8    what any lawyer has said in their arguments to you and what you

9    decide the evidence showed, or between anything I may have said

10   and what you decide the evidence showed, it is your view of the

11   evidence, not the lawyers' and not mine, that controls.

12           I also ask you to draw no inference from the fact that

13   upon occasion I may have asked questions of certain witnesses.

14   These questions were intended only for clarification or to move

15   things along, and certainly were not intended to suggest any

16   opinions on my part as to the verdict you should render or

17   whether any of the witnesses may have been more credible than

18   any of the other witnesses.  It is important that you

19   understand that I wish to convey no opinion as to the verdict

20   you should render in this case and that if you, nevertheless,

21   believe that I did convey an opinion, you should not, in any

22   way, follow it.

23           In determining the facts, you must weigh and consider

24   the evidence without regard to sympathy, prejudice or passion

25   for or against any party, and without regard to what the

1    reaction of the parties or the public to your verdict may be.

2    I will later discuss with you how to pass upon the credibility

3    of witnesses.

4              I remind you that the indictment in this case is not

5    evidence.  It merely describes the charges made against the

6    defendant.  It is a set of accusations.  It may not be

7    considered by you as evidence of the guilt of the defendant.

8    Only the evidence, or lack of evidence, decides that issue.

9              A copy of the statutory allegations in the indictment

10   will be furnished to you when you begin your deliberations.  In

11   summary, the counts set forth in the indictment allege as

12   follows:

13             Count One charges that from at least in or about 2010,

14   up to and including in or about 2015, the defendant,

15   Mr. Atilla, participated in a conspiracy to defraud the United

16   States.  It is alleged that the defendant agreed with others to

17   impair, impede and obstruct the lawful and legitimate

18   governmental functions and operations of the United States

19   Department of the Treasury, in violation of what's called Title

20   18, United States Code, Section 371.

21             That's a summary.  These are each going to be

22   summaries of the counts set forth in the indictment.

23             Count Two charges that, from at least in or about

24   2010, up to and including in or about 2015, the defendant

25   participated in a conspiracy to violate a license, order,

HCKPATI1                         Charge

1    regulation or prohibition issued pursuant to the International

2    Emergency Economic Powers Act, referred to in this trial as

3    IEEPA, I-E-E-P-A.

4              Count Three charges, in summary, that from at least in

5    or about 2010, up to and including in or about 2015, the

6    defendant engaged in the substantive offense of bank fraud.

7              I'm going to explain the difference between a

8    substantive offense and conspiracy offenses in a couple of

9    minutes.

10             Count Four charges that, from at least in or about

11   2010, up to and including in or about 2015, the defendant

12   participated in a conspiracy to commit bank fraud.

13             Count Five charges that, from at least in or about

14   2010, up to and including in or about 2015, the defendant

15   engaged in the substantive count of money laundering.

16             Count Six charges that, from at least in or about

17   2010, up to and including 2015, the defendant participated in

18   the conspiracy to commit money laundering.  Six counts.

19             The evidence from which you are to decide what the

20   facts are in this case consists of, first, the sworn testimony

21   of witnesses on both direct and cross-examination; two, the

22   documents and exhibits that were received in evidence; and

23   three, any stipulations of testimony.  Nothing else is

24   evidence.

25             You should draw no inference or conclusion, for or

1    against, any party by reason of lawyers making objections or my

2    rulings on such objections.  Counsel have not only the right

3    but the duty to make legal objections when they think that such

4    objections are appropriate.  You should not be swayed for or

5    against either side simply because counsel for any party has

6    chosen to make an objection.  Nor should you be swayed by any

7    ruling I made on an objection.  Whether or not I may have

8    sustained more objections for one side or the other has no

9    bearing on your function to consider all of the evidence that

10   was admitted.

11           Further, do not concern yourself with what was said at

12   sidebar conferences or during my discussions with counsel.  Nor

13   does it make any difference whether any lawyer or I asked for a

14   sidebar conference.  Those discussions related to rulings of

15   law and not to matters of fact.

16           At times, I may have admonished a lawyer or a witness

17   or directed a witness to be responsive to questions or to keep

18   his or her voice up.  At times, I may have questioned a witness

19   myself or made comments to a lawyer.  Any questions that I

20   asked or instructions or comments that I gave were intended

21   only to move things along or to clarify the presentation of

22   evidence and to bring out something which I thought was

23   unclear.

24           You should draw no inference or conclusion of any

25   kind, favorable or unfavorable, with respect to any witness or

HCKPATI1                         Charge

1   any party in the case by reason of any comment, any question or

2   any instruction of mine.  Nor should you infer that I have any

3   views as to the credibility of any witness, as to the weight of

4   the evidence, or as to how you should decide any issue that is

5   before you.  That is entirely your role.

6          The defendant has pleaded not guilty to the charges in

7   the indictment.  As a result of his plea of not guilty, the

8   burden is upon the prosecution, which is to say the government,

9   to prove the defendant's guilt beyond a reasonable doubt.  This

10  burden never shifts to the defendant for the simple reason that

11  the law never imposes upon a defendant in a criminal case the

12  burden or duty of testifying himself or calling any witnesses

13  or of locating or producing any evidence.

14         The law presumes the defendant to be innocent of the

15  charges against him.  I, therefore, instruct you that the

16  defendant is to be presumed by you to be innocent when the

17  trial began and throughout your deliberations and until such

18  time, if it comes, that you, as a jury, are unanimously

19  satisfied that the government has proved him guilty beyond a

20  reasonable doubt.

21         The presumption of innocence alone is sufficient to

22  acquit the defendant unless you, as jurors, are unanimously

23  convinced beyond a reasonable doubt of his guilt, after a

24  careful and impartial consideration of all of the evidence in

25  this case.  If the government fails to sustain its burden as to

HCKPATI1                          Charge

1    the defendant, you must find the defendant not guilty.

2              I have said that the government must prove the

3    defendant guilty beyond a reasonable doubt, and the question

4    naturally is:  What is reasonable doubt?  The words almost

5    define themselves.  It is a doubt based upon reason and common

6    sense.  It is a doubt that a reasonable person has after

7    carefully weighing all of the evidence.  It is a doubt which

8    would cause a reasonable person to hesitate to act in a matter

9    of importance in his or her own life.

10             Proof beyond a reasonable doubt must, therefore, be

11   proof of such a convincing character that a reasonable person

12   would not hesitate to rely and act upon it in the most

13   important of his or her own affairs.  A reasonable doubt is not

14   a caprice or a whim.  It is not a speculation or a suspicion.

15   It is not an excuse to avoid the performance of an unpleasant

16   duty, and it is not sympathy.

17             In a criminal case, the burden is, at all times, upon

18   the government to prove guilt beyond a reasonable doubt.  The

19   law does not require the government to prove guilt beyond all

20   possible doubt.  Proof beyond a reasonable doubt is sufficient

21   to convict.  The burden never shifts to the defendant, which

22   means that it is always the government's burden to prove each

23   of the elements of the crimes charged beyond a reasonable

24   doubt.

25             If, after fair and impartial consideration of all of

HCKPATI1                        Charge

1    the evidence, you have a reasonable doubt, it is your duty to

2    acquit the defendant.  On the other hand, if, after a fair and

3    impartial consideration of all of the evidence, you are

4    satisfied of the defendant's guilt beyond a reasonable doubt,

5    you should vote to convict.

6           You have had the opportunity to observe all the

7    witnesses, including the expert witnesses, and it is now your

8    job to decide how believable each witness was in his or her own

9    testimony.  You are the sole determiners of the credibility of

10   each witness and of the importance of witness testimony.

11          So how do you determine where the truth lies?  You

12   should use all the tests for truthfulness that you would use in

13   determining matters of importance to you in your everyday

14   lives.  You should consider any bias or hostility that a

15   witness may have shown for or against any party, as well as any

16   interest the witness has in the outcome of the case.  It is

17   your duty to consider whether the witness has permitted any

18   such bias or interest to color his or her testimony.

19          You should consider the opportunity that the witness

20   had to see, hear, and know the things about which they

21   testified, the accuracy of their memory, their candor or lack

22   of candor, their intelligence, their reasonableness and

23   probability of their testimony, and its consistency, or lack of

24   consistency, and its corroboration, or lack of corroboration,

25   with other believable testimony.

1          You watched the witnesses testify.  Everything a

2     witness said or did on the witness stand counts in your

3     determination.  How did the witness appear?  What was the

4     witness' demeanor while testifying?  Often, it is not what

5     people say, but how they say it that moves us.

6          In deciding whether to believe a witness, keep in mind

7     that people sometimes forget things.  You need to consider,

8     therefore, whether in such a situation the witness' testimony

9     reflects an innocent lapse of memory or an intentional

10    falsehood, and that may depend on whether it has to do with an

11    important fact or with only a small detail.  It is not the

12    number of witnesses called in a case but, rather, their

13    credibility when called to the witness stand that is directly

14    at issue.

15         In addition, the fact that a witness may be employed

16    as a law enforcement official does not mean that his or her

17    testimony is deserving of more or less consideration, or a

18    greater or lesser weight, than that of an ordinary witness.

19         If you find that any witness has willfully testified

20    falsely as to a material fact, that is to say an important

21    matter, the law permits you to disregard completely the entire

22    testimony of that witness upon the principle that one who

23    testifies falsely about one material fact, is likely to testify

24    falsely about everything.

25         You are not required, however, to consider such a

1    witness as totally unworthy of belief.  You may accept so much

2    of the witness' testimony as you deem true and disregard what

3    you feel is false.  As the sole judges of the facts, you must

4    decide which of the witnesses you will believe, what portion of

5    their testimony you accept and what weight you will give to it.

6              You've heard from the government witness, Reza Zarrab,

7    who testified that he actually committed crimes in the past,

8    including the crimes charged in the indictment in this case.

9              The government argues, as it is permitted to do, that

10   it must take its witnesses as it finds them.  It argues that

11   frequently only people who themselves take part in criminal

12   activity have the knowledge required to show criminal behavior

13   by others.

14             For those very reasons, the law allows the use of

15   testimony by people who have committed crimes.  Indeed, it is

16   the law in federal courts that such testimony may be enough, in

17   and of itself, for a conviction, if the jury finds that the

18   testimony establishes guilt of the defendant beyond a

19   reasonable doubt.

20             However, it is also the case that such testimony is of

21   such a nature that it must be scrutinized with great care and

22   viewed with particular caution when you decide how much of the

23   testimony to believe.

