2433

HCL3ATIF

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        S4 15 Cr. 867 RMB

5    MEHMET HAKAN ATILLA,

6              Defendant.

7    ------------------------------x

8

9                                       December 21, 2017
                                        9:25 a.m.
10

11

12   Before:

13                   HON. RICHARD M. BERMAN,

14                                       District Judge
                                           and a jury
15

16

17                   APPEARANCES

18   JOON H. KIM,
          United States Attorney for the
19        Southern District of New York
     MICHAEL D. LOCKARD,
20   SIDHARDHA KAMARAJU,
     DAVID W. DENTON, JR.,
21   DEAN C. SOVOLOS,
          Assistant United States Attorneys
22

23

24

25

HCL3ATIF

(APPEARANCES Continued)


HERRICK, FEINSTEIN LLP (NYC)
     Attorneys for defendant Atilla
BY:  VICTOR J. ROCCO, Esq.
     THOMAS ELLIOTT THORNHILL, Esq.
     - and -
FLEMING RUVOLDT, PLLC
BY:  CATHY ANN FLEMING, Esq.
     ROBERT J. FETTWEIS, Esq.
     - and -
LAW OFFICES OF JOSHUA L. DRATEL, P.C.
BY:  JOSHUA LEWIS DRATEL, Esq.
               Of counsel
      -and-
McDERMOTT WILL & EMERY
BY:  TODD HARRISON

Also Present:
     JENNIFER McREYNOLDS, Special Agent FBI
     MICHAEL CHANG-FRIEDEN, Paralegal Specialist USAO
     MS. ASIYE KAY, Turkish Interpreter
     MS. SEYHAN SIRTALAN, Turkish Interpreter

1           (In open court; jury not present)

2           THE COURT:  Counsel, we need to get seated, first of

3    all.  And we need to respond to the note that we got yesterday

4    requesting photo poster boards; two, Zarrab's flow charts; and

5    three, arrest video DVD.

6           And I'd asked you all to meet and confer and make a

7    suggestion to me as to how you think we should respond.

8           MR. LOCKARD:  So, your Honor, we have done that and I

9    think the parties agree that the face board can go back into

10   the jury room.

11          With respect to Mr. Zarrab's flow charts, those were

12   drawn during his testimony, but not received in evidence.  So

13   the parties have agreed that it is appropriate to display those

14   to the jury in the courtroom, but not to send them back.  And

15   we have made a proposed limiting instruction that the Court

16   could deliver to explain that they are demonstratives.

17          THE COURT:  Why wouldn't you send them back?

18          MR. LOCKARD:  Because they weren't received into

19   evidence.  So we've written out a proposed limiting instruction

20   which I can read to the Court or I can hand up.

21          THE COURT:  Okay.

22          MR. LOCKARD:  But the proposed limiting instruction

23   would go:  As you may recall, these charts were drawn by

24   Mr. Zarrab while he was testifying as an aid to his testimony.

25   The charts themselves are not evidence, they are merely an aid.

HCL3ATIF                    Deliberations

1    The testimony itself is the evidence.  As a result, you may

2    view the charts here in the courtroom, but you cannot take them

3    into the jury room.

4             And then if they were to request the accompanying

5    testimony, we could identify that for them.

6             THE COURT:  Were there other charts and summaries and

7    did we do the same with those?

8             MR. LOCKARD:  Any other charts were admitted.  So,

9    actually, I think there weren't any other charts used during

10   the testimony that were offered.  There were some other charts

11   that were recovered as part of the searches.

12            THE COURT:  Okay.  What else?

13            MR. LOCKARD:  Then the video of the post-arrest is in

14   evidence and it is marked as Government's Exhibit 70, and it is

15   both on the laptop that is available to the jury that has

16   electronic copies of the government's evidence, or if they

17   prefer to view it on the screens here in the courtroom, we can

18   cue it up or they could watch it in the jury room.

19            MS. FLEMING:  We would prefer they watch it in the

20   jury room because there is personal information of Mr. Atilla

21   that's on the video.

22            THE COURT:  I'm all for that, too.  I'm a little bit

23   surprised by the charts not being able to go into the jury

24   room.

25            MR. LOCKARD:  Since they weren't received in evidence,

1    they're kind of analogous to his testimony which is part of the

2    transcript that they can hear here in the courtroom.  But we

3    think that's the appropriate way to handle the charts.

4              THE COURT:  You agree?

5              MS. FLEMING:  Yes.

6              THE COURT:  So I'll draft up a response and I'll run

7    it by you.

8              (Pause)

9              THE COURT:  If you all want to have a conversation,

10   why don't you go out in the hallway and have them and come back

11   when you're finished, if you don't mind.

12             (Pause)

13             THE COURT:  I've drafted a response but I'm going to

14   make some copies for you and see if it meets with your

15   approval.

16             (Pause)

17             MR. LOCKARD:  That looks fine to us, your Honor.

18             THE COURT:  Is it okay with the defense?

19             MS. FLEMING:  There is only one poster board, Judge,

20   on the first one.  It is not multiple.  It is just one.

21             THE COURT:  Oh.  Well, they said multiple in their

22   note.  Photo poster boards.

23             MR. LOCKARD:  The photos were printed on poster board.

24   I think it is grammatically and technically accurate.

25             THE COURT:  Do you want me to take the S off?

1          MS. FLEMING:  No.  I just think --

2          THE COURT:  When we send it, that's going to be

3     what --

4          MS. FLEMING:  That's what they want.

5          THE COURT:  Yes.  I'm happy to take the S off.

6          MR. ROCCO:  That's responsive, your Honor.

7          THE COURT:  That's what I wanted to be.

8          So let me read it out loud so everybody knows what I'm

9     saying.  So, it's dated today's date, and it's to jurors from

10    Judge Berman.

11         In response to your note, one, we will send the photo

12    poster boards into the jury room soon.

13         Two.  Mr. Zarrab's flow charts are aids and not

14    evidence.  The testimony about them is evidence, and is in the

15    transcript.  You may view the charts in the courtroom.  If you

16    wish to do so, just let me know and I will arrange quickly.

17         Three.  The arrest video is in the jury room and is

18    Government Exhibit 70.  It is on the laptop which is also in

19    the jury room.  Let me know if you have any difficulty playing

20    it and we will get you help in doing so.  I can also arrange

21    for you to view it in the courtroom if you wish.

22         Is that okay?

23         MR. LOCKARD:  Yes, your Honor.

24         THE COURT:  Is that okay?

25         MR. ROCCO:  Your Honor, we're thinking it may be

HCL3ATIF                    Deliberations

1    easier if you send the charts back.

2               THE COURT:  If I send which?

3               MR. ROCCO:  The diagrams.  The flow charts.

4               MS. FLEMING:  I'll tell you why.  I've been looking

5    through to see where the testimony is, and it's all over the

6    place.  And our concern is if they come back and want a

7    readback, we're never going to be able to figure out where it

8    is.

