HCM3ATI1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                        S4 15 Cr. 867 RMB

5   MEHMET HAKAN ATILLA,

6               Defendant.

7   ------------------------------x

8

9                                        December 22, 2017
                                         8:00 a.m.
10

11

12  Before:

13                  HON. RICHARD M. BERMAN,

14                                       District Judge
                                           and a jury
15

16

17                  APPEARANCES

18  JOON H. KIM,
         United States Attorney for the
19       Southern District of New York
    MICHAEL D. LOCKARD,
20  SIDHARDHA KAMARAJU,
    DAVID W. DENTON, JR.,
21  DEAN C. SOVOLOS,
         Assistant United States Attorneys
22

23

24

25

HCM3ATI1

                    (APPEARANCES Continued)


HERRICK, FEINSTEIN LLP (NYC)
        Attorneys for defendant Atilla
BY:   VICTOR J. ROCCO, Esq.
        THOMAS ELLIOTT THORNHILL, Esq.
        – and –
FLEMING RUVOLDT, PLLC
BY:   CATHY ANN FLEMING, Esq.
        ROBERT J. FETTWEIS, Esq.
        – and –
LAW OFFICES OF JOSHUA L. DRATEL, P.C.
BY:   JOSHUA LEWIS DRATEL, Esq.
                    Of counsel
        –and–
McDERMOTT WILL & EMERY
BY:   TODD HARRISON

Also Present:
        JENNIFER McREYNOLDS, Special Agent FBI
        MICHAEL CHANG-FRIEDEN, Paralegal Specialist USAO
        MS. ASIYE KAY, Turkish Interpreter

HCM3ATI1                        Deliberations

1          (In the robing room; defendant not present)

2          THE COURT:  A couple of things we'll put on the record

3     and then we can talk.

4          You have one application with respect to Rule 29,

5     which is set forth in your letter probably dated yesterday, I

6     saw it this morning.

7          MR. ROCCO:  Yes, it is dated yesterday, December 22.

8          MR. LOCKARD:  That's today.

9          MR. ROCCO:  I'm sorry.  It is dated today.

10         THE COURT:  It is dated today.  It relates to the jury

11    instructions principally, but it does say at the end that you

12    want to use these arguments to supplement your pending motion,

13    Rule 29 motion to dismiss, the date of which I can't remember.

14    Does anybody know that date?

15         MR. LOCKARD:  It was around the 15th or so.

16         MR. ROCCO:  I don't recall.

17         THE COURT:  Whenever it is.  What I would propose to

18    do, if this is what you are doing, is to dismiss that motion

19    without prejudice, and to have you move again in one place, not

20    as an addendum to this letter, to dismiss.  And then I'll have

21    the government respond.

22         I'm not taking a motion, a Rule 29 motion as a by the

23    way, this motion is now supplemented.

24         MS. FLEMING:  I don't think you can do that because --

25         THE COURT:  Just a minute.

HCM3ATI1                    Deliberations

1              MS. FLEMING:  I'm sorry.

2              THE COURT:  That's what I think you were doing, unless

3       I'm mistaken.

4              MR. ROCCO:  Well, our thought was that we had made the

5       motion, and that the best way, the most prudent way of

6       proceeding to preserve all the issues was essentially to

7       supplement that motion by addressing our arguments now to a

8       lack of proof by the government on the essential element of the

9       IEEPA conspiracy.

10             THE COURT:  You're perfectly welcome to do that.  But

11      like you say on page one of this letter, December 22, in

12      addition, for the reasons set forth in Section B of this

13      letter, we respectfully request that this Court dismiss Counts

14      Two through Six pursuant to Rule 29 and supplement defendant's

15      motion for acquittal with this letter.

16             All I'm saying is, I'm happy to have it, but it's not

17      an addition to that letter.  These are new developments that

18      have happened at the close of the case.  You're certainly

19      entitled to make a motion at the close of the case, but can't

20      have one and both, I don't believe.

21             MR. ROCCO:  Your Honor, I think we can.  That's the

22      point.  I think we can.  And that's why we did it this way.

23             THE COURT:  I don't believe you can.  But that's an

24      issue we have to figure out.  And I'm not supplementing it.  So

25      if this is something else that you want, you have to move, and

1    it is not in this letter that you move.  The record would be

2    completely berserk.

3           I don't mind, whatever claims you want to present, no

4    problem.  But as you've noticed with me, I like to have them in

5    one place, so they can respond and I can examine it based on

6    this and I don't have to go pull out some other document and

7    see.

8           MR. ROCCO:  So we're not confused and we don't in

9    effect go contrary to your Honor's direction, and you have the

10   power to direct us to do what we want to do.  All I'm saying is

11   that we'll follow the Court's direction.  But we want to

12   preserve our objection to that.

13          THE COURT:  Okay.  So then, all the claims that you

14   want to make, you can make.  In this second -- let's call it a

15   second motion to dismiss, you referred to it as a second Rule

16   29 motion.  You should start that by saying you can make two

17   Rule 29 motions.

18          I'm not sure, to be honest with you.  I thought not.

19   I thought you get one or the other, and I don't know why you

20   would need two, and I don't know why a Court would have to

21   decide two motions, which are essentially the same except they

22   are at a different point in time in the case.  Especially when

23   the supplement that you're making comes in the second portion

24   of the case, that is to say, after the close of the

25   government's evidence.  So that makes it under, as I understand

HCM3ATI1                         Deliberations

1   the Rule 29, a motion at the close of the whole case.  That's

2   what I think is what the case law probably says, but I don't

3   know for sure.  And I don't think it prejudices you in any way.

4            But it's like saying you can't haven't your cake and

5   eat it too, so to speak.  You are certainly entitled to make a

6   Rule 29 motion.  If the case law says you can make two of them,

7   at this time, this would be the second one, then I'll take a

8   look at that.

9            Instead of you just objecting, if you can prove that

10  you can have both, so be it.

11           But I do want, in any event, a separate motion that

12  does what you ask for on the page one on the December 22 letter

13  and at the end, the last two pages go into that in a little

14  more detail.

15           MR. ROCCO:  Yes, your Honor.

16           THE COURT:  Does anybody know about the issue about

17  two Rule 29 motions?

18           MR. KAMARAJU:  I don't know for sure.  I think the

19  rule provides for the ability to renew a motion so that

20  contemplates a second motion, not a -- it contemplates one

21  motion, in essence.

22           MR. HARRISON:  Judge, you can do it at the close of

23  the government's case and you can renew it at the close of the

24  whole case.

25           THE COURT:  Renew is one thing, but now you're

HCM3ATI1                    Deliberations

1    supplementing it.  You're adding several new dimensions to that

2    motion.  If you just said to me today we renew our Rule 29

3    motion, no changes, but you're changing it.

4              MR. HARRISON:  Right.  "Renew" is the wrong word to

5    use.

6              THE COURT:  It's not.  It is what the rule talks

7    about.  Renew I think means, okay, you still want me to resolve

8    that motion, but I don't think you get another whack at a

9    dismissal.

10             MR. ROCCO:  If we do, we'll brief that.  You

11   understand what our position is.  I just --

12             THE COURT:  If you conclude you don't, you'll still

13   have your Rule 29 motion, you can put in it whatever you want

14   to put in it, and you can cover up until the close of the case.

