*[handwritten: 15cr867 Court Exhibit J 12/17/17 Gov't proposal]*

## Count Two: IEEPA Conspiracy

### (General Instructions)

Count Two of the Indictment charges the defendant with participating in a conspiracy, from at least in or about 2010 up to and including in or about October 2015, to violate a license, order, regulation, or prohibition issued pursuant to the International Emergency Economic Powers Act, otherwise known as the IEEPA.

Count Two reads as follows:

[*The Court is respectfully requested to read Count Two of the Indictment*]

### (Statutory Background)

Under the authority of the IEEPA, the United States has adopted certain restrictions called economic sanctions on transactions with or involving the Islamic Republic of Iran. Among other things, these sanctions prohibit causing the export of a service directly or indirectly to Iran or the Government of Iran from the United States or by a United States person. In addition, during the relevant time period, the sanctions allowed penalties against foreign financial institutions with bank accounts in the United States if those foreign financial institutions violated certain rules on assisting transactions with or for the benefit of Iran.[1]

### (Elements of the Offense)

---

[1] Adapted from the charges of the Honorable Loretta A. Preska in *United States* v. *Olangian*, 12 Cr. 798 (LAP) (S.D.N.Y. 2016); the Honorable Jan DuBois in *United States* v. *Vaghari*, 08 Cr. 693 (E.D.Pa. 2010); the Honorable John F. Keenan in *United States* v. *Banki*, 10 Cr. 08 (S.D.N.Y. 2010); and the legal principles applied by the Honorable Richard J. Sullivan during the bench trial in *United States* v. *Safarha*, 10 Cr. 625 (S.D.N.Y. 2011); *see also* Title 50 United States Code, Section 1705; 31 C.F.R. Parts 560 & 561, and Executive Orders 13059, 12959, and 12957.

Like Count One, Count Two charges a conspiracy. To sustain its burden of proof with respect to the conspiracy charge in Count Two, the Government must prove beyond a reasonable doubt each of the following elements:

First, the Government must prove that the conspiracy charged in Count Two existed, i.e., that there was an agreement or understanding among at least two people to violate the IEEPA.

Second, the Government must prove that the defendant knowingly and willfully became a member of that conspiracy, knowing its unlawful objective.[2]

### (Object of the Conspiracy)

As I have stated, the object of the conspiracy charged in Count Two is the violation of the IEEPA. A violation of the IEEPA has the following elements:

First, the violation of any license, order, regulation, or prohibition issued pursuant to the IEEPA;

Second, that the violation was committed willfully; and

Third, that OFAC had not issued a license to engage in the charged transactions.

I remind you that the crime of conspiracy is distinct from the underlying substantive crime that the co-conspirators agreed to commit. It is the agreement itself that is the crime. Accordingly, you need not find that a substantive violation of the IEEPA actually occurred, only that the defendant knowingly and willfully participated in a conspiracy to engage in conduct that would have violated the IEEPA.[3]

---

[2] *See generally* 50 U.S.C. § 1705; *United States* v. *Ayden*, 2015 WL 927666, at *3 (N.D. Ga. Mar. 3, 2015) (distinguishing conspiracy alleged under 50 U.S.C. § 1705 from conspiracy alleged under 18 U.S.C. § 371 in that the former does not contain overt act requirement) (citing *Whitfield* v. *United States*, 543 U.S. 209, 213–14 (2005)).

[3] Adapted from the charges of the Honorable Loretta A. Preska in *United States* v. *Olangian*, 12 Cr. 798 (LAP) (S.D.N.Y. 2016); the Honorable Jan DuBois in *United States* v. *Vaghari*, 08 Cr. 693 (E.D.Pa. 2010); the Honorable John F. Keenan in *United States* v. *Banki*, 10 Cr. 08

**(License, Order, Regulation, or Prohibition)**

In order to prove that the defendant you are considering conspired to commit an IEEPA offense, the Government must prove that the defendant agreed with others to violate a license, order, regulation, or prohibition issued pursuant to the IEEPA. I instruct you that the following orders, regulations, and prohibitions were in effect at all times relevant to Count Two:

First, at all times relevant to the charges in the Indictment, orders, regulations, or prohibitions issued pursuant to the IEEPA provided that "the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited", unless the transaction was for the export of agricultural commodities, medicine, and medical devices, or was authorized by a license from OFAC.

