UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>MEHMET HAKAN ATILLA )<br>)<br>)<br>Defendant. ) | Docket No. 1:15-cr-00867-RMB-5<br><br>**AFFIDAVIT OF<br>JACK DONSON** |

I, Jack Donson, hereby declare under penalty of perjury that the following is true and correct:

## STATEMENT OF EXPERTISE

1. I am the Co-Founder and Vice President of Prisonology LLC. Prisonology provides Continuing Legal Education (CLE), consulting and expert testimony on matters concerning the Bureau of Prisons (BOP). I have testified and provided declarations in the Southern District of New York as well as District Courts across the country based on my prior experience for the BOP.

2. I have worked in the field of corrections for more than thirty years, with over 23 years with BOP in classification, correctional programs and treatment. Since retiring from the BOP, I am active in following policy initiatives and routinely attend conferences, including the annual U.S. Sentencing Commission Conference. I also chair a sub-committee on BOP policy for the ABA Corrections Committee and serve on the National Association of Criminal Defense Lawyers' (NACDL) Corrections Committee.

3. During a majority of my career, I managed a case load of approximately 150 inmates as a Correctional Treatment Specialist. In that capacity, I was responsible for inmate counseling, security classification, program placement and re-entry. This involved managing inmates with different types of sentences imposed under both "old law" and "new law." I also had collateral administrative responsibilities in training staff, writing policy, conducting facility audits and monitoring institutional programs. I have experience working in Minimum (camp), Low, Medium, Administrative (pre-trial and high security),

and Witness Security units. I have expertise with the U.S. Parole process and BOP sentence computations. Prior to working at the BOP, I was employed in the Commonwealth of Pennsylvania as a Probation and Parole Officer.

4. I hold a bachelor's degree in Sociology/Anthropology and a Master of Science Degree in Criminal Justice. Aside from consulting, I am a Lecturer at Marywood University where I teach Criminal Justice courses. A true and correct copy of my *curriculum vitae* is attached. I have personal knowledge of the facts stated herein and can testify competently thereto if called as a witness in this matter.

## CASE EVALUATION

5. Prisonology was retained to evaluate the court records of Mr. Atilla to assess his security classification and provide counsel with information to assist the Court in providing a judicial recommendation for a practical facility designation.

6. The BOP classifies facilities into four categories which are Minimum (Camp), Low (FCI), Medium (FCI) and High security (USP). There are also administrative facilities such as MCCs, MDCs and Medical Centers which house all security levels. After sentencing, defendants undergo a security classification review by the BOP to determine the appropriate level institution in which to house the defendant. Some of the factors used in this classification process include age, history of violence, previous escapes, criminal history points and severity of the instant offense. Each factor has a corresponding point value, which is then totaled to determine an overall security level. Below is a chart from the BOP classification manual (CPD/CPB, Number P5100.08, Inmate Security Designation and Custody Classification).

| Security Level | Male | Female |
|---|---|---|
| MINIMUM | 0-11 Points | 0-15 Points |
| LOW | 12-15 Points | 16-30 Points |
| MEDIUM | 16-23 Points | N/A |
| HIGH | 24 + Points | 31 + Points |

7. Points alone do not determine the security level as a specific Public Safety Factor may override the security classification scoring. For instance, non-citizens, such as Mr. Atilla, are precluded from being placed in a Minimum Security "Camp" and must be housed in at least a Low security Federal Correctional Institution (FCI).

8. My calculation of Mr. Atilla's Security Level score is 5 points which indicates he would ordinarily be classified as Minimum Security. (see attached worksheet of estimate). However, Mr. Atilla will be assigned an "Alien" Public Safety factor and will be required

Prisonology                                                                                                                  2

to be housed in a secure, Low Security Federal Correctional Institution (FCI) rather than a more docile prison camp environment.

9. Due to crowding, non-US. citizens are ordinarily placed in one of the BOP's privately contracted prisons which are located throughout the country. Most recently, a memorandum (attached) from F. Lara, Assistant Director, BOP Central office directs Chief Executive Officers to transfer Low security, non-citizens to private contract facilities to alleviate overcrowding and maximize the utilization of the private facilities.

10. The Office of Inspector General issued a report "Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons" (August 2016) which found that contract prisons often fall short of the goals expected by the BOP. One of the conclusions of the report stated, "We [OIG] found that in a majority of the categories we examined, contract prisons incurred more safety and security incidents per capita than comparable BOP institutions." This led then Attorney Sally Yates to call for reducing or eliminating the use of private prisons at the federal level. That initiative has been reversed by the current administration.

11. In my professional opinion, aside from the potential for a designation to a private contract facility, Mr. Atilla will face other challenges beyond those faced by a majority of inmates in the secure federal prison setting. These challenges result from cultural differences and continued isolation from his family due to limited visitation.

12. Even though Mr. Atilla is a first time, non-violent offender, his secure FCI designation will place him in close proximity to more hardened criminals, mainly drug offenders. He will not be eligible for certain BOP related programs like the placement in a residential re-entry center (aka: halfway house) near the end of any prison term. The result is placement in a higher security facility around inmates with more serious criminal histories while having limited communication, family support and programming needs.

13. The cultural barriers may also be a challenge for Mr. Atilla given the limited number of Turkish nationals in the prison system. I have witnessed inmates from Middle Eastern countries, who practice Islam, be ostracized and wrongly identified as fundamentalists by white supremacists in the general population. These profile biases are part of the prison subculture, predominately in higher security facilities.

## CONCLUSION

14. Based on my expert opinion, Mr. Atilla will experience a higher level of stress compared to the average non-violent, first time, white collar offender. It is likely he will be designated to a private contract facility in a higher security environment than his profile dictates. His isolation from the family will also be problematic as inmates rely on visitation and community support to help in positively adjusting to the prison environment. As a means to address Mr. Atilla's issues; it is respectfully recommended the Court make specific recommendations to the Bureau of Prisons as part of the Judgment and Commitment.

15. The BOP tracks judicial recommendations made at sentencing in a computer data base and according to BOP officials, there is a 74% compliance rate. If the court imposes a custodial

term, I recommend the Court consider making the following recommendation to the Bureau of Prisons:

> "The Court recommends incarceration in a BOP operated, non-administrative facility, specifically FCI Danbury, which is in close proximity to major international airports in the northeast and the Turkish Consulate in New York. This will allow more visits from family, Turkish Consulate staff and members of Mr. Atilla's legal team. This recommendation, as it relates to Mr. Atilla's legal team, is made relative to Rule 38 (b) of the Federal Rules of Criminal Procedure so that the he can be detained in a place for confinement which will allow him to participate in the preparation of his appeal."

Jack T. Donson
VP Operations

Dated: 5/7/18

Prisonology

4