24             I've given you some general instructions on

25   credibility, and I will not repeat them all here.  However, let

me say a few things to consider during your deliberations on
the subject of testimony from a cooperating witness.

You should ask yourselves whether the witness would
benefit more by lying or by telling the truth.  Was the
witness' testimony made up in any way because the witness
believed or hoped that he would somehow receive favorable
treatment by testifying falsely?  Or did the witness believe
his interests would best be served by testifying truthfully?
If you believe that the witness was motivated by hopes of
personal gain, was the motivation one that would cause him to
lie, or was it one that would cause him to tell the truth?  Did
these motivations color the witness' testimony?

You should look at all of the evidence in deciding
what credence and what weight, if any, you want to give to the
witness' testimony.

Also, you heard testimony about an agreement between
the government and the cooperating witness.  I must caution you
that it is of no concern of yours why the government made an
agreement with the witness.  Your sole concern is whether a
witness has given truthful testimony, in part or in whole, here
in this courtroom before you.

There has been evidence introduced at trial that the
government used, and that was Mr. Huseyin Korkmaz, as a
confidential source in this case.  I instruct you that there is
nothing improper in the government's use of confidential

HCKPATI1                    Charge

1   sources and, indeed, certain criminal conduct never would be

2   detected without the use of such confidential sources.

3           You, therefore, should not concern yourself with how

4   you personally feel about the use of confidential sources

5   because that is really beside the point.  Put another way, your

6   concern is to decide whether the government has proved the

7   guilt of the defendant beyond a reasonable doubt, regardless of

8   whether the evidence was obtained by the use of confidential

9   sources.

10          On the other hand, where confidential sources testify,

11  as happened here, the testimony must be examined with greater

12  scrutiny than the testimony of an ordinary witness.  You should

13  consider whether the confidential source received any benefits

14  or promises from the government which would motivate them to

15  testify falsely against the defendant.  For example, they may

16  believe that they will only continue to receive these benefits

17  if they produce evidence of criminal conduct.

18          If you decide to accept their testimony, after

19  considering it in the light of all the evidence in the case,

20  then you may give it whatever weight, if any, you find it

21  deserves.

22          You've also heard testimony from what we call expert

23  witnesses.  They included Lisa Palluconi, she testified as to

24  Iran sanctions, as an Iran sanctions program as an expert;

25  also, Mark Dubowitz testified about Iran and Iranian sanctions

1    as an expert; Anush Djahanbani, D-j-a-h-a-n-b-a-n-i, testified

2    as a foreign language expert, the language was Farsi; and

3    Bulent Bulut, B-u-l-u-t, also a foreign language expert

4    testified about Turkish language.

5           An expert is allowed to express his or her opinion on

6    matters about which he or she has specialized knowledge or

7    training.  Expert testimony is presented to you on the theory

8    that someone who is experience in the field can assist you in

9    understanding the evidence or in reaching an independent

10   decision on the facts.

11          In weighing the expert's testimony, you may consider

12   the expert's qualifications, his or her opinions, his or her

13   reasons for testifying, as well as all of the other

14   considerations that ordinarily apply when you are deciding

15   whether to believe a witness' testimony.

16          You may give expert testimony whatever weight, if any,

17   you find it deserves in light of all of the evidence in this

18   case.  You should not, however, accept this witness testimony,

19   the expert witness' testimony, merely because he or she is an

20   expert.  Nor should you substitute it for your own reason,

21   judgment and common sense.  The determination of the facts in

22   this case rests solely with you, the jurors.

23          There are two kinds of evidence; one is called direct

24   and the other circumstantial.  Direct evidence is direct proof

25   of a fact, such as testimony by a witness about what that

1    witness personally experienced through his or her own senses,

2    which is to say something seen, felt, touched, heard or tasted.

3    Direct evidence may also be in the form of an exhibit, where

4    the fact to be proven is its present existence or condition.

5         Circumstantial evidence is evidence which tends to

6    prove a disputed fact by proof of other facts.  There's the

7    simple example of circumstantial evidence which I use, and

8    others do also, other judges do, as well, and it goes something

9    like this.

10        Assume that when you came into the courthouse this

11   morning, the sun was shining and it was a nice day.  Assume

12   that the courtroom blinds were drawn, as they are, and you

13   could not look outside.  But assume further that, as you are

14   sitting here, someone walks into the courtroom with an umbrella

15   that is dripping wet, and then a few minutes later another

16   person also were to enter the courtroom, let's assume, with a

17   wet umbrella.  Now, you cannot look outside the courtroom on

18   the facts that I gave you because the blinds are drawn, and so

19   you cannot see whether or not it's raining for yourselves.  So

20   you have no direct evidence of that fact.  But on the

21   combination of facts which I suggested to you and asked you to

22   assume, it would be reasonable for you to conclude that it had

23   been raining.

24        That is all there is to circumstantial evidence.  You

25   infer on the basis of reason and experience and common sense

1    from one established fact the existence or non-existence of

2    some other fact.

3           The matter of drawing inferences from facts in

4    evidence is not a matter of guesswork or speculation.  An

5    inference is a logical, factual conclusion which you might

6    reasonably draw from other facts that have been proved.

7           Circumstantial evidence is of no less value than

8    direct evidence, and the law makes no distinction between

9    direct evidence and circumstantial evidence, but simply

10   requires that your verdict must be based on all the evidence

11   presented.

12          You have heard testimony about evidence that was

13   recovered as a result of a foreign, in this case Turkish,

14   investigation.  This evidence was properly admitted into this

15   case and may be properly considered by you.  Whether you

16   approve or disapprove of how it was obtained should not enter

17   into your deliberations because I now instruct you that the use

18   of this evidence is entirely lawful.  However, it is up to you,

19   the jurors, to decide the weight, if any, to be provided by any

20   foreign evidence.

21          We have, among the exhibits received in evidence, some

22   documents that are redacted.  Redacted means that part of the

23   document or recording was taken out, and you are to concern

24   yourself only with the part of the item that has been admitted

25   into evidence.  You should not consider any possible reasons

1    why the other part of it has been deleted.

2           The defendant is, as reflected in the summary of

3    counts that I mentioned earlier, charged in what are referred

4    to as two substantive counts, and substantive counts are

5    contrasted with what are called conspiracy counts, and they are

6    as follows:

7           The two substantive counts are found in Count Three,

8    which charges the defendant with the substantive offense of

9    bank fraud, and Count Five, which charges the defendant with

10   the substantive offense of money laundering.

11          For purposes of ease of your understanding of these

12   instructions, as will become hopefully clear, I'm starting with

13   the substantive counts and then following with the conspiracy

14   counts.  So there are two substantive counts and then four

15   conspiracy counts, and I'll deal with them in that order.  It's

16   a little bit different order than is set forth in the

17   indictment.

18          Although, as you've heard, this is not the order in

19   which the counts are presented in the indictment, the ordering

20   of the counts is of no legal significance in these

21   instructions.  So starting with the two substantive counts, and

22   this is true of all of the counts, they are somewhat detailed;

23   so bear with me.

24          Bank fraud, that's found in Count Three of the

25   indictment.  It's the substantive count.  Count Three charges

HCKPATI1                         Charge

1    that from, at least in or about 2010, up to and including in or

2    about 2015, the defendant executed and attempted to execute a

3    scheme to defraud one or more United States financial

4    institutions and, in particular, HSBC Bank U.S.A., Deutsche

5    Bank Trust Company Americas, UBS Bank U.S.A., BNY Mellon,

6    Citibank, JP Morgan Chase Bank, Bank of America and Wells Fargo

7    Bank.

8            The defendant, as noted, is also charged with a

9    separate count of conspiracy to commit bank fraud, and you

10   should bear in mind that the law relating to bank fraud

11   discussed here will also apply with regard to the conspiracy to

12   commit bank fraud that is charged against the defendant, as

13   will be explained when I discuss that alleged conspiracy.

14           (Continued on next page)

HCK3ATI2                         Jury Charge

1            THE COURT:  So that in fact is why I put the

2       substantive counts first, because they, in two instances of the

3       two counts, they also come up in conspiracies later on.  So

4       what I explain in connection with the substantive counts will

5       also apply with the conspiracy that relates to those two

6       counts.

7            So here are the elements of bank fraud.  To meet its

8       burden of proof with respect to bank fraud, the government must

9       prove beyond a reasonable doubt three essential elements which

10      I'll explain to you in some detail.

11           The first element of bank fraud is this:  The first

12      element that the government has to prove beyond a reasonable

13      doubt is that the defendant executed or attempted to execute a

14      scheme or artifice to defraud a bank, and here the banks again

15      are HSBC Bank U.S.A., Deutsche Bank Trust Company of the

16      Americas, UBS Bank U.S.A., BNY Mellon, Citibank, JPMorgan Chase

17      Bank, Bank of America, and Wells Fargo Bank, or, this is in the

18      alternative, (2) that he executed or attempted to execute a

19      scheme or artifice to obtain money owned by or under the

20      custody and control of one or more of such banks, by means of

21      false or fraudulent pretenses, representations or promises that

22      were material to the scheme.

23           So let me say that again so you can follow it perhaps

24      a little more easily.

25           The first element that the government must prove

1    beyond a reasonable doubt is that the defendant (1) executed or

2    attempted to execute a scheme or artifice to defraud a bank,

3    the banks that I listed before, or (2) that he executed or

4    attempted to execute a scheme or artifice to obtain money owned

5    by or under the custody and control of one or more of such

6    banks by means of false or fraudulent pretenses,

7    representations or promises that were material to the scheme.

8          Before I define these terms for you, let me explain

9    that the government needs to prove either of these two

10   alternatives, one or two, that there existed a scheme or

11   artifice to defraud a bank, or that there was a scheme or

12   artifice to obtain money, funds, credits or asset under the

13   custody or control of that bank by means of fraudulent

14   pretenses, representations or promises.  These two concepts are

15   not necessarily mutually exclusive.  If you find that either

16   one of the schemes or artifices or both existed, then the first

17   element of bank fraud is satisfied.  However, you must be

18   unanimous in your view as to the type of scheme or artifice

19   that existed.

20         Let me explain these terms.  A "scheme or artifice" is

21   simply a plan, device or a course of conduct to accomplish an

22   objective.

23         A "scheme to defraud a bank" is a pattern or course of

24   conduct designed to deceive a bank into releasing money or

25   property.  It is a term that embraces all possible means --

HCK3ATI2                         Jury Charge

however ingenious, clever or crafty -- by which a person seeks

to gain some improper advantage.  For example, a scheme to

defraud can be accomplished through trickery, deceit,

deception, or swindle.  It includes intentional

misrepresentation and false suggestion, suppression or

concealment of the truth.