9               THE COURT:  Okay.  So how about this, how about I make

10   them Court Exhibits A, B and C.  Would that work?

11              MR. ROCCO:  Yes.

12              MS. FLEMING:  I do think you should tell them they

13   were illustrative aids, not technically evidence, but they may

14   use them.

15              THE COURT:  I think we have an instruction about

16   chart, aids and summaries.

17              MS. FLEMING:  This is an illustrative aid, which is

18   different than a chart and a summary.

19              THE COURT:  You want me to say the charts are

20   illustrative aids?

21              MS. FLEMING:  Right.  They were used to help during

22   testimony.

23              THE COURT:  You want me to get into testimony?

24              MR. ROCCO:  No, your Honor.

25              MS. FLEMING:  No.

1             MR. ROCCO:  Just illustrative aids.

2             THE COURT:  Why don't I say Mr. Zarrab's flow charts

3    are illustrative aids and not evidence.  I'll say we will send

4    them back to you in the jury room soon.

5             How's that?

6             MR. LOCKARD:  Your Honor, I do think it is important

7    to refer to the testimony that is evidence, just to ensure that

8    the jury is able to distinguish what is being illustrated from

9    the illustration.

10            THE COURT:  I think Ms. Fleming is quite right, by the

11   way.  If you start talking about the transcripts, they're going

12   to say, you know, I think -- and I don't think that anything is

13   lost in not doing what you suggest.

14            MR. LOCKARD:  Just because jury deliberations are a

15   sensitive appellate issue, we're just sensitive.

16            THE COURT:  You have two sides agreeing -- well, one

17   side so far, and soon I think we'll have two sides agreeing and

18   I agree.  They do some strange things up there, but, you know.

19            MR. LOCKARD:  And I just referred earlier to one chart

20   that was in evidence, which is a chart that Mr. Zarrab drew not

21   in the courtroom but during the time of his offense so we can

22   identify that exhibit to the extent that's also relevant to

23   their question.

24            THE COURT:  I don't know what you're talking about, to

25   be honest with you.

1          MR. ROCCO:  That's not what they asked for.

2          THE COURT:  They asked for these charts.  I think

3    that's what the practical understanding of what they asked for

4    is.

5          With all due respect to Mr. Denton, by the way, my

6    last comment.

7          This is the way I'm going to rewrite it so they don't

8    see the cross outs.  So the first will be we will send the

9    photo poster boards into the jury room soon.

10         The second, Mr. Zarrab's flow charts are illustrative

11   aids and not evidence.  We will send them into the jury room

12   soon.

13         And three, the arrest video is in the jury room and is

14   Government Exhibit 70.  It is on the laptop which is also in

15   the jury room.  Let me know if you have any difficulty playing

16   it, and we will get you help in doing so.  I can also arrange

17   for you to view it in the courtroom if you wish.

18         Is that okay?

19         MR. ROCCO:  Yes.

20         THE COURT:  Is that okay with the government?

21         MR. LOCKARD:  Yes, your Honor.

22         THE COURT:  So I'm going to rewrite it, and then send

23   it.

24         MS. FLEMING:  Will you say "hello, jury"?

25         THE COURT:  No.  I write "To: Jurors, From: Judge

HCL3ATIF                         Deliberations

1    Berman."

2              MS. FLEMING:  Do you have to respond to their request

3    for supplies or do they just get in?

4              THE COURT:  We just send them in.  I was tempted to

5    say "To: Jurors, From: Richard Berman, here are the pens," but

6    I thought we didn't need to.

7              (Pause)

8              THE COURT:  Take a final look at the last version and

9    if it's okay, Christine will take it back to the marshal.

10             (Pause)

11             MR. LOCKARD:  It looks good to the government, your

12   Honor.

13             MR. ROCCO:  It's good with the defense, your Honor.

14             THE COURT:  Okay.  Do we have other issues that we

15   wanted to discuss?  I don't think so.  I have two things to

16   mention to you.

17             One is I have outstanding the application to admit a

18   jailhouse conversation.  I hope to have something to you in

19   writing this morning, by this morning I mean by 12 o'clock.

20   I'll just put it up on the docket.

21             And then I'm working on the mistrial application as

22   well.

23             Do you think they need easels?

24             THE DEPUTY CLERK:  No.  There is no room in there for

25   easels.

1          MR. LOCKARD:  Your Honor had mentioned something at

2      the very end of the day yesterday after we came back in.

3          THE COURT:  Yes.

4          Got another note.  I don't know what it says,

5      obviously, but one time, in one case, not this one, while I was

6      answering one note, they sent another note back which was more

7      definitive than the first note.  We'll see.

8          This is a repeat and plus.

9          Dear Judge Berman, could we request the following

10     Zarrab -- I think it says demonstratives, and then it says

11     9501, 9502, then it says 9502 again.  I don't know if that's a

12     mistake or not.

13         And the next item is flip chart.  And the next item is

14     scotch tape or masking.  Next item is black markers.  Next item

15     is arrest video.  Next item is large poster boards with photos.

16     I guess they were getting impatient.

17         Oh, and could we also get a clear -- I don't take this

18     personally -- legal definition of substantive.

19         I'd say work on the "substantive."  Well, I don't know

20     what they mean, does anybody know what they mean by the 9501,

21     9502?

22         MR. KAMARAJU:  Those are the flow charts we just sent

23     back.

24         THE COURT:  Is one of them 3?

25         MR. KAMARAJU:  Yes.  One of them is 3.

1      THE COURT:  All right.  So, flip chart?

2      MR. KAMARAJU:  That we're not sure about.  Maybe we'll

3  confer with defense and see if we have any idea.

4      THE COURT:  Confer on that and confer on what we

5  should say about "substantive."  Scotch tape, no problem.

6  Black markers, no problem.  Arrest video, no problem.  Large

7  poster boards and photos, no problem.  And a clear legal

8  definition of "substantive."

9      Oh.  I guess "substantive" is as in the counts.

10     MR. ROCCO:  As non-conspiracy.

11     THE COURT:  Right.

12     I could always ask them, I'm not sure what you mean by

13  flip chart.

14     MR. LOCKARD:  It sounds like it might be an office

15  supply, but I'm not sure.

16     THE COURT:  Oh, you mean -- in fact jurors have used

17  that in the past.  That's a blank flip chart.  We can get that.

18  I think.  Right?  That's a common juror tool.  So then just

19  "substantive."

20     (Pause)

21     THE COURT:  Are you working on "substantive"?

22     MR. KAMARAJU:  Yes, your Honor, we're working on the

23  substantive instruction.

24     THE COURT:  Okay.  We're working on flip chart.  By

25  the way, you know, I'm told that they've done away with flip

HCL3ATIF                    Deliberations

1    charts.  They have these eraser boards, but we're seeing if we

2    can find one.

3            MR. KAMARAJU:  We're checking with our office too.

4            THE COURT:  Good.  If you do, it probably would need

5    an easel.

6            MR. KAMARAJU:  Yes.  So many complications.

7            THE COURT:  Which jurors always used in the past.  But

8    anyway.  We'll worry about that.  You can take one of these.