15             MR. ROCCO:  Yes.

16             THE COURT:  Including your own witnesses and blah,

17   blah, blah.  I think the way I understand it, it seems to me

18   more logical and I think hopefully the rule is in accord with

19   the case.  So that's number one.

20             Number two is the jury note.  I'm going to hear you

21   out briefly, because I have your letters, so they're pretty

22   thorough, both of them.  But if you could put the gist so we

23   know the disagreement on the record, and it doesn't seem that

24   there is going to be consensus on this issue.  So I'll come up

25   with a rule, an instruction myself, and you can object to it or

HCM3ATI1                          Deliberations

1    you can both object to it.  You'll probably both hate it.

2              MR. LOCKARD:  Everybody wins.

3              MR. ROCCO:  Our position is I thought --

4              THE COURT:  You go first.

5              MR. ROCCO:  I'm sorry, your Honor, I didn't mean to --

6              THE COURT:  No, no.

7              MR. ROCCO:  I didn't mean to just jump in.

8              THE COURT:  That's fine.

9              MR. ROCCO:  Our position is simple.  I think what the

10   government proposed here amends the indictment, because it

11   broadens the basis for conviction.  And I think under that

12   circumstance, it essentially violates the defendant's due

13   process rights.  It is an amendment that's, as the case is to

14   the jury, the jury is already considering the charge, the

15   charge as given by the Court is the charge that the government

16   has asked for since the inception of our discussions of

17   charges.  It has been -- and actually the way it is alleged in

18   the indictment that the defendant is the responsible for -- the

19   government as an element of the offense has to prove that the

20   defendant is not licensed.  It did not do it here.

21             By proposing the language that the government is the

22   now proposing, it broadens the basis because it's

23   transactionally oriented.  It in effect takes out what has been

24   consistently the government's theory, broadens the government's

25   theory.

HCM3ATI1                      Deliberations

1            There is nothing wrong with the charge as given by the

2     Court, in accord with what the government has requested, as I

3     said earlier, essentially since the inception of this case.

4            Our position is, as we set forth in the letter, that

5     there is a legitimate -- the jury is legitimately confused,

6     your Honor can in effect address the jury's confusion by

7     giving --

8            THE COURT:  They're confused over the difference

9     between substantive counts and conspiracy counts.

10           MR. ROCCO:  And quite frankly, I followed, I think it

11    is irrelevant what your Honor said in open court.  Whether you

12    were talking about conspiracy or substantive count.  I think

13    that the jury has in front of it the appropriate as requested

14    instruction by the Court, and is not mindful of what was said

15    orally in the courtroom.  And the question that's --

16           THE COURT:  It doesn't in fact have the transcript of

17    the jury instructions.  It has only the written instructions.

18           MR. ROCCO:  Yes, your Honor.

19           THE COURT:  I agree with that point.  We were focusing

20    on it yesterday.  It is a bit of a red herring.

21           MR. ROCCO:  It is a red herring.  And quite frankly, I

22    don't know why we were confused.  I think we might have

23    confused the Court.

24           THE COURT:  It just popped up and initial reactions.

25           MR. ROCCO:  Sounds like we have a smart jury or at

HCM3ATI1                        Deliberations

1    least a jury that's working very hard looking at elements.  So

2    quite frankly, I think our position is that the Court can

3    reinstruct the jury to clarify whatever question the jury has,

4    but that instruction needs to be conformed to the way the Court

5    originally instructed the jury.  The government's proposal

6    changes that.  And we think that's wrong.

7          THE COURT:  You don't think I should just say reread

8    the entire instructions and tell me if it doesn't solve it?

9    I'm just kidding.  I know what you're saying.  There is one --

10   but let me hear from him.

11         MR. HARRISON:  Can I just supplement that very

12   briefly.  What they're asking about is, hey, what's the deal

13   with this, do we have to prove he has a license or not.  The

14   answer is yes.  The government has to prove the two elements of

15   the conspiracy, and they also have to prove, as they've already

16   been charged, that the government has to prove that the

17   object -- the elements of the object of the conspiracy as well.

18   That's pretty much black letter case law.

19         The government's theory on that has been consistent in

20   the indictment, in their proposed jury charges, in the charge

21   that we gave to the jury, and in the proof that the defense --

22   the government tried to make at trial.  They obviously have

23   thought this whole time that they had to prove that the

24   defendant had a license.  Did not have a license.  Sorry.  The

25   only reason they're changing that theory now in the middle of

1    jury deliberations is because they've just now realized they

2    didn't prove that element of the object of the conspiracy.

3            THE COURT:  I got it.

4            MR. LOCKARD:  Okay.  So just for starters, I think the

5    record is replete with evidence that the defendant did not have

6    a license.  I don't think that's a serious argument here.

7            But, just addressing I think the jury's question, I

8    think that what the defense is proposing is actually

9    misleading, and I think their letter makes it clear that it is

10   an attempt to set up exactly this argument.  That if the

11   defendant's name is not in the license check, then there is

12   insufficient evidence.  And I think it is an attempt to create

13   sort of a misleading impression in the jury's mind specifically

14   to set up that argument.  And the reason that's misleading is

15   that this is a conspiracy charge.  And the conspiracy that is

16   charged is that the defendant agreed with others that a

17   violative transaction would occur, not that the defendant would

18   personally engage in that transaction or commit that

19   transaction.

20           And so, throughout the jury charges, whenever we talk

21   about the elements of the substantive offense that is the

22   object of a conspiracy, "defendant" is used in sort of a

23   generic sense.  That a defendant would commit these elements of

24   the substantive offense.  But the conduct that the actual

25   charged defendant sitting at the table engages in is agreeing

HCM3ATI1                    Deliberations

1   with others that that would happen.

2          And so, what we have proposed basically is to draw the

3   jurors' attention to the law of conspiracy that makes that

4   clear, that makes it clear that the gravamen of a conspiracy

5   offense is an agreement that a violation would occur, and then

6   the elements of that violation are that the transaction that is

7   not licensed be engaged in by someone.  And then if the jury

8   has questions about the evidence relating to the presence or

9   absence of a license, they can certainly raise that.  But I

10   think that instruction addresses the question that the jury has

11   asked the Court.

12          MR. ROCCO:  Your Honor, if I may.

13          THE COURT:  I think I get it.

14          MR. ROCCO:  No, but I really do think this is

15   important.

16          THE COURT:  All right.

17          MR. ROCCO:  The government can charge a crime in a

18   number of different ways.  This is the problem with

19   constructive amendments.  The government can charge a crime in

20   an almost infinite variety of ways.  Here the government chose

21   to charge a crime in a certain way, and the way they chose to

22   charge the crime is that the defendant here was unlicensed.

23   That's the theory -- that's the theory that the government has

24   chosen.

25          The government doesn't get another bite at the apple

HCM3ATI1                      Deliberations

1  to say now the defendant doesn't mean Hakan Atilla, it means

2  some generic defendant.