I instruct you that the execution of money transfers from the United States on behalf of another, whether or not performed for a fee, constitutes the exportation of a service. Services may be provided indirectly, for example, if funds are transferred to Iran or on behalf of an Iranian person or business through an intermediary, or if they are transferred to a third party for the benefit of or on behalf of the Government of Iran, or if they are transferred to a third party acting as an agent of the Government of Iran.[4]

The "Government of Iran" means the state and the Government of the Islamic Republic of Iran, as well as any political subdivision, agency, or instrumentality of the government of the Islamic Republic of Iran, including the Central Bank of Iran and NIOC. The Government of Iran

---

(S.D.N.Y. 2010); and the legal principles applied by the Honorable Richard J. Sullivan during *United States* v. *Safarha*, 10 Cr. 625 (S.D.N.Y. 2011); *see also* Title 50 United States Code, Section 1705; 31 C.F.R. Parts 560 & 561, and Executive Orders 13059, 12959, and 12957.

[4] *See* Decision and Order on Zarrab Motion to Dismiss at 15-16, Dkt. 90 (quoting *United States* v. *Banki*, 685 F.3d 99, 108 (2d Cir. 2012).

also includes any entity or business owned or controlled, directly or indirectly, by the Government of Iran and any person acting or purporting to act, directly or indirectly, for or on behalf of the Government of Iran. The benefit of services performed anywhere in the world on behalf of the Government of Iran is presumed to be received in Iran.[5]

Second, at all times relevant to the charges in the Indictment, orders, regulations, or prohibitions issued pursuant to the IEEPA prohibited "[a]ny transaction . . . that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate" any of the prohibitions I have just described as well as "[a]ny conspiracy formed to violate any of [those] prohibitions."

Third, at all times relevant to the charges in the Indictment, orders, regulations, or prohibitions issued pursuant to the IEEPA required the Secretary of the Treasury to prohibit a foreign financial institution's use of correspondent banking accounts or payable-through bank accounts in the United States, or to impose strict conditions on the use of correspondent baking accounts or payable-through accounts in the United States, or block the foreign financial institution's property interests in the United States, if the foreign financial institution knowingly conducted or facilitated certain types of financial transactions with Iran or for the benefit of the Government of Iran, which I will describe in more detail.

Beginning on July 31, 2012, the Secretary of the Treasury was authorized to impose sanctions against any person who "materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, NIOC, NICO, or the Central

---

[5] *See also id.* at 16 (quoting *United States* v. *Homa Int'l Trading Corp.*, 687 F.3d 144, 146 (2d Cir. 2004).

Bank of Iran, or the purchase or acquisition of U.S. bank notes or precious metals by the Government of Iran."

Beginning on February 6, 2013, the Secretary of the Treasury was authorized to impose sanctions against foreign financial institutions that it knowingly conducted or facilitated any financial transaction with respect to the sale or purchase of petroleum or petroleum products to or from Iran unless the funds were used only for bilateral trade between the foreign country and Iran, with any funds owed to Iran deposited in an account within that foreign country, unless the transaction was for the export of agricultural commodities, medicine, or medical devices.

Beginning on July 1, 2013, the Secretary of the Treasury was required to impose sanctions against any person if there was a determination that the person who "sells, supplies, or transfers, [precious metals] directly or indirectly, to or from Iran."

Fourth, any transaction avoided, had the purpose of avoiding, caused a violation of, or attempted to violate any of the prohibitions I have just described, or any conspiracy formed to violate any of the prohibitions, was prohibited.[6]

Under this last provision, the Government must establish that the conspirators agreed to engage in transactions for the purpose of avoiding the prohibition. It is not necessary for the Government to prove that the conspirators' only reason for agreeing to engage in the transaction was to avoid the prohibition. It is sufficient if it was a dominant reason for the conspirators to have agreed to engage in the transaction. By the same token, it is not necessary for the foreign

---

[6] Adapted from the charges of the Honorable Loretta A. Preska in *United States* v. *Olangian*, 12 Cr. 798 (LAP) (S.D.N.Y. 2016); the Honorable Jan DuBois in *United States* v. *Vaghari*, 08 Cr. 693 (E.D.Pa. 2010); the Honorable John F. Keenan in *United States* v. *Banki*, 10 Cr. 08 (S.D.N.Y. 2010); and the legal principles applied by the Honorable Richard J. Sullivan during the bench trial in *United States* v. *Safarha*, 10 Cr. 625 (S.D.N.Y. 2011); *see also* Title 50 United States Code, Section 1705; 31 C.F.R. Parts 560 & 561, and Executive Orders 13059, 12959, 12957, 13622, and 13645.