          The second of the two types of schemes mentioned

includes one to obtain a bank's money by means of a false or

fraudulent pretense, representations or promises.  The

government must show that these false or fraudulent pretenses,

representations or promises were directed at the bank with the

intention of deceiving it.  The misrepresentations may be

written, oral, or arise from a course of conduct intended to

communicate false facts to the bank.  The deceptive means that

are prohibited are not limited to active misrepresentations or

lies told to the bank.  Just as affirmatively stating facts as

true when the facts are not true may constitute a false

representation, the law recognizes that false representations

need not be based on spoken or written words alone.  The

deception may arise from the intentional omission or

concealment of facts that make what was written, said or done

deliberately misleading.

          False representations and pretenses must be material.

We use the word "material" to distinguish between the kinds of

statements we care about and those that are of no real

1    importance.  So a material fact is one which reasonably would

2    be expected to be capable of influencing a reasonable and

3    prudent person relying on the statement in making a decision.

4    That means that if you find a particular statement of fact to

5    have been untruthful, before you can find that statement or

6    omission to be material, you must also find that the statement

7    or omission was one that would have been capable of influencing

8    a reasonable person in making such a decision.  Actual reliance

9    by the bank on the representations is not required.  It is

10   sufficient if the misrepresentation is one that is capable of

11   influencing the bank's decision and is intended to do so.

12          In order to establish the existence of a scheme, the

13   government is not required to establish that the scheme

14   actually succeeded -- that is, that a schemer realized any gain

15   from the scheme or that the intended victim suffered any loss.

16   The issue is whether there was such a scheme.  Thus, it is not

17   necessary for the government to prove that the scheme

18   succeeded, just that the scheme was devised and employed.

19          If you find that the government has sustained its

20   burden of proof that a scheme to defraud a bank or to obtain

21   money by false pretenses did exist as charged, you next should

22   consider the second element of bank fraud.  And that is as

23   follows:

24          To meet its burden of proof with respect to the bank

25   fraud, the second element that the government must prove beyond

1   a reasonable doubt is that the defendant executed, attempted to

2   execute, or participated in the scheme, knowingly, willfully,

3   and with specific intent to defraud the bank or to obtain money

4   owned or possessed by the bank, or under the bank's custody or

5   control.

6              To act with "intent to defraud" means to act willfully

7   and with intent to deceive.

8              The government is not required to prove that the

9   defendant intended permanently to deprive the banks of their

10  property or that the banks suffered a loss or that the

11  defendant personally profited by his acts.  It is sufficient if

12  the defendant intended through the scheme to defraud to obtain

13  the use of the victim's money or property for a period of time,

14  even if he ultimately intended to return it, or if the

15  defendant intended to obtain the use of the victim's money or

16  property by deliberately depriving them of information that was

17  material to their decision on how to use or invest their money

18  or property.

19             If you find that the defendant did not intend to

20  deprive the banks of their property or that the bank suffered

21  no loss or that the defendant did not profit by his acts, you

22  may consider this evidence in determining whether the defendant

23  had the intent to defraud the banks.

24             To "participate" in a scheme to defraud means to

25  associate oneself with it with a view and intent to make it

1    succeed.

2          An act is done "knowingly" if it is done deliberately

3    and purposefully.  That is, a defendant's act must have been

4    the product of his conscious objective, rather than the product

5    of a mistake or accident or mere negligence, carelessness or

6    recklessness or some other innocent reason.

7          And "willfully" means to act with knowledge that one's

8    conduct is unlawful and with the intent to do something the law

9    forbids, that is to say with a bad purpose to disobey or

10   disregard the law.

11         "Unlawfully" means simply contrary to law.  A

12   defendant need not have known that he or she was breaking any

13   particular law or any particular rule.  A defendant need only

14   have been aware of the generally unlawful nature of his or her

15   acts or plans.

16         I said there were three elements of bank fraud.

17   That's two.  Here's the third:

18         To meet its burden of proof with respect to bank

19   fraud, the third and final element that the government must

20   also prove beyond a reasonable doubt is that the banks in

21   question, HSBC Bank U.S.A., Deutsche Bank Trust Company

22   Americas, UBS Bank U.S.A., BNY Mellon, Citibank, JPMorgan Chase

23   Bank, Bank of America and Wells Fargo Bank, that is, the banks

24   that were subject of the scheme or artifice to defraud, were,

25   at the time of the execution or attempted execution of the

1  fraudulent scheme, federally insured financial institutions.

2  This simply means that the banks deposits had to be insured by

3  the United States Federal Deposit Insurance Corporation.

4        The government need not show that the defendant knew

5  that the banks in question were federally insured to satisfy

6  this third element.

7        So that's one count.  I said there are six.  I said

8  you need patience.  So, five to go.

9        So the second count is the second substantive count.

10  After we finish the second count, we'll turn to the conspiracy

11  counts.

12        The second substantive count is found in Count Five of

13  the indictment and it's called money laundering.  The second

14  substantive count is money laundering.  Count Five of the

15  indictment charges the defendant with unlawfully transporting

16  or attempting to transport funds or monetary instruments to or

17  from the United States, with an intent to promote certain

18  criminal offenses.  And that was done in violation of 18,

19  United States Code, Section 1956 (a)(2)(A).  This crime is

20  commonly called money laundering.

21        Title 18, United States Code, Section 1956 (a)(2)(A)

22  provides in pertinent part as follows:

23        Whoever transports, transmits, or transfers, or

24  attempts to transport, transmit, or transfer, a monetary

25  instrument or funds from a place outside the United States to a

HCK3ATI2                          Jury Charge

 1    place in the United States, from or through a place outside the

 2    United States, with the intent to promote the carrying on of

 3    specified unlawful activity, is guilty of an offense against

 4    the United States.

 5         Apart from his alleged participation in substantive

 6    count of money laundering, as I said before, the defendant is

 7    also charged with a separate offense of a conspiracy to commit

 8    money laundering which will be discussed later on.  You should

 9    bear in mind that the law relating to money laundering, that is

10    to say, the substantive elements which I've been going over

11    with you, those elements of money laundering discussed here

12    also apply with regard to the conspiracy to commit money

13    laundering also charged against the defendant.

14         In order to prove the defendant guilty of money

15    laundering, the government must prove beyond a reasonable doubt

16    the following two elements which I will describe in detail:

17         The first element that the government must prove

18    beyond a reasonable doubt is that the defendant transported,

19    transmitted or transferred, or attempted to transport, transmit

20    or transfer, a monetary instrument or funds from a place in the

21    United States to or through a place outside the United States

22    or to a place in the United States from or through a place

23    outside the United States.

24         Second, the government must prove beyond a reasonable

25    doubt that the defendant did so with the intent to promote the

HCK3ATI2                          Jury Charge

1    carrying out of a specified unlawful activity.

2             I'm going to discuss those two elements in more

3    detail.

4             The first element of money laundering.  The first

5    element, which the government must prove beyond a reasonable

6    doubt, is that the defendant transported, transmitted, or

7    transferred or attempted to transport, transmit, or transfer, a

8    monetary instrument or funds from a place in the United States

9    to or through a place outside the United States, or to a place

10   in the United States from or through a place outside the United

11   States.

12            A "monetary instrument" includes, among other things,

13   currency or a coin of the United States, for example U.S.

14   dollars, or any other country, travelers checks, cashiers

15   checks, bank checks, personal checks, investment securities,

16   and other negotiable instruments.

17            "Funds" refers to money or negotiable paper which can

18   be converted into currency.

19            "Transport," "transmit" and "transfer" are not really

20   words that require definition.  They are words that have an

21   ordinary, every day meaning.

22            The government need not prove that the defendant

23   physically carried the funds or monetary instruments in order

24   to prove that the defendant is responsible for transporting or

25   transmitting it.  All that is required is proof that the

HCK3ATI2                         Jury Charge

1    defendant caused the funds or monetary instrument to be

2    transported, transmitted, or transferred.

3              I said there were two elements to money laundering.

4    Here's the second one:  The second element that the government

5    must prove beyond a reasonable doubt is that the defendant

6    acted with the intent to promote the carrying out of specified

7    unlawful activity.

8              And I instruct you as a matter of law that the term

9    "specified unlawful activity" includes (1) bank fraud and the

10   conspiracy to commit bank fraud, as charged in Counts Three and

11   Four respectively in the indictment, and (2) a conspiracy to

12   violate the IEEPA as charged in Count Two.

13             To act knowingly and intentionally means to act

14   deliberately and purposefully, not by mistake or accident, with

15   a deliberate purpose of promoting, facilitating or assisting

16   the carrying on of the specified unlawful activity, namely

17   here, (i) bank fraud and/or bank fraud conspiracy; and (ii) a

18   conspiracy to violate IEEPA.

19             Now there is a concept that I want to explain to you

20   which is referred to as "aiding and abetting" the substantive

21   offenses of bank fraud and money laundering.  So this applies

22   to the two substantive counts which I've just explained to you.

23             With respect to the substantive bank fraud charge,

24   Count Three of the indictment, and the substantive money

25   laundering charge, Count Five of the indictment, I need to

HCK3ATI2                         Jury Charge

instruct you about what is called aiding and abetting the

commission of those crimes.  Aiding and abetting is an

alternative theory on which somebody can be convicted of a

substantive crime.  In other words, you may also find the

defendant guilty of the bank fraud and/or the money laundering

counts if you find that he aided and abetted the commission of

those crimes.

          The aiding and abetting statute is Section 2(a) of

Title 18 of the United States Code, which provides that:

          Whoever commits an offense against the United States,

or aids, abets, counsel, commands, induces or procures its

commission, is punishable as a principal.

          Under the aiding and abetting statute, it is not

necessary for the government to show that defendant himself

personally committed the bank fraud or the money laundering

with which he is charged in order for you to find him guilty.

          A person who aids, abet, counsels, commands, induces

or procures another to commit an offense is just as guilty of

that offense as if he committed it himself.

          Accordingly, you may find the defendant guilty on the

substantive crimes of bank fraud or money laundering if you

find beyond a reasonable doubt that the government has proved

that another person actually committed the crime, and that

defendant knowingly aided and abetted that person in the

commission of either of those offenses.