9            MR. KAMARAJU:  Mr. Sovolos says this easel appears to

10   be a chalkboard, so I don't know if that's something that could

11   conserve space.

12           THE COURT:  Let's see if we can find a flip chart.

13           (Pause)

14           THE COURT:  We had a bigger group in the audience

15   yesterday afternoon, and they don't all seem to be here.  So,

16   what I had intended to tell them is it is important that the

17   audience members, be they press or anybody else, avoid the

18   jurors and also avoid the jury room.  So that they don't look

19   into the jury room or they don't look into the jurors.

20           Somebody advised me yesterday that some people or

21   person, I don't know exactly what, had done that.  And that is

22   something that should not be done.

23           Second, we had two sketch artists here yesterday.  I

24   think we have one today.  We do not include the faces of jurors

25   in public sketches.

HCL3ATIF                              Deliberations

1              (Pause)

2              THE COURT:  We located, just so you know, a flip

3      chart.

4              (Pause)

5              THE COURT:  I have a suggestion, too, if all else

6      fails.

7              MR. KAMARAJU:  I think we should hear your suggestion,

8      your Honor.

9              MS. FLEMING:  I think all you have to do is say it is

10     a non-conspiracy.  The first sentence is fine.

11             MR. DENTON:  I think that's not enough.

12             THE COURT:  How about this:  In my instructions,

13     "substantive" was used in the phrase "substantive counts" to

14     contrast them with the conspiracy counts.

15             MS. FLEMING:  Perfect.  That's all you need.

16             THE COURT:  Is that okay?

17             MR. DENTON:  I think it makes sense --

18             THE COURT:  There was no real definition of the word

19     "substantive."

20             MR. DENTON:  I think it makes sense to tell them, at

21     least, it is not otherwise a term with any significance in your

22     deliberations.

23             THE COURT:  Substantive, I mean, you know, they

24     certainly could think something in the colloquial sense.

25             MS. FLEMING:  I think that does it, Judge.

1          THE COURT:  Will that work for you?

2          MS. FLEMING:  It does.

3          MR. LOCKARD:  I think we might suggest a reference to

4    following the specific instructions as to each count to ensure

5    that they understand that your Honor's instructions on the

6    elements are the controlling instruction.

7          THE COURT:  All they said was could we also get a

8    clear legal definition of substantive.

9          MR. LOCKARD:  Right.

10         THE COURT:  So you think it's something else other

11   than this?  It strikes me that there's two ways to go, two

12   possible ways.  One is the way we used it, which would be this.

13   Contrast to conspiracy counts.  The other would be to come up

14   with some legal definition of substantive, but I would be

15   surprised if that is consistent with what we said were the

16   substantive counts.

17         MR. LOCKARD:  I don't thinking there needs to be a

18   separate definition of substantive.  But to the extent that the

19   jury is worried that "substantive" has some meaning that they

20   should consider in their deliberations, it might be helpful to

21   say "I have given you instructions on the elements of each of

22   the offenses, and those are the instructions you should

23   follow."

24         MS. FLEMING:  Certainly there is no harm in saying

25   that.

1           THE COURT:  Okay.  It's up to you.  Do you want to

2    work some more on a response?

3           I think we have another note.

4           MS. FLEMING:  "Hurry up and give us our answer."

5           THE COURT:  Hi, Judge.  Yet more from the jury room.

6    Legal pads and power strip.

7           I know what a legal pad is.  I don't know what a power

8    strip is.

9           MR. KAMARAJU:  They want to be able to plug in.

10          THE COURT:  You mean an extension?

11          MS. FLEMING:  I had a trial where a note came back on

12   December 20 and it said when we leave on Christmas Eve, are we

13   coming back on the 2nd or are we coming back on the 3rd?  And

14   the note came out on the 20th.

15          THE COURT:  That's the note I'm dreading.

16          MS. FLEMING:  They came back with a verdict on the

17   23rd.

18          THE COURT:  They did.

19          MS. FLEMING:  Yes.  But everybody in the courtroom

20   kind of went...

21          THE COURT:  Do you have a power strip?

22          MR. KAMARAJU:  I believe so.

23          THE COURT:  Is it a government power strip or a

24   defense power strip?

25          MR. KAMARAJU:  Hopefully it can be stipulated.

HCL3ATIF                           Deliberations

1          (Pause)

2          THE COURT:  Do you have it?

3          MR. LOCKARD:  So, I think the government has a

4    proposed three-sentence response, and the defense proposes only

5    the first sentence of the three sentences.

6          THE COURT:  All right.  So put brackets around them so

7    I'll know, and you want all three, and they want just the first

8    one.

9          MS. FLEMING:  Just the first sentence.

10         THE COURT:  All right.

11         MR. LOCKARD:  I bracketed just the first sentence.

12         THE COURT:  Okay.  There is one sentence that's

13   struck?

14         MR. LOCKARD:  Struck.

15         THE COURT:  That's struck?

16         MR. LOCKARD:  Yes.

17         THE COURT:  So, I suggest then that we use the first

18   sentence, but I would like to add after substantive as used in

19   my instructions, and then is just a term.  I don't want to

20   suggest that it has no other worldly meaning.  Is that okay?

21         MR. ROCCO:  Fine.

22         THE COURT:  So it will then read -- is it okay to

23   write on your draft here?

24         MR. LOCKARD:  Certainly, your Honor.

25         THE COURT:  So, substantive as used in my instructions

HCL3ATI2                      Deliberations

1    is just a term to distinguish the two counts that do not charge

2    a conspiracy from the four counts that do charge a conspiracy.

3              I'm comfortable with that, if you are.

4              MS. FLEMING:  We are.

5              MR. ROCCO:  Yes, your Honor.

6              THE COURT:  If the government is.  I know you prefer

7    the other and you can note that objection for the record.

8              MR. LOCKARD:  That's fine, your Honor.

9              MR. KAMARAJU:  Here is a power strip, your Honor.

10             (Pause)

11             THE COURT:  Take a look at that.

12             (Pause)

13             THE COURT:  Is that okay?

14             MR. LOCKARD:  Yes, your Honor.

15             MR. ROCCO:  Yes, your Honor.

16             THE COURT:  Okay.  So we'll take that back.  Great.

17   Thanks.

18             (Recess pending verdict)

19             (In open court; jury not present; time noted 3:10

20   p.m.)

21             THE COURT:  We have a note for transcripts, etc.  And

22   I'll make you a copy but it says:  Could we have -- it looks

23   like readback for December 13 - Korkmaz testimony re Government

24   Exhibit 115, and Government Exhibit -- this is a little less

25   clear -- you could read it as 118.  It's a little unclear what

HCL3ATI2                        Deliberations

1   the third digit is supposed to be.  Please.  This was from the

2   morning that day.

3            So, you'll see what you make of it.  It sounds like it

4   means the morning of December 13, Korkmaz's testimony, and if

5   you can't figure out what the second exhibit is I'll send them

6   a note and ask them do you mean 118.  See what you make of it.