3          The jury -- and what makes it worse here and

4  exacerbates the harm to the defendant is the jury's

5  concentrating precisely on that element of the charge.  And to

6  change it at this point, as I say, I think is unfair, it is

7  done without notice to us, and essentially -- and in framing

8  our defense, Judge, I don't want to go into what we were

9  thinking, but it affects the theory of the defense and the way

10  the defense has approached during the trial.  Because the

11  government has chosen to charge the crime in this specific way.

12          MR. HARRISON:  Just a last factual point --

13          MR. LOCKARD:  If I can --

14          THE COURT:  So wait.  This is the nature of this

15  trial.  Right.  Everybody wants to fight to the death on every

16  issue and have every one of their lawyers chime in.  I get it.

17  It is a little exhausting for everybody, but I totally get it.

18          I don't have any interest in them winning or you

19  winning, I just want the jury to make that determination.  I

20  hope that's been made clear throughout the three weeks.

21          MR. HARRISON:  Yes, Judge.

22          MR. LOCKARD:  Absolutely.

23          THE COURT:  So the way I see it, it is a legal issue,

24  so to speak, and it is not what's better for the defense or

25  better for the government.  It is a legal issue.

HCM3ATI1                          Deliberations

```
 1              There is no doubt that the jury is confused between
 2    what's the substantive crime and what's a conspiracy.  And it
 3    is somewhat of a confusing subject.  So, can't blame them for
 4    that.  So, right.
 5              I think we have to say to them this conspiracy has two
 6    elements that doesn't have any overt act requirement.  And then
 7    separately, what does have three elements is the object of the
 8    conspiracy.  One, two and three.  So, that's the core of what
 9    the response I think has to be to the jury's note.
10              The only question that I have is in three.  And they
11    asked about the third element.  It is a conspiracy.  Mr. Atilla
12    is not charged with a substantive offense in the violation of
13    IEEPA.  He's not.  So, the question in my mind is whether, two
14    fold, one is procedural, put that to the side for a moment.
15    The other is does the way the third element is now written make
16    him have to be found to have violated IEEPA as a substantive
17    offense.
18              Do you get what I'm saying?
19              MR. ROCCO:  Yes, we do.
20              MR. LOCKARD:  Yes.
21              THE COURT:  And how we got there, so to speak, doesn't
22    really -- it is in some way background, but if it's wrong, if
23    it is a wrong instruction, that's my question.  If the third
24    element is a wrong instruction, the case law is pretty ample
25    that a judge can change the instruction.
```

HCM3ATI1                         Deliberations

1          So, to me, that's the only issue on the table is what

2    should one say about that third element.

3          Two options.  You can leave it alone, which is what

4    you want to do, and you can change it, which is what he wants

5    to do.  There is no easy answer there.

6          MR. LOCKARD:  I think in addition to that -- is it my

7    turn?  I think in addition to that, there is also, as the Court

8    rightly suggested, the jury charge as a whole contains a lot of

9    instruction that addresses exactly this interplay between

10   conspiracy and substantive.

11         THE COURT:  I get that.

12         MR. LOCKARD:  I think it is appropriate in this case

13   to draw the jury's attention to those additional instructions,

14   which I think address the confusion that we're all sensing, I

15   think we listed that in the appendix to our letter the portions

16   we thought addressed that.

17         THE COURT:  That's the issue, about whether you leave

18   it alone or make some modification to it.

19         MR. ROCCO:  I think you crystalized it perfectly.  Our

20   position on this is the charge as given to the jury is

21   substantively correct and needn't be changed.

22         THE COURT:  Is it?

23         MR. ROCCO:  It is.  It's the way the government has

24   chosen to charge the crime in this case.

25         In an arson case, it's like the government proved --

HCM3ATI1                    Deliberations

1   the indictment charged that the arson was started by an

2   explosion, and now wants to claim that the arson was set by

3   somebody throwing burning hay into a building.  I don't think

4   the government gets to change the way the statute was violated.

5             THE COURT:  If they were charging a substantive crime

6   in Count Two, in addition to the conspiracy, then I would say

7   how they fashioned the substantive crime can't probably be

8   changed.  But they aren't.

9             And the point is, clearly what the jury is confused

10  about is the distinction between conspiracy and a substantive

11  count.  And literally I'm going to have to focus on it a little

12  bit more.  My only question is whether that third element is

13  incorrectly stated.  Because it does say that Mr. Atilla has to

14  do something.  And the point of the conspiracy is that he

15  doesn't.  There has to be a conspiracy, he has to join it, and

16  somebody in the conspiracy doesn't even have to do it, but can

17  have as their intention the substantive violation of IEEPA.

18  I'm pretty clear that is the problem before us.

19            I don't know what the answer is, but I think that's

20  the problem.

21            MR. LOCKARD:  I want to respond to something.

22            MR. ROCCO:  I think it's my turn.

23            MR. LOCKARD:  It's not.

24            I want to address something Mr. Rocco said in his last

25  argument.  I think there is a mischaracterization of the

HCM3ATI1                    Deliberations

1      indictment.  I don't think that's really an issue that's

2      troubling the Court.  I think it's a mischaracterization of the

3      indictment.  Really what's happening here is not that there is

4      a charge that an arson was committed in a different way than

5      the proof showed.  What was shown was there was an agreement to

6      commit the arson, and Mr. Rocco is saying you have to instruct

7      the jury that the defendant started the fire.

8              MR. ROCCO:  One last thing from my perspective, your

9      Honor.  I am going to make it simple in terms of a narcotics

10     conspiracy, because I think this is where it's come up pretty

11     clearly in the Second Circuit.  The government could have

12     charged this as conspiracy to distribute narcotics, controlled

13     substances.

14             THE COURT:  Let's take that as an example.

15             MR. ROCCO:  It chose to, in effect, say it was a

16     conspiracy to distribute heroin.  What they want to do now --

17             THE COURT:  So it was a conspiracy to distribute

18     heroin.

19             MR. ROCCO:  A specific controlled substance.  And now

20     what the government is saying is, well, we charged the

21     conspiracy to distribute heroin, but we can prove up that it

22     was a conspiracy to distribute cocaine.  That's a completely

23     different crime.

24             They chose to charge a crime in a certain way, they

25     don't get the opportunity to broaden the basis of what -- the

1    factual basis, the way the crime was committed.  I think that's

2    error for the Court.

3            MR. HARRISON:  Can I just focus very briefly.

4            THE COURT:  I'm not bragging.  I'm not worried about

5    error in this case.  I not saying I didn't commit any.

6            MR. ROCCO:  It is not my style.  Who cares.  We just

7    all want to get it right.

8            THE COURT:  That's what I'm trying to do, yeah.

9            MR. HARRISON:  Really briefly, I think the Court did

10   crystalize it pretty well when it said we want to keep it, they

11   want to change it.  Rule 30 and the case law, and we cited some

12   on page four in our letter, is pretty clear.  You can't change

13   it after the jury's been instructed.

14           THE COURT:  Oh.

15           MR. LOCKARD:  This isn't a Rule 30 issue.  This is a

16   jury issue.

17           THE COURT:  The law is crystal clear if there is an

18   incorrect jury instruction, the Second Circuit has said

19   repeatedly the Court in its discretion can change it after the

20   jury sends a note.