financial institution to have been sanctioned before the conspirators agreed to engage in the transaction for the purpose of evading or avoiding the prohibitions that could result in the imposition of sanctions. It is sufficient to satisfy this element if the conspirators believed that the sanctions could be imposed and acted in that belief in agreeing to engage in a transaction or transactions designed to avoid the imposition of those sanctions. In other words, avoiding the imposition of sanctions by unlawfully concealing the true nature of a transaction would violate the prohibition on evading or avoiding the prohibitions.[7]

### (Willfulness)

The second element of an IEEPA violation is that the defendant you are considering acted willfully. A defendant acted willfully if he acted intentionally and purposefully with the intent to do something the law forbids, that is, with bad purpose to disobey or to disregard the law -- here to violate the embargo on certain transactions with Iran. However, the Government does not need to prove that defendant was aware of the specific law or rule that his conduct would violate. In other words, the defendant does not have to know that his conduct would violate a particular law, executive order or federal regulation, but he must act with the intent to do something the law forbids.[8]

---

[7] *See* Sand, *Modern Federal Jury Instructions*, Instr. 38-15 (2012) (instruction regarding meaning of "avoid" in the context of 18 U.S.C. § 1073's prohibition on flight to "avoid prosecution"); *United States* v. *Bando,* 244 F.2d 833, 843 (2d Cir. 1957) ("The words 'to avoid prosecution' mean 'to avoid being prosecuted.' . . . It is sufficient if the fleeing felon is 'subject to prosecution.'").

[8] *United States* v. *Turner*, 836 F.3d 849, 859 (7th Cir.), *as supplemented*, 840 F.3d 336 (7th Cir. 2016) (affirming instruction above); *see also Bryan v. United States*, 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998). (affirming instruction that "A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something the law forbids."); *United States* v. *Mousavi*, 604 F.3d 1084, 1093 (9th Cir. 2010) ("In light of these precedents, we conclude there is no basis for requiring the government to prove that a person

### (Lack of OFAC License)

The third element that the Government must prove is that at the time of the transactions at issue, the defendant had not obtained a license to conduct such transactions from the Department of the Treasury's Office of Foreign Assets Control, otherwise known as OFAC.[9]

### (No Overt Act Requirement)

Although Count Two, like Count One of the Indictment, charges the defendants with participating in a conspiracy, I instruct you that, unlike for Count One, it is not necessary for the Government to prove the commission any overt act in furtherance of the conspiracy alleged in Count Two, as long as the Government proves that the conspiracy charged in Count Two existed, and that the defendant was a knowing and intentional member of the conspiracy.[10]

---

charged with violating IEEPA and the ITR was aware of a specific licensing requirement. . . . [D]efendants charged with a violation of IEEPA and the ITR are adequately protected by requiring the government to prove that the defendants knew their actions violated the United States' embargo on transactions with Iran."); *Homa Int'l Trading Corp.*, 387 F.3d at 147 (quoting *Bryan*); *United States v. Hashmi*, No. 06 Cr. 442 (LAP), 2009 WL 4042841, at *12 (S.D.N.Y. Nov. 18, 2009).

[9] Adapted from the charges of the Honorable Loretta A. Preska in *United States v. Olangian*, 12 Cr. 798 (LAP) (S.D.N.Y. 2016); the Honorable Jan DuBois in *United States v. Vaghari*, 08 Cr. 693 (E.D.Pa. 2010); the Honorable John F. Keenan in *United States v. Banki*, 10 Cr. 08 (S.D.N.Y. 2010); and the legal principles applied by the Honorable Richard J. Sullivan during the bench trial in *United States v. Safarha*, 10 Cr. 625 (S.D.N.Y. 2011); *see also* Title 50 United States Code, Section 1705.

[10] *See generally* 50 U.S.C. § 1705; *United States v. Ayden*, 2015 WL 927666, at *3 (N.D. Ga. Mar. 3, 2015) (distinguishing conspiracy alleged under 50 U.S.C. § 1705 from conspiracy alleged under 18 U.S.C. § 371 in that the former does not contain overt act requirement) (citing *Whitfield v. United States*, 543 U.S. 209, 213–14 (2005)).