HCK3ATI2                          Jury Charge

1           As you can see, the first requirement is that another

2     person has in fact committed the crime charged.  Obviously, no

3     one can be convicted of aiding and abetting the criminal act of

4     another if no crime was committed by the other person in the

5     first place.  But if you do find that a crime was committed,

6     then you must consider whether the defendant aided or abetted

7     the commission of that crime.  And here we're talking about the

8     two substantive offenses.  In order to aid or abet another to

9     commit a crime, it is necessary that the defendant willfully

10    and knowingly associated himself in some way with the crime,

11    and that he willfully and knowingly and with the specific

12    intent required for the commission of the substantive crime

13    seeks by some act to help make the crime succeed.

14          Participation in a crime is willful if action is taken

15    voluntarily and intentionally and with the specific intention

16    to do something that the law forbids, or, in the case of a

17    failure to act, with the specific intent to fail to do

18    something the law requires to be done; that is to say, with a

19    bad purpose, either to disobey or to disregard the law.

20          The mere presence of the defendant where a crime is

21    being committed, even coupled with knowledge by the defendant

22    that a crime is being committed, or the mere acquiescence by

23    the defendant in the criminal conduct of others, even with

24    guilty knowledge, is not sufficient to establish aiding and

25    abetting.

HCK3ATI2                          Jury Charge

1           An aider and abettor must have some interest in the

2     criminal venture.  You may not infer that the defendant was

3     guilty of participating in criminal conduct merely from the

4     fact that he associated with another person who was guilty of

5     wrongdoing.

6           To determine whether defendant aided or abetted the

7     commission of bank fraud or money laundering, the two

8     substantive counts, ask yourselves these questions:

9           Did he participate in the crime charged as something

10    he wished to bring about?  Did he associate himself with the

11    criminal venture, knowingly and willfully and with the specific

12    intent to commit the crime?  And did he seek by his actions to

13    make the criminal venture succeed?

14          If the defendant did, then he is an aider and abettor

15    and therefore guilty of the offense.  If he did not, then he is

16    not an aider and abettor and is not guilty of that offense.

17          I'm going to pause for a second and catch my breath

18    before we turn to the conspiracy counts.

19          So let's turn to the conspiracy counts, they are

20    charged in Counts One, Two, Four and Six of the indictment.

21    There is four conspiracies charged.

22          Defendant Mr. Atilla is also charged in four

23    conspiracy counts.  He's charged in participating in

24    conspiracies to (i) violate federal statutes that make it

25    unlawful to defraud the United States; (ii) violate the

HCK3ATI2                          Jury Charge

1    International Emergency Economic Powers Act, IEEPA; (iii)

2    commit bank fraud; and (iv) commit money laundering.

3              Three and four, those are the substantive counts that

4    I addressed earlier.

5              Each of the four conspiracy counts will be discussed

6    in some detail below.  It may be helpful when you get in the

7    jury room to read through the indictment when considering these

8    counts.  Indeed, that may help you with respect to any or all

9    of the counts, so I encourage you to do that.

10             A conspiracy to commit a crime is an entirely separate

11   and different offense from the substantive crime or crimes that

12   may be the objective of the conspiracy.  The essence of the

13   crime of conspiracy is an agreement or understanding to violate

14   the law, and thus, a conspiracy may exist even if it should

15   fail in its purposes.

16             Consequently, in a conspiracy, there is no need to

17   prove that the crime or crimes that were the objective of the

18   conspiracy were actually committed.  The point is that the

19   crime or crimes that were the objectives of the conspiracy need

20   not have been actually committed for a conspiracy to exist.

21   So, for example, even if you do not find that the defendant

22   committed the substantive count of bank fraud, you may still

23   find him guilty of committing the alleged conspiracy to commit

24   bank fraud.

25             So the first conspiracy count charges that from at

1    least in or about 2010, up to and including in or about 2015,

2    the defendant agreed with others to impair, impede, and

3    obstruct the lawful and legitimate governmental functions and

4    operations of the United States Department of Treasury.

5          And with regard to Count One, we refer to Title 18 of

6    the United States Code, Section 371, which provides as follows:

7          If two or more persons conspire to defraud the United

8    States, and one or more of such persons do any act to effect

9    the object of the conspiracy, each is guilty of an offense

10   against the United States.

11         So let's talk about the elements of this first

12   conspiracy.  There is going to be three elements.

13         To sustain its burden of proof with respect to the

14   crime of conspiracy to defraud the United States, the

15   government must separately prove beyond a reasonable doubt that

16   follow the following elements:

17         First, the existence of the conspiracy charged, that

18   is, with respect to Count One of the indictment, the existence

19   of an agreement or understanding to impair, impede, obstruct or

20   defeat the lawful and legitimate functions and operations of

21   the United States Department of Treasury; and

22         Two, that the defendant knowingly and willfully became

23   a member of that conspiracy.

24         In addition, with respect to the conspiracy charged in

25   Count One of the indictment, the conspiracy to defraud the

1  United States, the government must also prove beyond a

2  reasonable doubt a third element, which is as follows:

3          Third, that some member of the conspiracy, not

4  necessarily the defendant, knowingly committed at least one

5  overt act in furtherance of the conspiracy during the life of

6  the conspiracy.

7          So let's consider these three elements with respect to

8  Count One of the indictment, that Count One conspiracy, we'll

9  consider the three separately.

10         Element one.  The existence of a conspiracy.

11         What is a conspiracy?  A conspiracy is a combination,

12 agreement, or an understanding of two or more persons to

13 accomplish by concerted action a criminal or unlawful purpose.

14 In the first conspiracy, the conspiracy to defraud the United

15 States, the unlawful purpose alleged to have been the object of

16 the conspiracy, which is charged in Count One, was to impair,

17 impede or obstruct the lawful and legitimate governmental

18 functions and operations of the United States Department of

19 Treasury by deceit, craft, or trickery, or means that are

20 dishonest.

21         The gist or essence of the crime of conspiracy is the

22 unlawful combination or agreement to violate the law.  The

23 conspiracies alleged here are the agreements to commit certain

24 crimes, and as I said before, they are entirely distinct and

25 separate offenses from the actual commission of any of the

HCK3ATI2                        Jury Charge

alleged crimes.  In order to show that a conspiracy existed,
the evidence must show that two or more persons in some way or
manner, through any contrivance, explicitly or implicitly, came
to an understanding to violate the law and to accomplish an
unlawful plan.

        To show a conspiracy, the government is not required
to show that two or more persons sat around a table and entered
into a solemn pact, orally or in writing, stating that they had
formed a conspiracy to violate the law and spelling out all of
its details.  Common sense tells you that when people in fact
agree to enter a criminal conspiracy, much is left to the
unexpressed understanding.  It is rare that a conspiracy can be
proven by direct evidence of an explicit agreement.

        It is sufficient if two or more persons in some way or
manner, formally or informally, impliedly or tacitly came to a
common understanding, a common plan that will violate the law.

        In determining whether there has been an unlawful
agreement as alleged, you may consider the alleged acts and the
conduct of the alleged co-conspirators that were done to carry
out the criminal purpose.  The adage "actions speak louder than
words" applies here.  Often the only evidence that is available
with respect to the existence of a conspiracy is that of
disconnected acts and conduct on the part of the alleged
individual co-conspirators.  When taken all together and
considered as a whole, those acts and conduct may warrant the

HCK3ATI2                        Jury Charge

1    inference that a conspiracy existed as conclusively as would

2    direct proof.

3         So, you must first determine whether or not the proof

4    established beyond a reasonable doubt the existence of the

5    conspiracies as charged in the indictment.  In considering this

6    first element, you should consider all the evidence which has

7    been admitted with respect to the conduct and statements of

8    each of the alleged co-conspirators, and such inferences as may

9    reasonably be drawn from them.  It is sufficient to establish

10   the existence of the conspiracy, if, from the proof of all the

11   relevant facts and circumstances, you find beyond a reasonable

12   doubt that the minds of two alleged co-conspirators met in an

13   understanding way to accomplish, by the means alleged, at least

14   one of the unlawful objectives of the conspiracy.

15        The objects of a conspiracy are the illegal goals the

16   co-conspirators agree or hope to achieve.  Count One charges

17   that the goal or object of the conspiracy was to impair,

18   impede, or obstruct the lawful and legitimate governmental

19   functions and operations of the United States Treasury in its

20   enforcement of economic sanctions laws and regulations against

21   Iran administered by that agency.

22        In order to find the defendant impaired, impeded, or

23   obstructed a legitimate governmental function, you must find

24   beyond a reasonable doubt that the object of the conspiracy was

25   to interfere with or obstruct one of the United States' lawful

government functions by deceit, craft or trickery, or by means
that are dishonest.  The specific intent to obstruct includes
making it more difficult for the government to carry out its
lawful functions and that the scheme depend on dishonest or
deceitful means.  Actual contact between the defendant and an
official of the United States government is not an element of
the crime, nor is it necessary for you to find that the
government was subjected to any loss of money or property as a
result of the conspiracy.  It is also not necessary for you to
find that the impairment violated any separate law.  What is
required is that the object of the conspiracy was to interfere
with or obstruct one of the United States lawful governmental
functions by deceit, craft or trickery, or by means that are
dishonest.

          As I will explain in more detail when we come to Count
Two, the United States has imposed economic sanctions or legal
restrictions on trade and transactions involving the Islamic
Republic of Iran.  The United States Department of Treasury
administers and enforces these laws, including two offices
called the Office of Foreign Assets Control, often referred to
by its initials OFAC, and the Office of Terrorism and Financial
Intelligence.

          I instruct you, as a matter of law, that the
administration of the economic sanctions against the Islamic
Republic of Iran constitutes a legitimate function of the

1   government of the United States.

2          Element two.  Membership in the conspiracy.

3          If you conclude that the government has proven beyond

4   a reasonable doubt that the conspiracy charged in Count One of

5   the indictment existed, you must next determine whether the

6   defendant has been shown beyond a reasonable doubt to have

7   participated in the conspiracy with knowledge of its unlawful

8   purposes and in furtherance of its unlawful objectives.

9          To satisfy its burden, the government must prove

10  beyond a reasonable doubt that the defendant knowingly,

11  willfully and unlawfully entered into the conspiracy, into the

12  agreement, and that he did so with a criminal intent, that is,

13  with a purpose to violate the law, and that he agreed to take

14  part in the conspiracy to promote and cooperate in its unlawful

15  objectives.

16         I've previously defined the terms "knowingly,"

17  "willfully," and "unlawfully," and those same definitions apply

18  here.