7   We'll make you a copy.  And then if you agree, if you could

8   collect the testimony.

9            Oh.  We had an earlier request for hot water, coffee,

10  Splenda and sugar, which we filled.  We filled the order, that

11  is.

12           I'm around and we'll make you copies.  Let me know.  I

13  think it seems obvious.  The only thing didn't seem obvious to

14  me is the second exhibit number.

15           (Pause)

16           THE COURT:  Are you all still debating?

17           MS. FLEMING:  Still checking.

18           (Pause)

19           MR. LOCKARD:  Okay.  So, your Honor, the parties have

20  conferred and we have substantial agreement but not complete

21  agreement, so I'll go ahead and summarize our position and what

22  I understand the defendant's position to be, and then they can

23  speak to it and your Honor can decide.

24           So, we agree that the relevant testimony starts on

25  page 1642 of the trial transcript at line 15.  And then so the

1   government would propose then reading the transcript

2   uninterrupted except for objections and rulings, and I think

3   one very brief colloquy until page 1650, line 24.

4               THE COURT:  1650?

5               MR. LOCKARD:  That's right, your Honor.  The defense

6   proposal is to begin again at the same spot 1642, line 15, and

7   go until page 1646, line --

8               THE COURT:  1646.

9               MR. LOCKARD:  Line 23, the first word of line 23.

10  Then to pick back up at 1647, line 7, and conclude at 1650,

11  line 16.

12              So the two I think minor disagreements, given we're

13  talking about nine lines of transcript all together, is the

14  witness' testimony begins with the call that's identified as

15  Government's Exhibit 115, which was for identification, but not

16  received.  He's then asked about a second call, and begins

17  talking about that call by referring back to the call, the one

18  described as 115, and then redescribes a portion of that call

19  and finishes the second call.  So that's the gap between the

20  two spots.

21              We would propose including it for context because

22  otherwise we think the testimony is a little jumpy without

23  including it.  And, again, it is only six or seven lines at

24  that point.

25              And then the second area of disagreement is when the

1    witness concludes his testimony about the call that relates to

2    Government Exhibit 118, he's then asked a followup question

3    about something that was discussed in that call and how it

4    relates to his investigation, and we would propose including

5    that, which is another maybe three or four lines, and the

6    defense proposes excluding that portion of the testimony.

7            THE COURT:  So, could you do this.  Could you give me

8    a copy of the parameters, that is to say what you propose,

9    1642, line 15, to 1650, line 24, and yellow highlight what they

10   would exclude.

11           MR. LOCKARD:  Okay.

12           THE COURT:  Then I'll --

13           MS. FLEMING:  May I just explain why?

14           THE COURT:  You can.

15           MS. FLEMING:  Since Mr. Lockard put it on the record,

16   I want to say they asked about exhibits, and these are a

17   problem because the exhibits are transcripts of recordings

18   where we don't have underlying audio.  So the witness was

19   speaking with his refreshed recollection about things we don't

20   have, and couldn't verify, etc.

21           On the second one, after he talked about his refreshed

22   recollection, the followup question is "From your

23   investigation, did you learn of any evidence as to whether

24   Mr. Zarrab provided Halkbank with inspection reports," which

25   doesn't have anything to do with the conversation.  So, it's --

1    so I don't think that comes in.

2            The problem with the first piece that we want excluded

3    is Mr. Korkmaz goes into a third call that's not either of

4    these exhibits.  And we think that should be excluded.

5            THE COURT:  Okay.  So, if you could do that.  And let

6    me take a look.

7            MR. LOCKARD:  Then I guess one other thing.  I think

8    defense counsel suggested including the objections in the

9    portion that's read back to the jury, although we think that's

10   not evidence and should be excluded from readback.

11           MS. FLEMING:  I'd like to remind the jury we objected

12   to hearsay.

13           MR. LOCKARD:  I'm not sure that's necessary.

14           THE COURT:  Let me take a look.

15           MR. LOCKARD:  We'll do the highlighting right now.

16           THE COURT:  Essentially what you're saying is you're

17   in very substantial agreement with the exception of eight lines

18   and some objections.

19           MR. KAMARAJU:  That's right.

20           (Pause)

21           MR. LOCKARD:  We have the highlighted the transcript.

22   Defense counsel suggested also providing your Honor with copies

23   of 115 and 118.

24           MR. ROCCO:  It may give you some context, your Honor.

25           THE COURT:  Okay.

1           (Pause)

2           THE COURT:  There isn't very much disagreement, mostly

3    agreement.  And the part that is, the first part, which is

4    about nine lines of testimony I determine should be left in,

5    flows from the conversation, from the examination, and in fact

6    there was no objection to those nine lines at the time.

7           And the only other disagreement is on page 1650, lines

8    20, 21, 22, and 23.  I think the government drew the red line a

9    little too expansively.  You didn't mean to include 24, did

10   you?  Because if -- well in any event, in any event, so I think

11   that should come in as well.  It strikes me it would be

12   artificial to make these exclusions.

13          At the same time, no objections, we never send in

14   objections or the response to the objections.  And no request

15   for sidebar or may I approach.

16          So, with those deletions, if you could prepare a set

17   of transcript to submit to the jury.

18          MR. LOCKARD:  Yes, your Honor.  And the always

19   spectacular Mr. Chang-Frieden is prepared to have them in a few

20   minutes.

21          To answer the Court's question about line 24 on page

22   1650, that's the answer to the question that was asked on line

23   20 and 21.

24          THE COURT:  Line 19.  Line 20.  Right.

25          MR. LOCKARD:  Line 20 and 21 is the question, and the

1    answer to that question is line 24.  That's where we propose to

2    end it, after line 24.

3              THE COURT:  Okay.  Whatever.  It doesn't matter.

4              MS. FLEMING:  Judge, please note our objection.  And

5    I'll point out the seven lines that you did not withdraw relate

6    to Government Exhibit 117 that the jury did not ask about.

7              THE COURT:  Okay.  When you prepare it, you'll

8    eliminate any lines before line 15 on page 1642, so they'll

9    only get the testimony that I've ruled they should get.  Okay.

10             MR. LOCKARD:  Yes, your Honor.

11             THE COURT:  If you would put that together, I'll take

12   another quick look at it and we'll send it into the jury.

13             MR. LOCKARD:  Thank you, Judge.

14             (Pause).