21           MR. HARRISON:  We don't think it is incorrect.

22           MS. FLEMING:  This is not an incorrect statement of

23   law.  That's the point.  It is not incorrect.

24           THE COURT:  That's the question.  That is the

25   question.

1              MR. ROCCO:  That's precisely the question.

2              MR. HARRISON:  In --

3              THE COURT:  So, again, just so you know, we're not

4     going to get any further.  I'm going to look a little further.

5     But it looks like it's saying that in order to prove the

6     conspiracy, you have to also prove that Mr. Atilla committed a

7     substantive act.

8              MR. ROCCO:  That's the way the indictment --

9              MR. LOCKARD:  That is not what the indictment says.

10             THE COURT:  That I think is wrong.

11             MR. HARRISON:  They did prove --

12             MR. ROCCO:  Excuse me.  This is precisely what

13    happened in the Mel Miller case.  The government is trying to

14    broaden the basis for a conviction.  It chose to charge a crime

15    in a certain way.  With all due respect to what Michael just

16    said, it is very clear to me that the government has chosen to

17    charge a crime in a particular way, and now the government is

18    seeking to change the way the crime has been charged, and to,

19    in effect, supersede a proper instruction to the jury by the

20    Court.

21             And I think what's going to happen here as a result is

22    that it's going to lend additional confusion to the jury,

23    confuse the jury further, and in fact it's improper.  There is

24    nothing that needs to be corrected in the Court's instruction

25    as given.

HCM3ATI1                          Deliberations

1            MR. LOCKARD:  I think --

2            THE COURT:  That's enough.  I get it.  We can go on

3    all day.

4            MR. LOCKARD:  I was just going to say I think the part

5    of the appendix that most directly reflects this issue is the

6    first excerpt in our appendix about the difference between

7    conspiracy and substantive offense, which is drawn from page 31

8    of the jury charge, which was instructing about the nature of

9    conspiracy with respect to Count One.  But also applies equally

10   with respect to Count Two, and I think that's the portion of

11   the conspiracy law.

12           THE COURT:  Just so you know, yesterday you each

13   handed up a proposed instruction.  One was labeled Defense, and

14   I made that Roman I, and one was labeled the Government, I made

15   that Government I.  So I'm going to put that in the record, so

16   it's clear what everybody has said.  And now, your two letters

17   are going into the record too.

18           MR. ROCCO:  I think the second letter, your Honor, our

19   letter in effect is a much better way of stating it than our

20   original.

21           THE COURT:  That's what happened.

22           MR. ROCCO:  Sure.

23           THE COURT:  I'm going to put it in there.

24           So I've got to confer, meet and confer with Christine,

25   and decide what we should do.

1           MR. ROCCO:  Thank you for listening to us, Judge.

2           MR. LOCKARD:  Thank you, your Honor.

3           THE COURT:  You bet.  My pleasure.

4           (Pause)

5           (In open court; jury and defendant not present)

6           THE COURT:  The record should reflect that I had a

7     conference with the parties in the robing room on two principal

8     topics.  One has to do with the defense application in its

9     letter dated December 22 discussing the issue that divides the

10    defense and the government with respect to the jury note that

11    we got yesterday, which I'll come back to.

12           But also, that letter talks about, this is the defense

13    letter, amending its currently pending Rule 29 motion to

14    dismiss the case by supplementing it.  It says on page one "In

15    addition, for the reasons set forth in Section B of the

16    December 22, 2017 defense letter, we respectfully request that

17    this Court dismiss Counts Two through Six pursuant to Rule 29

18    and supplement defendant's motion for acquittal with this

19    letter."

20           And then if you go to the back of the letter, I think

21    it is the last two pages, the defense amplifies that

22    application that it wants to supplement its Rule 29 submission,

23    it says on the bottom of page six "For the reasons set forth on

24    page two," which I think I just read to you, no.  That was page

25    one.

1          It says here "For the reasons set forth on page two,

2     the defendant's earlier Rule 29 submission, if the IEEPA

3     conspiracy count is dismissed, the bank fraud and money

4     laundering conspiracy and substantive counts must fall as well.

5     Mr. Atilla respectfully requests that Counts Two through Six be

6     dismissed pursuant to Rule 29."

7          Anyway, my instruction to the defense counsel was that

8     I was proposing to dismiss without prejudice the pending Rule

9     29 motion, and if they want to supplement it in any way, they

10    should resubmit a Rule 29 motion now, include whatever claims

11    they want.  I'm not sure what practical difference it makes,

12    but then their motion would be as of the time of the close of

13    the whole case, as opposed to --

14         You know what, Ms. Fleming, I don't need the

15    headshakes.  Really.

16         The motion would be at the time of the close of the

17    entire case, government and defense, and I would resolve it

18    once it's resubmitted as a Rule 29 motion.  And then the

19    government would respond.

20         So, in either case, whatever we're doing with respect

21    to the Rule 29 motion, I have opted to defer resolution until

22    after the jury does its work, which I have as an option under

23    Rule 29.

24         So there is a little bit of a difference of opinion,

25    and I'm not sure of the answer, to be truthful.  I don't know

HCM3ATI1                    Deliberations

1    if you can do what the defense is proposing to do, which is to

2    have two Rule 29 motions pending at the same time.  One as of

3    the close of the government case and one as of the close of the

4    entire case.  I just don't know.  It strikes me as inefficient,

5    and I don't know what they would lose by having one motion and

6    my dismissing their first motion.

7           But they're going to research that, and in any event,

8    they are going to make a new submission which contains the

9    information that is now contained in the jury instruction

10   letter, but starts with the law about what motions are then

11   pending and can there be two motions pending at the same time.

12   And then the government will respond to that.

13          Do you want to set dates for when you want to make

14   that submission, the defense?

15          MR. ROCCO:  Your Honor, we can do it early next week.

16          THE COURT:  So, you tell me.

17          MR. ROCCO:  Christmas is Monday.  And we would like --

18   how about Wednesday?

19          THE COURT:  Don't think I don't realize that.

20          MR. ROCCO:  We on the defense side have almost

21   forgotten it.

22          THE COURT:  It's up to you.

23          MR. ROCCO:  Ms. Fleming is in the Christmas spirit and

24   she would like to give people until Friday, if that's okay.

25          THE COURT:  What date is that?

HCM3ATI1                         Deliberations

1          THE DEPUTY CLERK:  The 29th.

2          THE COURT:  29th of December?

3          MR. ROCCO:  29th.

4          THE COURT:  When does the government want to respond?

5          MR. LOCKARD:  Either a week or two, whatever the

6     Court's preference is.

7          THE COURT:  How about a week after that.  Which is

8     Friday of the first week in the new year.

9          THE DEPUTY CLERK:  The 5th.

10          THE COURT:  January 5, how about that.

11          MR. LOCKARD:  Certainly.

12          THE COURT:  You'll also deal with this issue about

13     number of Rule 29, the procedural posture that we're in.

14          MR. LOCKARD:  We'll respond to all the arguments in

15     their motion.

16          THE COURT:  Okay.  Now the bigger issue or the more

17     prominent issue in our discussion this morning was how to

18     respond to the jurors' pending note.