19         Before a defendant can be found to have been a

20  conspirator, you must first find that he or she knowingly

21  joined the unlawful agreement or plan.  The key question is

22  whether the defendant joined the conspiracy with an awareness

23  of at least some of the basic aims and purposes of the unlawful

24  agreement.

25         Knowledge is often a matter of inference from proven

HCK3ATI2                          Jury Charge

1   facts.  We cannot look into a person's mind and know what that

2   person is thinking.  It is not necessary that a defendant be

3   fully informed as to all the details of the conspiracy in order

4   to justify an inference of guilty knowledge on his or her part.

5   To have knowledge of the conspiracy, a defendant need not have

6   known the full extent of the conspiracy or all of its

7   activities or all of its participants.  Nor is it necessary

8   that a defendant know every other member of the conspiracy.  In

9   fact, a defendant may know only one other member of the

10  conspiracy, and still be a co-conspirator.  Nor is it necessary

11  that a defendant receive any monetary benefit from

12  participating in the conspiracy or have a financial stake in

13  the outcome, as long as he in fact participated in the

14  conspiracy in the manner I have explained.  If you find that

15  the defendant has a financial stake in the outcome of the

16  alleged conspiracy, then you may consider that as a factor in

17  deciding whether he was a member of the conspiracy.

18          For the co-conspirators to have acted with specific

19  intent to deceive or defraud means that they must have known of

20  the fraudulent nature of the scheme and acted with the intent

21  that it succeed.  In other words, to act with an intent to

22  defraud means to act knowingly and with a specific intent to

23  deceive, ordinarily, but not necessarily, for the purpose of

24  causing some loss to another or to bring some gain to oneself.

25          It is not required that the government show that the

HCK3ATI2                    Jury Charge

1  co-conspirators, in addition to knowing what they were doing

2  and deliberately doing it, also knew that they were violating

3  some particular federal statute.

4          Let me say that again.

5          It is not required that the government show that the

6  co-conspirators, in addition to knowing what they were doing

7  and deliberately doing it, also knew that they were violating

8  some particular federal statute.  But the co-conspirators must

9  have acted with the intent to help carry out some essential

10  step in the execution of the scheme to defraud that is alleged

11  in the indictment.

12          The question of a co-conspirator's intent is a

13  question of fact that you are called upon to decide, just as

14  you determine any other fact at issue.  Intent to defraud

15  involves the state of a person's mind, and the purpose with

16  which he acted at the time of the acts in question and at the

17  time they occurred.  Direct proof of knowledge and fraudulent

18  intent is almost never available, and is not required to find

19  that such proof existed.  It would be a rare case where it

20  could be shown that a person wrote or stated that as of a given

21  time in the past he committed an act with fraudulent intent.

22  Such direct proof is not required.

23          The ultimate facts of knowledge and criminal intent,

24  though subjective, may be established by circumstantial

25  evidence based on a person's outward manifestations, his or her

1   words, his or her conduct, his or her acts, and all the

2   surrounding circumstances disclosed by the evidence, and the

3   rational or logical inferences that may be drawn therefrom.

4   Circumstantial evidence, if believed, is, as I noted before, of

5   no less value than direct evidence.

6            Hold on.

7            Relevant in this regard may be the conduct of the

8   persons you find to be members of the conspiracies charged,

9   which, in light of the other evidence in the case, may tend to

10  prove knowledge, intent, or willfulness.  Thus, for example,

11  you may consider as relevant any conduct engaged in by the

12  co-conspirators which has the effect of concealing their

13  activities, including false statements made to others

14  concerning material facts or false notations and reports or

15  other documents submitted to others concerning material facts.

16  All are conduct from which willfulness may be inferred.

17           On the other hand, you may consider any evidence that

18  the co-conspirators engaged in certain activities openly and

19  without an attempt to conceal or voluntarily and honestly

20  brought their full involvement to light as evidence of a lack

21  of willfulness.

22           The duration and extent of a defendant's participation

23  in a conspiracy has no bearing on the issue of defendant's

24  guilt.  A defendant need not have joined the conspiracy at the

25  outset.  A defendant may have joined it for any purpose at any

1    time in its progress, and that defendant will still be held

2    responsible for all that was done before that defendant joined,

3    and all that was done during the conspiracy's existence while

4    the defendant was a member.

5           Each member of a conspiracy may perform separate and

6    distinct acts and may perform them at different times.  Some

7    conspirators play major roles, while others play minor roles in

8    the scheme.  An equal role is not what the law requires.  In

9    fact, even a single act may be sufficient to draw defendant

10   within the ambit of the conspiracy.

11          However, I want to caution you that mere association

12   by one person with one who is a conspirator does not make that

13   person, the first person, a member of the conspiracy, even when

14   he or she knows that a conspiracy is taking place.  Mere

15   presence at the scene of a crime, even when coupled with

16   knowledge that a crime is taking place, is not sufficient to

17   support a conviction of that crime.  In other words, knowledge

18   without participation is not sufficient to convict a person of

19   conspiracy.  What is required or necessary is that the

20   defendant, the alleged conspirator, participated in the

21   conspiracy with knowledge of its unlawful purposes, and with an

22   intent to aid in the accomplishment of its unlawful objective.

23          In sum, the government has the burden to prove beyond

24   a reasonable doubt that the defendant, with an understanding of

25   the unlawful character of the conspiracy, must have

intentionally engaged, advised, or assisted in them for the

purpose of furthering an illegal undertaking.  The government

has the burden to prove beyond a reasonable doubt that the

defendant thereby became a knowing and willing participant in

the unlawful agreement -- that is to say, a conspirator.

A conspiracy, once formed, is presumed to continue

until either its objective is accomplished or there is some

other affirmative act of termination by its members.  So, too,

once a person is found to be a member of a conspiracy, that

person is presumed to continue being a member in the venture

until the venture is terminated, unless it is shown by some

affirmative proof that the person withdrew and disassociated

himself from it.

Element three of the first conspiracy which we're

still considering.  This is the third element.  And with

respect only to this conspiracy, that is to say the conspiracy

to defraud the United States as set forth in Count One of the

indictment, the government must show beyond a reasonable doubt

that at least one overt act was committed in furtherance of the

conspiracy to defraud the United States as set forth in Count

One of the indictment by at least one of the co-conspirators,

and was committed in the Southern District of New York.

I instruct you, as a matter of law, that Manhattan

falls within the geographic boundaries of the Southern District

of New York.

HCK3ATI2                        Jury Charge

1          The purpose of the overt act requirement, which

2     applies in this first conspiracy, but not in the others --

3     we'll get to that -- but the purpose of the overt act

4     requirement in Count One of the indictment is that the law

5     requires there to have been something more than mere agreement

6     to reach a conviction of this conspiracy.  There must also be

7     some overt act or action that must have been taken by at least

8     one of the conspirators in furtherance of the conspiracy.  If

9     you find that an overt act has been committed, you must be

10    unanimous as to which act it was.  You must find that the

11    government has proven beyond a reasonable doubt that one of the

12    members of the charged conspiracy, not necessarily the

13    defendant in this case, took some step or action in furtherance

14    of the conspiracy in the Southern District of New York at some

15    point in time during the life of the conspiracy.  In

16    determining whether an overt act occurred within the Southern

17    District of New York, you need not find that any co-conspirator

18    was physically present within this district, as long as you

19    find that some overt act in furtherance of the conspiracy

20    occurred within the district.

21         The overt act element is a requirement that the

22    agreement went beyond the mere talking stage, the mere

23    agreement stage.  The requirement of an overt act is a

24    requirement that some action be taken during the life of the

25    conspiracy by one of the co-conspirators to further the

1   conspiracy.

2           You are further instructed that the overt act need not

3   have been committed at precisely the time alleged in the

4   indictment.  It is sufficient if you are convinced beyond a

5   reasonable doubt that it occurred at or about the time and

6   place stated, as long as it occurred while the conspiracy was

7   still in existence.

8           You should bear in mind that the overt act, standing

9   alone, may be an innocent, lawful act.  Frequently, however, an

10  apparently innocent act loses its harmless character if it is a

11  step in carrying out, promoting, aiding or assisting the

12  conspiratorial scheme.

13          Let's talk a minute about the time of a conspiracy.

14  The indictment charges that the conspiracy charged in Count

15  One, and, for that matter, Counts Two, Four and Six, and all

16  the conspiracies, occurred from at least in or about 2010, up

17  to and including in or about 2015.  It is not essential that

18  the government prove that the conspiracies started and ended on

19  those specific dates.  Indeed, it is sufficient if you find

20  that in fact the charged conspiracies were formed and that they

21  existed for some time within the period set forth in the

22  indictment, and with respect to Count One, that at least one

23  overt act occurred in the conspiracy to defraud the United

24  States, and that it was committed in furtherance of the charged

25  conspiracy within that time period.

1              One down in the conspiracy area.  Now I'm turning to

2         the second conspiracy alleged in the indictment.

3              This is called a conspiracy to violate a license,

4         order, regulation, or prohibition pursuant to the International

5         Emergency Economic Powers Act, IEEPA.  And it is set forth in

6         Count Two of the indictment.

7              Count Two of the indictment charges the defendant with

8         participating in a conspiracy from at least in or about 2010 up

9         to and including in or about 2015 to violate a license, order,

10        regulation, or prohibition issued pursuant to the International

11        Emergency Economic Powers Act, otherwise known as IEEPA.

12             Under the authority of IEEPA, among other things, the

13        United States has adopted certain restrictions called economic

14        sanctions on transactions with or involving the Islamic

15        Republic of Iran.  Among other things, these sanctions prohibit

16        causing the export of a service directly or indirectly to Iran

17        or the government of Iran from the United States or by a United

18        States person.  In addition, during the relevant time period,

19        the sanctions allowed penalties against foreign financial

20        institutions with bank accounts in the United States if those

21        foreign financial institutions violated certain rules on

22        assisting transactions with or for the benefit of Iran.

23             I've already instructed you as to what a conspiracy is

24        and how you should go about determining whether one existed and

25        whether the defendant knowingly joined and participated in it,

HCK3ATI2                    Jury Charge

1    and those same principles apply to Count Two as they did to

2    Count One.  However, no overt act is required for this second

3    conspiracy count.  One was required for the first conspiracy.

4    It is not required not second conspiracy.

5              As I've stated, the object of the conspiracy charged

6    in Count Two is the violation of IEEPA.  A violation of IEEPA

7    has itself the following elements:

8              First, the violation of any license, order,

9    regulation, or prohibition issued pursuant to IEEPA; and

10             Second, the violation was committed willfully; and

11             Third, that the Office of Foreign Assets Control,

12   OFAC, had not issued a license to engage in the charged

13   transactions.