15             MR. ROCCO:  Your Honor, may we, just for the record,

16   we have a copy of a transcript relating to Government Exhibit

17   117 and I just --

18             THE COURT:  I don't understand what you --

19             MR. ROCCO:  The jury asked for references to two

20   government exhibits.  And there is a portion --

21             THE COURT:  The jury asked for what they asked for.

22   They didn't ask for the exhibits.

23             MR. ROCCO:  They did not.  They asked for testimony

24   relating to the exhibits.  And embedded in the testimony is a

25   reference to a third exhibit that they did not ask to see, did

HCL3ATI2                      Deliberations

```
 1    not ask for read back in reference to it.  What I'm proposing
 2    is, would your Honor mind taking a look or at least marking
 3    this as a court exhibit for purposes of the record.  It
 4    amplifies what we were saying.
 5              THE COURT:  It is an exhibit already.  I'm happy to
 6    review if you want.
 7              MR. ROCCO:  If you don't mind.
 8              THE COURT:  Sure.
 9              MR. ROCCO:  Thank you.
10              THE COURT:  Sure.
11              (Pause)
12              MR. ROCCO:  Again we think --
13              THE COURT:  I understand.
14              (Pause)
15              MR. ROCCO:  That exhibit relates to the six lines we
16    want removed, your Honor.  Just to make that clear.
17              THE COURT:  I understand.  I mean, I understand your
18    objection and certainly it's noted in the record.  The ruling
19    stands.  I think it would, as I said, be artificial to chop up
20    the transcript and the testimony in the manner you suggest
21    based on the jury's question.
22              MR. ROCCO:  Thank you, your Honor.
23              THE COURT:  How long do you think before you'll have
24    the transcript?
25              MR. LOCKARD:  Just a few more minutes, I think, your
```

HCL3ATI2                        Deliberations

```
 1   Honor.

 2                THE COURT:  Like how many?  10, 15?

 3                MR. LOCKARD:  That should be plenty.

 4                THE COURT:  Would you take a look at this.  This was a

 5   proposed answer to the note, an issue I see is that it's

 6   already 4:30, a little past 4:30, rather, so I would like to

 7   give them the answer before they adjourn for today or at least

 8   show it to them.  They can look at it in the morning, but I

 9   don't know if the 10 to 15 minutes part of that note is

10   accurate.

11                MR. LOCKARD:  I think it is.  I think they'll be here

12   in less than 10, so your Honor and defense counsel can review

13   them, but they'll be here soon.

14                THE COURT:  Then I think I'll hold the note until I

15   see the transcript in my hand.

16                MR. LOCKARD:  Okay.

17                THE COURT:  I don't want to send them inaccurate

18   information.

19                (Pause)

20                THE COURT:  You can give them the note.

21                Do you have a couple of these?

22                MR. LOCKARD:  We have a bunch, your Honor.

23                THE COURT:  I plan to give them six copies now, then

24   I'm going to call them out, because they're probably going to

25   want to leave at 4:45.  All right?  And that would be
```

1    consistent with the note that I just submitted to them.

2              We have another note which asks for -- I won't give

3    you, I'll show you the whole thing in a minute, but asks for

4    some clarification with respect to the third element of the

5    IEEPA conspiracy, that's one.  And two, can they work until

6    4:45 tomorrow which is Friday.

7              So, I'm going to let them go home and we'll look at

8    this note, the first question.  I think the answer to the

9    second question is certainly yes, from my point of view.  So,

10   with that we'll call the jury in.

11             (Jury present.  Time noted 4:44 p.m.)

12             THE COURT:  How are you.  Please be seated.  I have to

13   send you home because I can't keep up with your notes.

14             In answer to the one before the last one, I sent in

15   six copies of transcript.  Between now and tomorrow we can make

16   six more so everybody will have a copy of that.

17             And then with respect to this last note, certainly

18   we'll come up with clarification with respect to the IEEPA

19   conspiracy.  And you most certainly can work until 4:45

20   tomorrow.  You can work as long as you like, actually.

21             So, with that, I ask you not to talk to each other

22   about the case or about anything to do with it unless you're

23   all together in the jury room deliberating.

24             Second, do not talk with anyone else about the case or

25   about anyone who has anything to do with it until the trial has

1   ended and you've been discharged as jurors.

2           Third, do not let anyone talk to you about the case or

3   about anyone who has anything to do with it, including about

4   your deliberations.  And if someone should try and talk to you

5   about the case, please report that to me immediately or to

6   Christine.

7           Fourth, do not read any news or internet stories or

8   articles or blogs or listen to any radio or TV or internet

9   reports about the case or about anyone who has anything to do

10  with it.

11          And fifth, do not do any type of research or any type

12  of investigation about the case on your own.

13          So, see you at 9:15, and you can start deliberating as

14  soon as you're all together.

15          (Jury excused.  Time noted 4:46 p.m.)

16          THE COURT:  Please be seated and let's talk about this

17  note a little bit more.  And it says:  Regarding the conspiracy

18  to violate IEEPA, can we have clarification on the third

19  element.  And then it looks like this is a quote, the

20  government must prove to establish an IEEPA violation that at

21  the time of the transaction at issue, the defendant had not

22  obtained a license to conduct such transaction from the

23  Department of Treasury's Office of Foreign Assets Control or it

24  looks like OFAC.

25          So, that's the question.  I'll make a copy of the text

1    so you can see what you make of it as well.  And I'd like to do

2    that with you this evening, at least preliminarily.  So if you

3    can meet and confer and let me know what you think the answer

4    to this note is.

5              (Pause)

6              THE COURT:  You all can be seated.  Or if you want to

7    leave, you can leave.  But those are the two options.

8              (Pause)

9              THE COURT:  Have you all talked?  Have you talked to

10   them?

11             MR. KAMARAJU:  We're about to in one second, your

12   Honor.

13             THE COURT:  Okay.  And also are you going to get me

14   six more copies of the transcript?

15             MR. KAMARAJU:  Yes, your Honor.

16             (Pause)

17             THE COURT:  So the object that I'm looking for is a

18   written response.

19             MR. KAMARAJU:  We're writing up a proposal.

20             THE COURT:  I just wanted you to know where I'm

21   heading.

22             (Pause)

23             THE COURT:  Where are you?  I see you've stopped

24   conferring.

25             MR. LOCKARD:  So, the government has a proposed

1    written response to the jury's question, and I think the

2    defense has a much different response to the question.

3              THE COURT:  Is yours written as well?

4              MR. ROCCO:  Ours is very easy to state, your Honor.

5              THE COURT:  I want you to both write, if you can't

6    agree on one, I'd like you to each write out your proposed

7    clarification.

8              (Pause)

9              THE COURT:  What have you got?  Why don't you explain,

10   each of you, what you're handing up on the record.

11             MR. LOCKARD:  So I'll hand it up.  It's also very

12   short.

13             THE COURT:  If you would go back to the microphone.

14             MR. LOCKARD:  So the government's proposed response

15   would be:  With respect to the third element of an IEEPA

16   violation, the government must prove that the parties to one or

17   more of the transactions at issue --

18             THE COURT:  Excuse me.  The question was regarding the

19   conspiracy to violate the IEEPA.  Can we have a clarification

20   on the third element.  There are not three elements to the

21   conspiracy.

22             MR. LOCKARD:  Correct.

23             THE COURT:  So, I don't know where you're going in

24   that regard.

25             MR. LOCKARD:  So I guess we had understood that to be

1    the third element of the object of the conspiracy.