19          Before I get to that, you made six more copies of the

20     transcript yesterday, I sent six into the jury room and then I

21     thought, well, let's have one for everybody.  So if it is okay

22     with you, Christine will take in the other six copies.

23          MR. KAMARAJU:  Sure.

24          THE COURT:  So now the jury note which we've labeled

25     Court Exhibit DD and I put the date 12/21 on, that came

1    yesterday.  We are in a lot of agreement but fundamentally

2    there is a disagreement.

3            So the agreement, if I can summarize it, between the

4    government and the defense is that the jury needs clarification

5    on the distinction between conspiracy counts and substantive

6    counts.  And indeed, in the beginning of their letter, they say

7    "Regarding the conspiracy to violate IEEPA, can we have

8    clarification on the third element."

9            So the first thing, we started to talk about this

10   yesterday.  The first thing that I feel I have to do is to

11   advise them that there are not three elements, but rather, that

12   there are only two elements with respect to the IEEPA

13   conspiracy.  Number one.

14           Number two, is to point out that the third element,

15   and there is reference in the jury instructions to a third

16   element, but that third element pertains to a substantive IEEPA

17   violation, it is not a third element of the conspiracy.  So I'm

18   going to endeavor to point that out to them.  And to point them

19   to the correct pages in the jury instructions where that is

20   said.

21           I think both the government and the defense agree that

22   both those things need to be accomplished.  Where they disagree

23   is within the third element that's currently found, I forget,

24   page 46, no.  Page 51.  The three elements appear in two

25   places.  They appear first on page 46 where the instructions

1    say a violation of IEEPA has the following elements.  And that

2    is IEEPA as a substantive crime, first, second, third.  And

3    then further on page 51, at the top is the further explanation

4    of the third element.

5           So, there, the issue is whether that third element on

6    page 51 is correctly stated.  And I think it is fair to say

7    that the defense feels it is, and the government feels it's

8    not.

9           Am I so far accurately reflecting your positions?

10          MR. ROCCO:  Yes, your Honor.

11          MR. LOCKARD:  Yes, your Honor.

12          THE COURT:  So, I have taken a look at it, and here is

13   what I think is the problem with that third element explanation

14   on page 51.  It refers to, it's small language-wise, but has

15   implications, it refers to the initial cap defendant has not

16   obtained a license, it goes on to say.

17          And what I've concluded is that that should read "a

18   defendant" lowercase D.

19          Because, my opinion, if you say "the Defendant," then

20   you are saying that Mr. Atilla is required to commit a

21   substantive offense, and in fact, he isn't charged with a

22   substantive IEEPA offense, he's only charged with the

23   conspiracy.  So I think that if you change the word, just those

24   two words "the Defendant" to "a defendant," that would include

25   other members of the conspiracy, lowercase D, and "a" instead

HCM3ATI1                        Deliberations

of "the," then that in my opinion is a correct statement of the

law.

I doubt that anybody is going to be happy with it, but

I'm convinced that that is the right way to deal with it and I

have prepared a note for the jury which I'll show you, which I

plan to send to them, which reflects all of what I've just

said.

MR. LOCKARD:  So, your Honor, we've reviewed the

proposed response and the government believes that is an

appropriate and correct response to the jury note.

We think it may also be helpful to refer the jury to

the general instructions concerning conspiracy on pages 30 to

38 of the jury charge which also address the interaction

between the conspiracy and a substantive offense.

But we think the Court's proposed response is a

correct one.

MR. ROCCO:  Your Honor, we renew the objections that

we had that we stated on the record in the robing room

conference this morning.

But in addition, we think it is manifestly unfair to

effectively amend the charge at this point.  The charge was

proper.  We think that it has the tendency of, in effect,

emphasizing a particular part of the charge, and the jury is

instructed to take the charge as a whole as opposed to focusing

on particular aspects of it.

HCM3ATI1                    Deliberations

1         THE COURT:  Well, I state in the note, specifically,

2    the last sentence is a paragraph that says "I recommend that

3    after reviewing this response to your note, all jurors reread

4    the instruction regarding the IEEPA conspiracy which begins at

5    page 45 of the jury instructions."

6         So I don't know how to say it any more clearly than

7    that.  And I think that this that I've handed out directly

8    responds to the note.  I hope it provides clarification that

9    they were seeking.  But that remains to be seen.

10        MR. ROCCO:  If I may just for the record say that it

11   continues, in effect, it changes the charge in substance.  And

12   I think that the Court needs to remind the jury it still has to

13   find the objects of the conspiracy, the three elements of the

14   object of the substantive crime as the object of the conspiracy

15   in this case.  And what your Honor is proposing here is does

16   not do that.

17        MR. HARRISON:  Just really briefly, Judge --

18        THE COURT:  You know what, I really can't have double

19   team.  I mean, you know, there's got to be one person speaking

20   for the defense and one for the government.  It is really, I

21   respect you both, but it's just not fair to do it that way.

22        MR. ROCCO:  We've tried to do that, your Honor.

23        We are really talking specifically about the fourth

24   paragraph of the proposed instruction.  I think the Court needs

25   to remind the jury that it has to find the objects of the

1    conspiracy as defined originally in the Court's instruction.

2    And those are the three elements, and the three elements

3    include, as we've said yesterday, as we said yesterday and this

4    morning, the final element --

5              THE COURT:  Which includes what?

6              MR. ROCCO:  I apologize.

7              THE COURT:  That's all right.

8              MR. ROCCO:  The final element includes that it is the

9    defendant who has failed to obtain a license.

10             THE COURT:  Okay.  So, we've had a lot of, I'm just

11   saying for the record, back and forth starting yesterday, last

12   evening with the submissions.  By the way, the letters that

13   were submitted are probably six, seven pages in length, pretty

14   detailed.  And then this morning.  And you know, I don't think

15   I can please everybody.  I do think this is a correct way to

16   respond to the jury's note, and a correct statement of the law

17   for the reasons that I mentioned.

18             So I'm noting all the objections of the defense.  This

19   is the note that I'm going to submit to the jury.

20             MR. ROCCO:  Your Honor, can you just for a second, and

21   this is -- just look at what in effect is paragraph -- the next

22   to last paragraph.  You need not find the substantive violation

23   is I think confusing.  That's --

24             THE COURT:  That comes from the instruction.  That

25   language is currently in the instruction.  And it is an

HCM3ATI1                    Deliberations

1    endeavor to distinguish between the conspiracy count and the

2    substantive count.

3              MR. ROCCO:  I understand.

4              THE COURT:  So, you know, I note your objection.  This

5    is the best I can do.  I think it is appropriate and I think

6    it's accurate and correct.

7              MR. ROCCO:  I'm not arguing with the Court.  All I'm

8    trying to --

9              THE COURT:  I know you're not arguing, but it never

10   ends.  When we can get agreement, we do.  When we can't get

11   agreement, sometimes we don't.