14             As I've mentioned, you need not find that a

15   substantive violation of the IEEPA actually occurred, only that

16   the defendant knowingly and willfully participated in a

17   conspiracy to engage in conduct that would have violated IEEPA.

18             Let's talk a minute about license, order, regulation,

19   and prohibitions.  In order to prove that the defendant

20   conspired to commit an IEEPA offense, the government must prove

21   that defendant agreed with others to violate a license, order,

22   regulation or prohibition issued pursuant to IEEPA.  I instruct

23   you that the following orders, regulations, and prohibitions

24   were in effect at all times relevant to Count Two:

25             First, orders, regulations, or prohibitions issued

1    pursuant to IEEPA provided that the exportation, reexportation,

2    sale or supply, directly or indirectly, from the United States

3    or by a United States person, wherever located, of any goods,

4    technology or services to Iran, or the government of Iran, is

5    prohibited unless the transaction was for the export of

6    agricultural commodities, medicine and medical devices or was

7    authorized by a license from OFAC.  In this regard, I instruct

8    you that the execution of dollar denominated money transfers

9    from the United States on behalf of another, whether or not

10   performed for a fee, constitutes the exportation of a service.

11   Services may be provided indirectly, for example, if funds are

12   transferred to Iran on or behalf of an Iranian person or

13   business through an intermediary, or if they are transferred to

14   a third party for the benefit of, or on behalf of, the

15   government of Iran, or if they are transferred to a third party

16   acting as an agent of the government of Iran.

17          The government of Iran means the state and the

18   government of the Islamic Republic of Iran as well as any

19   political subdivision, agency, or instrumentality of the

20   government of the Islamic Republic of Iran, including the

21   Central Bank of Iran, and the National Iranian Oil Company,

22   also referred to as NIOC.  The government of Iran also includes

23   any entity or business owned or controlled directly or

24   indirectly by the government of Iran, and any person acting or

25   purporting to act directly or indirectly for or on behalf of

HCK3ATI2                        Jury Charge

1    the government of the Iran.

2                I was instructing you that the following orders,

3    regulations and prohibitions were in effect at the times

4    relevant to this Count Two, and that was the first set of

5    orders, regulations, or prohibitions that were in effect.

6                The second set of orders, regulations, or prohibitions

7    issued pursuant to IEEPA prohibited any transaction that evades

8    or avoids, has the purpose of evading or avoiding, causes a

9    violation of or attempts to violate, any of the prohibitions

10   I've just described as well as any conspiracy formed to violate

11   those prohibitions.

12               And third, it includes orders, regulations or

13   prohibitions issued pursuant to the IEEPA required the U.S.

14   Secretary of the Treasury to prohibit a foreign financial

15   institution's use of correspondent banking accounts or

16   so-called payable-through bank accounts in the United States,

17   or to impose strict conditions on the use of correspondent

18   banking accounts or payable-through accounts in the United

19   States, if the foreign financial institution knowingly

20   conducted or facilitated certain types of financial

21   transactions with Iran, or for the benefit of the government of

22   Iran.

23               Beginning on July 31, 2012, the U.S. Secretary of the

24   Treasury was required to impose sanctions against any person if

25   there was a determination that the person materially assisted,

sponsored or provided financial, material or technological

support for or goods or services in support of NIOC, the

National Iranian Oil Company, NICO, Naftiran Intertrade

Company, or the Central Bank of Iran, or the purchase or

acquisition of United States bank notes or precious metals by

the government of Iran.

         And beginning on or about February 6, 2013, the U.S.

Secretary of Treasury was required to impose sanctions against

foreign financial institutions if the foreign financial

institutions knowingly conducted or facilitated any financial

transaction with respect to the sale or purchase of petroleum

or petroleum products to or from Iran, unless the funds were

used only for bilateral trade between the foreign country and

Iran with any funds owed to Iran deposited in an account within

that foreign country, and unless the transaction was for the

export of agricultural commodities, medicine or medical

devices.

         Then beginning on July 1, 2013, the United States

Secretary of the Treasury was required to impose sanctions

against any person if there were a determination that the

person who sold, supplied or transferred, directly or

indirectly, precious metals directly or indirectly to or from

Iran.

         We're still under the category I was giving you

instances of licenses, orders, regulations, etc.  There is a

HCK3ATI2                    Jury Charge

fourth category that includes any transaction which avoided,

had the purpose of avoiding, caused a violation of, or

attempted to violate any of the prohibitions that I have

already described, or any conspiracy formed to violate any of

the prohibitions, was prohibited.

Under this last or this fourth provision or category,

the government must establish that the conspirators agreed to

engage in transactions for the purpose of avoiding the

prohibition.  It is not necessary for the government to prove

that the conspirators' only reason for agreeing to engage in

the transaction was to avoid the prohibition.  It is sufficient

if it was a dominant reason for the conspirators to have agreed

to engage in the transaction.  By the same token, it is not

necessary for the foreign financial institutions to have been

sanctioned before the conspirators agreed to engage in the

transaction for the purpose of evading or avoiding the

prohibitions that could result in the imposition of sanctions.

It is sufficient if the conspirators believed that the

sanctions could be imposed, and acted in that belief in

agreeing to engage in a transaction or transactions designed to

avoid the imposition of those sanctions.  In other words,

avoiding the imposition of sanctions by unlawfully concealing

the true nature of a transaction would violate the prohibition

on evading or avoiding the prohibition.

The second element of an IEEPA violation is that the

HCK3ATI2                          Jury Charge

1    defendant acted willfully.  A defendant acts willfully if he

2    acted intentionally and purposefully with the intent to do

3    something the law forbids, that is, with bad purpose to disobey

4    or to disregard the law.  And here, it would be to violate the

5    U.S. embargo on certain transactions with Iran.  However, the

6    government does not need to prove that the defendant was aware

7    of the specific law or rule that his conduct would violate.

8    The defendant does not have to know that his conduct would

9    violate a particular law, executive order or federal

10   regulation, but he must act with the bad purpose to disobey or

11   disregard the law.

12          And the third element that the government must prove

13   to establish the IEEPA conspiracy is that at the time of the

14   transactions at issue, the defendant had not obtained a license

15   to conduct such transactions from the Department of Treasury's

16   Office of Foreign Assets Control, or OFAC.

17          With regard to this, I've said it before, but with

18   regard to this second conspiracy, no overt act is required.  So

19   unlike the case of the Count One conspiracy, where, as I said,

20   an overt act must be proven, it is not necessary for the

21   government to prove the commission of any overt act in

22   furtherance of the conspiracy to violate IEEPA set forth in

23   Count Two, as long as the government proves that the conspiracy

24   charged in Count Two existed, and that the defendant was a

25   knowing and intentional member of that conspiracy.

1              A defendant's conduct -- we're talking now about the

2     IEEPA conspiracy -- is not willful if it was the result of a

3     good-faith understanding that he was acting within the

4     requirements of the law.  A defendant may not be held liable

5     for a violation of IEEPA if the defendant acted, or chose not

6     to act, in a good-faith belief that he was complying with the

7     licenses, orders, regulations, or prohibitions issued pursuant

8     to IEEPA.

9              In other words, if you find that the defendant acted

10    in good faith, then he may not be convicted of a conspiracy to

11    violate IEEPA.

12             We move along to the next conspiracy, next two

13    conspiracies, the bank fraud conspiracy and the money

14    laundering conspiracy.

15             The bank fraud conspiracy is set forth in Count Four

16    of the indictment.  Count Four of the indictment charges the

17    defendant with participating in a conspiracy to commit bank

18    fraud.  In summary, Count Four charges that from at least in or

19    about 2010, up to and including in or about 2015, the defendant

20    agreed with others to execute a scheme to defraud a United

21    States financial institution, namely HSBC Bank U.S.A., Deutsche

22    Bank Trust Company Americas, UBS Bank U.S.A., BNY Mellon,

23    Citibank, JPMorgan Chase Bank, Bank of America, and Wells Fargo

24    Bank.

25             I've already instructed you as to what a conspiracy is

HCK3ATI2                     Jury Charge

and how you should go about determining whether one existed and

whether the defendant knowingly joined and participated in it.

Those same principles apply to Count Four as they did to Counts

One and Two.  And it is not necessary in a bank fraud

conspiracy for the government to prove an overt act was

committed.

          The object of the conspiracy charged in Count Four is

bank fraud in violation, as we've discussed, of Title 18,

United States Code, Section 1344, and I've already explained to

you the elements of bank fraud when we discussed Count Three at

the beginning.  You should rely on those instructions in

connection with Count Four, the conspiracy to commit bank fraud

as well.

          And now moving to money laundering conspiracy, which

is Count Six of the indictment.  I'll turn to the money

laundering conspiracy charged in Count Six.  I've already

instructed you as to what a conspiracy is and how you should go

about determining whether one existed and whether the defendant

knowingly joined and participated in it.  Those same principles

apply to Count Six.  It is not necessary in a money laundering

conspiracy for the government to prove an overt act was

committed.

          The object of the conspiracy charged in Count Six is

money laundering in violation of Title 18, United States Code,

Section 1956 (a)(2)(A), and I've already explained the elements

1    of money laundering to you when discussing Count Five at the

2    beginning of these instructions.  It was actually the second

3    count that we talked about.  You should rely on those

4    instructions in connection with Count Six as well.

5         I remind you that the crime of conspiracy to violate

6    federal law is an independent offense.  It is separate from the

7    actual violation of any specific federal laws.  You may find

8    defendant guilty of the crime of conspiracy to commit money

9    laundering, even if you find that the money laundering itself

10   that was an object of the conspiracy was not actually

11   committed.

12        Now we're going to talk about something called

13   conscious avoidance.

14        So this relates to the conspiracy counts, the four

15   conspiracy counts that I've talked to you about, and the

16   concept of knowledge.  I need to say one more thing about that

17   concept of knowledge.

18        In determining whether the defendant acted with the

19   necessary knowledge, you may consider whether the defendant

20   deliberately closed his eyes to what otherwise would have been

21   clear.  I've told you before that acts done knowingly must be a

22   product of a defendant's conscious intention, not the product

23   of carelessness or negligence, for example.

24        A person, however, cannot willfully blind himself to

25   what is obvious and disregard what is plainly before him.  A

HCK3ATI2                          Jury Charge

1    person may not intentionally remain ignorant of facts that are

2    material and important to his conduct in order to escape the

3    consequences of the criminal law.