2            THE COURT:  Okay.  I don't think that's what the

3    question is.

4            MR. LOCKARD:  So the quoted language in the jury note

5    referring to the -- referring to a license, that is not an

6    element of the conspiracy offense, which only has two elements

7    as the Court properly instructed.  So that's why we had

8    addressed it to the third element of the object of the

9    conspiracy.

10            THE COURT:  Okay.  Now is that correct?  Looking at

11   the instructions, is that a correct formulation, a violation of

12   IEEPA has itself the following three elements?

13            MR. LOCKARD:  So it appears that the language in the

14   note came from page 2411 of the transcript, which is that part

15   of the jury charge addressing the IEEPA violation.

16            THE COURT:  I think you should sit down or --

17            MR. LOCKARD:  There we go.

18            THE COURT:  Yes.

19            MR. LOCKARD:  The quoted language in the note appears

20   to refer to the jury instructions appearing on page 2411 of the

21   transcript.

22            THE COURT:  Go ahead.

23            MR. LOCKARD:  Which says "And the third element that

24   the government must prove to establish the IEEPA conspiracy,"

25   I think referring to the third element of the object of the

HCL3ATI2                          Deliberations

```
1    conspiracy.

2              THE COURT:  It says "conspiracy" in the transcript?

3              MR. LOCKARD:  It does.  Referring to the elements of

4    the object of the conspiracy.

5              THE COURT:  It says "conspiracy" instead of IEEPA

6    "violation"?

7              MR. LOCKARD:  It does, your Honor.

8              THE COURT:  Okay.  So your note is explaining the

9    third element of the IEEPA violation; is that correct?

10             MR. LOCKARD:  That's correct, your Honor.  And the

11   Court, having pointed it out, it may also be worth -- we can

12   write something to clarify that that element is an element of

13   the object and not an element of the conspiracy.  I think we

14   had just read it as a question about sort of the merits of that

15   element.

16             THE COURT:  Okay.  What's the defense position?

17             MR. ROCCO:  The defense position is that --

18             THE COURT:  You have to speak up.

19             MR. ROCCO:  I'm sorry, Judge.

20             THE COURT:  Talk into the microphone.

21             MR. ROCCO:  Yes, I'm sorry.  I apologize, Judge.

22             THE COURT:  No.

23             MR. ROCCO:  At the end of the day my voice is getting

24   a little weak.

25             THE COURT:  Everybody wants to hear you.
```

HCL3ATI2                    Deliberations

1          MR. ROCCO:  I'm sure that's not true, Judge.  That's

2     okay.  Our position --

3          THE COURT:  It is true.  I'm being polite, I have to

4     say.  I certainly want to hear you.

5          MR. ROCCO:  Thank you, your Honor.

6          What I submitted to the Court comes directly from the

7     Court's charge on page 51 of the charge.

8          THE COURT:  Before you get there --

9          MR. ROCCO:  The IEEPA conspiracy --

10          THE COURT:  Hold on a second.  Before you get to

11     whatever it says, I haven't looked at the transcript.  I am

12     just looking at the note.  Okay.  So the note says regarding

13     the conspiracy to violate IEEPA, can we have clarification on

14     the third element.

15          So, my understanding of the law, which is admittedly

16     limited, there are only two elements of a conspiracy, the IEEPA

17     conspiracy.  So that if there is any clarification, number one,

18     that clarification should be made that there are only two

19     elements to the conspiracy.

20          In the instruction, I'm looking at the written

21     instruction, as opposed to the transcript, it goes on to say

22     that if there is a substantive violation of IEEPA, that has

23     three elements.  So I assume the third element they're talking

24     about is, at least in the first part of their question, is the

25     third element of an IEEPA violation, as opposed to IEEPA

HCL3ATI2                        Deliberations

 1    conspiracy.

 2             MR. ROCCO:  Yes, your Honor.

 3             THE COURT:  So I'm trying to have context of

 4    understanding your theory.

 5             MR. ROCCO:  The context that I think is provided by

 6    the note is the note's quotation, which comes directly from

 7    page 51 of the Court's charge.

 8             THE COURT:  You can, you know, go wherever you want to

 9    go.  The one thing I'm going to do is answer the note.  I'm not

10    going to -- we'll get to what's in the transcript.  First

11    thing, most important, we're going to answer that note.

12             What's your answer to that note from the jury?

13             MR. ROCCO:  My answer to the note comes directly from

14    the Court's instruction to the jury, your Honor.  Because I

15    think it is -- given the way the note reads, it is a reference

16    to the requirement that the government prove, to establish an

17    IEEPA violation, is that at the time of the transactions, the

18    defendant had not obtained a license to conduct such

19    transactions.  And that's what this says from the Office of

20    Foreign Assets Control or OFAC.

21             THE COURT:  You think your note says that?  Your note

22    says that the government must prove beyond a reasonable doubt

23    that at the time of the transactions --

24             MR. ROCCO:  -- at issue --

25             THE COURT:  -- at issue, the defendant had not

HCL3ATI2                        Deliberations

1   obtained --

2               MR. ROCCO:  -- a license, yes.

3               THE COURT:  That's your legal argument about the case.

4   I want to know what the answer is to that note.

5               MR. ROCCO:  I'll try be --

6               THE COURT:  If we don't get it consensually, I'll

7   draft one.  That's all.

8               MR. ROCCO:  My answer to the note is precisely what

9   the Court instructed the jury in the instruction.

10              THE COURT:  Okay.  So, then you have no answer.

11   Right?  Your answer is look at the transcript.

12              MR. ROCCO:  And the transcript is accurate.

13              THE COURT:  That's not helpful, in my opinion.

14              MR. ROCCO:  I don't know how much further we can go

15   with it, your Honor.

16              THE COURT:  Where we are definitely going to go, let

17   me give you a heads up so you won't be surprised tomorrow.  I'm

18   going to answer that question.  I'm going to say there are only

19   two elements to the conspiracy.  There are three elements to

20   the substantive violation.  That's the gist, in my opinion, of

21   the answer.

22              Now if I mis-explained that, it's on me.  But I'm not

23   going to just say read the transcript.

24              MR. ROCCO:  Your Honor, if I just may.  The government

25   proposes an instruction or clarification that I believe amends

1     the indictment.

2              THE COURT:  Listen, I don't want you fighting with the

3     government every three minutes.  I'm just -- listen to me --

4              MR. ROCCO:  Yes, sir.

5              THE COURT:  In good faith I'm asking you how do you

6     respond to the note.  The note obviously misconstrues the law

7     in its first question.  And I'm going to straighten that out.

8     And then if there is more to say, I'm happy to say it.  If you

9     want, if you want to propose that the answer is in the judge's

10    reading of the instructions at pages 23 and 24, that's your

11    answer.  Fine.  I can deal with that and I'll ask the

12    government for its answer.  And if it doesn't sound like there

13    is going to be any kind of consensus, I'm going to forge an

14    answer.  That's all.  I'm just saying where you're going is not

15    helpful.