12             MR. ROCCO:  May I just say that with respect to this

13   in particular, given the fact that it is -- again, it

14   highlights the change in the instruction.  And --

15             THE COURT:  It is supposed to.

16             MR. ROCCO:  But I'm not sure that's what --

17             THE COURT:  I'm not doing this willy-nilly.  I'm not

18   saying, you know, I could.  I don't know if it was.  I don't

19   think it was that it is a typo.  I'm saying this is the way it

20   should read as opposed to the way it reads.  I'm not trying to

21   hide anything.  It's right out there in the open, and I think

22   that's a correct statement of the law.  Because otherwise, you

23   are in effect saying that Mr. Atilla's charged both with a

24   conspiracy and the substantive count of violating IEEPA.  And

25   he isn't.

1          MR. ROCCO:  My concern is the jury is going to be

2     confused as to -- it is the requirement that was given in the

3     original instruction that the jury has to find, in addition to

4     the two elements of conspiracy, the three elements of the

5     substantive offense.

6          THE COURT:  I say that in the second paragraph.

7     "Violation of IEEPA is a substantive offense which has three

8     elements which are correctly summarized at page 46 of the jury

9     instructions."  And then I tell them at the end read the whole

10    instruction.  I can't do better than that.  I really think I

11    can't.  And I've paid a lot of attention to this.

12         So, respectfully, over objections, I'm going to submit

13    this to the jury.

14         All the jurors are here so we've given them the

15    additional copies of the transcript from yesterday's note, and

16    we're giving them a copy of this note right now.  And I assume

17    they'll continue their deliberations.

18         MR. HARRISON:  Judge, are we free to move about the

19    cabin, so to speak?

20         THE COURT:  Yes.  Until further notice.

21         (Pause)

22         (At 9:37 a.m., a note was received from the jury)

23         THE COURT:  We have another note.

24         MR. ROCCO:  May I get Mr. Harrison?

25         THE COURT:  Yes.

1          MR. ROCCO:  Your Honor, I think we need the defendant

2     for this.

3          THE COURT:  For a note.

4          MS. FLEMING:  We should put on the record that we

5     waived his appearance.

6          THE COURT:  Up until now.

7          MS. FLEMING:  For the earlier proceedings.

8          THE COURT:  Is he here?

9          MR. ROCCO:  He should be, your Honor.  We haven't seen

10    him.

11         THE COURT:  I haven't seen the marshals.

12         MS. FLEMING:  The marshals had asked us yesterday and

13    we said 9 o'clock would be fine.

14         THE DEPUTY CLERK:  I'll call.

15         (Defendant present)

16         THE COURT:  We've got another note which requires a

17    response.  So one is administrative about where they can order

18    lunch from, I don't think they like the cafeteria food.  And

19    the other one is more substantive.  It says "One of our jurors

20    needs to leave today no later than 3:30 p.m., there is a family

21    illness."

22         So that raises the question in my mind if they don't

23    reach a verdict by 3:30, when are they intending to come back

24    to continue their deliberations.  And that question, I think I

25    should pose to them, and then the question is, well, what are

HCM3ATI1                          Deliberations

1    their options.

2            I think we originally said January 3 is an option.  It

3    turns out, because of this trial, that I've canceled a trip to

4    Florida so I'm here next week.  If they want to come next week,

5    what do you think of that?

6            MS. FLEMING:  Judge, we told them originally that we

7    were going to break under all circumstances for next week.

8            THE COURT:  I never used the words "under all

9    circumstances."  I did say likely January.  I said whatever I

10   said.

11           The question is, when are you available next week or

12   are you available tomorrow, for example, Saturday morning.

13           MS. FLEMING:  My concern is I don't want to do

14   anything that puts pressure on them to reach a verdict today so

15   that they don't have to come in on a Saturday of the Christmas

16   break or during the Christmas break.  I understand the Court's

17   concern.  I think we all share it.

18           THE COURT:  Yes.  What do you think?

19           MS. FLEMING:  Should we look at what you said to them?

20           THE COURT:  I don't think it matters.  I mean, yes,

21   you can, but I don't think it matters.  I think I did say

22   probably January 3.

23           MR. ROCCO:  You did, your Honor.

24           THE COURT:  I thought it would never come to pass at

25   the time.  And it may very well come to pass.

HCM3ATI1                    Deliberations

 1          MR. ROCCO:  Your Honor, may I don't want to again have
 2     a cacophony of voices, but I share Ms. Fleming's concern.  And
 3     I personally have no problem doing this tomorrow, but I think
 4     that puts a lot of pressure on the jury today.
 5          THE COURT:  What do you want to do?  We need to know
 6     when they plan to come back.
 7          MR. ROCCO:  Why don't you just stick with the 3rd?  I
 8     think that's -- your Honor said it and I think that's
 9     appropriate.
10          MR. LOCKARD:  I think the 3rd works.  I think if the
11     Court wanted to give the jurors another option that they could
12     choose to come back before the 3rd, and certainly the
13     government can be available at whatever date that is.  We could
14     also wait until later in the day.
15          THE COURT:  No.  I don't want to do it last minute.
16     They've put the issue on the table and so, I mean, I think that
17     we should hear what their expectation is.  I'm happy to do it.
18     But they didn't know at that time that there is an option for
19     next week when we first said January 3.  I don't know, I don't
20     see how that puts in a pressure on them to provide them with
21     another option.
22          And I think it's always better -- it is not a good
23     idea to have a big gap like that.  I've never had that before.
24     But, I'm happy to do it, if we have to do it on that day.  I
25     think the longer they are away, the more possibility there is

1   for a problem to creep up.

2            MS. FLEMING:  Judge, we think we should stick to what

3   the jury was originally told.  If they come back with an

4   affirmative note that says they have another option they'd like

5   to suggest, that's something different.  But I would really

6   hate to have people in the jury feel that we're imposing on

7   their week and it becomes a clash in the jury or something.

8            MR. LOCKARD:  I think it is easy enough for the Court

9   to frame it as an option that is not a coercive or an

10   imposition one.  If they want to do it, we can do it.  And if

11   they don't want to do it, then the 3rd is still there.

12            THE COURT:  I would plan to offer January 3 or next

13   week if they prefer.  I don't think that does anything to

14   pressure.

15            So here's the note I plan to send back to the jury.

16   It says "We have certain places which we order from.  I'm

17   enclosing a Civic Deli menu, which is one of the places."  And

18   second, then I'm saying we can end deliberations at 3:30 today.

19   "When does the jury intend to resume deliberations?  Options

20   include January 3 or next week."

21            How's that?

22            MR. LOCKARD:  Yes, your Honor.

23            THE COURT:  Is that okay with you?

24            MS. FLEMING:  Yes.  We would prefer you just say

25   January 3.  But, whatever the Court does.

1        THE COURT:  Okay.  I'm going to stick to this and just

2   provide it as an option.

3        MS. FLEMING:  You can't give them a menu from

4   Forlini's?  It's Christmas.

5        THE COURT:  They have their own menu.

6        MS. FLEMING:  Maybe you can say would you like to

7   resume.  Would you like to resume next week or January 3

8   instead of "intend."  Less pressure.

9        MR. LOCKARD:  The government doesn't appreciate the

10   distinction between those formulations.

11        THE COURT:  I prefer intend.  Because "like" could be

12   never, could be spring break, you know.  I think it's okay.

13        (Pause)

14        (Recess pending verdict)

15        (In open court; jury not present.  Time noted

16   1:40 p.m.)