4          If you find beyond a reasonable doubt that the

5    defendant intentionally participated in a conspiracy, but that

6    the defendant deliberately and consciously avoided learning or

7    confirming certain facts about the specific objectives of the

8    conspiracy, then you may infer from his willful and deliberate

9    avoidance of knowledge that the defendant understood the

10   objectives or goals of the conspiracy.

11         We refer to this notion of blinding yourself to what

12   is staring you in the face as "conscious avoidance."  An

13   argument of conscious avoidance, however, is not a substitute

14   for proof.  It is simply another fact you may consider in

15   deciding what the defendant knew.

16         There is a difference between knowingly participating

17   in a conspiracy, on the one hand, and knowing the object or

18   objects or the purpose or purposes of the conspiracy on the

19   other.  Conscious avoidance cannot be used as a substitute for

20   finding that the defendant knowingly joined the conspiracy,

21   that is, that the defendant knew that he was becoming a party

22   to an agreement to accomplish an alleged illegal purpose.  It

23   is in fact logically impossible for a defendant to join a

24   conspiracy unless he knows the conspiracy exists.  The

25   defendant must know that the conspiracy is there.

1          However, in deciding whether the defendant knew the

2     objectives of the conspiracy, you may consider whether the

3     defendant was aware of a high probability that an objective of

4     the conspiracy was to commit the crime or crimes charged in the

5     object of the conspiracy, and nevertheless participated in the

6     conspiracy.  You must judge from all of the circumstances and

7     all of the proof whether the government did or did not satisfy

8     its burden of proof beyond a reasonable doubt.

9          So, in other words, if you find that the defendant was

10    aware of a high probability that a fact was so, and that the

11    defendant acted with deliberate disregard of the facts, you may

12    find that the defendant acted knowingly.  However, if you find

13    that the defendant actually believed the fact was not so, then

14    he may not have acted knowingly with respect to whatever charge

15    you are considering.

16         So those are the six crimes or charges alleged in the

17    indictment.

18         We have some more general instructions and we're

19    almost there.

20         As I noted at the beginning, the defendant is charged

21    in six counts in the indictment.  Each count charges the

22    defendant with a different crime.  You must consider each count

23    of the indictment separately, and you must return a separate

24    verdict on each count.  The case on each count stands or falls

25    upon the proof or lack of proof on that count.  Your verdict on

HCK3ATI2                         Jury Charge

1   any count should not control your decision on any other count.

2              In addition to all of the elements that I've been

3   describing to you as elements of the various crimes we've been

4   talking about, alleged crimes, with respect to each count

5   charged in the indictment, you must consider the issue of

6   venue, namely, whether any act in furtherance of the unlawful

7   activity occurred within the Southern District of New York.  As

8   I said before, the Southern District of New York includes

9   Manhattan.

10             If the crime charged was committed in more than one

11  district, venue is proper in any district in which the crime

12  was begun, continued or completed.  And thus, venue will lie in

13  the Southern District of New York if you find that any part of

14  the crime took place here.

15             The government's burden of proof with respect to

16  establishing venue under each count of the indictment is by

17  what we call a preponderance of the evidence.  With respect to

18  venue, it's not proof beyond a reasonable doubt, it is by

19  preponderance of the evidence.  To prove something by a

20  preponderance of the evidence means to prove that something is

21  more likely true than not true.  This only applies to venue.

22  It is determined by considering all the evidence and deciding

23  which evidence is more convincing.  If the evidence appears to

24  be equally balanced or if you cannot say on which side it

25  weighs heavier, you decide the issue of venue against the

1    government.  If you find that venue has not been proven, then

2    you must find the defendant not guilty as to that particular

3    count.

4           Your verdict must be based solely on the evidence

5    presented in this courtroom in accordance with my instructions.

6    You must disregard completely any report that you may have read

7    in the press, seen on TV or on the internet, or heard on the

8    radio, assuming there were any.  Indeed, it would be unfair to

9    consider such reports since they are not evidence, and the

10   parties have no opportunity to contradict their accuracy or

11   otherwise address them.  In short, it would be a violation of

12   your oath as jurors to allow yourselves to be influenced in any

13   manner by such publicity.

14          You've heard evidence during the trial that witnesses

15   have discussed the facts of the case and their testimony with

16   the lawyers before the witnesses appeared in court.  Although

17   you may consider that fact when you are evaluating a witness's

18   credibility, you should keep in mind that there is nothing

19   either unusual or improper about a witness meeting with lawyers

20   before testifying so that the witness can be aware of the

21   subjects he or she will be questioned about, focus on those

22   subjects, and have the opportunity to review relevant exhibits

23   before being questioned about them.  Such consultation helps

24   conserve your time and the Court's time.  And in fact, it would

25   be unusual for a lawyer to call a witness without having such a

1    consultation beforehand.

2            Again, the weight you give to the fact or the nature

3    of the witness's preparation for his or her testimony and what

4    inferences you draw from such preparation are matters

5    completely within your discretion.

6            In this case you've heard evidence in the form of

7    stipulations of testimony.  A stipulation of testimony is an

8    agreement among the parties that, if called as a witness, the

9    person would have given certain testimony.  You must accept as

10   true the fact that the witness would have given that testimony.

11   However, it is for you, the jurors, to determine the effect to

12   be given that testimony.

13           Recordings of conversations and transcripts of those

14   recordings have been admitted into evidence in this case.  In

15   connection with these recordings, you heard testimony that

16   parts, if not all of the conversations, were in Turkish.  For

17   that reason, it was necessary to obtain translations of those

18   conversations into English.  These transcripts were admitted

19   into evidence.  Remember that the jury is the ultimate fact

20   finder, and as with all of the evidence, you may give the

21   transcripts such weight, if any, as you believe they deserve.

22           The defendant in a criminal case never has any duty to

23   testify or come forward with any evidence.  This is because, as

24   I've told you, the burden of proof beyond a reasonable doubt

25   remains with the government at all times, and the defendant is

HCK3ATI2                    Jury Charge

1    presumed innocent.  In this case, the defendant did testify,

2    and he was subject to cross-examination like other witnesses.

3    You should examine and evaluate the testimony of the defendant

4    just as you would the testimony of any witness.

5              In determining whether the government has proven the

6    charges beyond a reasonable doubt, you should not consider the

7    question of possible punishment in the event you were to find

8    the defendant guilty of one or more of the counts.  Under our

9    system, sentencing or punishment is exclusively the function of

10   the Court, it is not your concern, and you should not give any

11   consideration to that issue in determining what your verdict

12   will be.

13             Let's talk about charts, summaries, and drawings for a

14   moment.  Some charts, summaries, and drawings were shown to you

15   to make the other evidence more meaningful and to aid you in

16   considering that evidence.  They are no better than the

17   testimony or the documents upon which they are based, and are

18   not themselves independent evidence.  Therefore, you are to

19   give no greater consideration to these charts, summaries or

20   drawings than you would give to the evidence upon which they

21   are based.

22             It is for you to decide whether the charts, summaries

23   or drawings correctly present the information in the testimony

24   or the documents on which they were based.  You're entitled to

25   consider the charts, summaries and drawings if you find that

they are of assistance to you in analyzing the evidence and
understanding the evidence.

        You've heard testimony about evidence that was seized
in various searches.  Evidence obtained from these searches was
properly admitted in this case and may be properly considered
by you.  Whether you approve or disapprove of how it was
obtained should not enter into your deliberations, because I
now instruct you that the government's and the defense's use of
this evidence is entirely lawful.

        Under your oath as jurors, you are not to be swayed by
sympathy.  You are to be guided solely by the evidence in the
case and the crucial question that you must ask yourselves as
you sift through this evidence is has the government proven its
case beyond a reasonable doubt.  You are to determine this
solely on the basis of the evidence and subject to the law as I
have charged you.

        You've heard the testimony of various members or past
members of law enforcement.  The fact that a witness may be or
was employed by the government as a law enforcement official or
employee does not mean that his or her testimony is necessarily
deserving of more or less consideration or greater or lesser
weight than that of an ordinary witness.  At the same time, it
is quite legitimate for counsel to try to attack the
credibility of a law enforcement witness on the grounds that
his or her testimony may be colored by a personal or

HCK3ATI2                         Jury Charge

1    professional interest in the outcome of the case.

2              It is your decision, after reviewing all of the

3    evidence, whether to accept the testimony of the law

4    enforcement or government employee witnesses, as it is with

5    every other type of witness, and to give to that testimony the

6    weight you find it deserves.

7              So now, ladies and gentlemen, you're about to go into

8    the jury room and begin your deliberations.  All of the

9    evidence and exhibits will be given to you at the start of

10   deliberations.

11             If you want any of the testimony read back or

12   recording of an exhibit played, you may request that also.  But

13   please remember that if you do ask for testimony, the reporter

14   must search through his or her notes, the court reporter, and

15   the lawyers must agree on what portions of testimony may be

16   called for.  And if they disagree, then I must resolve those

17   disagreements.  That can be a time-consuming process.  So

18   please try to be as specific as you possibly can in requesting

19   portions of the testimony, if in fact you do.

20             Your request for testimony, and in fact any

21   communication with the Court, should be made to me in writing,

22   and signed by your foreperson -- I'm going to come back to the

23   foreperson in a minute -- and given to one of the marshals

24   outside the jury room.

25             In any event, do not tell me or anyone else how the

```
 1   jury stands on any issue until after a verdict is reached.

 2              Many of you have taken notes during parts of the

 3   trial.  Please recall my earlier instruction regarding note

 4   taking.  It is entirely appropriate.  Notes can be useful to

 5   focus a note taker's attention and may aid the recollection of

 6   the note taker, but they are not evidence.  Notes should be

 7   used solely to refresh the note taker's recollection of the

 8   testimony, and are not a substitute for the transcript of the

 9   testimony which has been taken down verbatim by the court

10   reporter.

11              And please remember that if notes were taken of the

12   lawyers' arguments, the lawyers' arguments are not evidence.

13              The government, to prevail, must prove the essential

14   elements of any crime charged beyond a reasonable doubt as has

15   been explained in these instructions.  If it succeeds, your

16   verdict should be guilty.  If it fails, your verdict should be

17   not guilty.

18              A verdict must be unanimous.  Your verdict must

19   represent the considered judgment of each juror; whether your

20   verdict is guilty or not guilty, it must be unanimous.

21              Your function is to weigh the evidence in the case and

22   determine whether the defendant is guilty or not guilty solely

23   upon the basis of such evidence.  Each juror is entitled to his

24   or her opinion.  Each should, however, exchange views with his

25   or her fellow jurors.  That is the very purpose of jury
```

HCK3ATI2                    Jury Charge

deliberations -- to discuss and consider the evidence, to

listen to the arguments of fellow jurors, to present your

individual views, to consult with one another, and to reach an

agreement based solely and entirely on the evidence, if you can

do so without surrendering your own individual judgment.