16             MR. ROCCO:  Give me 30 seconds, your Honor.

17             THE COURT:  Yes.

18             (Pause)

19             MR. ROCCO:  Your Honor, we agree that the Court should

20    address the issue and clarify for the jury that the conspiracy

21    element only has -- the conspiracy charge has only three -- two

22    elements.  But we also think that the jury is also asking

23    whether there needs to be a license, and we think that that

24    should be addressed in the response to the jury.

25             THE COURT:  Well, I've been trying to get you to give

1   me a written response to that question.

2              MR. ROCCO:  I apologize.

3              THE COURT:  Don't give it off the cuff.  Write it out.

4              MR. ROCCO:  Thank you, your Honor.

5              THE COURT:  You bet.

6              (Pause)

7              MR. ROCCO:  May I just say one further thing going to

8   this.  The government never proved this element of the

9   conspiracy.  They never proved that Mr. Atilla was not

10  licensed.  And quite frankly, I think that would support a

11  motion to dismiss the indictment on those grounds.

12             THE COURT:  Or a mistrial.

13             MR. ROCCO:  No, not a mistrial this time, Judge.  And

14  not a continuance, Judge.  So that's basically what we would be

15  moving for, for a Rule 29 acquittal.

16             THE COURT:  Before we get the Rule 29, we've got to

17  deal with this question.  That's all I'm saying.

18             (Pause)

19             THE COURT:  I'm overhearing.  Let me just tell you

20  what I think.  It is a mistake.  And either it is a mistake by

21  me in reading -- wait a minute.  Or it is a mistake by the

22  court reporter in taking it down.

23             So, the written instructions clearly say it is an

24  IEEPA violation as opposed to an IEEPA conspiracy.  I'm

25  confident that that's what I said.  But I'll take

responsibility if I didn't say it.  It is incorrect, and I'm

not going to change the law in clarifying to the jury.  So,

that's where I'm coming from.

        So I need, if you can, an instruction that embraces

and deals with the jury's concerns along the lines of what I

suggested.  If you want to go a different route and say that

that is a requirement of the conspiracy, you can do that.  But

I'm going to disagree with you.

        MR. ROCCO:  Your Honor, what I was trying to address,

and maybe I'm going too far, is --

        THE COURT:  Speak into the microphone.

        MR. ROCCO:  Is trying to anticipate what the jury

really meant by the question.

        THE COURT:  I'm just going with the question itself.

I mean, by the way, you can propose any answer you wish.  And

so can the government.  I'm just saying how I interpret the

instructions, first of all, that I read, and the question and

the transcript.  So the transcript is inconsistent at least,

and I didn't read it that carefully, with one word where it

says "conspiracy" versus "violation" or "violation" versus

"conspiracy."  The instruction is very clear and I'm very clear

about what was said.

        So, but if you want, whatever you want to say, put in

a written proposal, and I'll consider it.  I just want you to

you know where I'm coming from.

HCL3ATI2                     Deliberations

1            MR. ROCCO:  I understand.  I think we're not

2       quarreling with whether there was a mistake or whether --

3            THE COURT:  It doesn't matter.

4            MR. ROCCO:  The jury has to know what the law is on

5       the issue and the correct law on the issue.

6            THE COURT:  Right.  And the jury has the written

7       instructions, as you know.

8            MR. ROCCO:  Is the answer then to simply -- and I'm

9       not trying to be smug -- but isn't the easy answer just to

10      refer the jury to the written instruction?

11           THE COURT:  Maybe.  That's one possibility.  But they

12      asked a question looking for some sort of help, and if we can

13      give it, I would like to give it, which is always the case.

14      But I do feel that I can't do that with respect to the first

15      question that they asked because that, on its face, I believe

16      is a mistaken understanding of the law of the IEEPA conspiracy.

17      And I do want to clear that up, and essentially restate that

18      there is two elements to the conspiracy, there is three

19      elements to the substantive violation.

20           MR. LOCKARD:  Your Honor, we just handed a written

21      proposal along those lines to defense counsel and we'll come

22      back shortly, I hope.

23           THE COURT:  Okay.

24           (Pause)

25           MR. ROCCO:  Your Honor, the government has proposed an

1   instruction that we agree with, except in element third, where

2   the government says that the Office of Foreign Assets Control

3   had not issued a license to engage in the transaction or

4   transactions.  We would like to add, this is the defense part,

5   and I can handwrite it in a different color ink, "to the

6   defendant."

7         THE COURT:  Maybe.  So, where does that language,

8   though, come from?  The jury instructions?

9         MR. LOCKARD:  So, your Honor, the complete proposal,

10  to summarize, would basically be to instruct the jury:  As I

11  instructed you, there are only two elements of a conspiracy to

12  violate the IEEPA.

13        And then would recite the elements of a conspiracy as

14  set forth on -- I have the transcript pages, I'm sorry, but it

15  is transcript page 2392, the existence of the conspiracy and

16  the defendant joining the conspiracy.

17        The object of the charged conspiracy in Count Two is

18  to violate the IEEPA.  As I instructed you, a violation of the

19  IEEPA has three elements, they are, and then the first, second

20  and third are quoted from, again, I have the transcript cite,

21  but it is page 2406 of the transcript.

22        THE COURT:  Okay.  So that's it?

23        MR. LOCKARD:  And that's the end of the government's

24  proposal.

25        MR. ROCCO:  And the defense proposal would be

1    consistent with the charge that the Court gave to the jury, to

2    add to the end of what in effect is now the third element of

3    the substantive count to a license to engage in the transaction

4    to the defendant.

5            MS. FLEMING:  Which is referenced in their note and in

6    their written instructions.

7            THE COURT:  I'm looking at the jury instructions.  So,

8    here's the ideal thing -- not the ideal thing.  So you've got

9    to find the answer in the jury instructions.  That's all.

10   That's what I'm going to try and do if you don't.

11           MR. ROCCO:  That's what we're doing.  This is -- the

12   Court's instruction references the defendant.  To the

13   defendant.  And in fact, the jury note --

14           THE COURT:  The jury instruction you're talking about?

15           MR. ROCCO:  Yes.  In the Court's written instruction

16   at page -- page 51.  Page 51 of the written instructions.

17           THE COURT:  Wait a minute.  I'm looking.  It starts on

18   page 45 of the written instructions.  The jury instructions.

19           MR. ROCCO:  And the language we're referencing --

20           THE COURT:  Hold on a second.  Where it says "I've

21   already instructed you as to what a conspiracy is and you

22   should go about determining whether one existed, and whether

23   the defendant knowingly joined and participated in it.  The

24   those same principles apply to Count Two as they did to Count

25   One.  No overt act is required for this conspiracy."

HCL3ATI2                    Deliberations

1            So, okay.  "As I've stated, the object of the

2       conspiracy charged in Count Two is the violation of IEEPA.  A

3       violation of IEEPA has itself the following elements:"  First,

4       second, third.