17        THE COURT:  We're just waiting on the defendant.

18        (Defendant present)

19        THE COURT:  We got two notes in quick succession about

20   money laundering instructions.  So here's the first note, the

21   one that came first.  It says "On page 28, it says 'aiding and

22   abetting is an alternative theory on which somebody can be

23   convicted of a substantive crime.'"  And here's the question.

24   "Are all jurors required to use the same criteria, either

25   element one, page 26, and element two, page 27, or aiding and

HCM3ATI1                        Deliberations

1    abetting as noted above?"

2            Let me give you the question that came right after it,

3    because it's related.

4            "Judge, one more thing.  Are we obligated to use the

5    alternative aiding or abetting?"

6            I think I know what the answers are, but let me defer

7    to you.

8            Mr. Harrison?

9            MR. ROCCO:  Mr. Harrison was --

10           MS. FLEMING:  I think the answer to the first

11   question, aiding and abetting is an alternative theory are all

12   jurors required to use the same criteria, I think the answer to

13   that is yes.  It has to be unanimous.

14           THE COURT:  Yes to the whole note.

15           MS. FLEMING:  Yes, I think that's right.  And on the

16   other one, one more thing, are we obligated to use the

17   alternative aiding and abetting, I think the answer is no.

18           And the P.S. is adorable.

19           THE COURT:  I'm just going to write yes, no.

20           Did the government agree with that?  Yes, no?

21           MR. LOCKARD:  So we're still sort of analyzing the

22   question a little bit.

23           THE COURT:  You're speculating.  It might be easier to

24   have done it with the defense to answer the note before you

25   came.  Full disclosure.

1        MR. LOCKARD:  It is always easier to just ask one of

2   the parties.

3        (Pause)

4        THE COURT:  Maybe we should do the first one first and

5   think a little bit more about the second one.  Because the

6   second one might be a little, I'm thinking, a little more --

7        MR. LOCKARD:  So, the government agrees that the jury

8   must be unanimous as to whether they're relying on the

9   principal violation or an aiding or abetting violation.

10        THE COURT:  So the answer is yes on the first note.

11        MR. LOCKARD:  Yes.

12        THE COURT:  There's two elements to money laundering.

13   To convict, you have to find both elements.  If you don't --

14   unanimously, and if you don't and you feel there is an aiding

15   and abetting legal support for money laundering, you'd have to

16   be unanimous on that.

17        So yes is clearly the answer.

18        MR. LOCKARD:  Yes.

19        THE COURT:  Let's give that, if it is okay, I'll just

20   send in that note.

21        So now, so the second one, I thought also at first the

22   answer is obviously no, but, could they be asking in that

23   second note do you have to review aiding and abetting if you

24   don't find -- do you think that's a no, too?

25        MR. ROCCO:  I think it's a no.

HCM3ATI1                        Deliberations

1          THE COURT:  Do you know what I'm saying?

2          MR. ROCCO:  Yes, your Honor.

3          THE COURT:  Are you obligated as a juror to read

4   aiding and abetting and analyze the situation under aiding and

5   abetting.  You can't -- you can't, the question is do you just

6   skip a theory?  I'm not so sure.  I don't know.

7          MR. ROCCO:  They're asking if they're obligated to use

8   the alternative.  I think the question is clear.  To use the

9   alternative.  Not to consider it, not to read it.  They're

10  saying are we obligated to use it.  They obviously understand

11  that there is an alternative theory of aiding and abetting.

12         THE COURT:  So in that context what does it mean to

13  use it?

14         MR. ROCCO:  To apply it as opposed to finding somebody

15  liable as a principal.

16         THE COURT:  Right.  But so I'm not sure.

17         MR. LOCKARD:  I think they are obligated to consider

18  it, but they're not obligated to find it, obviously.

19         THE COURT:  He's saying, if they get to money

20  laundering and they don't find the two elements are met, so not

21  guilty under that theory, right.  Finding the elements.  Do

22  they have to then evaluate money laundering under aiding and

23  abetting.  It is an interesting question.  I don't know.

24         MR. ROCCO:  Your Honor, I read the note very

25  differently.  I think if you answer the question yes, I think

1  you would be directing a verdict.

2          THE COURT:  No, I don't think it would be yes.  The

3  question would be, first of all, to find out what that means.

4  Maybe.

5          What is the answer if you are a juror, Mr. Rocco, you

6  come to money laundering, you can't find the elements, okay.

7  So you acquit under the substantive money laundering charge.

8  But must you then look and see if the facts are there to

9  support a different conclusion based on aiding and abetting.

10  In other words, do you have to go through the motions of

11  saying, well, there is no conviction based on this, there is an

12  acquittal.  Do you have to then say is there a conviction or

13  acquittal based on aiding and abetting?

14          MR. ROCCO:  Your Honor --

15          MS. FLEMING:  Let's look at the indictment and see

16  what is charged first.

17          THE COURT:  Okay.

18          MR. LOCKARD:  Aiding and abetting is charged.  I can

19  answer that question.

20          THE COURT:  Have you ever had this experience before?

21          MR. LOCKARD:  No.

22          THE COURT:  Has it ever come up?  It's never come up

23  with me.

24          MR. LOCKARD:  No, I've never had a jury ask to

25  distinguish between the two theories.  But I think the Court is

HCM3ATI1                        Deliberations

1   correct --

2            THE COURT:  Don't say I'm correct, I'm not sure.  Just

3   my initial reaction was a quick no.  But then I'm thinking

4   about it.

5            MR. LOCKARD:  What does "no" mean?

6            THE COURT:  Does the jury have the right to skip an

7   instruction.

8            MR. LOCKARD:  So I think a more specific response

9   would be if the jury unanimously finds the defendant guilty as

10  a principal, that the elements of one and two are satisfied,

11  then they do not need to consider aiding and abetting.  If they

12  do not unanimously find the defendant guilty as a principal,

13  then they are obligated to then consider whether he's guilty as

14  an aider and abettor.  I think that's the specific --

15           THE COURT:  That's really the question.  I don't know

16  what the -- I assume --

17           MR. LOCKARD:  Right.  Just like they can't disregard a

18  count, they can't disregard --

19           THE COURT:  That's why I hesitated.  First I was

20  saying it's obviously no.

21           MS. FLEMING:  I think the answer is a simple no to the

22  second question.

23           THE COURT:  Why?  You think they don't have to

24  evaluate the facts under aiding and abetting?

25           MS. FLEMING:  I think the question is are we obligated

HCM3ATI1                          Deliberations

1    to use the alternative.  Not to consider.  And I think that

2    "use" means apply.

3              THE COURT:  That's the question, that's right.  Apply,

4    and determine whether the glove fits or it doesn't fit, so to

5    speak.  I mean, can you skip over aiding and abetting?

6              MR. ROCCO:  I'm sorry, your Honor.

7              THE COURT:  No.  I mean, that's the way I am

8    interpreting the question.

9              MS. FLEMING:  Well, we assume they're following your

10   instructions which say you have to consider everything and all

11   of the instructions as a whole, and you've told them to

12   consider everything in your instructions as a whole.  And it

13   says do we have to use the alternative.  "Use" is a pretty

14   common --

15             THE COURT:  What do you think "use" means?

16             MS. FLEMING:  Apply.

17             THE COURT:  So apply, what does "apply" mean?  It

18   doesn't mean find.  Find guilty.  It means evaluate.