          Each of you must decide the case for yourself, after

consideration with your fellow jurors of the evidence in the

case.  But you should not hesitate to change an opinion that,

after discussion with your fellow jurors, appears incorrect.

If, after carefully considering the evidence and arguments of

your fellow jurors, you hold a conscientious view that differs

from the others, you are not required to change your position

simply because you are outnumbered.  Your final vote must

reflect your conscientious belief as to how the issues should

be decided.

          I said a minute ago we'd come back to the foreperson

and now let me talk about that.  When you get into the jury

room, before you begin your deliberations, I request that you

select someone to be the foreperson.  Your foreperson will

preside over the deliberations and speak for you all in open

court.  The foreperson has no greater voice or authority than

any other juror.  The foreperson will send out and sign any

notes, and when the jury has reached a verdict, he or she will

notify the marshal that the jury has reached a verdict.

          I'm going to give you a verdict sheet form to be

HCK3ATI2                    Jury Charge

 1    filled in by the jury and signed by each juror when you're

 2    finished.  The purpose of the questions on the form is to help

 3    us, that is to say, counsel and myself, to understand what your

 4    findings are.  I will hand this form to Christine who will give

 5    it to you so that you may record the decision of the jury with

 6    respect to each count in each question.

 7         The order of the questions corresponds to the order

 8    that the six counts were described to you in these

 9    instructions.

10         No inference is to be drawn from the way the questions

11    are worded as to what the answer should be.  The questions are

12    not to be taken as any indication that I have any opinion as to

13    how they should be answered.  I have no such opinion.  And even

14    if I did, it would be not be binding on you, the jury.

15         Before the jury attempts to answer any question, you

16    should read all the questions on the verdict form and make sure

17    that everybody understands each question.

18         Before you answer the questions, you should deliberate

19    in the jury room and discuss the evidence that relates to the

20    questions that you must answer.  And when you've considered the

21    questions thoroughly, and the evidence that relates to those

22    questions, record the answers to the questions on the form that

23    I will give you.  Remember, all answers must be unanimous.

24         So I'm almost finished with these charges and my

25    instructions to you.  And I thank you once again for your

HCK3ATI2                          Jury Charge

1    patience and attentiveness over these past three-plus weeks.

2             And now, finally, I say this not because I think it is

3    necessary, but because it is the tradition of this court.  I'll

4    remind the jurors to be polite and respectful to each other, as

5    I'm sure you will be, in the course of your deliberations and

6    so that each juror may have his or her position made clear to

7    all the others.

8             I also remind you once again that your oath is to

9    decide without fear or favor and to decide the issues based

10   solely on the evidence and my instructions on the law.

11            So I thank you very much.  I ask you to just remain

12   seated for a minute or two while I talk to the lawyers briefly.

13            (At the sidebar)

14            THE COURT:  Does either side have any objection to the

15   way the instructions were read as opposed to the content of the

16   instructions?

17            MS. FLEMING:  No, your Honor.

18            MR. DENTON:  No, your Honor.

19            THE COURT:  Have you all collected the exhibits?

20            MR. ROCCO:  Yes.

21            THE COURT:  Great.

22            (In open court)

23            THE COURT:  Will the marshal please step forward.

24            THE DEPUTY CLERK:  Sir, if you can raise your right

25   hand, please.

HCK3ATI2

1          Do you solemnly swear that you will keep the jurors

2     impaneled and sworn in this cause together in some private and

3     convenient place, that you shall suffer no one to speak to

4     them, nor shall you speak to them yourself without direction of

5     this Court, unless it is to ask them if they have agreed upon a

6     verdict, so help you God?

7          THE MARSHAL:  I do.

8          THE COURT:  At this point I'm going to ask the first

9     12 of you, that is to say everybody in the first row, everybody

10    in the second row, and the two of you in the third row, to go

11    with the marshal to the jury room.

12          (Jury begins deliberations.  Time noted 12:35 p.m.)

13          THE COURT:  So you two jurors, as to whom we are very

14    grateful, turn out to be our alternates.  And we thank you for

15    your patience and your participation.

16          We usually, and I am in this instance as well, not

17    going to discharge you as jurors.  We're going to let you go

18    home, but we're not going to discharge you until the jury has

19    finished and reached a verdict.  It does occur on occasion that

20    one of the jurors can't function as a juror for whatever

21    reason, and that we may nevertheless call on one of you or both

22    as alternates.

23          So we will thank you again, and we'll call you when

24    the jury has reached a verdict or in the event that there is a

25    need for your service back down here, if that's okay with you.

HCK3ATI2                           Deliberations

1    Thanks again.

2                (Alternate jurors excused)

3                THE COURT:  It's 12:35.  We ordered lunch for the

4    jury.  And if you would just leave how we can contact the

5    lawyers in case we get a note or hear from the jury.  Christine

6    will call you or somebody will.  So we probably have your

7    contact information or no?

8                MR. KAMARAJU:  We'll give it to Christine again just

9    to make sure.

10               THE COURT:  What about the defense?

11               MR. ROCCO:  Same, your Honor.

12               THE COURT:  Cell phone or whatever.

13               MS. FLEMING:  I have a contact sheet with everybody's

14    information.  I'll give it to Christine.

15               THE COURT:  Thanks so much everybody.

16               MS. FLEMING:  Thank you, your Honor.

17               MR. KAMARAJU:  Thank you, your Honor.

18               (Recess pending verdict)

19               (In open court; jury not present)

20               THE COURT:  So, what I thought I would do is call in

21    the jury and tell them that we usually end at 4:45 and to come

22    back tomorrow at 9:15.  So that's essentially my plan.

23               We got a note early, unsigned, but it is from the jury

24    asking for supplies.  I'll read it to you.  It just says:

25    Could we have need glasses seat one -- I think somebody left a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

HCK3ATI2                        Deliberations

1    pair of eyeglasses -- two, highlighters; three, Post-its; four,

2    pens; five, coffee, tea, milk and hot water.

3           That's it.  Unsigned.  So, if that's okay with you,

4    that's what I'm going to do.

5           MR. LOCKARD:  Yes, your Honor.

6           MS. FLEMING:  We just took boxes of it out of here.

7           THE COURT:  Of supplies you mean?

8           MS. FLEMING:  We could have given it to them.

9           (Jury present.  Time noted 4:40 p.m.)

10          THE COURT:  I just wanted to mention to you our

11   typical practice is to conclude each day at 4:45, trial or

12   deliberations, if that's okay with you.  And to remind you of

13   my instructions that apply, continue to apply.

14          As far as deliberations are concerned, they should

15   only occur in the jury room when all 12 of you are together.

16   So, and if you would either tonight before you leave, if you

17   could send me a note indicating who the foreperson is, if one

18   has been selected, and then you're free to go.

19          So see you tomorrow morning at 9:15.  Once all of you

20   are assembled, you can start deliberating again.  Okay?  Great.

21   Nice to see you.

22          (Jury excused; time noted 4:45 p.m.)

23          THE COURT:  Thanks a lot.

24          MR. KAMARAJU:  You don't want to see us tomorrow

25   morning?  We'll just wait for the jury.

1    THE COURT:  You can sleep in tomorrow.

2    MS. FLEMING:  You don't want us here at 6?

3    THE COURT:  Did you notice the progression?  I'm an

4    early riser.  Anyway I'll see you tomorrow, 9:15 is fine.

5    MS. FLEMING:  Thanks, Judge.

6    (Pause)

7    (At 4:50, a note was received from the jury)

8    (In open court; jury and defendant not present)

9    THE COURT:  I do have a note, but I guess nobody's

10   here.

11   MS. FLEMING:  Judge, we have to waive Mr. Atilla's

12   presence, which we are.

13   THE COURT:  Okay.  I don't think it is of much

14   consequence.  But, if he wanted to be here, that would be fine.

15         I was hoping actually that the audience would be here,

16   because I was going to start by saying that, you know, my rule

17   about the jury should not be contacted by anybody, and they

18   should report to me or Christine if they are, that's a two-way

19   street.  That means that the people in the audience need to

20   stay away from the jurors as well, including not peeking in the

21   jury room, quite literally.

22         So I'll probably say it again tomorrow.  I mean, it's

23   good for you to hear it, but it's really for them that it was

24   intended.

25         So, now as to the note:  Hi, Judge Berman.  Here are

HCK3ATI2                          Deliberations

1    some requests for tomorrow.

2              I think they're pretty straightforward, but there is

3    one I'm not sure of and you'll have to tell me.

4              One, photo poster boards, of which there were I think

5    some.  But anyway you'll have to think about it and talk before

6    I respond tomorrow.

7              Two, Zarrab's flow charts.  Three, arrest video, looks

8    like DVD, and then it says I am the foreperson and it's Juror

9    Number 12.

10             You had a bet?

11             MR. ROCCO:  She's formidable.  I was watching her

12   during the trial --

13             THE COURT:  No.  I thought you had a bet among

14   yourselves.

15             MR. ROCCO:  I lost and so did Ms. Fleming.

16             THE COURT:  Okay.  I'm just being in the "Hi, Judge

17   Berman" mode.

18             So would you please then come a little early, say

19   9 o'clock, and talk before that, that is to say the government

20   and the defense, about how to respond to this.  But one

21   question I have is, is the arrest video in the jury room

22   already?

23             MR. KAMARAJU:  Yes.

24             THE COURT:  Do they have a capability in there of

25   playing it?  I don't know.

HCK3ATI2                          Deliberations

1          MR. KAMARAJU:  Yes.

2          THE COURT:  They do?

3          MR. KAMARAJU:  I think they have a laptop.

4          THE COURT:  Okay.  So if that's the case, then part of

5    the note will be do you know you have it and do you have the

6    capability of playing it.

7          MR. KAMARAJU:  We can identify the exhibit number

8    specifically for them so they can pull it out easily.

9          THE COURT:  Okay.  And the other two things I'll leave

10   you to figure out what they are, and then we'll send them back

11   tomorrow morning.

12          Okay.  Good to see you.  See you tomorrow.

13          (Adjourned until December 21, 2017, at 9 a.m.) 89

14

15

16

17

18

19

20

21

22

23

24

25