5            Here's the third element:  "that the Office of Foreign

6       Assets Control, OFAC, had not issued a license to engage in the

7       charged transactions."

8            MR. ROCCO:  And --

9            THE COURT:  What else do we need to say?

10           MR. ROCCO:  Well, the jury --

11           THE COURT:  You're talking about later on, is there a

12      mistake?

13           MR. ROCCO:  No, I don't believe there is a mistake.

14      There is the statement on the top of page 51.

15           THE COURT:  51, hold on.  Which says "The third

16      element that the government must prove to establish an IEEPA

17      violation."

18           MR. ROCCO:  Yes.

19           THE COURT:  By the way, that's where the transcript I

20      believe says "conspiracy."

21           MR. ROCCO:  Yes, that's a --

22           THE COURT:  That's a mistake.

23           MR. ROCCO:  That's where --

24           THE COURT:  One way or the other.

25           "Is that at the time of the transactions at issue, the

1    defendant had not obtained a license to conduct such

2    transactions from the Department of Treasury's Office of

3    Foreign Assets Control or OFAC."

4              MR. ROCCO:  Yes.

5              THE COURT:  That's not a mistake.  That is what we

6    agreed was the instruction.

7              MR. ROCCO:  And that's precisely what the jurors' note

8    references.  That's the language that's quoted in the jurors'

9    note.

10             THE COURT:  The juror says that the government must

11   prove to establish an IEEPA violation, is that at the time of

12   the transactions at issue, the defendant had not obtained a

13   license to conduct such transactions from the Department of the

14   Treasury's Office of Foreign Assets Control.

15             So, they are here relating to the third element of the

16   violation.

17             MR. ROCCO:  Yes.

18             THE COURT:  I agree with that.

19             MR. ROCCO:  So --

20             MR. LOCKARD:  We have a slight --

21             THE COURT:  So, okay.  I think we're pretty much in

22   agreement.  You're not?

23             MR. LOCKARD:  So, it's hard to know exactly what is in

24   the jury's mind and whether this addresses what's in the jury's

25   mind.

HCL3ATI2                      Deliberations

1              So I think legally, and this may be our error for not

2    having raised this, but it is really transactions that are

3    licensed.  So whether the defendant personally did or did not

4    have a license, it is whether the transaction was licensed.

5    And in describing the elements the first time, that's how it's

6    phrased.  So, there could be a little bit of confusion about

7    whether there has to be evidence specifically about the

8    defendant's possession of a license as opposed to whether the

9    transactions were licensed.  It is a little bit of a fine legal

10   point.

11             THE COURT:  Well, it is not a mistake, though.  I

12   mean, it may be a mistake in the law, but it's not -- the

13   "violation" versus "conspiracy," that's a mistake somehow.  It

14   doesn't matter.

15             But this, what they're writing back is what they were

16   instructed.

17             MR. LOCKARD:  Right.  And I think the reason why it

18   might have caused confusion is because the object of the

19   conspiracy, it is not the defendant who has to do each of the

20   elements of the object.  It is that the conspirators agreed

21   that that's going to happen.

22             And so to the extent it implies that the defendant

23   itself has to engage in the transactions and has to not have

24   applied for a license to do so, that may be a little bit of

25   confusion.  But again, it is hard to know from the note.

HCL3ATI2                        Deliberations

1     THE COURT:  I think you have to look more carefully

2  throughout the instructions to see if there is any help for

3  either position.  Not just that instruction.  Because there

4  are, I don't remember them offhand, but there are in talking

5  about co-conspirators who does what kind of thing.  I don't

6  know if that applies here.  But that's what you have to look

7  at.

8     MR. ROCCO:  Your Honor, in Government Exhibit 8041,

9  which is the Office of Foreign Assets Control license history

10  check.  When they ran that, which is in evidence.  When the

11  government ran the license check, they did not check for

12  Mr. Atilla's name.  So, the consequence of that is that there

13  is no evidence in this record that Mr. Atilla was not licensed.

14     MR. LOCKARD:  That's not the consequence of that.

15     MR. ROCCO:  I think it is.  There is no proof.

16     THE COURT:  I am not sure that matter of fact is the

17  issue right now.  I'm just not sure.

18     MR. ROCCO:  We agree it is not the issue with the

19  note.  But we do think that it is important that the note

20  respond to the question that the jury had in mind.

21     MR. LOCKARD:  Again, we only know the question they

22  asked.  Not the question they had in mind.

23     MR. ROCCO:  The question they asked, if I may --

24     THE COURT:  It may well be that --

25     MR. ROCCO:  I --

HCL3ATI2                    Deliberations

1              THE COURT:  It may well be that there is going to be

2     another question after this one, if whatever it is that is of

3     concern is not dealt with.  If you know what I'm saying.

4              MR. ROCCO:  Indeed.  I think that the next question is

5     going to be whether Mr. Atilla was proved to have a license or

6     not.

7              THE COURT:  It may be.

8              MR. ROCCO:  That's right.

9              THE COURT:  It may be.  It is not in this question.

10             MR. ROCCO:  It is not.  We agree.

11             THE COURT:  All right.

12             MR. LOCKARD:  I think in light of that, I think the

13     government believes that a more precise description of the

14     third element would be that the transactions were not licensed.

15     As opposed to that the defendant did not have a license.  If

16     we're going to restate the third element, that's our proposal

17     of how to restate it.

18             MR. ROCCO:  And the defense position on that is that

19     changes the Court's instruction to the jury on this element.

20             MR. LOCKARD:  The Court is entitled to clarify.

21             MR. ROCCO:  Excuse me?

22             MR. LOCKARD:  The Court is entitled to clarify the law

23     in response to a jury note, so I'm not sure the import of that

24     argument.

25             MS. FLEMING:  That's not clarifying it.  It's changing

HCL3ATI2                        Deliberations

1   because you didn't object --

2          THE COURT:  Okay.  Then you're going to have to give

3   me citations.

4          MR. LOCKARD:  Sure.

5          THE COURT:  For whatever you do.

6          MR. ROCCO:  I think we would benefit from spending --

7   spending some time working on this, this evening, rather than

8   imposing on the Court's time and we'll come in early tomorrow.

9          THE COURT:  But so I think you need, so you say you

10  can't do anything more than is done, you have to show me cites

11  that say that's true.

12         If you want to make some modification, I don't know if

13  that's what you're thinking, then you have to show me why

14  that's okay.

15         But, I think you need to look through these

16  instructions, because I think that rather than going beyond to

17  the cases, I think you may find answers in the instructions.  I

18  don't know.  and if you do, then your job is not as big a job

19  as you're suggesting.  If you know what I mean.

20         MR. LOCKARD:  I think that's likely.

21         THE COURT:  Do you know what I'm saying?

22         MR. ROCCO:  I do.

23         THE COURT:  So look through it and I guess we better

24  get together at 8.

25         MR. ROCCO:  The witching hour.

HCL3ATI2                          Deliberations

1              THE COURT:  All right.  See you then.

2              (Adjourned until December 22, 2017, at 8 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25