19             What if they wrote if we acquit under the substantive

20   elements, do they have to evaluate under aiding and abetting?

21   You think the answer is obviously no.  I can't imagine that

22   would be, right?

23             Mr. Rocco, it might not be yes or no.  It might be if

24   you -- I don't know if this is exactly the right language.  If

25   you acquit under elements one and/or two, right, you then must

HCM3ATI1                        Deliberations

1    evaluate as to whether aiding and abetting gives rise to --

2            MR. ROCCO:  I think that the question is really, I

3    think that's a decision that the jury makes as to whether it is

4    going to apply aiding and abetting as an alternative thesis of

5    reliability.  I think that's really a decision that the jury

6    makes, your Honor.  And I think that --

7            THE COURT:  They decide whether it leads to a

8    conviction or an acquittal.  But, I don't think they have the

9    option just to -- well, I don't know.  That's the question.

10   You know what I mean?

11           MR. ROCCO:  I do know what you mean.  I read the note

12   as saying are we obligated to find the defendant guilty --

13           THE COURT:  No.  They clearly are not saying that.

14   But that's the point.  If they're asking -- why would they be

15   asking are we clearly obligated to find somebody guilty?  I

16   mean, that wouldn't make any sense.

17           MR. ROCCO:  Your reaction to this note was saying --

18           THE COURT:  Was a gut reaction, and then I started to

19   think about it.  I was trying to think if Mr. Lockard had

20   something going on in his head that I wasn't aware of.

21           MR. KAMARAJU:  He's got a lot going on in his head.

22           MR. LOCKARD:  It's all unhelpful, though.

23           THE COURT:  I don't like when that happens, so I was

24   thinking more.

25           MR. LOCKARD:  So I think it doesn't sound like the

HCM3ATI1                     Deliberations

1    defense disputes that it is a correct statement of the law that

2    if the jury does not unanimously find the defendant guilty as a

3    principal, then they must consider whether he is guilty as an

4    aider and abettor.  So I think that's a correct statement of

5    the law.  I think it addresses the likely question that the

6    jury is getting at for the reasons the Court has explained.

7            THE COURT:  Why don't you see if you can agree with

8    him on how to answer this note.  And this one there would need

9    to be agreement.

10           (Pause)

11           THE COURT:  Did you come up with anything?

12           MR. LOCKARD:  We have a proposal and I think the

13   defense counsel is working on a modification of that proposal.

14           MS. FLEMING:  Your Honor, you don't mind the scratch

15   outs.

16           THE COURT:  I'll rewrite it.  What does it say.

17           MS. FLEMING:  "You are obligated to consider aiding

18   and abetting as I instructed in my instructions as a whole."

19           Sweet and simple.  That doesn't emphasize anything, it

20   tells them to consider it and does not emphasize it unduly as

21   being a new instruction.

22           THE COURT:  So I won't say yes or no, I'll just say --

23           MS. FLEMING:  Right.

24           THE COURT:  Okay.  Ms. Fleming, you don't think you

25   could just stop after "you're obligated to consider aiding and

HCM3ATI1                     Deliberations

1    abetting"?  I don't know what it adds to say "as I instructed
2    in my instructions as a whole."
3             MS. FLEMING:  I think that's fine.
4             THE COURT:  Stop at earlier?
5             MS. FLEMING:  I think that's fine.
6             THE COURT:  Is that okay with you?
7             MR. LOCKARD:  Yes, your Honor.
8             THE COURT:  I feel more comfortable with that.  Okay.
9             MS. FLEMING:  Judge, just I think could you underline
10   "consider" as opposed to "use" just so we make it clear.  Since
11   we're concerned about, we're interpreting what they said by the
12   use of the word "use."  That's the only reason why I said
13   consider as I instructed in my instructions as a whole because
14   we were kind of interpreting "use."
15            THE COURT:  I think that's pretty clear when you say
16   you're obligated to consider.  Don't you think?  It says that's
17   the operative verb, not use.  Consider.
18            MS. FLEMING:  Perhaps say we're not quite sure what
19   you mean by "use."  And then say you are obligated to consider.
20            THE COURT:  I didn't use "use."
21            MS. FLEMING:  I'm saying perhaps you should say in
22   your note we're not sure what you mean by "use," but you are
23   obligated to consider.
24            MR. LOCKARD:  No position on that.
25            MR. KAMARAJU:  We don't object.

HCM3ATI1                          Deliberations

1              THE COURT:  If that's what we're trying to say, why

2       don't we just say that.

3              "If by 'use' you mean 'consider,' then you're

4       obligated to consider."

5              MS. FLEMING:  That's fine.

6              MR. LOCKARD:  Sure.

7              (Pause)

8              (Recess pending verdict)

9               (In open court, jury not present)

10             THE COURT:  The note says "Our juror has to leave.  We

11      are looking forward to seeing you on January 3."

12             Mr. Rocco, should I answer it?

13             (Jury present.  Time noted 3:15 p.m.)

14             THE COURT:  I won't keep you long.  I know one of the

15      jurors has to leave.  And I just wanted to thank you for your

16      hard work so far and remind you, especially since we're not

17      going to get together until January 3, which I believe is a

18      Wednesday, of my instructions that apply in the meantime.

19             First, do not talk to each other about the case or

20      about anyone who has anything to do with it until the end of

21      the case when you complete your deliberations in the jury room.

22             Second, do not talk with anyone else about the case or

23      about anyone who has anything to do with it until the trial has

24      ended and you've been discharged as jurors.

25             Third, do not let anyone talk to you about the case or

HCM3ATI1                        Deliberations

1    about anyone who has anything to do with it, and if someone

2    should try and talk to you about the case, please report that

3    to Christine or me immediately.  You could do that by phone.

4            Fourth, do not read any news or internet stories or

5    articles or blogs or listen to any radio or TV or internet

6    reports, etc., about the case or about anyone who has anything

7    to do with it.

8            And fifth, do not do any type of research or any type

9    of investigation about the case on your own.

10           The parties are entitled to have you personally render

11   a verdict in this case on the basis of your independent

12   evaluation of the evidence presented here in the courtroom, so

13   obviously speaking to others about the case, including family

14   members, before you complete your deliberations, or exposing

15   yourself to evidence outside the courtroom in any way, would

16   compromise your jury service and fairness to the parties.

17           So, it is a busy week.  Have a great holiday wherever

18   you're going or not going.  And I'll see you on January 3.

19   Thanks very much.  You can leave your notes here.

20           (Jury excused.  Time noted 3:20 p.m.)

21           THE COURT:  Have a nice holiday.

22           So we have a couple of submissions that are coming,

23   and I'll try to get to those promptly within that time period

24   if I can.  And beyond that, I have no wisdom.  We'll see what

25   happens.  Thanks a lot.

HCM3ATI1                        Deliberations

1                MS. FLEMING:  Have a nice holiday.

2                THE COURT:  You too.

3                (Adjourned until January 3, 2018, at 9:15 a.m.)